No. 18-35673
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

ANDREW GRIMM,

*Plaintiff-Appellant*,

v.

CITY OF PORTLAND,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman, United States District Judge

_____

## EXCERPTS OF RECORD
## VOLUME II OF II
### (Pages 18 to 106)

_____

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

# INDEX OF CONTENTS

## VOLUME I OF II
### (Pages 1 to 17)

| ECF | Description | Page |
|---|---|---|
| 31 | [2018-07-17] Transcript of Proceedings and Oral Ruling | ER 1 |
| 17 | [2018-04-16] Opinion and Order Granting Motion to Dismiss | ER 13 |

## VOLUME II OF II
### (Pages 18 to 106)

| ECF | Description | Page |
|---|---|---|
| 28 | [2018-08-14] Notice of Appeal | ER 18 |
| 27 | [2018-07-18] Judgment | ER 20 |
| 24-1 | [2018-06-11] Second Grimm Declaration | ER 21 |
| 22-1 | [2018-05-29] First Grimm Declaration with Exhibits | ER 25 |
| 20 | [2018-05-15] Earle Declaration | ER 44 |
| 20-1 | [2018-05-15] Earle Declaration Exhibits | ER 47 |
| 6 | [2018-02-21] City of Portland's Answer | ER 64 |
| 1 | [2018-01-29] Complaint | ER 79 |
| | [As of 2019-1-29] District Court Docket Sheet | ER 103 |

Andrew Grimm
agrimm3@gmail.com
15287 Pepperwood Drive
Omaha, NE 68154
Tel: (531) 210-2381

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

**ANDREW GRIMM**,
    Plaintiff,

    v.

**CITY OF PORTLAND, et al.**,
    Defendants.

Case No.: 3:18–cv–00183–MO

Plaintiff Andrew Grimm's
NOTICE OF APPEAL
to the United States Court of Appeals
for the Ninth Circuit

    This is a notice of appeal for Defendant City of Portland. Pursuant to Federal Rule of Appellate Procedure 3(c)(1), notice is hereby given that:

    (A)  Plaintiff Andrew Grimm is appealing

    (B)  this Court's order and decision (Dkt. #26), made orally from the bench during oral argument on July 17, 2018, granting Defendant City of Portland's Motion for Summary Judgment

    (C)  to the United State Court of Appeals for the Ninth Circuit.

                Respectfully submitted,

Dated: August 14, 2018         s/Andrew Grimm
                      Andrew Grimm

PLAINTIFF'S NOTICE OF APPEAL – 1

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Plaintiff Andrew Grimm's NOTICE OF

APPEAL on:

> Mr. Robert Yamachika
> Deputy City Attorney
> Office of City Attorney
> 1221 SW 4th Ave, Suite 430
> Portland, OR 97204
> Email: Rob.Yamachika@portlandoregon.gov
> Telephone: (503) 823-4047
> Facsimile: (503) 823-3089
> > *Of Attorney for Defendants City of Portland,*
> > *L. McHenry, and F. Earle*

> Mr. Matthew Lowe
> Jordan Ramis PC
> Two Centerpointe Drive, 6th Floor
> Lake Oswego, OR 97035
> Email: matthew.lowe@jordanramis.com
> Telephone: (503) 598-7070
> Facsimile: (503) 598-7373
> > *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: August 14, 2018                    s/Andrew Grimm
                                          Andrew Grimm

---

PLAINTIFF'S NOTICE OF APPEAL – 2

ER000019

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANDREW GRIMM**,

           Plaintiff,

    v.

**CITY OF PORTLAND;**
**L. MCHENRY; F. EARLE;**
and **RETRIEVER TOWING,**

           Defendants.

3:18-cv-183-MO

JUDGMENT

**MOSMAN, J.**,

        As stated on the record [26], I GRANT the remaining Defendants' Motion for Summary Judgment [19]. IT IS ORDERED AND ADJUDGED that this case is DISMISSED with prejudice.

DATED this __18___ day of July, 2018.

                                */s/ Michael W. Mosman*
                                MICHAEL W. MOSMAN
                                Chief United States District Judge

1 – JUDGMENT

Andrew Grimm
agrimm3@gmail.com
15287 Pepperwood Drive
Omaha, NE 68154
Tel: (650) 422-8035

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **ANDREW GRIMM**, | Case No.: 3:18–cv–00183–MO |
| Plaintiff, | |
| | Plaintiff Andrew Grimm's |
| v. | SECOND DECLARATION IN |
| | OPPOSITION TO THE MOTION FOR |
| | SUMMARY JUDGMENT |
| **CITY OF PORTLAND, et al.**, | filed by Defendant City of Portland |
| Defendants. | |

I, ANDREW GRIMM, Plaintiff in this lawsuit, declare as follows:

1.   I make this Declaration in opposition to the Motion for Summary Judgment filed by the City of Portland ("City" or "Portland") and in support of a LR 56-1(b) motion to present evidentiary objections and Federal Rule of Civil Procedure 56(d) objection to summary judgment on the basis that discovery is not yet complete. The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called as a witness:

2.   I cannot present facts essential to justify my opposition to Portland's Motion for Summary Judgment (Dkt. #19) because Portland raised additional factual issues for the first time in its Reply brief and I had understood the parties to have agreed to forgo discovery into these issues—and to forgo raising them—until the Court had rendered a decision on threshold legal issues, *i.e.*, to rule regarding the applicable legal standard.

SECOND GRIMM DECLARATION IN OPPOSITION TO SUMMARY JUDGMENT – 1

3.   Portland raises three new types of factual issues:

    a.   Who has access to the data that Plaintiff submitted to Portland's mobile parking app and whether accessing that data was practicable by any of Portland's employees or agents, see Dkt. #23 at 2 ("First, plaintiff wrongly assumes that a parking enforcement officer can access Parking Kitty user information […]"), and

    b.   Whether providing electronic communications would lead to physical altercations with City employees, see Dkt. #23 at 2-3 ("In addition, if the City were to call or text a vehicle owner prior to giving them a ticket or towing a vehicle, as plaintiff suggests, it is not hard to imagine that there would be unnecessary confrontations […]"), and

    c.   Whether there have been any subsequent remedial changes to Portland's tow-notice ordinances and polices, see Dkt. #23 at 3 (Portland asserts that "Dusenberry [sic] v. U.S., 534 U.S. 161 (2002) refutes plaintiff's argument […] [about] new procedures[…]").

    4.   Portland asserts that its parking enforcement officers do not have access to the data retained by its mobile parking app, but this obscures the question—yet to be subjected to discovery—of where that information is retained, who has access to it, whether that person or those persons are Portland's agents or employees or are contractually obligated to provide that information, etc. Discovery has yet to be conducted in all of these areas and would be essential to figuring out whether Portland itself could have practicably used the information in those databases to contact Plaintiff.

SECOND GRIMM DECLARATION IN OPPOSITION TO SUMMARY JUDGMENT – 2

5.  Portland suggests that its parking enforcement officers may face confrontations due to electronic pre-towing notice, but this speculation obscures the question—yet to be subjected to discovery—of whether this type of confrontation has ever occurred, how often, under what circumstances, etc. In any event, I would not have attacked Portland's parking officers, verbally or physically, had I received a pre-towing notification electronically from Portland. Instead, I would have simply moved my car. Indeed, I cannot imagine how I would have confronted a parking officer because I doubt the parking officer would have remained there to be subjected to verbal or physical abuse from a citizen. Finally, Portland has presented no evidence of why its parking officers would be at risk of physical altercations from vehicle owners.

6.  Portland suggests that I cannot use new policies to attack the adequacy of old policies, but I have had not chance to seek discovery into what Portland's polices, new or old, are. Furthermore, I am not aware that Portland has changed its policies and these policy changes, to the extent that Portland thinks them relevant, should be subject to discovery. In any event, new policies do not necessarily prove the inadequacy of old policies, but they might elucidate what was practicable for Portland to have done in the first place. In any event, none of my claims are predicated on any particular procedure, but rather on what would have been practicable for Portland to have accomplished in the first place.

**7.  I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand that these statements are made for use as evidence in court and are subject to penalty for perjury.**

DATED: June 11, 2018                          s/Andrew Grimm
                                                          Andrew Grimm

SECOND GRIMM DECLARATION IN OPPOSITION TO SUMMARY JUDGMENT – 3

### CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Plaintiff Andrew Grimm's DECLARATION

IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT filed by Defendant City

of Portland on:

> Mr. Robert Yamachika
> Deputy City Attorney
> Office of City Attorney
> 1221 SW 4th Ave, Suite 430
> Portland, OR 97204
> Email: Rob.Yamachika@portlandoregon.gov
> Telephone: (503) 823-4047
> Facsimile: (503) 823-3089
> > *Of Attorney for Defendants City of Portland,*
> > *L. McHenry, and F. Earle*

> Mr. Matthew Lowe
> Jordan Ramis PC
> Two Centerpointe Drive, 6th Floor
> Lake Oswego, OR 97035
> Email: matthew.lowe@jordanramis.com
> Telephone: (503) 598-7070
> Facsimile: (503) 598-7373
> > *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: June 11, 2018                    s/Andrew Grimm_____
                                        Andrew Grimm
                                        Pro Se Plaintiff

---

SECOND GRIMM DECLARATION IN OPPOSITION TO SUMMARY JUDGMENT – 4

Andrew Grimm
agrimm3@gmail.com
15287 Pepperwood Drive
Omaha, NE 68154
Tel: (650) 422-8035

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**ANDREW GRIMM**,
    Plaintiff,

    v.

**CITY OF PORTLAND, et al.**,
    Defendants.

Case No.: 3:18–cv–00183–MO

Plaintiff Andrew Grimm's
DECLARATION IN OPPOSITION TO THE
MOTION FOR SUMMARY JUDGMENT
filed by Defendant City of Portland

I, ANDREW GRIMM, Plaintiff in this lawsuit, declare as follows:

1.    I make this Declaration in opposition to the Motion for Summary Judgment filed by the City of Portland ("City" or "Portland"). The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called as a witness:

2.    On or about January 2007, I received absolute possession and control of a 1999 Honda Accord that today has the California license plate 6DNF990 ("Car"). Although I believe the formal legal title to the Car is held by father, I have had sole possession of the Car since that time. I have paid for the repairs to the vehicle, been the near-exclusive user of the vehicle, and driven the vehicle for over one hundred thousand miles since that time.

3.    By the time Portland cited my Car, the Car's vehicle registration was up-to-date with the State of California. As of at least October 6, 2017, the vehicle registration in the Car

was valid through June 2018. A true and correct certificate of the California Department of

Motor Vehicles demonstrating the Car's proper registration is attached at **Exhibit 1**. However,

because I had not yet received the vehicle registration stickers that are to be placed on a vehicle's

license plate to indicate updated registration, the stickers on the Car's license plate were out of

date during December 2017.

    4.  On or about May 29, 2018, I completed an investigation relating to Portland's

mobile-parking app:

        a.  The City's Bureau of Transportation website describes the app as "Parking

            Kitty: Portland's Mobile Parking App" at the following url:

            https://www.portlandoregon.gov/transportation/73554. A true and correct

            copy of the website is attached as **Exhibit 2.**

        b.  The City's Bureau of Transportation website describes how the Parking

            Kitty app works in an FAQ at the following url:

            https://www.portlandoregon.gov/transportation/article/637828. A true and

            correct copy of the website is attached as **Exhibit 3**, where Portland states

            that it charges a $0.10 fee to use its app for each parking payment and

            where Portland admits that "parking enforcement officers will see your

            mobile payment on their handheld device."

        c.  The City's Bureau of Transportation commissioned a hip-hip video

            announcing Parking Kitty which can be found at

            https://www.youtube.com/watch?v=W4Hxewc_64M. True and correct

            screenshots from the video are attached as **Exhibit 4**.

    d.  Parking Kitty's "curious branding is meant evoke 'kitty' as in a fund of

money, said Portland Bureau of Transportation spokesman Dylan Rivera"

to a reporter at The Oregonian, as found in the article at the following url:

http://www.oregonlive.com/commuting/index.ssf/2017/05/portland_launc

hes_a_parking_me.html. A true and correct copy of the article is attached

as **Exhibit 5**.

    e.  Parking Kitty: Portland's Mobile Parking App is available for download

via the Apple iPhone or Google Android apps stores, accessible through

this Portland Bureau of Transportation website:

https://www.portlandoregon.gov/transportation/article/646447. A true and

correct copy of the website is attached as **Exhibit 6**.

    5.  On October 25, 2017, I downloaded Parking Kitty: Portland's Mobile Parking

App to my iPhone, registered my Car with the app, and provided my personal cellphone number

and email address in association with my Car's license plate as part of the registration process.

On information and belief, this contact information was retained in a database. This contact

information had been used by Parking Kitty to email me on multiple occasions about my Car and

parking payments. Parking Kitty also sent me in-app notifications on my iPhone on multiple

occasions.

    6.  I paid for parking using Parking Kitty: Portland's Mobile Parking App on

December 14, 2017, including the additional $0.10 fee for the use of Parking Kitty, but failed to

refill the meter thereafter, so my Car was unlawfully parked after the meter expired.

    7.  I noticed that my vehicle was no longer where I had parked it on or about

December 24, 2018, when I was considering driving up to Seattle to celebrate Christmas. After I

GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT
MOTION – 3

had parked the Car, but before I noticed it missing, I did not return to my Car, but was diligently checking my personal email, text messages, voice messages, phone calls, and app notifications.

