**No. 18-35673**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ANDREW B. GRIMM,

Plaintiff-Appellant,

v.

CITY OF PORTLAND et al.,

Defendants-Appellees.

On Appeal from the United States District Court
For the Portland District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman

---

### CITY APPELLEES' ANSWERING BRIEF

---

On Appeal from the U.S. District Court for the District of Oregon
The Honorable Michael W. Mosman, Chief District Judge

Denis M. Vannier, OSB No. 044406
denis.vannier@portlandoregon.gov
Senior Deputy City Attorney
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR 97204

Attorneys for Appellees

**CORPORATE DISCLOSURE STATEMENT**

The City of Portland is a governmental party and is not required by FRAP

26.1 to file a corporate disclosure statement.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

STATUTORY AUTHORITIES ............................................................................ 1

ISSUES PRESENTED......................................................................................... 1

STATEMENT OF THE CASE.............................................................................. 2

SUMMARY OF ARGUMENT ............................................................................ 7

ARGUMENT ....................................................................................................... 9

    A.   Standard of Review ................................................................................. 10

    B.   The district court properly rejected Grimm's argument that the
          Constitution required "digital pre-towing notice" in addition
          to publication in the Portland City Code and paper notices
          affixed to Grimm's car. ............................................................................ 10

    C.   This court should decline Grimm's invitation to overrule its prior
          caselaw and hold instead that *Mullane*—not *Mathews v. Eldridge*—
          provides the appropriate due-process standard to analyze
          towing cases. ............................................................................................ 17

    D.   Even if this court were to overrule its prior caselaw and hold that
          *Mullane*, rather than *Mathews v. Eldridge*, provides the appropriate
          due-process standard to analyze towing cases, the outcome in this
          case would be the same. ............................................................................ 23

    E.   Grimm's remaining arguments have no merit. .......................................... 25

CONCLUSION ................................................................................................... 28

CERTIFICATE OF COMPLIANCE

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Los Angeles v. David*,
538 U.S. 715 (2003) ........................................................................22

*Clark v. City of Lakewood*,
259 F.3d 996 (9th Cir. 2001) ..........................................................10

*Clement v. City of Glendale*,
518 F.3d 1090 (9th Cir. 2008) ........................................... 11, 14, 17

*Dusenberry v. United States*,
534 U.S. 161 (2002) ......................................................... 19, 20, 21, 24

*Henderson v. City of Simi Valley*,
305 F.3d 1052 (9th Cir. 2002) ........................................................10

*In re Watts*,
298 F.3d 1077 (9th Cir. 2002) .................................................... 8, 18

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*,
285 F.3d 848 (9th Cir. 2002) ..........................................................10

*Kohler v. Presidio Int'l, Inc.*,
782 F.3d 1064 (9th Cir. 2015) ................................................ 8, 18, 22

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
584 F.3d 1232 (9th Cir. 2009) ................................................ passim

*Mathews v. Eldrige*,
424 U.S. 319 (1976) ................................................................ passim

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................ passim

iii

*Scofield v. City of Hillsborough*,
  862 F.2d 759 (9th Cir. 1988) ..................................................... 11, 12, 13, 18, 21

*The Mary*,
  9 Cranch 126, 3 L.Ed. 678 ................................................................... 24

*Yagman v. Garcetti*,
  852 F.3d 859 (9th Cir. 2017) ..................................................... 18, 22

**Rules**

Fed R App P 32(a)(1)-(7)................................................................. 29
Fed R App P 32(a)(7)(B) ............................................................... 29
Federal Rule of Evidence 201 .......................................................... 26
FRAP 26.1 ............................................................................... i

## CITY APPELLEES' ANSWERING BRIEF

_____

Defendants-appellees City of Portland ("the City"), L. McHenry, and F. Earle (collectively, "City appellees") accept the statement of jurisdiction of plaintiff-appellant Andrew Grimm ("Grimm"). City appellees submit their own statement of issues presented and statement of the case.

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the addendum to this brief.

## ISSUES PRESENTED

I.    Grimm parked his car without required payment and displaying expired registration tags on a public street for a week and, over the course of that week, the City placed a series of six citations and two warning placards on the car before eventually towing it. Did the City violate Grimm's due-process rights because it did not also provide "digital pre-towing notice" before towing his car?

II.   Should this court overrule its precedent holding that, under the due-process balancing test of *Mathews v. Eldridge*, publishing statutes authorizing vehicles to be towed under defined circumstances and placing citations on a car's windshield provides sufficient pre-tow notice when such notice is required?

1

## STATEMENT OF THE CASE

Grimm is an attorney admitted to practice in the State of Washington and a director of *KnowTow, Inc.*—a company that, at the time of this case, was marketing a service for "near-instantaneous notice of impending tows" to various municipalities. (ER 13, n. 1; SER 1-27). On December 4, 2017, *KnowTow,* through its president Frederick Grimm, sent an email with a letter attachment to the Portland City Attorney's Office, soliciting the City's business and explaining that *KnowTow* wished to integrate its service with the City's municipal towing practices. (SER 3-12). Ten days later, on December 14, 2017, *KnowTow* sent another email to the Mayor and City Attorney's Office, explaining that *KnowTow* believed that the City's "current practices for notifying vehicle owners of a tow are unconstitutional," and urging the City to use *KnowTow*'s services instead.[1] (SER 13-21).

That same day, December 14, *KnowTow* director Grimm parked his car (which bore several *KnowTow* advertising stickers stating, "you should know before they tow") on SW Hall Street in downtown Portland, in a metered parking zone. (ER 13, 83; SER 28, 35). Then, "using Portland's mobile parking app," he paid for slightly over an hour of parking—and abandoned the car for a week. (ER

---

[1] Shortly thereafter, the City informed *KnowTow* that it did not wish to use its services. (SER 22).

13). He "never refilled the meter or moved the car," and the car displayed expired registration tags. (ER 13; SER 28).

"Over the next seven days, Defendants Officers Earle and McHenry issued Mr. Grimm four parking citations, placing each citation on the exterior of his car's windshield."[2] (ER 13-14, 83-85). Officer Earle also issued two citations for displaying expired registration tags.[3] (SER 28-29).



(SER 44).

When Officer Earle issued the third parking citation on December 19—five days after Grimm had abandoned the car—he also affixed a separate red notice stating "WARNING" in large print on one side, with the reverse stating, "Your vehicle will be subject to tow/citation if it is not moved. Your cooperation is appreciated."

---

[2] Those parking citations were numbered HA30383285, HA30925527, HA30925545, and HA30925607 respectively. (ER 84-85).

[3] Those expired-tag citations were numbered HA3038326 and HA30925526 respectively. (SER 28-29).

(SER 29, 30, 46). The officer circled the words "tow/citation" and underlined the word "tow" on the warning. (SER 29). A copy of the type of warning slip used was introduced as evidence below:



(SER 30, 46).

Then, two days later, when issuing the fourth parking citation, Officer Earle affixed a large, red "TOW" notice to the windshield of Grimm's car:



4

(SER 45). The reverse side of that notice contained an order to tow the car and underlying information:



(SER 29- 30, 47). Officer Earle then contacted Retriever Towing to tow and impound the car. (ER 14). Retriever towing, a company that was also named as a defendant below, "promptly did so." (ER 14).

A month later, Grimm filed the underlying civil-rights lawsuit against the City, officers Earle and McHenry, and Retriever Towing, claiming that those defendants had "violated his right to due process because he did not receive adequate notice" before his car was towed. (ER 14, 79-102). Notably, Grimm did "not dispute that he unlawfully parked his car or that Officers McHenry and Earle cited him for parking unlawfully." (ER 16). Rather, he argued that the City was constitutionally required to give him "better notice" that his car might be towed "by emailing, calling, or texting him … before Retriever Towing towed his

vehicle" by using a service like *KnowTow*. (ER 16). His complaint thus alleged in part:

17. On March 6, 2017, Plaintiff registered his car with KnowTow.

18. KnowTow is a free online service that allows governments to provide immediate and direct notice of a tow to a KnowTow user.

19. KnowTow automatically sends an immediate text, email and voicemail notification of a tow to the affected user once a government enters that user's license-plate number on KnowTow's website (knowtow.net).

20. Portland knows that by using KnowTow it can provide immediate and direct notice of tow to any KnowTow user for free.

21. Portland also knows that vehicles with KnowTow decals are registered with KnowTow.

22. Plaintiff's car conspicuously displayed KnowTow decals near its front and back license plates. Those decals display KnowTow's logo, KnowTow's slogan ("You should know *before* they tow"), and KnowTow's website (knowtow.net).

23. Portland knows it could provide Plaintiff immediate and direct notice of tow using KnowTow.

(ER 82) (emphasis in original). The district court granted Retriever Towing's motion to dismiss and subsequently granted summary judgment to the City and

officers Earle and McHenry. (ER 1-17). Grimm now appeals the grant of summary

judgment as to the City only.[4] (*See* ER 18) (notice of appeal).

## SUMMARY OF ARGUMENT

Grimm parked his car on a City street in a metered parking zone, paid for

slightly over one hour of parking, and left his car in that location for a week.

Grimm did not pay for additional parking or move it, and his car displayed expired

registration tags. Over the course of a week, City officers issued four citations for

unlawful parking, two citations for displaying expired registration tags, a warning

that the car was subject to tow if not moved, and eventually an order to tow the car.

Those citations and warnings were placed on the windshield of Grimm's car.

Grimm now argues that the City's notice was constitutionally defective and

violated due process. More specifically, he contends that "advances in technology"

mean that the City was constitutionally required to send him "digital pre-towing

notice" before it could tow his car. Grimm asks this court to overrule its caselaw

holding that, in some cases, no pre-towing notice other than publication of the

relevant statutes is required—and that where further pre-towing notice is required,

a citation placed under a car's windshield will satisfy due process. Grimm argues

that this court's precedent incorrectly analyzed issues related to notice of tows

---

[4] Grimm conceded below that officers Earle and McHenry were entitled to
qualified immunity, (*See* Reply in Support of Motion for Summary Judgment, p. 1)
(Dkt. 23) (noting that fact), and he does not challenge that determination on appeal.

7

under the balancing test of *Mathews v. Eldrige*, 424 U.S. 319 (1976), rather than under the "reasonable notice" standard of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). This court should reject that argument, for numerous reasons.

First, this court's precedent stands for the proposition that, where a car displays expired registration, no pre-towing notice other than publication of the relevant statutes is required—and that, where further pre-towing notice is required, a citation placed under a car's windshield will satisfy due process. Here, over the course of a week, the City issued four citations for unlawful parking, two citations for displaying expired registration tags, a warning that the car was subject to tow if not moved, and eventually an order to tow the car, which were placed on the windshield of Grimm's car. The City complied with due process under this court's caselaw, and Grimm does not show otherwise.