8. I called the City and the City's operator told me that my vehicle was impounded with Retriever Towing. I had received no text message, voice mail, phone call, or email warning of the towing of my Car from Portland or its agents.

9. I called Retriever Towing and Retriever Towing initially denied having possession of my Car. Then, upon further investigation, Retriever Towing said they did have possession of my Car, but that a mistake in their records department had the Car recorded under a different license plate.

10. Retriever Towing informed me that I would need a notarized document from the registered title holder of the Car to retrieve it, leaving me without transportation on Christmas Eve to drive to Seattle because I knew of no way to get a notarized document.

11. After Christmas, I went to Retriever Towing's impound lot to obtain my Car. After paying for the tow and impoundment, I requested that Retriever Towing provide me all documents that were left on my Car while it was parked on Hall Street.

12. Retriever Towing provided me with parking citations and showed me a red placard which said "TOW" on one side. I now understand this to be the red "TOW" placard discussed by Officer Earle in his declaration. See Declaration of Frank Earle ("Earle Decl.") ¶ 11, Ex 2, see also id. ¶ 13, Ex. 4 (blank "exemplar" red "TOW" notice placard). Retriever Towing refused to let me retain this "TOW" placard or to make a copy of it. These documents had remained unclaimed on my Car's windshield at the time my Car was towed.

13. However, Retriever Towing did **not** show me any red "WARNING" placard akin to the one described by Officer Earle in his declaration. Earle Decl. ¶ 11, Ex. 2. Instead,

---

GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT MOTION – 4

Retriever Towing confirmed that everything they had shown me was what was on my Car when it was towed and no such "WARNING" placard was shown to me in response to my request for "all" materials related to my tow. Moreover, because Officer Earle had left the materials on my Car, he saw that they remained there undisturbed and unclaimed—as his pictures show—when he ordered my Car towed on December 21, 2017.

14. Upon retrieving my Car, I inspected the front windshield of my Car and found no other documents remaining on my vehicle and I checked my email, voice messages, text messages, phone calls, and Parking Kitty app but found no warnings of a tow. I also consulted with my father and he received no notifications regarding the tow, except a letter mailed *after* the City and its agents had towed my vehicle.

**I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand that these statements are made for use as evidence in court and are subject to penalty for perjury.**

DATED: May 29, 2018                         s/Andrew Grimm_____
                                            Andrew Grimm

**Exhibit 1**



AUTO    06/02/2017 TO 06/02/2018    91 TYPE 6DNF990

REGISTRATION VALID FROM                                    TYPE    LICENSE NUMBER

**\*NO TITLE ISSUED/VEHICLE NOT TRANSFERABLE\***

VEHICLE IDENTIFICATION NUMBER
JHMCG5640XC002211                                          MAKE HOND

| BODY TYPE MODEL | CYLS. | DATE FIRST SOLD | CLASS | *YR 2008 | Yr. Model 1999 |
|---|---|---|---|---|---|
| 4D | | 00/00/0000 | BE | | |

| DATE ISSUED | TYPE VEH. | MP | AX | WC | UNLADEN/G/CGW | TOTAL FEES PAID |
|---|---|---|---|---|---|---|
| 10/06/2017 | 170 | G | | | | $151 |

6000

**\*\*\*CONTACT DMV FOR CA TITLE INFO\*\*\***

R
E
G
I
S
T
E
R
E
D
O
W
N
E
R

GRIMM FREDRICK N
15287 PEPPERWOOD DR
OMAHA
NE 68154

L
I
E
N
H
O
L
D
E
R

IMPERIAL ECU
7161 CICERO
LINCOLNWOOD
IL                                          L0007

0                                           60712
                                            140092520170626

STATE OF CALIFORNIA
DEPARTMENT OF MOTOR VEHICLES
**VALIDATED REGISTRATION CARD**    J 4152261
READ REVERSE SIDE - IMPORTANT INSTRUCTIONS

**Exhibit 2**



# Exhibit 3

5/29/2018                    Parking Kitty FAQs | Parking Kitty: Portland's Mobile Parking App | The City of Portland, Oregon

## Portland Bureau of Transportation

Phone: 503-823-5185   Fax: 503-823-7576   1120 SW Fifth Ave, Suite 800, Portland, OR 97204
More Contact Info (http://www.portlandoregon.gov/transportation/article/319727)

## Parking Kitty FAQs



 

 FAQ'S - GETTING STARTED WITH PARKING KITTY

**HOW DO I USE PARKING KITTY/ HOW DO I PAY WITH MY PHONE?**

Download the PassportParking app from the App Store or Google Play. A web version is also available
at https://parkingkitty.ppprk.com/park (https://parkingkitty.ppprk.com/park/)

Please note: your wireless carrier's message and data rates may apply.

IS THERE A FEE TO USE PARKING KITTY?
Yes, there is a 10¢ fee on each session.

WHAT DEVICES AND BROWSERS SUPPORT PARKING KITTY THE BEST?
We highly recommend using Apple or Android for downloading the application. When using mobile pay web, modern browsers such as
Chrome, FireFox and Safari are the most compatible.

WHY DOESN'T THE METER CHANGE/HOW DOES ENFORCEMENT KNOW I PAID?
The meters don't sync with our system, but the parking enforcement officers will see your mobile payment on their handheld device.

WHAT IS THE ZONE NUMBER/HOW DO I FIND IT?
The zone number is required to start your parking session and identifies where you are parked. You can find the zone number located on
signage on the lot or on decals on the meter, on this interactive map (https://pdx.maps.arcgis.com/apps/webappviewer/index.html?
id=d15a25e40ff142f1a38c794b11dfafa1), and also right from the app. Here are the instructions (http://www.portlandoregon.gov/transportation/article/664440)
on how to access the map from the Parking Kitty app.

HOW DO I ENTER MY LICENSE PLATE NUMBER?
Enter your license plate including the stacked characters [alphanumeric only, no special characters]. See examples below:

| Vehicle Licence Plate | Licence Plate to Enter |
| --- | --- |

https://www.portlandoregon.gov/transportation/article/637828                                                    1/4

---

5/29/2018                    Parking Kitty FAQs | Parking Kitty: Portland's Mobile Parking App | The City of Portland, Oregon

 000BBB

 9P0000

 CA00000

 D40406

 D8559

WHERE IS THE MENU LOCATED?
The menu button is the icon with the three white lines in the left-hand corner of the screen.

HOW DO I KNOW MY PARKING SESSION HAS STARTED?
When using the application, you will know your parking session has successfully started once you see the countdown timer on the screen.

WHY WON'T THE APP LET ME EXTEND MY TIME?
If you can't extend your time it could be because you have already reached the maximum stay allowed within your zone.

HOW DO I VIEW MY PARKING HISTORY/GET RECEIPTS?
To view your parking history you can use the app or website. Click 'Parker History' in the side menu and you'll be able to view previous parking sessions and access receipts. The app only shows recent history. For a full parking history, visit https://parkingkitty.ppprk.com/park (https://parkingkitty.ppprk.com/park/). If you would like individual receipts emailed to you, please go into the Parking Kitty App, hit the sidebar menu at the top left (looks like a hamburger) and the select "Parker History". There you will see each parking session and can have a receipt emailed to you.

HOW DO I MANAGE ALERTS/REMINDERS?
Login to your account and click 'Options'. Use the checkboxes to enable/disable the reminders.

CAN I PARK MULTIPLE CARS?
You can start additional parking sessions for different vehicles by clicking 'New Session' in the side menu.

  FAQ'S - MANAGING PARKING KITTY

HOW DO I ADD/DELETE A PAYMENT CARD?
Login and select 'Payment' from the side menu.  Select 'Add Card'. Enter your new card information and check the 'Save payment info' if you wish to save this card for future use. To delete a card, select 'Payment' from the side menu and choose the card you wish to remove, then 'Delete Card'.

GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT
MOTION – 9

ER000033

5/29/2018                          Parking Kitty FAQs | *Parking Kitty: Portland's Mobile Parking App* | The City of Portland, Oregon

HOW DO I ADD ANOTHER LICENSE PLATE NUMBER TO MY ACCOUNT?
Login and select 'Vehicles' from the side menu. The app will save recent license plate numbers you've used before too!


HOW DO I RESET MY PIN?
To change your PIN you will login to the app or website and select the 'Reset Pin' button on the first page. It will then ask you for your current card information on your account for security reasons. If you don't know your old card information please send an email to support@passportinc.com

(http://www.portlandoregon.gov/mailto:support@passportinc.com)

THE RATES SHOWN IN THE APP DO NOT MATCH SIGNAGE AT MY PARKING LOCATION?
Select 'Send Bug Report' report from the side menu with a description of the issue.  We will research any discrepancies.


HOW DO I CHANGE THE EMAIL ADDRESS ON MY ACCOUNT?
To change your email address you can use the app or website. Login and select 'Profile' from the side menu and then update your email.


HOW DO I DEACTIVATE MY ACCOUNT?
To deactivate your account you must go to https://parkingkitty.ppprk.com/park (https://parkingkitty.ppprk.com/park/). Login and select 'Profile' and then hit deactivate account.


WHAT IS THE DIFFERENCE BETWEEN A VERIFICATION CODE AND MY PIN NUMBER?
The verification code is a three (3) digit code that verifies you have entered in the correct cell phone number or email when signing up.
The PIN number is a four (4) digit number of your choice that you will login with.


CAN I MOVE SPACES WHILE I HAVE AN ACTIVE SESSION?
Yes, you can move spaces as long as your new space is in the same zone that you began your parking session in. Questions regarding parking rules for a specific location should be directed to the local parking operator.


CAN I STOP MY PARKING SESSION?
There's no need to stop the parking session. It will end when the selected stay has ended.


WHAT IF I ENCOUNTER A TECHNICAL ISSUE?
You can send a bug report and our support team will get back to you promptly.



https://www.portlandoregon.gov/transportation/article/637828                                                                3/4

---

5/29/2018                    Parking Kitty FAQs | Parking Kitty: Portland's Mobile Parking App | The City of Portland, Oregon

GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT
MOTION – 11

ER000035

**Exhibit 4**







**Exhibit 5**

5/29/2018                    Portland launches a parking meter app, and it's cat-themed | OregonLive.com

| Menu | Set Weather | | Subscribe |
|------|-------------|--|-----------|
| | | | Search |

COMMUTING NEWS

## Portland launches a parking meter app, and it's cat-themed

Updated May 19, 2017;
Posted May 18, 2017

24                          2.3k
                            shares

**By Elliot Njus,** enjus@oregonian.com
The Oregonian/OregonLive

Portland's feed-the-meter mobile app debuted Thursday, and it's cat themed.

For a 10-cent fee, Parking Kitty allows drivers to pay for street parking on their smartphone, without the walk to a kiosk or a paper slip. Drivers can also add more time remotely, up to the time limit of the block where they parked.

The curious branding is meant evoke "kitty" as in a fund of money, said Portland Bureau of Transportation spokesman Dylan Rivera.


1

⊗

http://www.oregonlive.com/commuting/index.ssf/2017/05/portland_launches_a_parking_me.html                    1/4

"We worked really hard to make it convenient and memorable for people in Portland to use," Rivera said, adding, "Portlanders are really into cats."

(There is some evidence to support this. The Seattle Times reported in 2015 that Portland had the most cat ladies -- which the newspaper defined as single women who live alone with at least one cat -- per capita in the United States. Seattle itself came in second.)

The feline motif goes beyond the name. The app purrs when a user pays for parking, and a 15-minute warning that parking time is about to run out arrives with a "meow."

The app is available as of Thursday in Apple's App Store and Android's Google Play. A mobile web version is available at parkingkitty.ppprk.com.

Parkers can still pay with coins or credit cards at the pay kiosks on every city block. The city removed its last single-space, coin-operated parking meter last year.

Here's how the app works:



- After pulling into a spot, sign into the app with a four-digit PIN, then enters a four-digit zone number posted on



GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT MOTION – 15

ER000039

5/29/2018                    Portland launches a parking meter app, and it's cat-themed | OregonLive.com

the side of the parking payment kiosks.

- Enters or selects their license plate number. Several different vehicles can be stored in the app.
- Select the length of stay in 15-minute increments.
- Enter credit card details, or select a stored credit card. (The app doesn't have pre-pay option.)
- Confirm the details of the transaction and be on your way. A receipt is sent by email.

Drivers can also pay to extend their stay remotely through the app -- as long as they don't overstay the time limit of the zone where they're parked. The extension comes without incurring another 10-cent fee.

Parking enforcement officers will first look for a payment slip on the window. But if they don't see it, they'll now run the license plate to see if a payment has been made online.

---

The new payment option comes at little up-front cost to the city. Passport Inc., a Delaware company contracted to develop and administer the app, receives the 10-cent-per-parking session convenience fee. The city is spending only "a few thousand bucks" from its parking operations budget to promote the app, Rivera said.



-- Elliot Njus

⊗

---

GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT
MOTION – 16

ER000040

5/29/2018                              Portland launches a parking meter app, and it's cat-themed | OregonLive.com

enjus@oregonian.com
503-294-5034
@enjus

---

Use of and/or registration on any portion of this site constitutes acceptance of our **User Agreement** (updated 5/25/18) and **Privacy Policy and Cookie Statement** (updated 5/25/18).

© 2018 Advance Local Media LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Advance Local.