Moreover, under the principle of *stare decisis*, this court "will not overrule the decision of a prior panel of our court absent an *en banc* proceeding, or a demonstrable change in the underlying law." *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1070 (9th Cir. 2015) (citing *In re Watts*, 298 F.3d 1077, 1083–84 (9th Cir. 2002)). Here, Grimm does not point to any "demonstrable change in the underlying law" that would justify jettisoning decades of this court's due-process precedent in towing cases. This court's application of the *Mathews v. Eldridge*

8

due-process standard to towing cases is consistent with Supreme Court precedent and other decisions from this court, and Grimm does not demonstrate otherwise.

In any event, even if this court were to overrule its precedent and apply the *Mullane* standard to this case, as Grimm requests, the result would be the same: the City's notice procedures complied with due process, and Grimm cannot show otherwise.

For those reasons, the district court properly granted summary judgment to the City and rejected Grimm's argument that due process required the City to give him "digital pre-towing notice" before it could tow his car. This court should therefore affirm.

## ARGUMENT

Grimm contends that the district court incorrectly granted summary judgment to the City. He concedes that "the only claim [he] raised was a procedural due process claim asserting that the government had made inadequate attempts at notice" before towing his car. (App. Br. 20). Grimm argues, however, that the text of the Portland City Code and the numerous citations and warnings posted on his car over the course of a weeks were constitutionally inadequate to provide notice, despite caselaw holding otherwise, because of "advances in technology." (App. Br. 2-3). Grimm contends that the Constitution now requires "digital pre-towing notice" by using software that would allow the City "to send

instant app notifications directly to drivers" to notify them of impending tows. (App. Br. 31-32, 42-54). The trial court correctly rejected those arguments, and this court should affirm.

## A. Standard of Review

This court "review[s] a district court's grant or denial of a motion for summary judgment *de novo.*" *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055 (9th Cir. 2002). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the district court correctly applied the relevant law. *Clark v. City of Lakewood*, 259 F.3d 996, 1004 (9th Cir. 2001). This court "may affirm a summary judgment on any ground finding support in the record, whether or not relied upon by the trial court." *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002).

## B. The district court properly rejected Grimm's argument that the Constitution required "digital pre-towing notice" in addition to publication in the Portland City Code and paper notices affixed to Grimm's car.

The district court properly rejected Grimm's contention that, in light of "advances in technology," the Due Process Clause required the City to provide him with "digital pre-towing notice" before it could tow his illegally parked car displaying expired registration tags. (App. Br. 2-3, 31-32, 42-54).

As the district court noted, "Grimm does not dispute that he unlawfully parked his car or that Officers McHenry and Earle cited him for parking unlawfully." (ER 16). There was also no dispute that, under the Portland City Code, the City "is authorized to two cars that are unlawfully parked—and that "the code was enacted, published, and provided [members of the public] a reasonable opportunity to familiarize themselves with the general requirements imposed and to comply with those requirements." (ER 16). The same is true of the Portland City Code provisions making it unlawful not to display current registration tags. (*See* Portland, Or. Code §§ 16.20.120(L); 16.30.210 (provided in Addendum to the present brief). Finally, there was no dispute that, over the course of a week, Officers Earle and McHenry issued numerous citations and "plac[ed] each citation on the exterior of [Grimm's] car windshield." (ER 14).

As the district court further explained, Grimm's notice claim is readily disposed of under this court's caselaw—in particular *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988), *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), and *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232 (9th Cir. 2009). (*See* ER 14-16). Those cases stand for the proposition that a vehicle parked illegally or that does not display current registration tags may properly be towed under the circumstances in this case—indeed, the pre-towing

11

notice afforded Grimm in this case exceeded the constitutional minimum required by the Due Process Clause.

Thus, in *Scofield*, this court held that "due process does not require a pre-towing notice be given to the owner of a vehicle who has been unregistered for more than one year from the date on which it is found parked on a public street before the car can be towed…." 835 F.2d at 764. This court reached that conclusion after "balanc[ing] the competing government and private interests" under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Scofield*, 862 F.2d at 762. As this court explained,

> By towing unregistered vehicles, the government removes these automobiles from the public streets, encourages owners to maintain automobile registration, and deters owners from violating state registration laws. If notice had to be given before a car with a year-old registration could be towed, it is likely the car would simply be driven away. This would not advance the governmental interest of getting the car registered. On the other hand, giving a pre-towing notice to the owner of an apparently abandoned vehicle encourages removal of the car from its place of repose, which is the governmental interest such a notice seeks to advance.

*Scofield*, 862 F.2d at 763-64.

Here, the undisputed evidence shows that Grimm's car displayed expired registration tags.[5] (*See* SER 8). There is also no dispute that the Portland City Code

---

[5] In his brief, Grimm repeatedly asserts that his "car was registered at the time it was towed." (*See, e.g.,* App. Br. 51). But that assertion is misleading. Before the district court, Grimm argued that he had renewed his car's registration—but *conceded* that "the registration stickers on Plaintiff's car had not yet been updated"

makes it "unlawful to park or stop a vehicle [on City streets] whose registration has expired … or fails to display current registration." Portland, Or. Code § 16.20.120(L). Nor is there any dispute that the Portland City Code provides that vehicles parked in violation of that provision may be towed. *See* Portland, Or. Code § 16.30.210 (listing circumstances under which a vehicle may be towed). Under *Scofield*, therefore, the City could have towed Grimm's car without being required to provide him any pre-towing notice aside from publication of the authorizing statutes themselves. But that is not what happened here—on the contrary, the City provided extensive pre-towing notice. Over the course of a week, the City placed a total of six citations, plus a "WARNING" placard, plus a "TOW" placard, on Grimm's windshield. That extensive pre-towing notice far exceeds what was required by due process as held in *Scofield*, and Grimm cannot show otherwise. For that reason alone, this court should affirm the judgment of the district court.

Furthermore, regardless of whether the City was authorized to tow Grimm's car under *Scofield* simply for displaying expired registration tags, there is no

---

at the time it was towed. (Plaintiff's Opposition to Retriever Towing's Rule 12(b)(6) Motion, p. 29 n. 11) (Dkt. No. 15). Even assuming, for the sake of argument, that Grimm's registration with the California DMV was current, there is no dispute that the tags on his vehicle were expired by approximately six months at the time of the tow. (*See* SER 28). And there is no dispute that the Portland City Code allow a vehicle to be towed if it "fails to display current registration." Portland, Or. Code §§ 16.20.120(L); 16.30.210.

dispute in this case that Grimm was also parked illegally for approximately one week before his car was towed. (*See* ER 83) (conceding as much). This court has previously held, in another towing case, that a government entity generally provides the requisite level of pre-towing notice "simply by enacting the statute, publishing it, and, to the extent to statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *Lone Star*, 584 F.3d at 1237 (quotation and citation omitted). Here, as the district court properly noted, there is no dispute that the City Code provisions making the parking unlawful and authorizing the tow were "enacted, published, and provided [Grimm] a reasonable opportunity to familiarize [himself] with the general requirements imposed and to comply with those requirements." (ER 16). For that reason alone, "the City's code provided Mr. Grimm the requisite level of notice to satisfy due process." (ER 16).

Moreover, to the extent any further pre-towing notice is required, "A ticket can also serve as notice of the illegality and the warning that the car will be towed if not moved…." *Clement*, 518 F.3d at 1094-95 (further noting that, where due process requires pre-tow notice, such notice can be given "in the form of a ticket placed on the windshield"). Here, again, the City placed a total of six citations, plus a "WARNING" placard, plus a "TOW" placard, on Grimm's windshield over

the course of a week. Grimm also admitted below that he had been notified that his parking payment had expired and that he was parked illegally during that time. (ER 83). The City therefore provided ample pre-tow notice to Grimm, and the district court properly rejected his argument that Due Process further required the City to provide "digital pre-towing notice" using the kind of product that Grimm's company markets.

Finally, while not directly dispositive of Grimm's arguments in this case, it is worth noting that this court has cautioned about allowing certain plaintiffs "to game the system" by imposing excessive pre-towing requirements on government entities. *Lone Star*, 584 F.3d at 1239. In *Lone Star*, for example, the plaintiff routinely parked trailers bearing its advertisements "for extended periods on residential streets" in violation of the municipal code. *Id*. at 1234. The city "routinely towed [those] vehicles," and records showed that Lone Star knew its trailers were parked illegally and subject to tow. *Id*. at 1234, 1237. Lone Star nevertheless sued, arguing that the city's towing practices violated due process because the city did not provide individualized pre-tow notice each time it towed one of the plaintiff's trailers. *Id*. at 1237-38. This court rejected that argument.

In doing so, this court held that *Mathews v. Eldridge* provides the appropriate test for what pre-tow procedures are required. *Id*. at 1238. Applying

that test, this court held that Lone Star's behavior showed an attempt "to game the system" by requiring excessive pre-tow notice from the city:

> Lone Star suffers no "anxiety" when it discovers one of its trailers has disappeared from its parking place. When a trailer disappears, Lone Star knows that it has been towed. Nor are Lone Star's costs of reacquiring possession of impounded trailers of concern. Lone Star, despite knowing its trailers are subject to towing without individualized notice, nonetheless continues to violate the ban…. Were violating the ordinance unprofitable, we presume that Lone Star would stop violating it.
>
> * * * * *
>
> [W]ere the City required to provide advance notice each time it towed one of Lone Star's trailers, Lone Star would have a strong interest in monitoring its many trailers and moving only those on which notice has been posted, leaving the others parked until an officer happened to spot them. Allowing Lone Star to game the system this way would obviously impose a significant burden on the City's interests in enforcing [its ordinance].

*Id*. at 1238-39. For those reasons, this court held that the due process balancing test of *Mathews v. Eldridge* did not require the city to provide "additional, individualized notices" before towing each of Lone Star's trailers. *Id*. at 1239.

Similarly, in this case, the record shows that Grimm is a director of a company that has unsuccessfully tried to market the *KnowTow* app to the City—an app that purports to provide the kind of information he now argues the Constitution requires—that he is an attorney, and that he knew he was parked unlawfully for many days. His complaint thus alleged in part:

16

27.    Shortly before 7:00 P.M. on December 14, 2017, Portland sent a notification to Plaintiff on his iPhone via Portland's mobile app, notifying Plaintiff that his parking payment was about to expire.