**Community Rules** apply to all content you upload or otherwise submit to this site.

**Your California Privacy Rights**

▷ **Ad Choices**





http://www.oregonlive.com/commuting/index.ssf/2017/05/portland_launches_a_parking_me.html                                          4/4

---

GRIMM DECLARATION IN OPPOSITION TO PORTLAND'S SUMMARY JUDGMENT
MOTION – 17

**Exhibit 6**



**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Plaintiff Andrew Grimm's DECLARATION

IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT filed by Defendant City

of Portland on:

> Mr. Robert Yamachika
> Deputy City Attorney
> Office of City Attorney
> 1221 SW 4th Ave, Suite 430
> Portland, OR 97204
> Email: Rob.Yamachika@portlandoregon.gov
> Telephone: (503) 823-4047
> Facsimile: (503) 823-3089
> > *Of Attorney for Defendants City of Portland,*
> > *L. McHenry, and F. Earle*

> Mr. Matthew Lowe
> Jordan Ramis PC
> Two Centerpointe Drive, 6th Floor
> Lake Oswego, OR 97035
> Email: matthew.lowe@jordanramis.com
> Telephone: (503) 598-7070
> Facsimile: (503) 598-7373
> > *Of Attorney for Retriever Towing*

by **electronic filing** in CM/ECF.

Dated: May 29, 2018                           s/Andrew Grimm
                                              Andrew Grimm
                                              Pro Se Plaintiff

ROBERT YAMACHIKA, Oregon State Bar ID Number 065560
Senior Deputy City Attorney
Email: Rob.Yamachika@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendants City of Portland,*
*L. McHenry, and F. Earle*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ANDREW GRIMM,** | **3:18-cv-183 MO** |
| **PLAINTIFF,** | |
| v. | **DECLARATION OF FRANK EARLE IN SUPPORT OF DEFENDANT CITY OF PORTLAND'S MOTION FOR SUMMARY JUDGMENT** |
| **CITY OF PORTLAND, L. MCHENRY, F. EARLE, AND RETRIEVER TOWING** | |
| **DEFENDANTS.** | |

 I, FRANK EARLE, declare and state as follows:

1.     I am a Parking Code Enforcement Officer in the City of Portland's Bureau of Transportation.

2.     I make this declaration in support of the City of Portland's Motion for Summary Judgment.

3.     On December 18, 2017, I observed a Honda Accord, California license plate 6DNF990 with expired registration tags dated "Jun 2017."

4.     I checked the plate and data confirmed that on December 15, 2017, the City of Portland issued citations Nos. HA30383285 and HA3038326 for failing to display current registration tags and for being unlawfully parked in a meter zone without proof of payment of the

Page  1  –  DECLARATION OF FRANK EARLE

parking meter fee.  Data confirmed that no electronic payment had been made since December

15, 2017.

     5.      On December 18, 2017, I issued parking Citation No. HA30925526 in violation

of 16.20.120(L) for failure to display current registration; and Citation No. 30925527 in violation

of 16.20.430-A for failing to display meter receipt curb side.  I placed the two citations on the

exterior of the vehicle's windshield directly on top of the citations previously issued.

     6.      On December 19, 2017, I came upon the same Honda Accord parked on SW Hall

Street between 4th and 5th Avenue in the same meter space.  Parking Enforcement data confirmed

no electronic payment had been made.  I issued the third parking Citation No. HA30925545 in

violation of 16.20.430-A for failing to display meter receipt curb side.  The citation included

comment "CITE AND WARN."

     7.      I placed a separate red warning slip with the third citation.  The red warning slip

had the word "WARNING" in large print on one side and on the back side it provided a warning

and notice stating, "Your vehicle will be subject to tow/citation if it is not moved."  I underlined

the word "tow" and circled words "tow/citation" on the backside of the warning slip.

     8.      On December 21, 2017, the Honda Accord remained unlawfully parked at the

same parking meter space without proof of payment of the parking meter fee.  I issued a fourth

parking Citation No. 30925607 in violation of 16.20.430-A for failing to display proof of

payment receipt curb side.  I placed the fourth citation on top of the previously issued citations

on the exterior of the vehicle's windshield.  The fourth citation included comment referencing

the previous warning "PREV CI AND WRNED."

     9.      I placed a separate red tow slip with the fourth citation on the exterior of the

vehicle's windshield.  The red tow slip had the word "TOW" in large print on one side and an

order to tow vehicle and underlying information on the other side.

Page  2  –  DECLARATION OF FRANK EARLE

10.     Attached to this declaration as **Exhibit 1** are true and correct copies of the six parking citations along with photographs issued to the owner of the Honda Accord, California license plate 6DNF990 between December 15 and December 21, 2017.

11.     Attached to this declaration as **Exhibit 2** is a copy of Retriever Towing's photograph of plaintiff's vehicle depicting the red TOW slip I placed together with the fourth citation.

12.     Attached to this declaration as **Exhibit 3** is a true and correct copy of an exemplar red WARNING placard.

13.     Attached to this declaration as **Exhibit 4** is a true and correct copy of an exemplar red TOW notice placard.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED:  May 15, 2018.

_/s/ Frank Earle_____
Frank Earle

Page  3  –  DECLARATION OF FRANK EARLE

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 32 of 92

## Parking Violation #  HA30383285

| | | | | |
|---|---|---|---|---|
| **Officer:** | 160 | **Date:** | 12/15/17 | |
| **Time:** | 08:54 AM | **Violation:** | 95 | |
| **Make:** | HONDA | **State:** | CA | |
| **Plate:** | 6DNF990 | **Expiration:** | | |
| **Trip:** | | **VIN:** | | |
| **Street:** | SW HALL ST | | | |
| **From:** | 5TH AVE | | | |
| **To:** | 4TH AVE | | | |
| **Physical Loc:** | | | | |
| **Address:** | | | | |
| **Side of Street:** | S | **Meter #:** | F200410 | |
| **Receipt #:** | | **Receipt Exp:** | | |

**Comments:**  NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

PAY DURING METER HOURS

**Remarks:**

### CITY OF PORTLAND
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
### PARKING VIOLATION

CITATION #    **HA30383285**

| DATE | TIME MARKED | | TIME ISSUED |
|---|---|---|---|
| 12/15/2017 | | | 08:54AM |
| LICENSE # | | EXPIRATION | STATE |
| 6DNF990 | | 06/17 | CA |
| VEHICLE ID | | | TRIP EXP |

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |
| RECEIPT # | EXP TIME | BEAT # | |
| | | 10 | |

LOCATION

SW HALL ST
between 5TH AVE
and    4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | L. McHenry | 160 |

SIGN DETAILS

IN VIOLATION OF:    **16.20.430-A**
NO METER RECEIPT
AMOUNT DUE:    **$ 65.00**
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT PAY DURING METER
HOURS
Photos 5

Exhibit 1
Decl. of Earle
Page 1 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 33 of 92

## Parking Violation #  HA30383285






Exhibit 1
Decl. of Earle
Page 2 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 34 of 92

**Parking Violation #   HA30383285**



Exhibit 1
Decl. of Earle
Page 3 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 35 of 92

## Parking Violation #  HA30383286

| | | | |
|---|---|---|---|
| **Officer:** | 160 | **Date:** | 12/15/17 |
| **Time:** | 08:55 AM | **Violation:** | 110 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**  DISPLAYING EXPIRED REGISTRATION 91 DAYS OR MORE

EXPIRED TAG REAR, NO TAG FRONT, NO TEMP/TRIP

**Remarks:**

### CITY OF PORTLAND
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
### PARKING VIOLATION

| CITATION # | | HA30383286 | |
|---|---|---|---|
| DATE | TIME MARKED | | TIME ISSUED |
| 12/15/2017 | | | 08:55AM |
| LICENSE # | | EXPIRATION | STATE |
| 6DNF990 | | 06/17 | CA |
| | VEHICLE ID | | TRIP EXP |
| MAKE | | METER # | LIMIT    V/S |
| HONDA | | F200410 | |
| | RECEIPT # | EXP TIME | BEAT # |
| | | | 10 |
| | | LOCATION | |

SW HALL ST
between 5TH AVE
and      4TH AVE

| SIDE | OFFICER | | OFC # |
|---|---|---|---|
| S | L. McHenry | | 160 |
| | SIGN DETAILS | | |

IN VIOLATION OF:  16.20.120 (L)
FAILURE TO DISPLAY CURRENT
REGISTRATION (91 OR MORE DAYS)
$ 145.00
COMMENTS:
DISPLAYING EXPIRED REGISTRATION 91 DAYS O
MORE EXPIRED TAG REAR, NO TAG FRONT, NO
TEMP/TRIP

Photos 4

Exhibit 1
Decl. of Earle
Page 4 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 36 of 92

**Parking Violation #  HA30383286**






Exhibit 1
Decl. of Earle
Page 5 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 37 of 92

## Parking Violation #  HA30925526

| | | | |
|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/18/17 |
| **Time:** | 09:30 AM | **Violation:** | 110 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**   DISPLAYING EXPIRED REGISTRATION 91 DAYS OR MORE

EXPIRED TAGS FRONT AND REAR, NO TEMP/TRIP

**Remarks:**

---

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #   **HA30925526**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/18/2017 | | 09:30AM |

| LICENSE # | EXPIRATION | STATE |
|---|---|---|
| 6DNF990 | 06/17 | CA |

| VEHICLE ID | | TRIP EXP |
|---|---|---|
| | | |

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | | |

| RECEIPT # | EXP TIME | BEAT # |
|---|---|---|
| | | 10 |

LOCATION

SW HALL ST
  between 5TH AVE
and       4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S    F. Earle | | 159 |

SIGN DETAILS

IN VIOLATION OF:   16.20.120 (L)
**FAILURE TO DISPLAY CURRENT REGISTRATION (91 OR MORE DAYS)**   $ 145.00
COMMENTS:
DISPLAYING EXPIRED REGISTRATION 91 DAYS OR MORE EXPIRED TAGS FRONT AND REAR, NO TEMP/TRIP

Photos 5

WAR: WARNING (12.15.2017 8.52.00AM, 110, HALL ST Side: S; between 5TH AVE and 4TH AVE; Officer: 160; Vehicle: HONDA; Valves: /// DISPLAYING EXPIRED REGISTRATION 91 DAYS OR MORE)

---

Exhibit 1
Decl. of Earle
Page 6 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 38 of 92

## Parking Violation #  HA30925526






Exhibit 1
Decl. of Earle
Page 7 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 39 of 92

**Parking Violation #  HA30925526**



Exhibit 1
Decl. of Earle
Page 8 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 40 of 92

## Parking Violation #  HA30925527

| | | | | |
|---|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/18/17 | |
| **Time:** | 09:32 AM | **Violation:** | 95 | |
| **Make:** | HONDA | **State:** | CA | |
| **Plate:** | 6DNF990 | **Expiration:** | | |
| **Trip:** | | **VIN:** | | |
| **Street:** | SW HALL ST | | | |
| **From:** | 5TH AVE | | | |
| **To:** | 4TH AVE | | | |
| **Physical Loc:** | | | | |
| **Address:** | | | | |
| **Side of Street:** | S | **Meter #:** | F200410 | |
| **Receipt #:** | | **Receipt Exp:** | | |

**Comments:**  NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

**Remarks:**

### CITY OF PORTLAND
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
### PARKING VIOLATION

CITATION #  **HA30925527**

| DATE | TIME MARKED | | TIME ISSUED |
|---|---|---|---|
| 12/18/2017 | | | 09:32AM |
| LICENSE # | EXPIRATION | | STATE |
| 6DNF990 | 06/17 | | CA |
| VEHICLE ID | | TRIP EXP | |

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |
| RECEIPT # | EXP TIME | BEAT # | |
| | | 10 | |

LOCATION

SW HALL ST
between 5TH AVE
and       4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:   **16.20.430-A**
**NO METER RECEIPT**
AMOUNT DUE:   **$ 65.00**
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT

Photos 4

WAR: WARNING (12.15.2017 8.52.00AM,
110, HALL ST Side: S; between 5TH AVE
and 4TH AVE; Officer: 160; Vehicle:
HONDA; Valves: /// DISPLAYING
EXPIRED REGISTRATION 91 DAYS OR
MORE)

Exhibit 1
Decl. of Earle
Page 9 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 41 of 92

**Parking Violation #  HA30925527**






Exhibit 1
Decl. of Earle
Page 10 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 42 of 92

## Parking Violation #  HA30925545

| | | | |
|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/19/17 |
| **Time:** | 08:43 AM | **Violation:** | 95 |
| **Make:** | HONDA | **State:** | CA |
| **Plate:** | 6DNF990 | **Expiration:** | |
| **Trip:** | | **VIN:** | |
| **Street:** | SW HALL ST | | |
| **From:** | 5TH AVE | | |
| **To:** | 4TH AVE | | |
| **Physical Loc:** | | | |
| **Address:** | | | |
| **Side of Street:** | S | **Meter #:** | F200410 |
| **Receipt #:** | | **Receipt Exp:** | |

**Comments:**   NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

VS 6 4

CITE AND WARN

**Remarks:**

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #        HA30925545

| DATE | TIME MARKED | | TIME ISSUED |
|---|---|---|---|
| 12/19/2017 | | | 08:43AM |
| LICENSE # | | EXPIRATION | STATE |
| 6DNF990 | | 06/17 | CA |
| VEHICLE ID | | | TRIP EXP |
| | | | |
| MAKE | METER # | LIMIT | V/S |
| HONDA | F200410 | 3H | |
| RECEIPT # | EXP TIME | | BEAT # |
| | | | 10 |