28.    At 7:00 P.M. on December 14, 2017, Plaintiff's time to legally park on Hall Street expired.

\* \* \* \* \*

31.    From 7:00 P.M. on December 14, 2017, until Plaintiff's car was towed … on December 21, 2017, Plaintiff's vehicle was unlawfully parked on Hall Street.

(ER 83). The only reasonable inference that can be drawn from the record in this case is that Grimm knew his car would eventually be towed; indeed, that he *wanted* his car to be towed. As in *Lone Star*, this court should reject Grimm's attempt to "game the system" by creating new constitutional requirements for pre-tow notices in a case such as this.

In any event, regardless of whether Grimm intentionally manufactured the underlying lawsuit for marketing purposes, this court has repeatedly held that publishing a statute authorizing a tow and placing a citation on an illegally parked vehicle provide sufficient pre-tow notice in a case such as this. The trial court properly rejected Grimm's arguments to the contrary, and this court should affirm.

17

**C.    This court should decline Grimm's invitation to overrule its prior caselaw and hold instead that *Mullane*—not *Mathews v. Eldridge*— provides the appropriate due-process standard to analyze towing cases.**

All of this court's cases analyzing due-process claims arising from the towing of vehicles have relied, ultimately, on the due-process balancing test of *Mathews v. Eldridge*. *See, e.g., Scofield*, 862 F.2d at 762 (citing *Mathews*); *Clement*, 518 F.3d at 1094 (same); *Lone Star*, 584 F.3d at 1238 ("In evaluating whether pre-towing notice is constitutionally required …, we are guided by the context-specific balancing test set forth in *Mathews v. Eldridge*"); *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) ("once this court has concluded a protected interest is at stake, it must apply the three-part balancing test established in *Mathews v. Eldridge*"). Grimm now argues that those cases were wrongly decided, and that the appropriate due-process test should instead have been the "reasonableness under the circumstances" standard stated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). (App. Br. 19-30). This court should reject those arguments for numerous, independently sufficient reasons.

First, under the principle of *stare decisis*, this court "will not overrule the decision of a prior panel of our court absent an *en banc* proceeding, or a demonstrable change in the underlying law." *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1070 (9th Cir. 2015) (citing *In re Watts*, 298 F.3d 1077, 1083–84 (9th Cir. 2002)). Here, Grimm does not point to any "demonstrable change in the

underlying law" that would justify jettisoning decades of this court's due-process precedent in towing cases. For that reason alone, this court should decline his invitation to do so.

Moreover, even if this court were inclined to revisit that issue, Grimm does not demonstrate that *Mathews v. Eldridge* is the wrong standard to apply in towing cases. The *Mullane* case that Grimm relies on here was a 1950 decision of the Supreme Court that held—unsurprisingly—that when notice is constitutionally required, the means used to achieve notice must be reasonable: "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. Then, more than a decade after *Mullane*, the Court issued its decision in *Mathews v. Eldridge*, holding the following:

> [D]ue process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest though the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

The Supreme Court briefly revisited both those decisions decades later in *Dusenbery v. United States*, 534 U.S. 161 (2002). In that case, the Court applied

the *Mullane* "reasonable notice" standard, rather than the *Mathews* balancing test, to the issue of notice in a civil-forfeiture case:

> We think *Mullane* supplies the appropriate analytical framework. The *Mathews* balancing test was first conceived in the context of a due process challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits. Although we have since invoked *Mathews* to evaluate due process claims in other contexts, … we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims. Since *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice…. We see no reason to depart from this well-settled practice.

*Dusenberry*, 534 U.S. at 167-68 (citations omitted).

In his brief, Grimm relies on *Dusenberry* for the proposition that *Mathews v. Eldridge* was the wrong standard to apply in towing cases. (*See* App. Br. 22-23, 26-30) (making that argument). But *Dusenberry* was not a towing case, nor did it overrule *Mathews* or otherwise suggest that it is the wrong test to apply to towing cases. Moreover, *Dusenberry* does not hold that due-process claims related to notice must always be analyzed under *Mullane* rather than *Mathews*.

Rather, *Dusenberry* was a fairly special case, involving the adequacy of notice of forfeiture proceedings for property seized pursuant to a search warrant while Dusenberry was in prison. 534 U.S. at 163. Because Dusenberry was in prison when his property was seized, there was no risk at the time that he could have removed or concealed that property if given notice. The Court held that the *Mullane* standard should be used to assess the adequacy of the notice of the right to

20

contest the forfeiture of his property that had been provided to Dusenberry—and the Court eventually held that the notice had been adequate under that standard. *Dusenberry*, 534 U.S. at 168, 173. Notably all of the cases the Court cited in support of the application of *Mullane* to that situation similarly involved cases in which the property owners would have no chance of removing or hiding the subject property or interest, or no opportunity to avoid the consequences of their unlawful activities. *See Dusenberry*, 534 U.S. at 168 (listing cases applying the *Mullane* standard).

By contrast, as this court has repeatedly noted, unlike real property or intangible property interests, a car parked illegally or displaying expired registration tags is eminently moveable—and the owner of such a vehicle has the ability to avoid the consequences of that unlawfulness by simply moving the vehicle. *See, e.g., Scofield*, 862 F.2d at 764 (noting that, if pre-towing notice were required for cars with expired registrations, "it is likely that the car would simply be driven away. That would not advance the governmental interest in getting the car registered"); *Lone Star*, 584 F.3d at 1238-39 ("were the City required to provide advance notice each time it towed one of Lone Star's trailers, Lone Star would have a strong interest in … moving only those on which notice has been posted").

Indeed, since *Dusenberry*, the Supreme Court has continued to apply the *Mathews* test to other due-process cases—including a towing case. *See City of Los Angeles v. David*, 538 U.S. 715, 716-17 (2003) (applying *Mathews* balancing test to reject due-process challenge to city's post-tow procedures). And in *Yagman*, a post-*Dusenberry* decision issued in 2017, this court reaffirmed in a towing case that "it must apply the three-part balancing test established in *Mathews v. Eldridge*" to assess the "adequacy of pre- and post-deprivation procedures." *Yagman*, 852 F.3d at 864. In that case, this court expressly rejected the plaintiff's argument that the *Mathews* test was "inapplicable because it tolerates some exceptions to the general rule requiring predeprivation notice and hearing, but only in exceptional situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* (citations and internal quotation marks omitted). This court held instead: "Properly framed, the issue is not whether predeprivation notice and a full, formal hearing are required; it is whether the City's procedures as a whole are constitutionally adequate under the circumstances—a determination that requires application of the *Mathew*s test." *Id.* at 865.

In sum, this court has consistently applied the *Mathews v. Eldridge* test to assess the adequacy of pre-towing procedures, it has continued to do so in the 17 years since *Dusenberry* was decided, and nothing in *Dusenberry* is inconsistent

22

with this court's approach. Grimm does not point to any "demonstrable change in the underlying law" that should lead this court to overrule its prior caselaw, and this court should therefore decline to do so. *See Kohler*, 782 F.3d at 1070 ("we will not overrule the decision of a prior panel of our court absent an *en banc* proceeding, or a demonstrable change in the underlying law.") Because the district court properly applied this court's binding precedent, this court should affirm.

**D.  Even if this court were to overrule its prior caselaw and hold that *Mullane*, rather than *Mathews v. Eldridge*, provides the appropriate due-process standard to analyze towing cases, the outcome in this case would be the same.**

In any event, even if this court were to overrule its prior caselaw and adopt the *Mullane* "reasonableness" standard to towing cases as Grimm argues, the end result would remain the same. Quite simply, under *Mullane*, the notice Grimm received was reasonable.

In *Mullane*, the Court differentiated between the legal interests at issue in that case—which involved notice to beneficiaries of a judicial settlement of accounts by the trustee of a common trust—and interests in "tangible property." 339 U.S. at 308, 316. As the Court explained, the reasonableness of notice depends on the type of property at issue, and "publication or posting" generally affords sufficient notice of the seizure of "tangible property":

> The ways or [*sic*] an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of

> a chattel or entry upon real estate in the name of law may reasonably
> be expected to come promptly to the owner's attention. When the state
> within which the owner has located such property seizes it for some
> reason, publication or posting affords an additional measure of
> notification. A state may indulge the assumption that one who has left
> tangible property in the state either has abandoned it, in which case
> proceedings against it deprive him of nothing, or that he has left some
> caretaker under a duty to let him know that it is being jeopardized. As
> phrased long ago by Chief Justice Marshall in *The Mary*, 9 Cranch
> 126, 144, 3 L.Ed. 678, 'It is the part of common prudence for all those
> who have any interest in (a thing), to guard that interest by persons
> who are in a situation to protect it.

*Mullane*, 339 U.S. at 316. By contrast, in *Mullane*, the interests at issue were not

"tangible," and mere publication could not reasonably be expected to reach

"beneficiaries whose interests are either conjectural or future," or whose interest

could only "be discovered upon investigation" and "not in due course of business."

*Id*.

Furthermore, *Dusenberry* expressly rejected the argument that "advances in

technology" can alter the due-process analysis under the *Mullane* standard. As the

Court explained in that case, it "has never held that improvements in the reliability

of new procedures necessarily demonstrate the infirmity of those that were

replaced. Other areas of the law, moreover, have from strong policy reasons

rejected rules creating the notion that, 'because the world gets wiser as it gets

older, therefore it was foolish before.'" *Dusenberry*, 534 U.S. at 162. That is so

even if newer methods of effecting notice might "improve delivery to some

degree." *Id*.

The court further noted that *Mullane* does not require "actual notice" or "require the Government to substitute the procedures proposed by [a plaintiff] for those" already in use. *Dusenbery*, 534 U.S. at 171. Rather, it requires that notice be attempted via a method "reasonably calculated" to apprise a person in the plaintiff's position. *Id*. at 172-73.

Here, the publication and availability of the Portland City Code provisions making Grimm's parking on the street for a week without payment and with expired registration tags unlawful and his car subject to tow; the placement of four parking citations over the course of that week on Grimm's windshield; the placement of two additional citations over that week for having expired registration tags; the placement of a "WARNING" placard on the car, warning that it might be towed; and the eventual placement of a "TOW" placard on Grimm's car were the kinds of notice that "may reasonably be expected to come … to the owner's attention" within the meaning of *Mullane*. 339 U.S. at 316. Therefore, even if this court were to overrule its prior caselaw and apply the *Mullane* standard to this case, the result would still be the same, and this court should affirm.

## E.    Grimm's remaining arguments have no merit.

Grimm also makes a variety of additional arguments on appeal, none of which has any merit.