LOCATION

SW HALL ST
between 5TH AVE
and      4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:    16.20.430-A
NO METER RECEIPT
AMOUNT DUE:      $ 65.00
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT VS 6 4 CITE AND WARN

Photos 4

Exhibit 1
Decl. of Earle
Page 11 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 43 of 92

## Parking Violation #  HA30925545






Exhibit 1
Decl. of Earle
Page 12 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 44 of 92

## Parking Violation #  HA30925607

| | | | | |
|---|---|---|---|---|
| **Officer:** | 159 | **Date:** | 12/21/17 | |
| **Time:** | 08:35 AM | **Violation:** | 95 | |
| **Make:** | HONDA | **State:** | CA | |
| **Plate:** | 6DNF990 | **Expiration:** | | |
| **Trip:** | | **VIN:** | | |
| **Street:** | SW HALL ST | | | |
| **From:** | 5TH AVE | | | |
| **To:** | 4TH AVE | | | |
| **Physical Loc:** | | | | |
| **Address:** | | | | |
| **Side of Street:** | S | **Meter #:** | F200410 | |
| **Receipt #:** | | **Receipt Exp:** | | |

**Comments:**   NO REC CURB SIDE, CHECKED DATA NO ELECTRONIC PAYMENT

VS 6 4  SR 1304

PREV CITE AND WRNED

**Remarks:**

---

**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY
**PARKING VIOLATION**

CITATION #    **HA30925607**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/21/2017 | | 08:35AM |

| LICENSE # | EXPIRATION | STATE |
|---|---|---|
| 6DNF990 | 06/17 | CA |

| VEHICLE ID | | TRIP EXP |
|---|---|---|
| | | |

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |

| RECEIPT # | EXP TIME | BEAT # |
|---|---|---|
| | | 10 |

LOCATION

SW HALL ST
between 5TH AVE
and    4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:    **16.20.430-A**
NO METER RECEIPT
AMOUNT DUE:    **$ 65.00**
COMMENTS:
NO REC CURB SIDE, CHECKED DATA NO
ELECTRONIC PAYMENT VS 6 4  SR 1304 PREV CI
AND WRNED

Photos 4

WAR: WARNING (12.19.2017 8.43.00AM,
95, HALL ST Side: S; between 5TH AVE
and 4TH AVE; Officer: 159; Vehicle:
HONDA; Valves: /// NO REC CURB SIDE,
CHECKED DATA NO ELECTRONIC
PAYMENT)

Exhibit 1
Decl. of Earle
Page 13 of 14

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 45 of 92

**Parking Violation #  HA30925607**






Exhibit 1
Decl. of Earle
Page 14 of 14



Thu, Dec 21, 2017 @ 09:18 PST - GPS: 45.510055, -122.681567

PES_000007

Exhibit 2
Decl. of Earle
Page 1 of 1

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 47 of 92

# WARNING

**PARKING ENFORCEMENT DIVISION**
1120 SW 5th Avenue, Suite 800, Portland, Oregon 97204-1912

Your vehicle LICENSE NUMBER _____ State _____

is parked _____

which is in violation of the City Parking Code.

Your vehicle will be subject to tow/citation _____
if it is not moved.  Your cooperation is appreciated.

Date _____ Parking Enforcement Officer M-_____

Exhibit 3
Decl. of Earle
Page 1 of 1

Case: 18-35673, 03/18/2019, ID: 11233327, DktEntry: 14-2, Page 48 of 92



# TOW

**CIRCUIT COURT OF THE STATE OF OREGON, FOR THE COUNTY OF MULTNOMAH**

CITY OF PORTLAND, ORDINANCE Nos. 172788, 179141

## ORDER TO TOW VEHICLE

**NOTICE TO TOWING COMPANY:**

License No. _____, State _____, Make _____ per:

☐ Warrant for unpaid parking citations

☐ Citation No. _____ Violation _____

Date _____ Officer No. M– _____

**NOTICE TO VEHICLE OWNER:**

If vehicle was TOWED for unpaid parking citations, please contact Circuit Court at 503-988-3235.

ER000063

Exhibit 4
Decl. of Earle
Page 1 of 1

ROBERT YAMACHIKA, Oregon State Bar ID Number 065560
Deputy City Attorney
Email: Rob.Yamachika@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendants City of Portland,*
*L. McHenry, and F. Earle*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **ANDREW GRIMM,** | **3:18-cv-183 MO** |
| **PLAINTIFF,** | |
| v. | **DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER AND AFFIRMATIVE DEFENSES** |
| **CITY OF PORTLAND, L. MCHENRY, F. EARLE, AND RETRIEVER TOWING** | |
| **DEFENDANTS.** | |

      For their answer to plaintiff's Complaint, defendants City of Portland, L. McHenry, and F. Earle, (hereafter "City Defendants") respond to plaintiff's allegations in correspondingly numbered paragraphs as follows:

**I.  NATURE OF CASE**

      1-3.    Paragraphs 1-3 set forth legal theories, conclusions or argument, no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 1-3.

**II.  PARTIES**

      4.    City Defendants admit paragraph 4.

Page  1  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
              AND AFFIRMATIVE DEFENSES

5.    City Defendants admit plaintiff has named four defendants.

    a.    City Defendants admit paragraph 5a.

    b.    City Defendants admit Lindsey McHenry is a natural person and is employed by the City as a parking code enforcement officer.  City Defendants deny any remaining allegations in paragraph 5b.

    c.    City Defendants admit Frank Earle is a natural person and is employed by the City as a parking code enforcement officer.  City Defendants deny any remaining allegations in paragraph 5c.

    d.    City Defendants admit Parking Enforcement Services *dba* Retriever Towing is a business entity incorporated in the State of Oregon.  City Defendants deny any remaining allegations in paragraph 5d.

## III.  JURISDICTION & VENUE

6-7.    City Defendants admit paragraphs 6-7.

8-9.    City Defendants admit that a substantial part of the events occurred in Portland, Oregon and that the Portland Division of the United States District Court District of Oregon is a proper venue for this case.  City Defendants deny any remaining allegations in paragraphs 8-9.

## IV.  STATEMENT OF FACTS

### A.  Plaintiff's Car is Registered with Portland's Mobile Parking App.[1]

10.    City Defendants admit that plaintiff's car is a 1999 Honda Accord with California license plate 6DNF990 as alleged in paragraph 10 and had expired registration tags dated "Jun 2017" when it was parked in the City.

/////

/////

---

[1] City Defendants include plaintiff's subsection headings to identify subsections in plaintiff's Complaint for convenience only.  To the extent that the headings themselves may be interpreted to constitute allegations, the City Defendants deny them.

Page  2  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
        AND AFFIRMATIVE DEFENSES

ER000065

11.    City Defendants deny that Parking Kitty is "Portland's mobile parking app[2]" and is without knowledge or complete information to admit or deny when plaintiff downloaded Parking Kitty to his iPhone and therefore denies those allegations in paragraph 11.

12.    City Defendants admit that Parking Kitty permits registered users to pay for parking remotely using their cellphones.  City Defendants deny any remaining allegations in paragraph 12.

13.    City Defendants deny paragraph 13.

14.    City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 14 and therefore denies them.

15.    City Defendants admit that as part of the registration process, Parking Kitty requests user's cellphone number.  City Defendants deny any remaining allegations in paragraph 15.

16.    City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 16 and therefore denies them.

**B.   Plaintiff's Car is Registered with KnowTow.**

17-19.    City Defendants are without knowledge or complete information to admit or deny the allegations in paragraphs 17-19 and therefore denies them.

20.    City Defendants denies paragraphs 20-21.

22.    City Defendants admit that plaintiff's car had KnowTow decals near its front and back license plates and that the decals display KnowTow's logo and states "You should know, *before* they tow" and knowtow.net.  City Defendants deny any remaining allegations in paragraph 22.

23.    City Defendants deny paragraph 23.

---

[2] Parking Kitty is a smart phone application made by PassportParking, Inc. that can be downloaded to a smart phone and can be used to pay parking fees in the City of Portland.

Page  3  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
            AND AFFIRMATIVE DEFENSES

**C.  Plaintiff Parked His Car in Downtown Portland**

24.    City Defendants admit paragraph 24.

25-26.  City Defendants admit that plaintiff used Parking Kitty to pay for the parking spot at 5:41 P.M. to 7:00 P.M. on December 14, 2017 and that the transaction number was #78395409.  City Defendants deny any remaining allegations in paragraphs 25-26.

27.    City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 27 and therefore denies them.

28.    City Defendants deny paragraph 28.

29.    City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 29 and therefore denies them.

30.    City Defendants admit paragraph 30.

31.    City Defendants are without knowledge or complete information to admit or deny what time plaintiff's car was towed and therefore denies.  City Defendants admit that plaintiff's car was unlawfully parked on Hall street from 0800 on December 15, 2017 until it was towed, any remaining allegations in paragraph 31 are denied.

32.    City Defendants admit paragraph 32.

**D.  Portland's Parking Citations Gave No Notice of a Tow**

33.    City Defendants admit that plaintiff's car was unlawfully parked and had expired registration tags dated "Jun 2017," and was issued six parking citations, four of which were issued for being unlawfully parked in a meter zone without payment of the parking meter fee or allowing his car to remain in a parking meter space longer than the 3-hour designated time limit and two of which were issued for failure to display current registration tags.

34.    City Defendants admit paragraph 34.

a.    City Defendants admit Officer McHenry put the citation on the exterior of the car's windshield.  City Defendants are without knowledge or complete information to admit or

Page  4  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
AND AFFIRMATIVE DEFENSES

deny the remaining allegations in paragraph 34a, and therefore denies them.

      b.     City Defendants admit paragraph 34b.

      c.     City Defendants admit paragraph 34c.

35.    City Defendants admit paragraph 35.

a.    City Defendants are without knowledge or complete information to admit or deny the allegation in paragraph 35a and therefore denies it.

      b.     City Defendants admit Officer Earle put the second citation on top of the first citation.  City Defendants are without knowledge or complete information to admit or deny the remaining allegations in paragraph 35b, and therefore denies them.

      c.     City Defendants admit paragraph 35c.

      d.     City Defendants admit paragraph 35d.

36.    City Defendants admit paragraph 36.

      a.     City Defendants are without knowledge or complete information to admit or deny the allegation in paragraph 36a and therefore denies it.

      b.     City Defendants admit Officer Earle put the third citation on top of the other citations.  City Defendants are without knowledge or complete information to admit or deny the remaining allegations in paragraph 36b, and therefore denies them.

      c.     City Defendants admit that the third citation itself does not mention a tow. City Defendants further admit that Officer Earle provided a separate red warning slip with the third citation and the citation states "CITE AND WARN."  The red warning slip had the word "WARNING" in large print on one side and on the other side it provided a warning and notice stating "Your vehicle will be subject to tow/citation if it is not moved.  Your cooperation is appreciated."  Officer Earle underlined the word "tow" and circled words "tow/citation."  City Defendants deny any remaining allegations in paragraph 36c.

/////

Page  5 –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
           AND AFFIRMATIVE DEFENSES

  d.  City Defendants deny the allegations in paragraph 36d and reallege the admissions in 36c above.

  37.  City Defendants admit paragraph 37.

    a.  City Defendants are without knowledge or complete information to admit or deny the allegation in paragraph 37a and therefore denies it.

    b.  City Defendants admit Officer Earle put the fourth citation on top of the other citations.  City Defendants are without knowledge or complete information to admit or deny the remaining allegations in paragraph 37b, and therefore denies them.

    c.  City Defendants admit that the fourth citation itself does not mention a tow.  City Defendants further admit that Officer Earle provided a separate red tow slip with the fourth citation and the citation states "PREV CI AND WRNED."  The red tow slip had the word "TOW" in large print on one side and an order to tow vehicle and underlying information on the other side.

    d.  City Defendants deny the allegations in paragraph 37d and reallege the admissions in 37c above.

  38.  City Defendants admit paragraph 38, constant with their prior answers above in paragraphs 34 through 37 and their subparts.

  39.  City Defendants deny paragraph 39, as previously answered in paragraphs 34 through 37 and their subparts.

  40.  City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 40 and therefore denies them.

**E. Defendants Towed Plaintiff's Car Without Notice**

  41.  City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 41 and therefore denies them.

  42.  City Defendants deny paragraph 42.

Page  6  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
     AND AFFIRMATIVE DEFENSES

43.      City Defendants admit a tow was requested and Retriever Towing was contacted to tow plaintiff's car, and denies any remaining allegations in paragraph 43.

44.      City Defendants admit paragraph 44.

45.      City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 45 and therefore denies them.

46.      City Defendants admit paragraph 46.

47.      City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 47 and therefore denies them.

48.      City Defendants admit paragraph 48.

49.      City Defendants deny paragraph 49.

**F.  When It Towed Plaintiff's Car, Portland Knew It Had Not Provided Notice of the Tow.**

50-51.  City Defendants deny paragraphs 50-51.

52.      City Defendants admit paragraph 52, and reallege their answer in paragraph 33.

53.      City Defendants admit paragraph 53, and reallege their answer in paragraph 38.

54.      City Defendants deny paragraph 54, and reallege their answer in paragraph 39.

55-57.  City Defendants are without knowledge or complete information to admit or deny the allegations in paragraph 55-57 and therefore deny them.