As an initial matter, Grimm's statement of facts, which purports to describe how the City's "Parking Kitty" electronic application for paying for parking operates, relies in substantial part on documents that were not in the record below. For example, the final paragraph of Page 6 and the entirety of Page 7 of Grimm's brief rely on a variety of City webpages that were apparently accessed on "Mar. 18, 2019"—long after the events in this case occurred. (App. Br. 6-7). Similarly, on Page 10 of his brief, Grimm states that, when he registered to use "Parking Kitty," the City asked him, "How should we contact you?"—but that statement appears nowhere in the record. (App. Br. 10). Rather, to support that assertion, Grimm cites, again, to a website he visited on "Mar. 18, 2019," long after this case arose. (App. Br. 10 n. 9).

Grimm concedes those deficiencies in his brief, but states that he intends, "[b]y separate motion, [to] seek judicial notice of all web-sources not in the record" and that "[t]he appropriateness of those sources for judicial notice will be described in the motion." (App. Br. 6 n. 1). At this time, however, Grimm has not filed any such motion for judicial notice, and this court should decline to consider evidence not in the record. Moreover, the sources that Grimm rely on post-date the events giving rise to this case by more than a year and are not subject to judicial notice under Federal Rule of Evidence 201. To the extent Grimm's arguments rely

on extra-record evidence of how the City's "Parking Kitty" parking-payment application allegedly works, this court should therefore reject them.

Relatedly, Grimm argues that the district court erred by not allowing him to conduct discovery after the City had filed its reply brief in support of its motion for summary judgment, so that he could discover and produce evidence of "how easy it would have been for the government to provide digital pre-towing notice." (App. Br. 55-56). Grimm states that he wanted to conduct discovery in response to assertions in the City's reply "that using the Parking Kitty app to provide notice would have been difficult." (App. Br. 55). Aside from being unpreserved, that argument has no merit.

First, Grimm does not cite to any portion of the record where he made an unqualified request to be allowed to conduct further discovery, and the City has been unable to locate such a motion. Instead, the record shows that Grimm filed a "motion for leave to file a surreply" objecting to the City's raising new factual issues for the first time in its reply. (SER 48-51). In his declaration in support of that motion, Grimm conceded that "the parties [had] agreed to forgo discovery into these issues…." (SER 53). Grimm therefore asked the court to bar the City from raising new factual issues, and argued that the court "should deny the Motion for Summary judgment because Portland does not support [its new factual assertions] and because Plaintiff would need discovery to adequately address them." (SER 49-

27

51, 54-55). He also asked the court to allow him to file a sur-reply to the City's reply. (SER 48). The district court *granted* both motions.

The district court thus allowed Grimm to file a sur-reply, as he requested. (*See* Dkt. 24-25). And the district court barred the City from relying on facts raised for the first time in its reply: when counsel for the City started to argue that point, the court stated, "Well you didn't [produce evidence on that point], so I'm not going to rely on that argument." (Tr. 9). The court reiterated, when making its ruling, that it was looking only at "the actual facts, the undisputed facts here," and was not relying on any new factual assertions raised in the City's reply: "I want to make clear I'm only going with the arguments that were raised and not new factual assertions…." (Tr 10). Grimm therefore cannot show that the court erred when it granted his motion to file a sur-reply and bar the City from raising new factual issues in its reply.

In any event, how the "Parking Kitty" app operates, and whether the City even had the ability to use it to notify Grimm of a tow, are ultimately irrelevant to the issues in this case. For the reasons explained above, this court's caselaw demonstrates that due process was satisfied here, and nothing in how "Parking Kitty" or Grimm's own *KnowTow* app operates would change that fact.

For those reasons, this Court should reject Grimm's unpreserved assertion that the district court should have allowed discovery into "how easy it would have been for the government to provide digital pre-towing notice." (App. Br. 55-56).

## CONCLUSION

For the foregoing reasons, the district court properly granted summary judgment to the City. This court should therefore affirm the judgment of the district court.

Dated: June 3, 2019.

Respectfully submitted,

*Denis M. Vannier*
Denis M. Vannier, OSB No. 044406
denis.vannier@portlandoregon.gov
Senior Deputy City Attorney

Attorneys for Defendants-Appellees City of Portland, L. McHenry, and F. Earle

# CERTIFICATE OF COMPLIANCE

I certify that the attached brief is not subject to the type-volume limitations of Fed R App P 32(a)(7)(B) because this brief complies with Fed R App P 32(a)(1)-(7) and is a principal brief of no more than 30 pages.

Dated: June 3, 2019.

Respectfully submitted,

*s/ Denis M. Vannier*
Denis M. Vannier, OSB No. 044406
denis.vannier@portlandoregon.gov
Senior Deputy City Attorney

Attorneys for Defendants-Appellees City of Portland, L. McHenry, and F. Earle

## STATEMENT OF RELATED CASES

City appellees are aware of no other related cases in this Court.

Dated: June 3, 2019.

Respectfully submitted,

*s/ Denis M. Vannier*
Denis M. Vannier, OSB No. 044406
denis.vannier@portlandoregon.gov
Senior Deputy City Attorney

Attorneys for Defendants-Appellees City of
Portland, L. McHenry, and F. Earle

## CERTIFICATE OF FILING AND SERVICE

I certify that on June 3, 2019, I electronically filed the foregoing CITY APPELLEES' ANSWERING BRIEF with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Denis M. Vannier*
Denis M. Vannier, OSB No. 044406
denis.vannier@portlandoregon.gov
Senior Deputy City Attorney

Attorneys for Defendants-Appellees
City of Portland, L. McHenry, and F. Earle

# ADDENDUM

Chapter 16.20 Public Right-of-Way Parking
City Code, Portland, Oregon (excepts)…………………………………ADD-1-15

Chapter 16.30 Towing & Disposition of Vehicles
City Code, Portland, Oregon (excepts)…………………………………ADD-16-24

# Chapter 16.20 Public Right-of-Way Parking

## 16.20.001 Purpose.

(Amended by Ordinance Nos. 165594 and 179141, effective March 23, 2005.)  This Chapter describes the regulation of parking on City of Portland owned or operated property, including but not limited to surface parking lots, parking structures and designated parking areas;  and public right-of-ways, including but not limited to streets, designated parking areas, planting strips, and sidewalks.

The Public Property and Right-of-Way Parking Chapter is organized in six Sections:

**A.**  16.20.100  General Parking Methods describes the general rules of legal parking and enforcement of parking regulations.

**B.**  16.20.200  Regulated Parking Zones describes additional regulations for public areas that are designated for no or limited-term parking or only for specific parking uses.

**C.**  16.20.400  Metered Parking Zones describes additional regulations for parking in areas with parking meters.

**D.**  16.20.500  General Parking Permits describes the privileges and regulations that apply to general parking permits issued by the City Traffic Engineer or the City Engineer.  These permits allow a person to reserve the public right-of-way for certain uses during a defined period of time.  General Parking Permits are generally issued to a person but may require the use of vehicle identification cards.

**E.**  16.20.600  Vehicle Parking Permits describes the privileges and regulations that apply to vehicle permits issued by the City Traffic Engineer.  Vehicle Parking Permits are usually issued to a specific vehicle(s).

**F.**  16.20.800  Area Parking Permit Program provides additional protection and parking management to areas with commuter parking problems.

## 16.20.100 General Parking Methods.

## 16.20.110 Generally.

(Amended by Ordinance No. 165594, effective July 8, 1992.)  All persons parking a vehicle in the City of Portland must comply with the following rules in addition to any rules mandated by a parking zone, permit, or district, unless specifically directed otherwise by this Title, a traffic control device or an authorized officer.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 39 of 62

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 40 of 62

**A.** Emergency vehicles may stop or park in any manner necessary at any time while serving an emergency.

**B.** No person may park or stop a vehicle other than in the direction of traffic.

**C.** When parking spaces are designated on a street with parking space markings, the vehicle must be parked in such a manner that the entire vehicle is located within official parking space markings.

**D.** When parking spaces are not designated on a street with parking space markings and when angle parking is not lawful, the vehicle must be parked in such a manner that both the front and rear tires closest to the curb or curb line are located not more than 1 foot from the curb or curb line.

A two or three wheeled vehicle may park at an angle or perpendicular to traffic flow if its tire closest to the curb or curb line is located not more than one foot from the curb or curb line and the vehicle does not extend more than eight feet from the curb or curb line.

**E.** The operator who first begins maneuvering a motor vehicle into a vacant parking space on a street or public lot has priority to park in that space, and no other vehicle operator or person may attempt to interfere.

**F.** When the operator of a vehicle discovers the vehicle is parked adjacent to a building to which the fire department has been summoned, the operator must immediately remove the vehicle from the area unless directed otherwise by police or fire officers.

---

## 16.20.120 Prohibited Parking or Stopping of a Vehicle.

(Amended by Ordinance Nos. 165594, 166575, 170923, 173369, 176394, 176955 and 179141; effective March 23, 2005.) Except when specifically directed by authority of this Title or when necessary to avoid conflict with other traffic, it is unlawful to park or stop a vehicle:

**A.** While such vehicle is equipped with a vehicle alarm unless such system is designed to, and does in fact, cease emitting an intermittent or constant sound after an aggregate time of 3 minutes within a 15 minute period on any public right-of-way or in a public park.

**B.** To angle load/unload (except within a legal angle parking space) on any street unless specifically authorized by an angle loading permit. Unauthorized angle loading is hereby declared to be a traffic hazard and is subject to summary abatement.

**C.** At an angle to traffic flow except:

> **1.** Where angle parking is designated by official parking space markings or other traffic control devices.

> **2.** That a two or three wheeled vehicle may park in a legal parking area at an angle or perpendicular to traffic flow in accordance with 16.20.110 C. and D.

**D.** Outside of or across an official line or mark designating a parking space, or between such lines in a maneuvering area.

**E.** So as to prevent the free passage of other vehicles, including rail vehicles and bicycles, on any street, alley or City of Portland owned or operated property.

**F.** On or over an official fog or edge line.

**G.** Adjacent to a curb painted or taped yellow if the paint or tape is authorized by the City Traffic Engineer.

**H.** When the vehicle is: a truck, a truck trailer, a motor bus, a recreational vehicle, a utility trailer, a drop box or storage container, or has two or more rear axles in the public right-of-way adjacent to or directly across from residential, public park, church, or school property, except:

> **1.** When loading/unloading property belonging to the occupants of or performing a service on the adjacent residence, for a period not to exceed 8 hours; or

> **2.** A recreation vehicle when servicing or loading/unloading the vehicle for a period not to exceed 8 hours.

> **3.** That a vehicle may park adjacent to or directly across from public park property if authorized by a written permit from the Bureau of Parks and Recreation.