58.      City Defendants admit that each time Officer Earle issued a citation, he took photos of plaintiff's car, some of which depict prior citations.  City Defendants are without knowledge or complete information to admit or deny the any remaining allegations in paragraph 58 and therefore deny them.

59-62.  City Defendants deny paragraphs 59-62.

63.      City Defendants are without knowledge or complete information to admit or deny the allegations that the materials were unseen and therefore denies them.  City Defendants admit that aside from the six citations and red warning slip and red tow slip as answered in paragraphs

Page  7  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
           AND AFFIRMATIVE DEFENSES

36c and 37c no additional efforts were made before the tow to inform plaintiff of the tow and denies any remaining allegations in paragraph 63.

64-65.  City Defendants deny paragraphs 64-65.

**G.  Portland Easily Could Have Provided Immediate Notice of a Tow**

66.     Paragraph 66 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 66.

67.     Paragraph 67 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants answer as follows:

  a.     City Defendants admit paragraph 67a.

  b.     City Defendants admit paragraph 67b.

  c.     City Defendants admit paragraph 67c.

  d.     City Defendants admit paragraph 67d.

68.     Paragraph 68 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraph 68.

69-70.  Paragraphs 69-70 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 69-70.

71.     City Defendants admit it did not use the telephone, email, mobile parking app or internet to notify plaintiff that his car would be towed.  City Defendants are without knowledge or complete information to admit or deny the remaining allegations in paragraph 71 and therefore denies them.

72-77.  City Defendants deny paragraphs 72-74(a-d), 75(a-e), 76(a-d),77(a-d).

/////

Page  8  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
            AND AFFIRMATIVE DEFENSES

ER000071

78.    City Defendants deny paragraph 78.

    a.    City Defendants admit paragraph 78a.

    b-e.    City Defendants deny paragraphs 78(b-e).

79-80.  Paragraphs 79-80 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 79 and 80.  City Defendants admit paragraph 80a and 80b, and deny any other remaining allegations in paragraphs 80(c-k), except as already admitted and constant with their prior answers above in paragraphs 36 and 37 and their subparts.

81-87.  Paragraphs 81-87 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 81-87.

**G.  Portland Easily Notified Retriever Towing, But Chose Not to Notify Plaintiff.**

88-98.  City Defendants admit that a tow was requested on December 21, 2017 after previously providing a tow warning and notice of tow on the car and that Retriever Towing responded to the tow request and deny any remaining allegations in paragraphs 88-89.  Paragraphs 90-98 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 90-98.

**H.  Portland Easily Notified Retriever Towing, But Chose Not to Notify Plaintiff.**

99.    City Defendants are without knowledge or complete information to admit or deny the allegations in paragraphs 99(a-b) and therefore denies them.

100.    Paragraph 100 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations paragraph 100.

/////

Page  9  –  DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
    AND AFFIRMATIVE DEFENSES

101-111.     City Defendants are without knowledge or complete information to admit or deny the allegations in paragraphs 101-111 and therefore denies them.  Additionally, paragraphs 101-111 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary, City Defendants deny the allegations in paragraphs 101-111.

**I.   Defective Notice Is Portland's Policy**

112.     City Defendants admit that its parking enforcement officers acted in accordance with its towing policies as alleged in paragraph 112.  City Defendants are without knowledge or complete information to admit or deny the allegations with respect to Retriever Towing and therefore denies them.

113.     Paragraphs 113(a-d) set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 113(a-d).

114.     City Defendants admit that its parking enforcement officers, including Officer Earle acted in accordance with its towing policies and provided notice as already answered in paragraphs 36 and 37 and their subparts.  City Defendants are without knowledge or complete information to admit or deny the allegations with respect to Retriever Towing and therefore denies them.

115-116.     City Defendants admit that its parking enforcement officers, including Officer Earle acted in accordance with its towing policies and denies any remaining allegations in paragraphs 115-116.

117.     City Defendants admit paragraph 117.

118-126.     City Defendant admit the Portland City Code provisions cited by plaintiff state when vehicles may be towed without any prior notice and when notice is required and how such notice is given and speak for themselves.  Paragraphs 118-126 set forth legal theories,

Page  10 –     DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
AND AFFIRMATIVE DEFENSES

ER000073

conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the remaining allegations paragraphs 118-126.

127-128.       City Defendants admit paragraphs 127-128.

129.     Paragraph 129 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraph 129.

**J.    Retriever Towing Had No Basis to Believe that Notice of the Tow Was Provided**

130-135.       Paragraphs 130-135 are directed at defendant Retriever Towing and no response is necessary from City Defendants.  To the extent a response may be necessary, City Defendants deny the allegations in paragraphs 130-135.

**PLAINTIFF'S CAUSE OF ACTION**
**Violation of the Fourteenth Amendment's Due Process Clause**
**Plaintiff's Procedural Due Process Rights to Notice**
**[U.S. Const. amend. XIV § 1]**

**Claims 1-2: Portland's Violations of Plaintiff's Due Process Rights**

136.     City Defendants reallege and incorporate their responses in paragraphs 1-135.

137-141.       Paragraphs 137-141 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 137-141.

142.     City Defendants admit paragraph 142.

143-152.       Paragraphs 143-152 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 143-152.

153-154.       City Defendants deny paragraphs 153 and 154.

/////

/////

Page  11  –    DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
               AND AFFIRMATIVE DEFENSES

**Claims 3-4: Officers McHenry and Earle's Violations of Plaintiff's Due Process Rights**

155.    City Defendants reallege and incorporate their responses in paragraphs 1-135.

156.    Paragraph 156 sets forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraph 156.

157.    City Defendants admit Officer McHenry and Earle are employed by the City as a parking code enforcement officer and deny any remaining allegations in paragraph 157.

158-169.    Paragraphs 158-169 set forth legal theories, conclusions or argument, and no response is required.  To the extent a response may be necessary City Defendants deny the allegations in paragraphs 158-169.

170-171.    City Defendants deny paragraphs 170-171.

**Claim 5: Retriever Towing's Violation of Plaintiff's Due Process Rights**

172.    City Defendants reallege and incorporate their responses in paragraphs 1-135.

173-183.    Paragraphs 173-183 are directed at defendant Retriever Towing and no response is necessary from City Defendants.  To the extent a response may be necessary, City Defendants deny the allegations in paragraphs 173-183.

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

184.    Plaintiff has failed to state a claim against the City Defendants.

**SECOND AFFIRMATIVE DEFENSE**
**(Justification and Privilege)**

185.    The actions by City defendants, including Officer McHenry and Earle were lawful, justified and privileged as those actions were necessary to carry out their duties as a parking enforcement officers for the City.

/////

/////

Page  12  –    DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
        AND AFFIRMATIVE DEFENSES

## THIRD AFFIRMATIVE DEFENSE
### (Qualified Immunity)

186.    Officers McHenry and Earle are entitled to qualified immunity from liability because they acted in good faith and a reasonable parking enforcement officer would not have known that any of their actions would violate a clearly established constitutional or federally protected right of plaintiff.

## FOURTH AFFIRMATIVE DEFENSE
### (Discretionary Immunity)

187.    The acts or omissions that plaintiff claims to have constituted constitutional violations on the part of the City Defendants are discretionary functions or duties and the City Defendants are immune from liability.

## FIFTH AFFIRMATIVE DEFENSE
### (Attorney Fees – 42 U.S.C. § 1988)

188.    Plaintiff's claims are unreasonable, frivolous, meritless and vexatious. Defendants are entitled to their attorney fees under 42 U.S.C. § 1988

## SIXTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

189.    All or part of the harm alleged by plaintiff was a result of plaintiff's own actions or inactions or otherwise a result of his own failure to mitigate.

## SEVENTH AFFIRMATIVE DEFENSE
### (Negligence)

190.    Upon information and belief, to the extent that Plaintiff has suffered any damages, those damages are the result of the negligence or fault of plaintiff in one or more of the following particulars:

a.    Plaintiff failed to pay for parking fees when he parked his car;

b.    Plaintiff failed to return to his vehicle when he knew his car was illegally parked to move it;

Page  13 –    DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER AND AFFIRMATIVE DEFENSES

c.      Plaintiff allowed his car to be illegally parked for a week and did not return to it to see the six citations, tow warning and tow notice placed on the car.

## EIGHTH AFFIRMATIVE DEFENSE
### (Good Faith)

191.    Any citations and parking enforcement actions taken or any other conduct by City Defendants, was done in good faith based on reasonable grounds by City Defendants.

## NINTH AFFIRMATIVE DEFENSE
### (Failure to Exhaust Administrative Remedies)

192.    Plaintiff failed to exhaust his administrative remedies under the Portland City Code 16.30.410 by failing to request a hearing to contest the tow.

## TENTH AFFIRMATIVE DEFENSE
### (Reservation of Rights to Assert Additional Defenses)

193.    The City reserves the right to assert additional affirmative defenses which discovery or other investigation may reveal to be appropriate.

WHEREFORE, having fully answered plaintiff's Complaint, City Defendants ask for the following relief:

A.      That judgment be entered in favor of City Defendants and against plaintiff;

B.      That City Defendants be awarded their reasonable costs incurred herein; and

C.      That City Defendants be awarded such other relief as the Court deems just and equitable.

Dated:  February 21, 2018

Respectfully submitted,

*/s/ Robert Yamachika*
ROBERT YAMACHIKA, OSB # 065560
Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorneys for Defendants City of Portland, L. McHenry, and F. Earle*

Page  14 –     DEFENDANTS CITY OF PORTLAND, L. MCHENRY AND F. EARLE'S ANSWER
            AND AFFIRMATIVE DEFENSES

ER000077

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANTS CITY OF PORTLAND, L.

MCHENRY AND F. EARLE'S ANSWER AND AFFIRMATIVE DEFENSES on:

> Andrew Grimm
> 15287 Pepperwood Drive
> Omaha, NE 68154
> *Pro-Se Plaintiff*

on February 21, 2018, by causing a full, true and correct copy thereof, addressed to the last-

known address (or fax number) of said attorney, to be sent by the following method(s):

☒ by **mail** in a sealed envelope, with postage paid, and deposited with the U.S. Postal Service in Portland, Oregon.

☐ by **hand delivery.**

☐ by **email** pursuant to LR 5-2(b).

☐ by **facsimile transmission.**

☐ by **email.**

> */s/ Robert Yamachika*
> ROBERT YAMACHIKA, OSB #065560
> Deputy City Attorney
> Telephone: (503) 823-4047
> *Of Attorneys for Defendants City of Portland, L. McHenry, and F. Earle*

Page  1  –  CERTIFICATE OF SERVICE

Andrew Grimm
agrimm3@gmail.com
15287 Pepperwood Drive
Omaha, NE 68154
Tel: (650) 422-8035
Pro Se Plaintiff

FILED 29 JAN '18 15:53 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ANDREW GRIMM,
    Plaintiff,

v.

CITY OF PORTLAND, L. MCHENRY, F.
EARLE, AND RETRIEVER TOWING,
    Defendants.

Case No. 3:18-CV-183-MO

PLAINTIFF'S COMPLAINT

Plaintiff Andrew Grimm for his complaint against Defendants—the City of Portland, Officer L.

McHenry, Officer F. Earle, and Retriever Towing—alleges as follows:

## I. NATURE OF THE CASE

1. The U.S. Constitution requires government actors to provide notice that is reasonably calculated to inform interested parties of impending government action against their property interests. Notice is reasonably calculated if the government actors act as though they desire to actually inform the interested parties.

2. The City of Portland ("Portland") and its agents fell far short of this constitutional requirement when they towed Plaintiff's car knowing that they had not even attempted to notify Plaintiff of the tow. Portland had many options to provide direct, timely, and actual

PLAINTIFF'S COMPLAINT – 1

# 76531

notice to Plaintiff, but chose not to use any of these options. Portland's actions were neither reasonably calculated to notify Plaintiff of the tow nor what someone who desired to actually inform Plaintiff would have done.

3. Portland's failure to provide timely notice of the government's intention to tow Plaintiff's car is especially unjustifiable in an age of instantaneous communication: "As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice […]". <u>Taylor v. Yee</u>, 136 S. Ct. 929, 930 (2016) (Alito, J., concurring in denial of certiorari).

## II. PARTIES TO THE CASE

4. **Plaintiff.** Andrew Grimm is a natural person.

5. **Defendants.** There are four Defendants in this action:

    a. **City of Portland.** The City of Portland is a municipal governmental entity in the State of Oregon.

    b. **Officer L. McHenry.** Officer L. McHenry is a natural person and an agent of the City of Portland.

    c. **Officer F. Earle.** Officer F. Earle is a natural person and an agent of the City of Portland.

    d. **Retriever Towing.** Retriever Towing is a business entity incorporated in the State of Oregon and an agent of the City of Portland.

## III. JURISDICTION & VENUE

6. **Federal Question Jurisdiction.** This action arises under the U.S. Constitution, U.S. Const. amend. XIV § 1. This Court, therefore, has subject matter jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331.

7. **Personal Jurisdiction.** Under Federal Rule of Civil Procedure 4(k)(1)(A), this Court will have personal jurisdiction over Defendants upon proper service of them because they are subject to the general jurisdiction of Multnomah County Circuit Court. Cf. ORCP 4A(4), ORCP 4C.