**I.** When the vehicle is: a truck, truck trailer, a motor bus, recreational vehicle, a utility trailer, a drop box or storage container, or has two or more rear axles in the public right-of-way adjacent to or directly across from commercial or industrial property, except:

> **1.** Between the hours of 6 a.m. and 4 p.m. for a period not to exceed 4 hours; or

> **2.** Between the hours of 4 p.m. and 6 a.m. when adjacent to a business or industry normally operating a regular work shift during these hours while loading/unloading a vehicle in conjunction with the operation of this business for a period not to exceed 2 hours.

**J.** On the roadway side of a vehicle which is stopped or parked:

> **1.** In an officially designated parking space; or

> **2.** Adjacent to the curb line of a street.

**K.** Alongside or opposite a street excavation or obstruction when stopping or parking would obstruct traffic.

**L.** That is required by state law to be registered that is not registered, whose registration has expired or that does not have a current permit in lieu of registration, or fails to display current registration.

**M.** Without doing all of the following if leaving the vehicle unattended:

> **1.** Stopping the engine;

> **2.** Turning the front wheels to the curb or side of the street when on any grade;

> **3.** Locking the ignition;

> **4.** Removing the key from the ignition; and

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 41 of 62

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 42 of 62

**5.** Effectively setting the brake on the vehicle.

**N.** If the vehicle is a drop box parked during the hours of sunset to sunrise without reflective devices on the edge or side of the vehicle nearest the center of the street. The reflective device must be plainly visible for a distance of 200 feet in either direction from the drop box, parallel with the center of the street.

**O.** If the vehicle is a drop box within 50 feet of an intersection without permission of the City Engineer, City Traffic Engineer, or the Bureau of Development Services. This regulation does not apply to the area of the street where the direction of traffic is leaving an intersection on a one-way street.

**P.** In the public right-of-way, public park, or city-owned or operated property if the vehicle is abandoned.

**Q.** In a manner that creates a traffic hazard impeding the safe movement of vehicular or pedestrian traffic.

**R.** That is required by law to display two registration plates if a plate is not displayed on the front and the rear of the vehicle.

**S.** Which is a government vehicle, in a parking space where government vehicles are prohibited.

**T.** Any violation of the City of Portland, Transportation Administrative Rule is subject to citation or fine for each violation.

## 16.20.130 Prohibited in Specified Places.

(Amended by Ordinance No. 165594, effective July 8, 1992.) Except when specifically directed by authority of this Title or when necessary to avoid conflict with other traffic, it is unlawful to park or stop a vehicle in any of the following places:

**A.** Within 50 feet of an intersection when:

**1.** The vehicle or a view obstructing attachment to the vehicle is more than 6 feet in height; or

**2.** Vehicle design, modification, or load obscures the visibility or view of approaching traffic, any traffic control sign, any traffic control signal, or any pedestrian in a crosswalk.

This regulation does not apply to the area of the street where the direction of traffic is leaving an intersection on a one-way street.

**B.** Within 15 feet of a driveway to any fire station unless allowed by official signs or markings.

**C.** Within 10 feet of any fire hydrant, even when not marked by traffic control devices, except attended taxi cabs lawfully occupying properly signed taxi zones.

**D.** In front of any portion of a handicap access ramp.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 43 of 62

**E.** In front of and 10 feet on either side of a rural (vehicle) delivery mail box between 8 a.m. and 6 p.m., except Sundays and official postal holidays.

**F.** Within any city park or golf course except in officially designated parking areas during the time the park is open to the public. This provision does not apply to City or City-authorized vehicles used in park or golf course service, or to vehicles authorized by a written permit from the Bureau of Parks and Recreation.

**G.** In violation of the provisions of any area parking permit program as defined in 16.20.800.

**H.** On any mass transit lane or street as defined in Section 16.50.

**I.** On any planting strip, sidewalk, or pedestrian way.

**J.** On a shoulder unless a clear and unobstructed traffic lane of the roadway adjacent to the vehicle is left for the passage of other vehicles, and:

>   **1.** The stopped or parked vehicle is visible from a distance of 200 feet in each direction upon the roadway; or

>   **2.** A person, at least 200 feet in each direction upon the roadway, warns approaching motorists of the parked vehicle by use of flag persons, flags, signs or other signals.

**K.** On the approaches to or upon any restricted access highway, bridge, viaduct, or other elevated structure, unless permitted by authority of this Title.

**L.** On City-owned or City-operated property designated for vehicle parking by authorized City personnel only, without consent of the City, if there is in plain view on such property a sign prohibiting or restricting public parking.

**M.** Over, upon, or in such manner as to prevent access to any water meter, gate valve, or other appliance in use on any water meter connection of the Portland Water Bureau, located on public property, the public right-of-way or private property.

**N.** On any municipal terminal except in the place and manner permitted by official signs or markings.

**O.** On any pier or dock of a municipal terminal except when loading/unloading freight in compliance with any official signs or markings.

**P.** On or within an intersection.

**Q.** On or within a crosswalk.

**R.** Within any tunnel unless parking in officially designated spaces.

**S.** Within 7 feet of the nearest rail of a railroad track or within 25 feet of the center line of any set of tracks at any railroad or light rail crossing unless parking in officially designated spaces.

**T.** In the area between roadways of a divided street or highway.

**U.** On or within a bicycle lane, path, or trail.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 44 of 62

**V.** In front of any portion of a driveway ingress/egress to the public right-of-way.

---

# 16.20.150 Prohibited Practices.

(Amended by Ordinance Nos. 165594, 166575 and 176585, effective July 5, 2002.) No person may park or permit to be parked a vehicle on a street or other public property for the principal purpose of:

**A.** Displaying the vehicle for sale;

**B.** Repairing or servicing the vehicle, except while making repairs necessitated by an emergency for a period not to exceed 8 hours or as allowed for recreational vehicles in 16.20.120 (H2);

**C.** Displaying advertising from the vehicle; or

**D.** Selling merchandise from the vehicle, except when authorized by permit or City Code. See also: 14A.50.030, 14A.50.050, 16.60.100 F., 16.70.550, 17.25, 17.26.

---

# 16.20.160 Use of Streets in Lieu of Off street Parking or Storage Prohibited.

(Added by Ordinance No. 171455; amended by Ordinance Nos. 176394, 182456 and 186639, effective July 11, 2014.)

**A.** It is unlawful for any public vehicle parking business, vehicle sales, repair, or servicing business to cause or permit a vehicle to be parked on a street, alley, lane, or other public right of way while such vehicle is in the custody, control, or possession of the business for the purpose of being parked, offered for sale, repaired, or serviced.

**B.** As used in this Section, "public vehicle parking business" means the business of offering off-street vehicle parking or storage for a fee; "vehicle sales, repair, or servicing business" means the business of offering new or used vehicles for sale, lease, or rent, or of offering vehicle repairs or servicing; "vehicle" means any device, including any major portion or part thereof, in, on, upon, or by which any person or property may be transported or drawn upon a public highway except a device moved exclusively by human power, or used exclusively upon stationary rails or tracks.

**C.** If a vehicle is parked on a street, alley, or lane, or other public right of way while in the custody, control, or possession of a public vehicle parking business or a vehicle sales, repair, or servicing business for the purpose of being parked or stored, offered for sale, lease, or rent, or being serviced or repaired, it is prima facie evidence that the person engaged in such business caused or permitted such vehicle to be so parked.

**D.** Except for vehicles associated with accessory home occupations per Chapter 33.203, it is unlawful for any business entity to store more than one vehicle on any block face between the hours of 8:00 p.m. and 6:00 a.m. It is unlawful for the operator of any accessory home occupation to park or store more than one vehicle used in association with the home occupation in the public right-of-way at any

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 45 of 62

time. The maximum size of the vehicle used in association with the home occupation is a pickup truck in the medium truck category as defined in Chapter 33.910.

**E.** The owner of the business, operator of the business, or the owner of the property where the business is located shall be the party responsible for any violation of this Section.

## 16.20.170 Storing Property on Street Prohibited.

(Amended by Ordinance Nos. 165594, 172788 and 176955, effective October 9, 2002.)

**A.** No person may store, or permit to be stored, a vehicle or other personal property on public right-of-way or other public property in excess of 24 hours without permission of the City Engineer, the City Traffic Engineer, or the Bureau of Development Services.

**B.** Failure to operate and move a vehicle or move nonvehicular property off of the block face within a 24-hour period constitutes prima facie evidence of storage and may be abated.

**C.** Nonvehicular property stored for any amount of time in a metered space or regulated parking zone is a nuisance and may be summarily abated.

**D.** Notwithstanding section A above, vehicles described in section 16.20.120 H and I are subject to the limitations established in those sections.

## 16.20.190 Successive Violations.

**A.** After a citation for overtime parking has been issued and the cited vehicle remains parked or stopped within 500 feet on the same block face of where parked when cited for the previous violation, a separate violation occurs upon the expiration of each successive maximum period of parking time as designated by official signs, markings, or meters. A separate citation may be issued for each successive violation.

**B.** After a citation for unlawful parking other than overtime parking is issued and the cited vehicle remains parked or stopped within 500 feet on the same block face of where parked when cited for the previous violation and continues to park in violation of parking law(s), a separate violation occurs on the next calendar day from when the last citation was issued. A separate citation may be issued for each successive violation.

## 16.20.200 Regulated Parking Zones.

## 16.20.201 Purpose.

Parking Zones are designated by the City Traffic Engineer to manage parking and traffic congestion in areas with special parking needs.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 46 of 62

# 16.20.203 Regulated Parking Zone Designations.

**A.** Anyone may request that the City Traffic Engineer designate a regulated parking zone on any particular street or highway.

**B.** When evaluating designation of a regulated parking zone, factors the City Traffic Engineer may consider include:

1. The nature of land use within the block;

2. The volume of traffic;

3. The volume of parking;

4. The width of surface of the street;

5. The relationship between the need for parking space for the land use in the block, for the use of the regulated parking zone, and the need for parking space for the general public;

6. Patrons and prospective patrons of the places within the block or area to be served by the parking zone; and

7. The hours of day or night when use of the parking zone is necessary or most convenient.

**C.** The standard for determining the location and size of any regulated parking zone will be the public welfare.

# 16.20.205 Enforcement of Regulated Parking Zones.

(Amended by Ordinance No. 176955, effective October 9, 2002.)

**A.** A sign which regulates the amount of time a vehicle may park such as "Parking 30 minutes", is in effect from 8 a.m. to 6 p.m. Monday through Saturday, excluding City recognized holidays, unless the regulating sign shows other restrictions for days or hours.

**B.** A sign without stated hours or days which regulates parking zones such as "No Parking", "No Parking This Block", "Bus Zone", or "Truck Loading Zone, No Parking Anytime" is in effect all hours of all days, including City recognized holidays.