8. **Venue.** A substantial part of the events giving rise to the claims in this case occurred in Oregon. Specifically, Defendants' unlawful failure to provide adequate notice of a tow occurred in Portland, Oregon. Therefore, this Court is a proper venue pursuant to 28 U.S.C. § 1391(b)(2).

9. **Divisional Venue.** A substantial part of the events or omissions giving rise to the claims in this case occurred in Portland, Oregon. Therefore, the Portland Division of this Court is the proper division to adjudicate this action. LR 3-2(b).

## IV. STATEMENT OF FACTS

### A. Plaintiff's Car Is Registered with Portland's Mobile Parking App.

10. Plaintiff's car is a 1999 Honda Accord with California license-plate number 6DNF990.

11. On October 25, 2017, Plaintiff downloaded Portland's mobile parking app, called Parking Kitty, to his iPhone.

12. Portland's mobile parking app permits registered users to pay for parking remotely using their cellphones.

---

PLAINTIFF'S COMPLAINT – 3

13. Portland's mobile parking app permits Portland to contact registered users about their parked cars via email and via their cellphones.

14. On October 25, 2017, Plaintiff registered his car with Portland's mobile parking app.

15. As part of the registration process for Portland's mobile parking app, Portland requested Plaintiff's cellphone number and his email address.

16. As part of the registration process for Portland's mobile parking app, Plaintiff provided his cellphone number and his email address to Portland.

**B. Plaintiff's Car Is Registered with KnowTow.**

17. On March 6, 2017, Plaintiff registered his car with KnowTow.

18. KnowTow is a free online service that allows governments to provide immediate and direct notice of a tow to a KnowTow user.

19. KnowTow automatically sends an immediate text, email and voicemail notification of a tow to the affected user once a government enters that user's license-plate number on KnowTow's website (knowtow.net).

20. Portland knows that by using KnowTow it can provide immediate and direct notice of a tow to any KnowTow user for free.

21. Portland also knows that vehicles with KnowTow decals are registered with KnowTow.

22. Plaintiff's car conspicuously displays KnowTow decals near its front and back license plates. These decals display KnowTow's logo, KnowTow's slogan ("You should know, *before* they tow"), and KnowTow's website (knowtow.net).

23. Portland knows it could provide Plaintiff immediate and direct notice of a tow using KnowTow.

PLAINTIFF'S COMPLAINT – 4

ER000082

**C. Plaintiff Parked His Car in Downtown Portland.**

24. On December 14, 2017, Plaintiff parked his car in a public parking spot on Southwest Hall Street in downtown Portland, Oregon.

25. When Plaintiff parked his car, Plaintiff used Portland's mobile parking app to pay for that parking spot from 5:41 P.M. to 7:00 P.M on December 14, 2017.

26. The transaction number of this payment is # 78395409.

27. Shortly before 7:00 P.M. on December 14, 2017, Portland sent a notification to Plaintiff on his iPhone via Portland's mobile parking app, notifying Plaintiff that his parking payment was about to expire.

28. At 7:00 P.M. on December 14, 2017, Plaintiff's time to legally park on Hall Street expired.

29. At 7:22 P.M. on December 14, 2017, Portland sent an email to Plaintiff's email address via its mobile parking app providing a receipt with details of the parking transaction.

30. Plaintiff did not refill the parking meter.

31. From 7:00 P.M. on December 14, 2017, until Plaintiff's car was towed by Portland at 9:24 A.M. on December 21, 2017, Plaintiff's vehicle was unlawfully parked on Hall Street.

32. During the time that Plaintiff's car was unlawfully parked on Hall Street, his car was not impeding traffic and did not create an emergency situation.

**D. Portland's Parking Citations Gave No Notice of a Tow.**

33. While Plaintiff's car was unlawfully parked, Portland issued four parking citations against Plaintiff's car for being parked in a metered zone without proper payment.

34. On December 15, 2017, at 8:54 A.M., Portland's Officer McHenry issued the first

    citation, # HA30383285, against Plaintiff's car for being parked without proper payment.

    a. Officer McHenry posted this citation on the exterior of Plaintiff's windshield,

       where it remained unseen by Plaintiff until after his car was towed.

    b. This first citation does not mention a tow.

    c. This first citation provided no notice of a tow.

35. On December 18, 2017, at 9:32 A.M., Portland's Officer Earle issued the second citation,

    # HA30925527, against Plaintiff's car for being parked without proper payment.

    a. Officer Earle saw that the first citation remained undisturbed on Plaintiff's

       windshield.

    b. Officer Earle posted the second citation on top of the first citation, where both

       remained unseen by Plaintiff until after his car was towed.

    c. This second citation does not mention a tow.

    d. This second citation provided no notice of a tow.

36. On December 19, 2017, at 8:43 A.M., Portland's Officer Earle issued the third citation,

    # HA30925545, against Plaintiff's car for being parked without proper payment.

    a. Officer Earle saw that the first and second citations remained undisturbed on

       Plaintiff's windshield.

    b. Officer Earle posted the third citation on top of the first and second citations,

       where all three remained unseen by Plaintiff until after his car was towed.

    c. This third citation does not mention a tow.

    d. This third citation provided no notice of a tow.

37. On December 21, 2017, at 8:35 A.M., Portland's Officer Earle issued the fourth citation, # HA30925607, against Plaintiff's car for being parked without proper payment.

    a. Officer Earle saw that the previous three citations remained undisturbed on Plaintiff's windshield.

    b. Officer Earle posted the fourth citation on top of the first, the second, and the third citations, where all four remained unseen by Plaintiff until after his car was towed.

    c. This fourth citation does not mention a tow.

    d. This fourth citation provided no notice of a tow.

38. None of these four citations mention a tow.

39. None of these four citations provide notice of a tow.

40. None of these four citations were seen by Plaintiff until after his car was towed.

**E. Defendants Towed Plaintiff's Car Without Notice.**

41. Sometime between 8:35 A.M. and 8:52 A.M. on December 21, 2017, Officer Earle ordered the tow of Plaintiff's car from Hall Street.

42. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow before ordering the tow. Nor did any other agent of Portland.

43. Officer Earle, or another of Portland's agents, contacted Retriever Towing and instructed Retriever Towing to tow and impound Plaintiff's car.

44. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow while Retriever Towing was en route to Hall Street. Nor did any other agent of Portland.

45. Retriever Towing arrived to Hall Street at 9:17 A.M. on December 21, 2017, and began the process of towing Plaintiff's car.

PLAINTIFF'S COMPLAINT – 7

46. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow while Retriever Towing was in the process of towing Plaintiff's car. Nor did any other agent of Portland.

47. At 9:24 A.M. on December 21, 2017, Retriever Towing drove away with Plaintiff's car.

48. Neither Portland nor Officer Earle made any attempt to contact Plaintiff about the tow during the remainder of December 21, 2017. Nor did any other agent of Portland.

49. Defendants towed Plaintiff's car without attempting to provide notice of the tow to Plaintiff.

**F. When It Towed Plaintiff's Car, Portland Knew It Had Not Provided Notice of the Tow.**

50. Portland towed Plaintiff's car knowing it had failed to provide Plaintiff notice of the tow.

51. Portland towed Plaintiff's car knowing that Plaintiff had received no notice of the tow.

52. Before Defendants towed Plaintiff's car, Portland's officers issued four citations against Plaintiff's car for being parked without proper payment.

53. None of these citations mention anything about the tow of Plaintiff's car.

54. None of these citations provided notice of the tow.

55. All materials left by Portland's officers on Plaintiff's windshield remained undisturbed until after Plaintiff's car was towed.

56. Plaintiff never saw any of the materials left on his windshield until after he retrieved his car from its impoundment.

57. Each time Officer Earle issued a citation, Officer Earle saw that the materials previously left on Plaintiff's windshield remained undisturbed.

58. Each time Officer Earle issued a citation, Officer Earle took a photo of the undisturbed materials on Plaintiff's windshield.

---

PLAINTIFF'S COMPLAINT – 8

ER000086

59. Each time Officer Earle issued a citation, Officer Earle knew that Plaintiff had not received any of the materials previously left on Plaintiff's windshield.

60. At the time Officer Earle ordered the tow, Portland and Officer Earle knew that Plaintiff had not received any of the materials that Portland left on Plaintiff's windshield.

61. At the time Officer Earle ordered the tow, Portland and its officers knew that Plaintiff had not received any notice of a tow.

62. At the time Officer Earle ordered the tow, Portland and its officers had not even attempted to provide notice of the tow to Plaintiff.

63. Aside from the unseen materials left on Plaintiff's windshield, no efforts were made before the tow to inform Plaintiff of any governmental action against his car.

64. Portland and its officers ordered Plaintiff's car towed knowing they had failed to provide notice.

65. Prior to December 22, 2017, the day after the tow, Defendants never attempted to provide notice of the tow to Plaintiff.

**G. Portland Easily Could Have Provided Immediate Notice of a Tow.**

66. Portland had many options to provide Plaintiff immediate notice of a tow.

67. Portland uses the following commonplace communication methods in the ordinary course of its business:

    a. Portland uses the telephone to conduct its business.

    b. Portland uses email to conduct its business.

    c. Portland uses a mobile parking app to conduct its business.

    d. Portland uses the internet to conduct its business.

68. These communication methods enable immediate communication.

PLAINTIFF'S COMPLAINT – 9

69. Portland regularly uses these communication methods to contact those it wants to contact.

70. Portland regularly uses these communication methods to convey information it wants to convey.

71. Despite regularly using these communication methods, Portland did not use any of them to notify Plaintiff of the tow. Neither did any other Defendant.

72. By using any of these communication methods, Defendants could have provided immediate notice of the tow.

73. Defendants chose not to use any of these communication methods to provide notice of the tow.

74. Portland could have used its own mobile parking app to provide Plaintiff immediate notice of the tow.

    a.  Portland knew Plaintiff's car was registered with Portland's mobile parking app.

    b.  Portland had previously contacted Plaintiff via Portland's mobile parking app about his parked car.

    c.  Portland could have provided Plaintiff immediate notice of a tow via Portland's mobile parking app.

    d.  Portland chose not to use its own mobile parking app to provide Plaintiff notice of the tow.

75. Portland could have emailed Plaintiff to provide immediate notice of the tow.

    a.  Portland requested Plaintiff's email address when Plaintiff registered for Portland's mobile parking app.

    b.  Portland knew Plaintiff's email address.

PLAINTIFF'S COMPLAINT – 10

    c.  Portland had previously contacted Plaintiff at his email address about his parked car.

    d.  Portland could have provided Plaintiff immediate notice of a tow by emailing him.

    e.  Portland chose not to email Plaintiff to provide notice of the tow.

76. Portland could have texted Plaintiff to provide immediate notice of the tow.

    a.  Portland requested Plaintiff's cellphone number when Plaintiff registered for Portland's mobile parking app.

    b.  Portland knew Plaintiff's cellphone number.

    c.  Portland could have texted Plaintiff to provide immediate notice of a tow.

    d.  Portland chose not to text Plaintiff to provide notice of the tow.

77. Portland could have called Plaintiff to provide immediate notice of the tow.

    a.  Portland requested Plaintiff's cellphone number when Plaintiff registered for Portland's mobile parking app.

    b.  Portland knew Plaintiff's cellphone number.

    c.  Portland could have called Plaintiff to provide immediate notice of a tow.

    d.  Portland chose not to call Plaintiff to provide notice of the tow.

78. Portland could have used KnowTow's website to provide Plaintiff immediate notice of the tow.

    a.  Each time Portland's officers issued Plaintiff a citation, the officer took at least one photo of a KnowTow decal on Plaintiff's car.

    b.  Portland knew Plaintiff's car was registered with KnowTow.

---

PLAINTIFF'S COMPLAINT – 11

    c.  Portland knew that it could use KnowTow's website to provide Plaintiff immediate notice of a tow.

    d.  Portland could have used KnowTow's website to provide immediate notice of a tow.

    e.  Portland chose not to use KnowTow's website to provide Plaintiff notice of the tow.

79. At any point, Defendants could have used any of the above communication methods to provide Plaintiff immediate notice of the tow.

80. Instead, Defendants repeatedly chose not to provide immediate notice of the tow when they easily could have.

    a.  Defendants did not attempt immediate notice when Officer McHenry issued the first citation for unpaid parking.

    b.  Defendants did not attempt immediate notice when Officer Earle issued the second citation for unpaid parking.

    c.  Defendants did not attempt immediate notice when Officer Earle issued the third citation for unpaid parking.

    d.  Defendants did not attempt immediate notice when Officer Earle issued the fourth citation for unpaid parking.

    e.  Defendants did not attempt immediate notice when Officer Earle ordered the tow.

    f.  Defendants did not attempt immediate notice while Retriever Towing was en route to Plaintiff's car.

    g.  Defendants did not attempt immediate notice while Retriever Towing was in the process of towing Plaintiff's car.

---

PLAINTIFF'S COMPLAINT – 12

h.  Defendants did not attempt immediate notice as Retriever Towing drove away
with Plaintiff's car.

i.  Defendants did not attempt immediate notice for the entire first day of their
impoundment of Plaintiff's car.

j.  At no point from December 15 to December 22, 2017, did Defendants attempt
immediate notice.

k.  In fact, Defendants never attempted immediate notice.