**C.** A sign which prohibits parking during certain hours or days such as "No Parking 7 a.m. to 9 a.m. Monday through Friday" or "Truck Loading Zone 7 a.m. to 6 p.m. Monday through Friday" is in effect during the days and times shown on the sign, excluding City recognized holidays.

**D.** For a parking sign which has an arrow, the direction in which the head of the arrow points is the direction that the regulation is in effect.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 47 of 62

**E.** It is unlawful to put nonvehicular property in a regulated parking zone without permission of the City Engineer, the City Traffic Engineer or the Bureau of Development Services. Any nonvehicular property stored in a regulated parking zone is a nuisance and may be summarily abated.

## 16.20.210 No Parking Zones.

No vehicle may park in any no-parking zone at any time. Vehicles may stop in a no parking zone for a period not to exceed 30 seconds only to load/unload passengers.

## 16.20.213 No Stopping or Parking Zone.

No vehicle may stop or park in any no parking or stopping zone.

## 16.20.215 Theater Zone.

A vehicle may not park in a theater zone while the theater adjacent to the zone is open to the public. Theater hours must be posted and clearly readable from the theater zone. Vehicles may stop for the purpose of loading/unloading passengers for a period not to exceed 30 seconds.

## 16.20.220 Truck Loading Zones.

(Amended by Ordinance Nos. 165594, 166575, 176394 and 179141, effective March 23, 2005.)

**A.** Truck loading zones are established to prevent double parking and other illegal parking by designating a supply of parking spaces dedicated to the delivery of merchandise by trucks to commercial properties.

**B.** Only the following vehicles, while being actively loaded or unloaded, may park in a truck loading zone for no more than 30 minutes:

  **1.** A truck as defined by this Title;

  **2.** A vehicle defined by its Department of Motor Vehicles registration as a truck, van, or pick-up that exhibits the commercial nature of the vehicle according to paragraph 6;

  **3.** A passenger or other vehicle with an official commercial loading permit as defined in Section 16.20.620 or delivery permit as defined in Section 16.20.630 that exhibits the commercial nature of the vehicle according to paragraph 6;

  **4.** Any vehicle with Farm Vehicle registration plates when actively engaged in loading/unloading merchandise; or

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 48 of 62

**5.** Taxicabs with a current taxicab permit as defined in Section 16.40.220 when actively engaged in loading/unloading passengers or packages, for a period not to exceed 15 minutes.

**6.** Commercial signage required by this section must be:

   **a.** On both sides of the vehicle;

   **b.** Magnetic, static cling vinyl (which may not be used on tinted windows), decals or permanently painted;

   **c.** No smaller than 8 1/2" by 11";

   **d.** In 2-inch or larger lettering;

   **e.** In a color that clearly contrasts with the color on which the lettering is displayed; and

   **f.** In lettering that is clearly visible at a distance of 20 feet.

**C.** Upon leaving a truck loading zone, a vehicle must vacate the block face of said truck loading zone or move 500 feet as measured along the curb line for a period of 1 hour before returning to a truck loading zone, a time zone, or a metered space, on the same block face.

**D.** Truck loading zones should not be located within 50 feet of an intersection in order to facilitate traffic safety. This does not apply to the area of the street where the direction of traffic is leaving an intersection on a one-way street.

## 16.20.230 Bus Zone.

Only a motor bus may park in a bus zone.

## 16.20.235 Tri-Met Bus Zone.

No vehicle may park in any Tri-Met Bus Zone, except:

**A.** A Tri-Met Bus or a contract or franchise bus of Tri-Met while passenger loading/unloading for a period not to exceed 2 minutes;

**B.** When allowed by the terms of a contract or franchise with the City of Portland for a period not to exceed 2 minutes; or

**C.** A taxicab for a period not to exceed 15 minutes. Taxicabs may not use Tri-Met bus zones during the hours of 7 a.m. to 9 a.m. and 4 p.m. to 6 p.m.

**D.** The buses described in subsections A and B may park in a designated Tri-Met bus lay over zone for a period not to exceed 30 minutes.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 49 of 62

# 16.20.240 Taxi Zone.

(Amended by Ordinance No. 176394, effective April 17, 2002.)

**A.** Location of taxi zones will be determined by the City Traffic Engineer with the advice of the Taxicab Regulation Supervisor.

**B.** No vehicle may park in a taxi zone except a taxicab operated by authority of a current taxicab company permit and displaying a current taxi plate issued pursuant to PCC 16.40.710 E.

**C.** No taxicab driver may leave a vehicle unattended in a taxi zone adjacent to a fire hydrant for any reason.

**D.** No person may leave a taxicab unattended in any taxi zone not adjacent to a fire hydrant except when assisting passengers to enter or alight from the taxicab or to carry a passenger's baggage or when delivering packages, and then for a period not to exceed 15 minutes.

**E.** No person may make repairs to a taxicab parked in a Taxi Zone.

# 16.20.250 Disabled Person/Wheelchair User Zone.

(Amended by Ordinance No. 186575, effective July 1, 2014.)  No vehicle may stop or park in a disabled or wheelchair user zone except:

**A.** a vehicle transporting a disabled person with an official State-issued disabled person or wheelchair user registration plate, placard, permit or decal; or

**B.** a Tri-Met bus loading/unloading disabled passengers.

# 16.20.260 Time Zones.

**A.** A vehicle may park in a time zone only for a period not to exceed the posted time limit.

**B.** A vehicle may not return to a time zone in the same block face or within 500 feet of where previously parked on the same block face for a 3-hour period.

**C.** Upon expiration of the designated time limit, as indicated by the parking zone sign, a citation may be issued if a vehicle remains parked or stopped on the same block face unless:

   **1.** The vehicle has moved 500 or more lineal feet, measured along the curb or edge line;

   **2.** The vehicle has moved to an unregulated parking area in the same block face; or

   **3.** The vehicle has vacated the block face for 3 hours.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 50 of 62

## 16.20.270 Carpool Zone.

No vehicle may park in a carpool zone during designated hours except vehicles displaying a current carpool permit.

## 16.20.280 Official/Reserved Zones.

**A.** An official/reserved zone is a parking area reserved for specific vehicles.

**B.** No vehicle may park in an official/reserved zone unless authorized as indicated by the sign or markings of the zone.

## 16.20.400 Metered Parking Zones.

(Amended by Ordinance No. 179141, effective March 23, 2005.)

## 16.20.401 Purpose.

Parking meters are authorized by the City of Portland as a means to increase vehicle turnover in parking spaces, to encourage short-term parking in the metered area, and to improve safety in the public right-of-way.

## 16.20.405 Enforcement of Metered Parking Spaces.

(Amended by Ordinance No. 179141, effective March 23, 2005.)

**A.** Parking meters are in effect during all hours indicated on the meter and/or sign.

**B.** All vehicles must adhere to parking meter regulations while stopped or parked in an officially designated metered parking space unless obeying the direction of an authorized officer or unless authorized for specific actions by a vehicle or general parking permit.

**C.** Emergency vehicles may stop or park in any metered space at any time while serving an emergency.

**D.** It is unlawful to store nonvehicular property in a metered parking space. Any nonvehicular property stored in a metered parking space is a nuisance and may be summarily abated.

## 16.20.410 Administration of Meters, City of Portland Owned and Operated Property.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 51 of 62

(Amended by Ordinance No. 179141, effective March 23, 2005.)

**A.** Changes to or establishment of parking meter areas, including but not limited to surface parking lots, parking structures and designated parking areas, is initiated at the sole discretion of the City Traffic Engineer.

**B.** The City Traffic Engineer is authorized to enter into agreements with City Bureaus or other public bodies in order to operate their surface parking lots, parking structures or designated parking areas within the City of Portland.

## 16.20.420 Determination of Meter District Boundaries.

(Amended by Ordinance Nos. 173627, 179141 and 182389, effective January 2, 2009.)

**A.** Changes to or establishment of a parking meter district is initiated at the sole discretion of the City Traffic Engineer.

**B.** Before expanding or establishing a new parking meter district on public-right-of-way, the City Traffic Engineer must conduct a public hearing on the proposed meter district. All properties within 400 feet of and all City recognized neighborhood and business associations within 1000 feet of the proposed meter district shall be mailed notice of the public hearing at least 20 days prior to the hearing.

**C.** Meter district boundaries will be proposed in the text of a report to the City Council. All persons registering their attendance at the public hearing shall be mailed notice of the City Council meeting at least 20 days prior to the meeting.

**D.** The City Traffic Engineer may consider the following factors when determining a parking meter district boundary:

   **1.** The amount of area presently under parking sign controls.

   **2.** Adjacent property owner and property tenant demand and interest in having metered parking control.

   **3.** Need for increased turnover of parking spaces and public right-of-way management.

   **4.** Mitigation of traffic and parking impact on adjacent areas.

   **5.** Impact on current parking meter district enforcement.

**E.** Current meter district boundaries shall be listed in the Bureau of Transportation's Rules and Procedures Manual.

## 16.20.430 Meter Time (on City of Portland Right-of-Way).

(Amended by Ordinance Nos. 176394 and 179141, effective March 23, 2005.)

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 52 of 62

**A.** It is unlawful for any person to park any vehicle in any parking meter space during the hours of operation of the meter without paying the parking meter fee, or to permit any vehicle in their control or custody to remain in any parking meter space longer than the time designated time limit.

**B.** At short-term meters, it is unlawful to extend the parking time beyond the designated limit for parking in the metered space.

**C.** Upon expiration of the designated time limit, as indicated by the parking meter, a citation may be issued if a vehicle remains parked or stopped on the same block face unless it has moved 500 or more lineal feet as measured along the curb or edge line.

**D.** Upon leaving a metered space a vehicle may not return to a parking meter in the same block face for a 3-hour period, unless it is a metered space in the same block face that is more than 500 lineal feet, as measured along the curb or curb line, from the previously used metered space.

**E.** Upon expiration of the designated time limit indicated by the parking meter, a citation may be issued if a vehicle remains parked or stopped on the same block face unless:

    **1.** The vehicle has moved 500 or more lineal feet, measured along the curb or edge line;

    **2.** The vehicle has moved to an unregulated parking area in the same block face; or

    **3.** The vehicle has vacated the block face for a period of 3 hours.

**F.** A vehicle may not be parked in any space with a broken or "out of order" meter for a period of time longer than the time limit indicated on the meter. Payment or a valid receipt is required at all spaces regardless of whether the closest device is functioning.

## 16.20.431 City of Portland Owned or Operated Property.

(Added by Ordinance Nos. 179141 and 182389, effective January 2, 2009.)