81. From December 15 until December 22, 2017, Defendants knew that none of their actions
notified Plaintiff of the tow.

82. At any time, Portland could have easily provided Plaintiff immediate notice of the tow.

83. Someone who desired to actually inform Plaintiff of the tow would have called, texted, or
emailed Plaintiff.

84. Someone who desired to actually inform Plaintiff of the tow would have used their own
mobile parking app to contact Plaintiff.

85. Someone who desired to actually inform Plaintiff of the tow would have used a free
online tow-notification service to contact Plaintiff.

86. Portland decided not to use any of these communication methods to inform Plaintiff of
the tow.

87. Portland did not act as though it desired to actually inform Plaintiff of the tow.

**G. Portland Easily Notified Retriever Towing, But Chose Not to Notify Plaintiff.**

88. On December 21, 2017, Portland initiated the tow of Plaintiff's car.

89. At that time, Portland informed Retriever Towing of its decision to tow Plaintiff's car.

90. Portland somehow contacted Retriever Towing about the tow.

---

PLAINTIFF'S COMPLAINT – 13

91. Portland acted as though it desired to actually inform Retriever Towing of the tow.

92. Portland, in fact, informed Retriever Towing of the tow.

93. Portland did not act as though it desired to actually inform Plaintiff of the tow.

94. Whatever method of communication Portland used to inform Retriever Towing of the tow, it could have used to inform Plaintiff of the tow.

95. Whatever method of communication Portland used to inform Retriever Towing of the tow, it did not use to inform Plaintiff of the tow.

96. Portland, in fact, failed to inform Plaintiff of the tow.

97. At the time of the tow, Portland knew it had not provided Plaintiff with notice of the tow.

98. Instead of attempting to inform Plaintiff of the tow using the method of communication Portland had used to inform Retriever Towing, Portland simply towed Plaintiff's car without any notice.

**H. Portland Only Attempted Notice After the Tow.**

99. During the six days from December 15 to December 21, 2017, including the entire first day that Plaintiff's car was impounded, Portland made no attempt to mail notice of the tow to Plaintiff.

   a. Portland waited until six days after issuance of the first citation before mailing a letter.

   b. Portland waited until after it had towed Plaintiff's car to mail a letter.

100. When it wanted to get in touch with Retriever Towing about the tow, Portland did not rely upon postal mail to inform Retriever Towing.

101. On December 22, 2017, the day *after* Defendants towed Plaintiff's car, Portland finally mailed a letter about the tow.

---

ER000092

102. Portland sent its letter to where Plaintiff was not.

    a.   Portland sent its letter to Plaintiff's address in Nebraska.

    b.   When Portland sent its letter to Nebraska, Plaintiff was in Oregon.

    c.   When Portland sent its letter to Nebraska, Plaintiff's car was impounded in Oregon.

    d.   When Portland sent its letter to Nebraska, Defendants knew Plaintiff's car was in Oregon, not Nebraska.

    e.   When Portland sent the letter to Nebraska, Defendants had reason to believe that Plaintiff was in Oregon, not Nebraska.

103. This letter did not arrive to Plaintiff's address in Nebraska until December 26, 2017, four days after it was sent and five days after the tow.

104. Portland's letter arrived to where Plaintiff was not.

    a.   When Portland's letter arrived in Nebraska, Plaintiff was still in Oregon.

    b.   When Portland's letter arrived in Nebraska, Plaintiff's car was still impounded in Oregon.

105. Plaintiff had his iPhone on his person at almost all times from December 15 to December 26, 2017.

106. Had Defendants used any of the methods of communication mentioned in lines 66-87 of this Complaint to provide Plaintiff notice of the tow, Plaintiff would have received notice immediately.

107. Instead, Portland mailed a letter, which took four days to arrive.

ER000093

108. Had Defendants used any of the methods of communication mentioned in lines 66-87 of this Complaint to provide Plaintiff notice of the tow, Plaintiff would have received notice on his iPhone regardless of where he was.

109. Instead, Portland mailed a letter, which was sent to where Plaintiff was not.

110. Defendants chose not to provide immediate notice that would be effective regardless of where Plaintiff was.

111. Had Defendants used any of the communication methods detailed in lines 66-87, notice would have been sent immediately and directly to the iPhone in Plaintiff's pocket.

**I. Defective Notice Is Portland's Policy.**

112. The actions of Portland's officers and Retriever Towing were in accordance with Portland's explicit towing policies.

113. Portland's policies do not contemplate attempting prior notice except by the posting of documents on a vehicle.

   a. It is Portland's policy to tow regardless of whether the posting of documents on a vehicle was reasonably calculated to notify in that instance.

   b. It is Portland's policy to tow even if the posting of documents on a vehicle fail to provide notice.

   c. It is Portland's policy to tow even if its agents know that the posting of documents failed to provide notice.

   d. Portland's policy is indifferent to whether notice is reasonably calculated in any particular circumstance.

114. Officer Earle and Retriever Towing acted according to Portland's towing policies, making no attempts at notice except to leave documents on Plaintiff's windshield.

---

PLAINTIFF'S COMPLAINT – 16

115. Officer Earle and Retriever Towing acted according to Portland's towing policies when they towed knowing that their posted documents had failed to provide notice.

116. Officer Earle and Retriever Towing acted according to Portland's towing policies when they towed Plaintiff's car without notice.

117. According to Portland's code, Portland may tow a vehicle without any prior notice. See Portland City Code ("PCC") 16.30.220 ("Towing Without Prior Notice").

118. According to Portland's code, Portland may tow a vehicle without any prior notice for being illegally parked in nearly any parking spot in the city. Cf. PCC 16.30.220(B).

119. According to Portland's code, attempting prior notice of a tow is rarely required. Cf. PCC 16.30.310; cf. also PCC 16.30.230 ("When Notice Required Before Towing") (repealed Nov. 13, 1998).

120. To the extent that Portland's policies contemplate any prior notice of a tow, it is only through the posting of documents on a vehicle. See PCC 16.30.225(A)-(C).

121. The only other method of notice contemplated by Portland's towing policies is postal mail sent *after* a tow. See PCC 16.30.225(D), 16.30.320.

122. Portland's official policy and custom is to tow without attempting notice via commonplace communication methods that Portland uses in the ordinary course of its business.

    a. Portland's code authorizes tows without use of telephones to attempt notice.

    b. Portland's code authorizes tows without use of email to attempt notice.

    c. Portland's code authorizes tows without use of Portland's own mobile parking app to attempt notice.

    d. Portland's code authorizes tows without use of the internet to attempt notice.

ER000095

123. Portland authorizes tows without use of these commonplace communication methods to attempt notice, even when no notice is otherwise provided.

124. Portland authorizes tows without use of these commonplace communication methods to attempt notice, even when such methods are easy, are cheap, and would provide immediate, actual notice of the tow to interested parties.

125. Portland's official policy and custom is to tow without attempting notice via KnowTow, even when no notice is otherwise provided.

126. Portland authorizes tows without use of KnowTow, even when KnowTow is easy, is free, and would provide immediate, actual notice of the tow to interested parties.

127. Portland's actions—and the actions of its agents—were in accordance with Portland's policies.

128. Portland's policies permit the tow of a vehicle without notice.

129. Portland's policies permit the tow of a vehicle without notice when Portland could easily provide immediate, actual notice.

**J. Retriever Towing Had No Basis to Believe that Notice of the Tow Was Provided.**

130. At the time Retriever Towing towed Plaintiff's car, no notice had been provided to Plaintiff.

131. At the time Retriever Towing towed Plaintiff's car, Retriever Towing did not observe any indicia that Plaintiff had been notified of the tow.

132. At the time Retriever Towing towed Plaintiff's car, Retriever Towing had no basis to believe that Plaintiff had been notified of the tow.

133. Retriever Towing made no inquiry with Portland or with Officer Earle to ensure that they had attempted to notify Plaintiff of the tow.

ER000096

134. Retriever Towing proceeded to tow and impound Plaintiff's car without any indication that Portland or Officer Earle had attempted to contact Plaintiff about the tow.

135. Due to Retriever Towing's impoundment, Plaintiff was not able to access his vehicle on Christmas Day.

## PLAINTIFF'S CAUSE OF ACTION
### Violation of the Fourteenth Amendment's Due Process Clause
#### Plaintiff's Procedural Due Process Rights to Notice
[U.S. Const. amend. XIV § 1]

**Claims 1-2: Portland's Violations of Plaintiff's Due Process Rights**

136. Plaintiff hereby repeats and realleges paragraphs 1-135.

137. Due process requires governments to attempt notice that is "reasonably calculated" to inform interested parties of an impending property deprivation. Jones v. Flowers, 547 U.S. 220, 226 (2006).

138. Portland towed and impounded Plaintiff's car.

139. Portland towed Plaintiff's car without providing any notice of the tow.

140. Portland towed Plaintiff's car knowing that Plaintiff had not received notice of the tow.

141. Portland only attempted notice of the tow *after* the tow, via postal mail.

142. Portland's actions complied with Portland's towing policies.

143. Portland's attempts at notice "must be tested with reference to the existence of 'feasible and customary' alternatives." Greene v. Lindsey, 456 U.S. 444, 454 (1982).

144. Portland could have easily provided Plaintiff immediate notice of the tow using commonplace communication technologies—telephone, email, text message—but did not.

---

PLAINTIFF'S COMPLAINT – 19

145. Portland could have easily provided Plaintiff immediate notice of the tow using Portland's own mobile parking app, but did not.

146. Portland could have easily provided Plaintiff immediate notice of the tow using KnowTow, a free online tow-notification service, but did not.

147. Portland's policy is to tow without using any of these communication methods to provide immediate notice.

148. Notice is reasonably calculated if the provider of notice has acted "as one desirous of actually informing" the intended recipients. Jones, 547 U.S. at 229.

149. Someone desirous of actually informing Plaintiff of the tow would not ignore communication methods that provide immediate, actual notice.

150. Portland ignored these communication methods.

151. Portland did not act as one desirous of actually informing Plaintiff of the tow.

152. Portland, therefore, did not provide notice reasonably calculated to inform Plaintiff.

153. **Claim 1:** Portland is liable under 42 U.S.C. § 1983 for towing Plaintiff's car without first providing notice when Portland could have easily provided immediate notice of the tow via phone, email, text message, or its own mobile parking app.

154. **Claim 2:** Portland is liable under 42 U.S.C. § 1983 for towing Plaintiff's car without first providing notice when Portland could have easily provided immediate notice of the tow via KnowTow.

**Claims 3-4: Officers McHenry and Earle's Violations of Plaintiff's Due Process Rights**

155. Plaintiff hereby repeats and realleges paragraphs 1-135.

---

ER000098

156. Due process requires government agents to attempt notice that is "reasonably calculated" to inform interested parties of government action against their property interests. Jones, 547 U.S. at 226.

157. Officers McHenry and Earle are agents of Portland.

158. Officers McHenry and Earle acted against Plaintiff's property interests when they cited and towed Plaintiff's car.

159. Officers McHenry and Earle did not attempt to provide notice of their actions except by posting materials on Plaintiff's car.

160. Officers McHenry and Earle cited and towed Plaintiff's car knowing that Plaintiff had not received notice.

161. Officers McHenry and Earle's attempts at notice "must be tested with reference to the existence of 'feasible and customary' alternatives." Greene, 456 U.S. at 454.

162. Officers McHenry and Earle could have easily provided Plaintiff immediate notice of their actions using commonplace communication technologies—telephone, email, text message—but did not.

163. Officers McHenry and Earle could have easily provided Plaintiff immediate notice of their actions using Portland's own mobile parking app, but did not.

164. Officers McHenry and Earle could have easily provided Plaintiff immediate notice of their actions using KnowTow, a free online tow-notification service, but did not.

165. Notice is reasonably calculated if the provider of notice has acted "as one desirous of actually informing" the intended recipients. Jones, 547 U.S. at 229.

166. Someone desirous of actually informing Plaintiff of their actions would not ignore communication methods that provide immediate, actual notice.

PLAINTIFF'S COMPLAINT – 21

ER000099

167. Officers McHenry and Earle ignored these communication methods.

168. Officers McHenry and Earle did not act as though they were desirous of actually informing Plaintiff of their actions.

169. Officers McHenry and Earle, therefore, did not provide notice reasonably calculated to inform Plaintiff.

170. **Claim 3:** Officer McHenry is liable under 42 U.S.C. § 1983 for citing Plaintiff's car without first providing notice when he easily could have.

171. **Claim 4:** Officer Earle is liable under 42 U.S.C. § 1983 for citing and towing Plaintiff's car without first providing notice when he easily could have.

**Claim 5: Retriever Towing's Violation of Plaintiff's Due Process Rights**

172. Plaintiff hereby repeats and realleges paragraphs 1-135.

173. Due process requires government agents to attempt notice that is "reasonably calculated" to inform interested parties of government action against their property interests. <u>Jones,</u> 547 U.S. at 226.