**A.** It is unlawful for any person to park any vehicle in any parking space during the hours of operation without paying the parking meter fee, or displaying a valid receipt, or to permit any vehicle in their control or custody to remain parked without payment of meter fees or displaying a valid receipt.

**B.** It is unlawful for any person to park any vehicle with an invalid or unrenewed permit or failure to display the valid permit according to the City of Portland, Bureau of Transportation Administrative Rules.

**C.** Improper use of a permit by a permit holder will result in cancellation of that permit.

**D.** After a citation for violation has been issued and the cited vehicle remains parked or stopped, when cited for the previous violation, a separate violation occurs upon the expiration of each successive maximum period of parking time as designated by official signs, markings, or meters. A separate citation may be issued for each successive violation.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 53 of 62

## 16.20.440 Meter Fees.

(Amended by Ordinance Nos. 176394 and 186575, effective July 1, 2014.) A sign or legend which indicates the interval of time for which parking is permitted and the fee payable for the time interval must be posted on all meters. The parking meter fee must be paid with U.S. coins, payment card or any other authorized payment method by the person within the vehicle, except:

**A.** During all the days and the hours that a meter fee is not required as indicated on the meter.

**B.** A vehicle with a commercial or delivery permit and a vehicle allowed to use truck loading zones by right may use any metered parking space without meter fee on any day between the hours of 8 a.m. and 10:30 a.m. for a maximum of 30 minutes while engaged in loading/ unloading merchandise; or

**C.** Any government vehicle, so identified by public registration plates, may park without meter fee for the maximum time limit allowable at any metered parking space.

**D.** A vehicle with a current permit authorizing parking at a meter without payment of the meter fee, as defined in Sections 16.20.500 and 16.20.600.

**E.** A vehicle, for the sole purpose of loading/unloading passengers, for a period not to exceed 30 seconds.

## 16.20.445 Pay Stations.

(Added by Ordinance No. 176394, effective April 17, 2002.)

**A.** It is unlawful to park or permit to be parked any vehicle in a space metered by a pay station without properly displaying proof of payment.

**B.** Proper display of proof of payment means affixing the receipt to the interior of the curbside window of the vehicle in such a manner that the expiration time and date are readily visible from the exterior. For motorcycles, receipts shall be affixed where clearly visible.

## 16.20.450 Obstruction of Meters.

No vehicle or other property may obstruct access to a parking meter in a manner which prevents deposit of coins in the meter, visibility of the meter instructions or time limit, or visibility of any signs mounted on the meter pipe. A vehicle or other property in violation of this section is hereby declared to be a nuisance and is subject to summary abatement.

## 16.20.460 Parking Space Reservation.

(Amended by Ordinance Nos. 176394 and 179141, effective March 23, 2005.)

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 54 of 62

# Chapter 16.30 Towing & Disposition of Vehicles

## 16.30.001 Purpose.

This section describes when a vehicle may or will be towed for parking violation(s), the manner of the towing, storage of the vehicle, and the release or disposition of the vehicle.

## 16.30.100 Authority to Tow Vehicles and Establish Hearing Procedures.

(Amended by Ordinance Nos. 170923, 187925 and 188652, effective November 17, 2017.)

**A.** Any parking enforcement officer, police officer, Portland Streetcar Supervisor or Superintendent, or other officer authorized by the City Council or by City Code may order a vehicle towed as provided in this Title.

    **1.** Impoundment of a vehicle does not preclude issuance of a citation for violation of this Title.

    **2.** Stolen vehicles may be towed from public or private property and stored at the expense of the vehicle owner.

**B.** The authority to establish procedures in this Title for the disposition of towed vehicles is authorized by Oregon law. Disposition of vehicles towed under authority of this Title must follow the procedures established by this Title.

**C.** If any person tows a vehicle from the public streets without authority under the City Code, the City Towing Coordinator may assess a civil penalty of up to $1,000 for each vehicle towed to be paid to the City Towing Coordinator and deposited to the City's general fund.

## 16.30.200 Vehicle Towing.

## 16.30.210 When a Vehicle May be Towed.

(Amended by Ordinance Nos. 172788, 179141 and 187261, effective July 15, 2015.) A vehicle may be towed and held at the expense of the owner or person entitled to possession thereof from:

**A.** Any public right-of-way, city owned or operated property, parking lot, public park or other public place or property, when:

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 55 of 62

1. The vehicle is parked in violation of a temporary or permanent parking restriction;

2. The vehicle is parked unlawfully or in a manner that may be hazardous to traffic;

3. The vehicle is parked on City-owned or operated property without express City permission;

4. The vehicle was used in committing a traffic or parking violation for which an unserved warrant or citation is on file with the clerk of the Circuit court;

5. The vehicle has been reported stolen;

6. The vehicle or its contents is to be used as evidence in traffic or criminal prosecutions;

7. The vehicle is in possession of a person taken into custody by a law enforcement agency;

8. The vehicle is parked in a space that is marked as reserved for disabled persons unless such vehicle conspicuously displays appropriate decals, insignia, or registration plates as required by state statutes;

9. The vehicle is parked in violation of any parking regulation;

10. The vehicle is an abandoned vehicle, as defined in 16.90.005; or

11. The vehicle is stored on the street in violation of 16.20.170.

**B.** Permanent parking restrictions may be enforced by tow 24 hours after placement in any meter or non meter areas.

**C.** Private property if:

1. The vehicle is parked or stopped without the permission of the person in control of such property; or

2. In violation of this Title.

**D.** Temporary parking restrictions may be enforced by tow 24 hours after placement in any non meter area.

**E.** Temporary parking restrictions may be enforced by tow in any meter district if the space reservation device and/or signs are in place, and verified during the prior day before or:

1. By 12:30 p.m. if the meters are in effect until 6 p.m. within the meter district; or,

2. By 1:30 p.m. if the meters are in effect until 7 p.m. or later within the meter district.

# 16.30.220 Towing Without Prior Notice.

(Amended by Ordinance Nos. 165980, 170912, 176352, and 176442, effective May 1, 2002.) Any authorized officer may, without prior notice, order a vehicle towed, when:

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 56 of 62

**A.** The vehicle is impeding or likely to impede the normal flow of vehicular or pedestrian traffic;

**B.** The vehicle is illegally parked in a conspicuously posted restricted space, zone, or traffic lane where parking is limited to designated classes of vehicles or is prohibited in excess of a designated time period, or during certain hours, or on designated days, or at any time and place the vehicle is interfering or reasonably likely to interfere with the intended use of such a space, zone, or traffic lane;

**C.** The vehicle is parked in front of a rural-type mailbox and has been cited within the previous 30 days for violation of Section 16.20.130 E;

**D.** The vehicle poses an immediate danger to the public safety;

**E.** The vehicle is illegally parked within 10 feet of a fire hydrant.

**F.** A police officer reasonably believes that the vehicle is stolen;

**G.** A police officer reasonably believes that the vehicle or its contents constitute evidence of any offense, if such towing is reasonably necessary to obtain or preserve such evidence;

**H.** The vehicle was in possession of a person taken into custody by a law enforcement officer and no other reasonable disposition of the vehicle is available;

**I.** The vehicle is parked or stopped in violation of 16.20.120 A and the vehicle alarm system disturbs, injures, or endangers, or is likely to disturb, injure, or endanger, the peace, quiet, comfort, repose, health, or safety of the public or any person; or

**J.** The vehicle is in the possession of a person arrested for any felony traffic offense, as defined by Oregon Revised Statutes.

**K.** A police officer has probable cause to believe that the vehicle's operator has committed any of the following offenses:

    **1.** Driving uninsured (ORS 806.010);

    **2.** Driving while suspended or revoked (ORS 811.175 or ORS 811.182);

    **3.** Operating a vehicle without driving privileges or in violation of license restrictions (ORS 807.010) and the operator's license has been expired for 60 days or more, or that the operator has not had a valid driver's license within the previous 60 days.

    **4.** Driving while under the influence of intoxicants (ORS 813.010);

    **5.** Fleeing or attempt to elude police officer (ORS 811.540);

    **6.** Speed racing on highway (ORS 811.125); or

    **7.** Reckless driving (ORS 811.140).

**L.** A police officer has probably cause to believe that the vehicle has been used or is possessed for the purpose of being used to commit or conceal the commission of one or more of these offenses:

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 57 of 62

1. Prostitution (ORS 167.007), Promoting prostitution (ORS 167.012), or Compelling prostitution (ORS 167.017) or any attempt, solicitation or conspiracy of one of these offenses;  or

2. Unlawful delivery of imitation controlled substance (ORS 475.991), Unlawful possession, delivery, or manufacture of controlled substance (OR 472.992), Unlawful distribution of controlled substance to minors (ORS 475.995), Unlawful manufacture or delivery of controlled substance within 1,000 feet of school (ORS 475.999), or any attempt, solicitation, or conspiracy of one of these offenses.

# 16.30.225 Towing with 24 Hour or 72 Hour Notice.

(Added by Ordinance No. 166947; amended by Ordinance Nos. 170923, 172788 and 179141, effective March 23, 2005.)

**A.** A vehicle may be towed 24 hours after notice of intent to tow has been affixed to or placed on the vehicle if the vehicle is an abandoned vehicle which is an immediate threat to the public health or safety because of its condition.

**B.** A vehicle may be towed 72 hours after notice of intent to tow has been affixed to  or placed on the vehicle if the vehicle is an abandoned vehicle; or

**C.** A vehicle may be towed 72 hours after notice of intent to tow has been affixed to or placed on the vehicle if the vehicle is in violation of 16.20.120 H or I or 16.20.170.

**D.** Notice shall be mailed after tow as provided in 16.30.320.

# 16.30.230 When Notice Required Before Towing.

(Repealed by Ordinance No. 172788, effective November 13, 1998.)

# 16.30.240 Towing and Immobilization upon Order of Circuit Court.

(Amended by Ordinance Nos. 173369 and 187925, effective September 2, 2016.)

**A.** Vehicles that have been used in the commission of a traffic or parking violation, for which an unserved warrant or citation is on file with the Multnomah County Circuit Court, may be immobilized and towed upon order of the court.

**B.** For the purposes of this Section, "immobilized" means the application of a device commonly known as a "boot", which clamps and locks on to the wheel and impedes vehicle movement.

**C.** Any officer authorized by the City Council or by City Code to order a vehicle tow is authorized to immobilize a vehicle or order a vehicle immobilized as provided in this Section.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 58 of 62

# 16.30.300 Notice of Vehicle Tow.

## 16.30.310 Notice Prior to Tow.

(Amended by Ordinance No. 172788, effective November 13, 1998.)