174. Retriever Towing is an agent of Portland.

175. Retriever Towing towed Plaintiff's car.

176. When it towed Plaintiff's car, Retriever Towing was acting under color of state law.

177. Retriever Towing never attempted to provide notice of the tow to Plaintiff.

178. Retriever Towing had no basis to believe that Portland had provided such notice.

179. Retriever Towing had no basis to believe that Plaintiff had received such notice.

180. Retriever Towing towed Plaintiff's car without notice.

ER000100

181. Retriever Towing towed Plaintiff's car when no party had attempted to provide notice of the tow.

182. Retriever Towing towed Plaintiff's car when Plaintiff had no notice.

183. **Claim 5:** Retriever Towing is liable under 42 U.S.C. § 1983 for towing Plaintiff's car without notice.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants as follows:

1. **Declaratory Relief:** That the Court

   a. Declare that Portland violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

   b. Declare that Officer McHenry violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

   c. Declare that Officer Earle violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

   d. Declare that Retriever Towing violated Plaintiff's right to notice under the Fourteenth Amendment's Due Process Clause.

   e. Declare that Portland City Code pertaining to notice of city-ordered tows is unconstitutional to the degree that it violates the Fourteenth Amendment's Due Process Clause.

   f. Declare that Plaintiff, as a KnowTow user, was entitled to receive notice before his car was towed.

      g.  Declare that notice of a tow via postal mail *after* a tow is unconstitutional where pre-towing notice is readily achievable.

2. **Money Damages and Costs:** That the Court

      a.  Award Plaintiff damages for violations of his constitutional rights.

      b.  Award Plaintiff the amount Plaintiff paid to Retriever Towing to regain possession of his vehicle.

      c.  Award Plaintiff the outstanding amount due for the citations issued by Officers McHenry and Earle.

      d.  Award Plaintiff full recovery of litigation costs.

3. **Injunctive Relief:** That the Court

      a.  Enjoin Portland from towing vehicles without first providing notice reasonably calculated to inform interested parties of the tow.

      b.  Order Portland to attempt notice via telephone, text message, email, its own mobile parking app, and/or KnowTow before towing a vehicle in a non-emergency situation where such methods of communication are readily accessible.

Respectfully submitted,

Dated: January 26, 2018

*Andrew Grimm*
Andrew Grimm
Pro Se Plaintiff

---

ER000102

APPEAL,PROSEPTY,TERMINATED

# U.S. District Court
## District of Oregon (Portland (3))
## CIVIL DOCKET FOR CASE #: 3:18−cv−00183−MO

Grimm v. City of Portland et al
Assigned to: Judge Michael W. Mosman
Case in other court: 9th Circuit Court of Appeals, 18−35388
                    9th Circuit Court of Appeals, 18−35673
Cause: 28:1983 Civil Rights

Date Filed: 01/29/2018
Date Terminated: 07/18/2018
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**Andrew Grimm**

represented by **Andrew Grimm**
15287 Pepperwood Drive
Omaha, NE 68154
Email: agrimm3@gmail.com
PRO SE

V.

**Defendant**

**City of Portland**

represented by **Robert T. Yamachika**
City Attorney's Office
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
503−823−4047
Fax: 503−823−3089
Email: Rob.Yamachika@portlandoregon.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**L. McHenry**

represented by **Robert T. Yamachika**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**F. Earle**

represented by **Robert T. Yamachika**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Retriever Towing**
*TERMINATED: 04/16/2018*

represented by **Matthew D. Lowe**
Jordan Ramis PC
PO Box 230669
Portland, OR 97281
503−598−7070
Fax: 503−598−7373
Email: matt.lowe@jordanramis.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2018 | 1 | Complaint. Filing fee in the amount of $400 collected. Receipt No. 76531. Jury Trial Requested: Yes. Filed by Andrew Grimm against City of Portland, F. Earle, L. McHenry, Retriever Towing (Attachments: # 1 Civil Cover Sheet). (joha) (Entered: 01/30/2018) |
| 01/29/2018 | 2 | Summons Issued as to City of Portland, F. Earle, L. McHenry, Retriever Towing. (joha) (Entered: 01/30/2018) |

| 01/30/2018 | 3 | Notice of Case Assignment to Judge Michael W. Mosman and Discovery and Pretrial Scheduling Order. **NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3−5.** Discovery is to be completed by 5/30/2018. Joint Alternate Dispute Resolution Report is due by 6/29/2018. Pretrial Order is due by 6/29/2018. Ordered by Judge Michael W. Mosman. (joha) (Entered: 01/30/2018) |
| --- | --- | --- |
| 01/30/2018 | 4 | Clerk's Notice of Mailing to Andrew Grimm regarding Notice 3 . (joha) (Entered: 01/30/2018) |
| 02/09/2018 | 5 | Return of Service Executed as to City of Portland served on 1/31/2018, answer due on 2/21/2018; F. Earle served on 1/31/2018, answer due on 2/21/2018; L. McHenry served on 1/31/2018, answer due on 2/21/2018. (Attachments: # 1 Summons Returned (McHenry), # 2 Summons Returned (Earle), # 3 Summons Returned (Retriever Towing)) (joha) (Entered: 02/13/2018) |
| 02/21/2018 | 6 | Answer to 1 Complaint . Filed by F. Earle, L. McHenry, City of Portland. (Yamachika, Robert) (Entered: 02/21/2018) |
| 02/21/2018 | 7 | Motion to Dismiss for Failure to State a Claim . Oral Argument requested. Filed by Retriever Towing. (Lowe, Matthew) (Entered: 02/21/2018) |
| 02/21/2018 | 8 | Corporate Disclosure Statement . Filed by Retriever Towing. (Lowe, Matthew) (Entered: 02/21/2018) |
| 02/23/2018 | 9 | Application for CM/ECF Registration as a Self−Represented Party. Filed by Andrew Grimm. (sss) (Entered: 02/23/2018) |
| 02/26/2018 | 10 | **ORDER:** GRANTING 9 Application for CM/ECF Registration as a Self−Represented Party (*CM/ECF Registered User*). Ordered by Judge Michael W. Mosman. (dls) (Entered: 02/26/2018) |
| 02/26/2018 | 11 | Notification of CM/ECF Account for Andrew Grimm (*Pro Se* Filer admission). Your login is: **agrimm**. Go to the CM/ECF login page to set your password. (ecp) (Entered: 02/26/2018) |
| 02/27/2018 | 12 | Fed. R. Civ. P. 26(a)(1) Agreement . Filed by Andrew Grimm. (Grimm, Andrew) (Entered: 02/27/2018) |
| 02/27/2018 | 13 | Unopposed Motion for Stay *of Discovery*. Filed by Andrew Grimm. (Attachments: # 1 Proposed Order) (Grimm, Andrew) (Entered: 02/27/2018) |
| 03/02/2018 | 14 | **ORDER:** GRANTING Plaintiff's Unopposed Motion for Stay of Discovery 13 . Discovery in this case is stayed until the Court's resolution of Defendant's Motion to Dismiss 7 . Ordered by Judge Michael W. Mosman. (kms) (Entered: 03/02/2018) |
| 03/07/2018 | 15 | Memorandum in Opposition to Motion to Dismiss for Failure to State a Claim 7 Oral Argument requested. Filed by Andrew Grimm. (Grimm, Andrew) (Entered: 03/07/2018) |
| 03/21/2018 | 16 | Reply *in Support of Defendant's* to Motion to Dismiss for Failure to State a Claim 7 Oral Argument requested. Filed by Retriever Towing. (Attachments: # 1 Exhibit Exhibit 1) (Lowe, Matthew) (Entered: 03/21/2018) |
| 04/16/2018 | 17 | **OPINION AND ORDER:** I GRANT Retriever Towing's Motion 7 , and DISMISS Mr. Grimm's claim with prejudice and without leave to amend. Signed on 4/16/18 by Judge Michael W. Mosman. (dls) Modified on 4/16/2018 (dls). (Entered: 04/16/2018) |
| 05/07/2018 | 18 | Notice of Appeal to the 9th Circuit from Order on Motion to Dismiss for Failure to State a Claim 17 Filing fee $505 collected; Agency Tracking ID 0979−5403757: . Filed by Andrew Grimm. (Attachments: # 1 Exhibit Opinion and Order Appealed From) (Grimm, Andrew) (Entered: 05/07/2018) |
| 05/09/2018 | | USCA Case Number and Notice confirming Docketing Record on Appeal re Notice of Appeal 18 . **Case Appealed to 9th Circuit Court of Appeals Case Number 18−35388** assigned. (jtj) (Entered: 05/09/2018) |
| 05/15/2018 | 19 | Motion for Summary Judgment . Filed by City of Portland, F. Earle, L. McHenry. (Yamachika, Robert) (Entered: 05/15/2018) |

| 05/15/2018 | 20 | Declaration of Frank Earle . Filed by City of Portland, F. Earle, L. McHenry. (Related document(s): Motion for Summary Judgment 19 .) (Attachments: # 1 Exhibit 1–4) (Yamachika, Robert) (Entered: 05/15/2018) |
| 05/15/2018 | 21 | Declaration of Josephine Vazquez . Filed by City of Portland, F. Earle, L. McHenry. (Related document(s): Motion for Summary Judgment 19 .) (Attachments: # 1 Exhibit 5–6) (Yamachika, Robert) (Entered: 05/15/2018) |
| 05/29/2018 | 22 | Response in Opposition *City of Portland's* to Motion for Summary Judgment 19 Oral Argument requested. Filed by Andrew Grimm. (Attachments: # 1 Declaration of Andrew Grimm in Opposition to MSJ with Exhibits) (Grimm, Andrew) (Entered: 05/29/2018) |
| 06/06/2018 | 23 | Reply to Motion for Summary Judgment 19 . Filed by City of Portland, F. Earle, L. McHenry. (Yamachika, Robert) (Entered: 06/06/2018) |
| 06/11/2018 | 24 | Sur–Reply to Motion for Summary Judgment 19 , Reply to Motion 23 Oral Argument requested. Filed by Andrew Grimm. (Attachments: # 1 Second Declaration of Andrew Grimm in Opposition to MSJ) (Grimm, Andrew) (Entered: 06/11/2018) |
| 06/25/2018 | 25 | Scheduling Order by Judge Michael W. Mosman regarding Motion for Summary Judgment 19 . Oral Argument is set for 7/17/2018 at 02:00PM in Portland Courtroom 16 before Judge Michael W. Mosman. Plaintiff may appear by phone and is to call the conference line at the time of the hearing. Ordered by Judge Michael W. Mosman. (kms) (Entered: 06/25/2018) |
| 07/17/2018 | 26 | **MINUTES of Proceedings:** Oral argument held. For the reasons stated on the record, Defendants' Motion for Summary Judgment 19 is GRANTED. Andrew Grimm, pro se present as counsel for plaintiff(s). Robert T. Yamachika present as counsel for defendant(s).(Court Reporter Bonita Shumway.)Judge Michael W. Mosman presiding. (dls) (Entered: 07/18/2018) |
| 07/18/2018 | 27 | JUDGMENT: As stated on the record 26 , I GRANT the remaining Defendants' Motion for Summary Judgment 19 . IT IS ORDERED AND ADJUDGED that this case is DISMISSED with prejudice. Signed on 7/18/18 by Judge Michael W. Mosman. (dls) (Entered: 07/18/2018) |
| 08/14/2018 | 28 | Notice of Appeal to the 9th Circuit from Order on motion for summary judgment,, Motion Hearing Held, 26 , Judgment 27 Filing fee $505 collected; Agency Tracking ID 0979–5517589: . Filed by Andrew Grimm. (Grimm, Andrew) (Entered: 08/14/2018) |
| 08/16/2018 | | USCA Case Number and Notice confirming Docketing Record on Appeal re Notice of Appeal 28 . **Case Appealed to 9th Circuit Court of Appeals Case Number 18–35673** assigned. (jtj) (Entered: 08/16/2018) |
| 08/20/2018 | 29 | Transcript Designation and Order Form for the hearing held on 07/17/2018 before Judge Mosman. Court Reporter: Bonita Shumway. regarding Notice of Appeal 28 . Filed by Andrew Grimm. Transcript is due by 9/19/2018. (Grimm, Andrew) (Entered: 08/20/2018) |
| 09/10/2018 | 30 | Order from USCA for the 9th Circuit, USCA # 18–35388, 18–35673 re Notice of Appeal 18 , Notice of Appeal 28 . Appeal Nos. 18–35388 and 18–35673 are consolidated. The court has received and reviewed appellant's response to this court's June 27, 2018 order to show cause in appeal No. 18–35388. The order to show cause is discharged. Appellant's motion to stay proceedings in appeal No. 18–35388 (Docket Entry No. 4) is denied as moot. The briefing schedule established on August 15, 2018, in appeal No. 18–35673, shall govern these consolidated appeals. (jtj) (Entered: 09/10/2018) |
| 09/11/2018 | 31 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Oral Argument held on 7/17/2018 before Chief Judge Michael W. Mosman, Court Reporter Bonita J. Shumway, telephone number 503–326–8188 or bonita_shumway@ord.uscourts.gov. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter before the deadline for Release of Transcript Restriction. Afterwards it may be obtained through the Court Reporter or PACER–See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 9/18/2018. Redaction Request due 10/2/2018. Redacted Transcript Deadline set for 10/12/2018. Release of Transcript |

| | | Restriction set for 12/10/2018. (Shumway, Bonita) (Entered: 09/11/2018) |

ER000106

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2019, I electronically filed the foregoing

EXCERPTS OF RECORD: VOLUME II with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit by using the appellate

CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Date: March 18, 2019                    Respectfully submitted,

                                        DIGITAL JUSTICE FOUNDATION

                                        */s/ Gregory Keenan*
                                        Gregory Keenan
                                        81 Stewart Street
                                        Floral Park, NY 11001
                                        (516) 633-2633
                                        gregory@digitaljusticefoundation.org

                                        *Attorney for Appellant Andrew Grimm*