**A.** Except where shorter notice is allowed by this title, notice for vehicles which require prior notice before towing must be provided by:

>   **1.** Affixing a tow warning to the vehicle at least 10 days prior to the tow; and

>   **2.** Mailing a notice to the registered owner(s) and any other persons who reasonably appear to have an interest in the vehicle within 48 hours, Saturdays, Sundays, and holidays excluded, after the tow warning is affixed to the vehicle.

**B.** The tow warning and the mailed notice will state that:

>   **1.** The vehicle is parked in violation of City Code;

>   **2.** The City intends to tow and remove the vehicle if the violation is not corrected; and

>   **3.** A hearing is available to contest the validity of the intended tow, and the method of requesting a hearing, including the date by which a hearing may be requested.

**C.** If a timely request for hearing is received pursuant to Subsection 16.30.400, the vehicle will not be towed until the Tow Hearings Officer makes a determination.

## 16.30.320 Notice After Vehicle Tow.

**A.** After a vehicle has been towed pursuant to this Chapter, notice will be provided to the registered owner(s) and any other person(s) who reasonably appear to have an interest in the vehicle. Notice will be mailed to such persons within 48 hours after the tow of the vehicle, Saturdays, Sundays, and holidays excluded, and will state:

>   **1.** That the vehicle has been towed;

>   **2.** The location of the vehicle and that it may be reclaimed only upon evidence that the claimant is the owner or person entitled to possession;

>   **3.** The address and telephone number of the person or facility that may be contacted for information on the charges that must be paid before the vehicle will be released and the procedures for obtaining the release of the vehicle;

>   **4.** That the vehicle and its contents are subject to a lien for the towing and storage charges; that if the vehicle is not claimed within 15 days after the mailing date of the notice, the vehicle and its contents will be subject to sale by the City or the towing and storage facility where the vehicle is

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 59 of 62

located and that failure to reclaim the vehicle within such time will constitute a waiver of all interest in the vehicle; and

**5.** Unless notice of the availability of a hearing to contest the tow has been provided prior to towing as prescribed in Section 16.30.310, the notice will state that a hearing may be requested to contest the validity of the tow and will set forth the time in which a hearing must be requested and the method of requesting a hearing.

**B.** If a vehicle has been reclaimed prior to the mailing of the notice, no notice need be mailed or provided, but the person or persons reclaiming the vehicle must be provided with written notice of the opportunity for a hearing to contest the tow pursuant to Section 16.30.350.

**C.** In those circumstances in which it can reasonably be anticipated that mailing of notice may hinder or prevent the apprehension of a suspect in an ongoing criminal investigation, the mailing of notice may be delayed until such time as will not prejudice that investigation or apprehension.

## 16.30.340 Unidentifiable Vehicle.

No notice need be mailed pursuant to Subsections 16.30.310 or 16.30.320 when:

**A.** A vehicle does not display license plates or other identifying markings by which the registration or ownership of the vehicle can be determined, or;

**B.** When the identity of the owner of the vehicle is not available from the appropriate motor vehicle licensing and registration authority and when the identity and address of the owner and/or other persons with an interest in the vehicle cannot otherwise be reasonably determined.

## 16.30.350 Notice to Contest Tow When Vehicle Claimed.

Written notice of the opportunity to contest the validity of the tow of a vehicle, together with a statement of the time in which a hearing may be requested and the method of requesting a hearing, must be given to each person who seeks to redeem a vehicle which has been towed pursuant to this Chapter. This information will be made available by the tow company or other facility holding such vehicle.

## 16.30.400 Tow Hearing Procedure.

## 16.30.410 Request for Hearing.

(Amended by Ordinance No. 170923, effective March 21, 1997.)

**A.** After a vehicle has been towed pursuant to subsection 16.30.220 or 16.30.225 and prior to towing pursuant to subsection 16.30.230, the owner(s) and any other persons who reasonably appear to have

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 60 of 62

an interest in the vehicle are, upon timely application filed with the Tow Hearings Officer, entitled to request a hearing to contest the validity of the tow or intended tow of the vehicle.

> **1.** In the case of a vehicle towed pursuant to Subsection 16.30.220 or 16.30.225, such application must be filed with and received by the Tow Hearings Officer not later than 10 days after the vehicle was towed.

> **2.** In the case of a vehicle proposed to be towed pursuant to Subsection 16.30.230, such application must be filed with and received by the Tow Hearings Officer not later than 10 days after the affixing of the tow warning to the vehicle.

**B.** The Tow Hearings Officer may, for good cause shown, grant a request for hearing filed after the foregoing time requirements have expired. If the mailing of the towed vehicle notice was delayed pursuant to Subsection 16.30.310, the Tow Hearings Officer will grant a request for hearing received and filed within 10 days of the mailing date of the notice or 10 days of the date the vehicle was reclaimed, whichever first occurs.

**C.** The request for hearing must be in writing and will state the grounds upon which the person requesting the hearing believes the tow or proposed tow invalid, or, for any other reason, unjustified. The request for hearing will also contain such other information, relating to the purposes of this Chapter, as the Tow Hearings Officer may require.

**D.** The Tow Hearings Officer will set and conduct an administrative hearing on the matter within 14 days of receipt of a proper request filed pursuant to this Section. In all cases where a vehicle has been towed and not yet released, however, the Tow Hearings Officer will set and conduct the hearing within 72 hours, not including Saturdays, Sundays, or holidays, on receipt of the request.

## 16.30.420 Hearing Procedure.

**A.** The hearing shall afford a reasonable opportunity for the person(s) requesting it to demonstrate by the statements of witnesses and other evidence, that the tow and/or storage of the vehicle was or would be invalid, or for any other reason not justified.

**B.** The Tow Hearings Officer will make necessary rules and regulations regarding the conduct of such hearings, consistent with this Section.

## 16.30.430 When Tow Found Invalid.

If the Tow Hearings Officer finds the tow and/or storage was or would be invalid or not justified, the Tow Hearings Officer will order the vehicle:

**A.** Be immediately released if already towed. The owner(s) or any other person(s) who have an interest in the vehicle are not liable for the tow and/or storage charges and any money paid for tow and/or storage charges will be returned, as appropriate.

**B.** Not be towed if such vehicle is about to be towed.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 61 of 62

# 16.30.440 When Tow Found Valid.

(Amended by Ordinance No. 176352, effective March 27, 2002.) If the Tow Hearings Officer finds the towing and/or storage was or would be valid, the Tow Hearings Officer will order the vehicle, if still held, continue to be held until all towing and storage charges and an administrative fee are paid.

If such vehicle is about to be towed, pursuant to Subsection 16.30.230, the Tow Hearings Officer will order such vehicle to be towed and impounded if the violation involving that vehicle has not been completely corrected.

# 16.30.450 Hearing Administration.

(Amended by Ordinance No. 187925, effective September 2, 2016.)

**A.** The decision of the Tow Hearings Officer is a quasi-judicial decision and is final, and is not appealable to the City Council.

**B.** Any person who has a hearing scheduled pursuant to this Section and fails to appear at such hearing without good cause shown, as determined by the Tow Hearings Officer, will not be entitled to have such hearing rescheduled.

**C.** The owner(s) and any other person(s) who have an interest in the vehicle are only entitled to one hearing for each tow of that vehicle.

**D.** Owners of vehicles towed or immobilized by order of the Multnomah County Circuit Court pursuant to Section 16.30.240 are not entitled to a hearing pursuant to this Chapter.

**E.** The Code Hearings Officer, appointed pursuant to Title 22, will act as Tow Hearings Officer pursuant to this Chapter. Subject to the approval of the Commissioner In Charge, the Code Hearings Officer may, in writing, designate one or more persons to act as Tow Hearings Officer during the absence or unavailability of the Code Hearings Officer.

# 16.30.500 Fee Payments and Vehicle Release Procedure.

# 16.30.510 Towing and Storage Rates.

The towing and storage charges that are to be paid before release of a vehicle towed by authority of this Chapter, if towed by a private company at the request of a City officer or employee, will be the charges fixed by City contract for private towing and storage. If a vehicle is towed by City equipment and personnel, the charges will be fixed by a schedule approved by the Council.

# 16.30.520 Charges and Release of Vehicle.

Case: 18-35673, 06/03/2019, ID: 11317811, DktEntry: 24, Page 62 of 62

(Amended by Ordinance Nos. 165980, 167222, 175648 and 176352, effective March 27, 2002.)

**A.** Any private company that tows and stores any vehicle pursuant to this Chapter, shall have a lien on the vehicle, in accordance with ORS 87.152, for the just and reasonable charges for the tow and storage services performed. The company may retain possession of that vehicle, consistent with this Chapter, until towing and storage charges and an administrative fee have been paid.

**B.** If the required towing and storage charges and an administrative fee have been paid, the vehicle must be immediately released to the person(s) entitled to lawful possession. A vehicle towed pursuant to Section 16.30.220 K. shall be immediately released to the person(s) entitled to lawful possession upon proof that a person with valid driving privileges will be operating the vehicle, proof of insurance and payment of towing, storage and payment of an administrative fee to the police agency. If towing and storage charges and an administrative fee have not been paid, a vehicle will not be released, except upon order of the Towing Hearings Officer.

**C.** A vehicle towed pursuant to this Chapter may only be released to the owner, or to the person who was lawfully in possession or control of the vehicle at time it was towed, or to a person who purchased the vehicle from the owner and who produces written proof of ownership. In all cases, adequate evidence of the right to possession of the vehicle as determined by the City Towing Board of Review, must be presented prior to release of the vehicle.

## 16.30.530 When Tow Found Invalid.

**A.** The accrued towing and storage charges assessed under Section 16.30.520, will be waived by the Hearings Officer if the tow is found to be invalid or for any other reason not justified, after a hearing has been held pursuant to Section 16.30.400.

**B.** A person's inability to pay the towing and storage charges, in and of itself, is not a sufficient basis for the waiving of such charges.

**C.** If the charges are owed to a private company, the City will pay them if, after a hearing, the tow is found to be invalid or for any other reason not justified and the charges have not previously been paid.

## 16.30.540 When Tow Found Valid.

(Amended by Ordinance No. 176352, effective March 27, 2002.) If the Tow Hearings Officer finds the towing and/or storage was valid, the person entitled to possession of the vehicle will be responsible for all towing and storage charges.

## 16.30.550 Storage Charges at Completion of Hearing.

After the Tow Hearings Officer makes a public determination on a vehicle tow hearing, the vehicle must be picked up by the person entitled to possession within 24 hours to avoid further storage charges. If the vehicle is not claimed within this time period, it will not be released until the additionally accrued storage charges, if any, are paid.