No. 18-35673
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

ANDREW GRIMM,

*Plaintiff-Appellant*,

v.

CITY OF PORTLAND,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman, United States District Judge

_____

**APPELLANT'S REPLY BRIEF**
_____

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION ...................................................................................1

SUMMARY OF ARGUMENT ....................................................................3

ARGUMENT .........................................................................................5

    I.    ON THE THRESHOLD ISSUE OF THE CORRECT LEGAL TEST,
         PORTLAND DOES NOT ADDRESS THIS COURT'S UNDERSTANDING
         THAT *DUSENBERY* SPOKE OF NOTICE CLAIMS GENERALLY, NOT JUST
         CIVIL FORFEITURES. ...............................................................5

    II.    PORTLAND OVERSTATES ITS ATTEMPTS AT NOTICE,
         MISUNDERSTANDS THE CLAIM, AND MISSES THE IMPORTANCE OF ITS
         OWN PARKING KITTY APP...................................................13

         A.    Portland made only one undisputed attempt to warn of the
                  tow by posting an unseen placard on the windshield an hour
                  before the tow............................................................13

         B.    Portland's arguments about publication of the statute
                  misunderstand the notice claim here........................................20

         C.    Portland's own Parking Kitty app—not general "advances in
                  technology"—give rise to this appeal. .....................................25

    III.    RATHER THAN ADDRESS THE DISPOSITIVE *JONES* BRIGHT-LINE
         OBLIGATION, PORTLAND RESPONDS TO ARGUMENTS NOT MADE. ......27

         A.    Portland fails to address the *Jones* bright-line obligation.........27

         B.    Instead of addressing *Jones*, Portland responds to arguments
                  not made. ..................................................................32

IV.  PORTLAND DOES NOT APPLY THE THREE *MATHEWS* FACTORS IN
     LIGHT OF PORTLAND'S PARKING KITTY APP OR OREGON'S DRIVER-
     FRIENDLY STATUTES AND DOES NOT MEANINGFULLY RESPOND
     ABOUT FRCP 56(d). ............................................................................36

V.   PORTLAND'S AD HOMINEMS MERELY DEMONSTRATE MR. GRIMM'S
     CONCERNS ABOUT PORTLAND'S FAILURE TO CONSIDER
     CONSTITUTIONAL RIGHTS WHEN DEPLOYING PARKING KITTY............38

     A.   Mr. Grimm did not intend to miss Christmas. ..........................38

     B.   KnowTow is immaterial to Portland's notice obligations. .......39

CONCLUSION .........................................................................................................49

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arrington v. Helms,

    438 F.3d 1336 (11th Cir. 2006) ........................................................9

Brody v. Village of Port Chester,

    434 F.3d 121 (2d Cir. 2005). ................................................. 15, 16

California ex rel. Lockyer v. FERC,

    329 F.3d 700 (9th Cir. 2003). ....................................................7, 12

Chin Yi Tu v. NTSB,

    470 F.3d 941 (9th Cir. 2006). ......................................... 1, 11, 27, 28, 29, 30

City of Los Angeles v. David,

    538 U.S. 715 (2003)...........................................................9

Clement v. City of Glendale,

    518 F.3d 1090 (9th Cir. 2008). ...................................................15

Dan's City Used Cars, Inc. v. Pelkey,

    569 U.S. 251 (2013)..........................................................28

Dusenbery v. United States,

    534 U.S. 161 (2002)............................................... 5, 6, 10, 12, 21, 29, 33, 34

Ehorn v. Sunken Vessel,

    294 F.3d 856 (7th Cir. 2002). ....................................................32

Farrar v. Hobby,

    506 U.S. 103 (1992)..........................................................49

Franceschi v. Yee,

    887 F.3d 927 (9th Cir. 2018). ....................................................37

iv

García-Rubiera v. Fortuño,

    665 F.3d 261 (1st Cir. 2011).................................................. 21, 24

Greene v. Lindsey,

    456 U.S. 444 (1982)................................................ 29, 30, 32, 35

J.B. v. United States,

    916 F.3d 1161 (9th Cir. 2019). .......................................................7

Jones v. Flowers,

    547 U.S. 220 (2006)........................................... 6, 27, 29, 32, 33, 36

Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R.,

    661 F.3d 354 (8th Cir 2011). .......................................................34

Lone Star Security & Video, Inc. v. City of Los Angeles,

    584 F.3d 1232 (9th Cir. 2009). ................................................ 23, 24

M.A.K. Inv. Grp., LLC v. City of Glendale,

    897 F.3d 1303 (10th Cir. 2018). ....................................................32

Mathews v. Eldridge,

    424 U.S. 319 (1976).................................................................2, 21

Memphis Light, Gas & Water Division v. Craft,

    436 U.S. 1 (1978)...................................................................9, 37

Mennonite Bd. of Missions v. Adams,

    462 U.S. 791 (1983)........................................................ 22, 24, 32

Mullane v. Cent. Hanover Bank & Trust Co.,

    339 U.S. 306 (1950)................................................ 15, 21, 29, 31

Nozzi v. Hous. Auth.,

    806 F.3d 1178 (9th Cir. 2015). .......................................................7

Oneida Indian Nation v. Madison County,

    665 F.3d 408 (2d Cir. 2011). .................................................................. 15, 33

Sackman v. City of Los Angeles,

    No. CV 15—0090,

    2015 WL 13357951 (C.D. Cal. May 8, 2015),

    aff'd 677 F. App'x 365 (9th Cir. 2017). ................................................... 22, 23

Sakamoto v. Duty Free Shoppers, Ltd.,

    764 F.2d 1285 (9th Cir. 1985). .....................................................................11

Scofield v. City of Hillsborough,

    862 F.2d 759 (9th Cir. 1988). ................................................................. 11, 38

Snider Int'l Corp. v. Town of Forest Heights,

    739 F.3d 140 (4th Cir. 2014). ............................................................... 6, 8, 10

Soldal v. Cook County,

    506 U.S. 56 (1992)...........................................................................................7

Steward v. Mann,

    351 F.3d 1338 (11th Cir. 2003). ...................................................................30

Taylor v. City of Saginaw,

    922 F.3d 328 (6th Cir. 2019). ......................................................................50

Taylor v. Yee,

    136 S. Ct. 929 (2016) (denying cert.).............................................................25

Taylor v. Yee,

    780 F.3d 928 (9th Cir. 2015). ............................................................. 8, 11, 27

United States v. McCoy,

    No. 03:11-cr-00464-HZ,

    2016 U.S. Dist. LEXIS 119908 (D. Or. Sept. 6, 2016). ...............................47

Williams v. Mukasey,

    531 F.3d 1040 (9th Cir. 2008). .................................................................8, 27

Yagman v. Garcetti,

    852 F.3d 859 (9th Cir. 2017). .................................................................9, 10

**Rules**

FRCP 56(d). ..............................................................................................38

## INTRODUCTION

The Government's Brief does not meaningfully respond to the Opening Brief's arguments under either the <u>Mullane</u>-<u>Jones</u> standard or the <u>Mathews</u> balancing test.

The central issue on appeal is how the government's *own* mobile parking app, Parking Kitty, affects *its* notice obligations. The Opening Brief mentions Parking Kitty eighty-five times. <u>See generally</u> Opening Br. Amici's Brief also addresses how the "app already used by the City" affects the government's notice obligations. Amici Br. at 27.

The government, however, doesn't mention its own app until the last pages of its Brief. Gov't Br. at 26-28. There, the government makes the conclusory assertion that Parking Kitty is "ultimately irrelevant" here. <u>Id.</u> at 28.

That's an untenable position.

Under the <u>Mullane</u>-<u>Jones</u> standard, Parking Kitty plainly matters here. Under <u>Mullane</u>-<u>Jones</u>, if the government learns its attempts at notice are "unclaimed, the government **must** take additional steps to insure notice, if it is practicable to do so." <u>Chin Yi Tu v. NTSB</u>, 470 F.3d 941, 945 (9th Cir. 2006) (emphasis added).

1

Portland did _**not**_ take any additional steps in that situation, and yet Parking Kitty was clearly a practicable additional option to attempt notice. Indeed, Portland had already been using its own app to contact Mr. Grimm about his car— just not about the tow.

Parking Kitty also plainly matters under the <u>Mathews</u> balancing test. The _second_ <u>Mathews</u> factor considers the "probable value" of additional procedural safeguards, and the _third_ <u>Mathews</u> factor weighs the "fiscal and administrative burdens" that such procedural safeguards would entail. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).

Parking Kitty speaks to both factors. The government _already_ uses Parking Kitty to provide instantaneous communications to vehicle owners directly on their smartphones. Thus, using Parking Kitty to provide notice would provide a valuable procedural safeguard without imposing significant fiscal and administrative burdens.

Portland's position that Parking Kitty is "irrelevant" betrays a fundamental misunderstanding of both legal tests. Under _either_ test, Portland did not fulfill its constitutional notice obligations before it seized private property.

2

## SUMMARY OF ARGUMENT

I.    There is a threshold dispute regarding the correct legal test.  The Supreme
      Court has a "well-settled practice" of applying <u>Mullane</u> to claims "regarding
      the adequacy of the method used to give notice."  <u>Dusenbery v. United
      States</u>, 534 U.S. 161, 168 (2002).  Thus, <u>Mullane</u> applies here because the
      claim is about the adequacy of notice.

II.   Portland claims it made eight attempts to provide notice of the tow.
      However, the only undisputed attempt at notice is a "TOW" placard posted
      an hour before the tow.  Moreover, Portland misunderstands the claim to be
      about notice of towing ordinances.  Instead, the claim here is about notice of
      the specific tow itself.  Finally, Portland's voluntary adoption of its own
      Parking Kitty app—not general advances in technology—is the basis of the
      claim here.

III.  Portland misunderstands the <u>Mullane</u>-<u>Jones</u> standard because Portland never
      addresses the <u>Jones</u> bright-line obligation.  Moreover, <u>Mullane</u>-<u>Jones</u> asks
      whether the ***<u>government's</u>*** attempts at notice were reasonably calculated to
      warn the property owner.  Portland mistakenly construes the test as only
      granting procedural rights to people who have behaved reasonably.

3

IV.   Like the district court below, Portland fails to apply the <u>Mathews</u> factors to

*this* context.  Also, Portland's FRCP 56(d) response is unavailing.


V.    KnowTow is immaterial to Portland's notice obligations.

4

## ARGUMENT

I. **ON THE THRESHOLD ISSUE OF THE CORRECT LEGAL TEST, PORTLAND DOES NOT ADDRESS THIS COURT'S UNDERSTANDING THAT <u>DUSENBERY</u> SPOKE OF NOTICE CLAIMS GENERALLY, NOT JUST CIVIL FORFEITURES.**

There is a threshold issue on appeal regarding the correct legal test for notice claims.

In <u>Dusenbery v. United States</u>, the Supreme Court held that applying <u>Mullane</u> to notice claims is a "well-settled practice." 534 U.S. 161, 167-168 (2002); Opening Br. at 21-30.

Portland disputes this. Gov't Br. at 18-23. Without authority, Portland states "<u>Dusenberry</u> [sic] was a fairly special case, involving the adequacy of notice of forfeiture proceedings"—suggesting <u>Dusenbery</u> was limited to the forfeiture context. <u>Id.</u> at 20.

Neither the Supreme Court nor this Court understands <u>Dusenbery</u> that way.

<u>Dusenbery</u> ***did*** involve a challenge to the adequacy of notice for a civil forfeiture of an inmate's car, 534 U.S. at 163-165, ***but*** the Supreme Court said ***nothing*** about forfeiture in deciding whether to apply <u>Mathews</u> or <u>Mullane</u>, <u>id.</u> at 167-168. Instead, the Supreme Court's operative distinction was between notice and hearing. <u>Id.</u>

5

Dusenbery's meaning is no mystery: "Notice and the hearing are two distinct features of due process, and are thus ***governed by different standards***." Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 146 (4th Cir. 2014) (emphasis added, citing Dusenbery).

In Dusenbery, the Supreme Court acknowledged that Mathews applied to "administrative procedures" and "other contexts," but clarified that it had "never viewed Mathews as an all-embracing test for deciding due process claims." 534 U.S. at 167-168.

Rather, the Court has "regularly turned to [Mullane] when confronted with questions regarding the ***adequacy of the method used to give notice***." Id. at 168 (emphasis added). This appeal concerns the adequacy of the method used to give notice.

Likewise, the Supreme Court has made no mention of forfeiture when citing Dusenbery. See Jones v. Flowers, 547 U.S. 220, 229 (2006). Instead, the Court has cited Dusenbery for the proposition that Mullane applies to cases "evaluat[ing] the adequacy of notice given to […] owners of seized cash and ***automobiles***[.]" Id. (emphasis added).

Thus, there is no question that Mullane determines the adequacy of notice for a seized automobile. And, a "towed" automobile is a "seized" automobile. See

Soldal v. Cook County, 506 U.S. 56, 64 (1992). Mullane clearly provides the correct legal test here.

Mathews does not. Emphatically, the Opening Brief repeatedly quoted this Court's understanding of Dusenbery: claims about "the adequacy of notice" are among the "***exceptional*** categories in which the Supreme Court has ***held*** the Mathews v. Eldridge analysis does ***not*** apply." California ex rel. Lockyer v. FERC, 329 F.3d 700, 709 n.8 (9th Cir. 2003) (emphasis added, citing Dusenbery); see Opening Br. at 19, 22-23, 28-29.

Portland nowhere responds.

Ninth Circuit precedents have repeatedly emphasized that Mullane is the correct test for notice claims, relying on Dusenbery without limiting it to civil forfeitures:

- "The [Supreme] Court has used the same [Mullane] test to evaluate the adequacy of notice in various circumstances." J.B. v. United States, 916 F.3d 1161, 1167 (9th Cir. 2019) (citing Dusenbery as about "notice due to owners of seized cash and automobiles").

- "[T]he Supreme Court applies a streamlined [Mullane] test when the only question to be decided is whether the government has provided sufficient notice and there is no request for further procedural safeguards." Nozzi v. Hous. Auth., 806 F.3d 1178, 1193 n.17 (9th Cir. 2015).

7

- "Mullane v. Central Hanover Bank & Trust Co. and its progeny provide the 'appropriate analytical framework' for considering the adequacy of notice of government action." Williams v. Mukasey, 531 F.3d 1040, 1042 (9th Cir. 2008) (citing Dusenbery).

The Opening Brief cited *all* these Ninth Circuit cases. Opening Br. at 23, 25. Portland does not cite or respond to *any* of them.

All these Ninth Circuit cases reaffirm Dusenbery's holding that Mullane governs notice claims. None of these cases understand Dusenbery to be limited to civil forfeitures. None of these cases employ Portland's invented distinction between notice for immoveable and "eminently moveable" property. See Gov't Br. at 21.

Mullane is this Court's go-to test for notice claims generally. In deciding "whether the notice provided to plaintiffs was constitutionally adequate[,]" this Court asks whether attempted notice "passes muster under the Mullane-Jones standard." Taylor v. Yee, 780 F.3d 928, 933, 937 (9th Cir. 2015). This Court applies Mullane to notice claims. Thus, applying Mullane here presents no "*stare decisis*" problems. See Gov't Br. at 18.

It's not just this Court. Other Circuits have a similar understanding that Dusenbery requires the application of Mullane to a notice claim. See, e.g., Snider, 739 F.3d at 146 (4th Cir. 2014) ("As noted in Dusenbery, Mullane is the

8

appropriate guidepost for this question" about the "means of providing notice.");

Arrington v. Helms, 438 F.3d 1336, 1349 (11th Cir. 2006) ("To determine what

type of notice is adequate to satisfy the Due Process Clause, we apply the test set

forth in Mullane[.]" (citing Dusenbery)).

  This notice-hearing distinction explains why the Supreme Court applied *both*

tests when faced with *both* a notice claim and a hearing claim.  See Memphis

Light, Gas & Water Division v. Craft, 436 U.S. 1, 12-22 (1978).  For the *notice*

claim, the Supreme Court applied Mullane.  Id. at 12-15.  For the *hearing* claim,

the Supreme Court applied Mathews.  Id. at 16-22.

  This notice-hearing distinction also explains why "the Supreme Court has

continued to apply the Mathews test to other due-process cases—including a

towing case"—since Dusenbery.  See Gov't Br. at 22.  Those cases did ***not*** involve

notice claims.

  Mathews applied in City of Los Angeles v. David because, as Portland

admits, David involved a "challenge to [a] city's post-tow procedures"—*not* a

challenge to the adequacy of notice.  See Gov't Br. at 22; David, 538 U.S. 715, 716

(2003) (due process challenge about "sufficiently prompt *hearing*" (emphasis

added)).

  The same goes for Yagman v. Garcetti, 852 F.3d 859 (9th Cir. 2017),

another case Portland emphasizes.  Gov't Br. at 18, 22.  Yagman was about the

"procedure for contesting parking citations"—*not* notice. 852 F.3d at 862. This Court was correct to apply <u>Mathews</u> in <u>Yagman</u>. Yet <u>Yagman</u> does not undermine that <u>Mullane</u> is the correct test for *notice* claims.[1]

Separately, Portland notes that this Court has applied <u>Mathews</u> to notice claims <u>about tows</u> "in the 17 years since <u>Dusenberry</u> [sic] was decided[.]" Gov't Br. at 22.

Yet the Opening Brief expressly addressed these cases. Opening Br. at 29, 29 n.12. In these cases, the parties nowhere cited <u>Dusenbery</u>. Nor did this Court. The issue of the applicable legal standard was simply never raised.[2]

---

[1] Portland quotes <u>Yagman</u>'s "notice and hearing" language to elide the distinction between notice (governed by <u>Mullane</u>) and hearing (governed by <u>Mathews</u>). <u>See</u> Gov't Br. at 22. This generalized language doesn't make *notice* claims into *hearing* claims. Nor does it make <u>Mathews</u> into an "an all-embracing test[.]" <u>Dusenbery</u>, 534 U.S. at 168; <u>see</u> <u>Snider</u>, 739 F.3d at 146 ("two distinct features of due process […] governed by different standards." ).

[2] None of the Ninth Circuit's post-2002 tow-notice decisions (cited at Opening Br. 29, 29 n.12) cite <u>Dusenbery</u>. Nor do the district courts in those cases. Nor do any of the appellate briefs accessible on PACER. This is not surprising. Tow cases rarely involve the fees or command the attention of lawyers willing to scour the case law.

In these cases, this Court "simply assumed that [Mathews] applied, but the issue was never raised or discussed." See Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285, 1288 (9th Cir. 1985). "Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." Id.

Moreover, these post-2002 cases applying Mathews to pre-towing notice claims are ***inconsistent*** with this Court's cases applying Mullane to other notice claims. See Opening Br. at 26; Taylor, 780 F.3d at 937; Chin Yi Tu, 470 F.3d at 945.

Thus, this appeal raises a question of first impression on the inconsistency between notice claims where this Court applied Mathews and notice claims where this Court applied Mullane.

The answer is clear. Dusenbery—and the Ninth Circuit cases citing Dusenbery—demonstrate how to resolve the inconsistency: apply Mullane. Opening Br. at 27-30.

In fact, Dusenbery is *precisely* the "demonstrable change in the underlying law" that Portland asks about. See Gov't Br. at 18. This Court first applied Mathews to a tow-notice claim in 1988. Scofield v. City of Hillsborough, 862 F.2d 759, 762-764 (9th Cir. 1988).

Then, in 2002, the Supreme Court decided Dusenbery.

<u>Dusenbery</u> says to apply the <u>Mullane</u> standard for claims "regarding the adequacy of the method used to give notice." 534 U.S. at 168. This Court has taken <u>Dusenbery</u> to mean that "the Supreme Court has ***held*** the <u>Mathews v. Eldridge</u> analysis does ***not*** apply" to claims about the "adequacy of notice[.]" <u>Lockyer</u>, 329 F.3d at 709 n.8 (emphasis added).

The <u>Mullane</u> standard applies here because the claim is about the adequacy of notice.

**II.** **PORTLAND OVERSTATES ITS ATTEMPTS AT NOTICE, MISUNDERSTANDS THE CLAIM, AND MISSES THE IMPORTANCE OF ITS OWN PARKING KITTY APP.**

Portland overstates its attempts to provide notice of the tow, see Section II.A, *infra*; misunderstands the nature of the notice claim here, see Section II.B, *infra*; and mischaracterizes the Opening Brief's position as based on technology generally rather than Portland's own Parking Kitty App specifically, see Section II.C, *infra*.

Clarification is important before applying a legal standard.

**A.** **Portland made only one undisputed attempt to warn of the tow by posting an unseen placard on the windshield an hour before the tow.**

Portland repeatedly contends that it made *eight* attempts—via "six citations and two warning placards"—to warn of the tow. Gov't Br. at 1; see id. at 3-4, 7, 8, 11, 13, 14.

This is incorrect.

First, there are the citations. As Portland conceded, its citations don't warn of an impending tow. Answer, ER 68-69 ¶¶ 34c, 35c, 36c, 37c; cf. Compl., ER 84-85 ¶¶ 34c, 35c, 36c, 37c.

13

The tickets give no indication of an impending tow:



**CITY OF PORTLAND**
Title No. 16 Ord. 165189
CIRCUIT COURT FOR MULTNOMAH COUNTY

**PARKING VIOLATION**

CITATION #  **HA30925607**

| DATE | TIME MARKED | TIME ISSUED |
|---|---|---|
| 12/21/2017 | | 08:35AM |

| LICENSE # | EXPIRATION | STATE |
|---|---|---|
| 6DNF990 | 06/17 | CA |

VEHICLE ID                                TRIP EXP

| MAKE | METER # | LIMIT | V/S |
|---|---|---|---|
| HONDA | F200410 | 3H | |

| RECEIPT # | EXP TIME | BEAT # |
|---|---|---|
| | | 10 |

LOCATION

SW HALL ST
  between 5TH AVE
  and     4TH AVE

| SIDE | OFFICER | OFC # |
|---|---|---|
| S | F. Earle | 159 |

SIGN DETAILS

IN VIOLATION OF:  **16.20.430-A**
**NO METER RECEIPT**
AMOUNT DUE:  **$ 65.00**
COMMENTS:
NO REC CURB SIDE. CHECKED DATA NO
ELECTRONIC PAYMENT VS 6 4  SR 1304 PREV CI
AND WRNED

Photos 4

WAR: WARNING (12.19.2017 8.43.00AM,
95, HALL ST Side: S; between 5TH AVE
and 4TH AVE; Officer: 159; Vehicle:
HONDA; Valves: /// NO REC CURB SIDE,
CHECKED DATA NO ELECTRONIC
PAYMENT)

See, e.g., ER 59.

14

The tickets simply don't provide notice of Portland's decision to seize Mr. Grimm's car.

Nonetheless, Portland quotes <u>Clement v. City of Glendale</u> for the view that a "ticket ***can*** also serve as notice of the illegality and a warning that the car will be towed[.]" Gov't Br. at 14 (quoting 518 F.3d 1090, 1094 (9th Cir. 2008)) (emphasis added).

This much is true. A ticket ***could*** warn of an impending tow. Portland's tickets don't, however, so they are not attempts at notice.

<u>Clement</u> was quite clear that it did "not prescribe a particular procedure for giving notice; it is up to the government to develop a policy that will result in sufficient notice being given to car owners before impoundment." <u>Clement</u>, 518 F.3d at 1095 n.9. Portland's tickets don't "result in sufficient notice" because they don't mention an impending tow at all.

This isn't just a technicality.

To be notice, the tickets "must make some conspicuous mention" of a tow. <u>See</u> <u>Brody v. Village of Port Chester</u>, 434 F.3d 121, 130 (2d Cir. 2005). Because they don't, Portland's tickets don't "convey the required information" to be an attempt at notice. <u>See</u> <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950); <u>Oneida Indian Nation v. Madison County</u>, 665 F.3d 408, 428 (2d Cir. 2011) (same).

15

"Just as with the _form_ of notice, the _content_ of the notice" has due process requirements that Portland's tickets do not meet. See Brody, 434 F.3d at 130 (emphasis added). Thus, Portland's tickets do not constitute attempts to warn of the tow.

Without an express warning, a vehicle owner has no way to know whether the first ticket or the fourth ticket is the tow warning. Sometimes, cities tow after one ticket. Sometimes, they pile on. Municipal discretion in towing is precisely why procedural safeguards of explicit notice are important.

Second, there is the "TOW" placard. The parking officer took a picture demonstrating that he posted the "TOW" placard the day of the tow:



ER 61.

16

The parking officer issued a citation at <u>8:35 a.m.</u>  ER 59.  Then, the car was

towed at <u>9:24 a.m.</u>:



<u>See also</u> ER 86 ¶ 47.[3]

Because the parking officer posted the "TOW" placard ***after*** issuing this

citation, <u>compare</u> ER 45 ¶ 8 <u>with</u> <u>id.</u> ¶ 9, this "TOW" placard was posted to Mr.

Grimm's windshield *less than an hour before the tow*.  At most, the "TOW"

placard was on the windshield from 8:35 a.m. to 9:24 a.m.

---

[3] Judicial notice.

<u>Third</u>, there is the disputed "WARNING" placard.

The officer declared that he posted this placard two days before the tow.

ER 45 ¶ 7.  His pictures, however, do **_not_** show a "WARNING" placard:



ER 58.

The record only shows a blank exemplar of a "WARNING" placard—**_not_**

the one allegedly posted:

18

**WARNING**

PARKING ENFORCEMENT DIVISION
1120 SW 5th Avenue, Suite 800, Portland, Oregon 97204-1912

Your vehicle LICENSE NUMBER _____ State _____

is parked _____

which is in violation of the City Parking Code.

Your vehicle will be subject to tow/citation _____
if it is not moved. Your cooperation is appreciated.

Date _____ Parking Enforcement Officer M-_____

ER 62.

The officer declared that he filled out the "WARNING" placard he allegedly posted. ER 45 ¶ 7. Portland has never located this filled-out "WARNING" placard, however.

Neither has the tow-truck company. The tow-truck company had possession of most of the citations and the "TOW" placard, but not the disputed "WARNING" placard. ER 28-29 ¶ 13.

19

Thus, there is a genuine dispute about whether the officer posted the "WARNING" placard at all.

In sum, the tickets do not constitute attempts at notice for legal reasons. And, whether the "WARNING" placard was ever posted is disputed. The dispute, at summary judgment, must be resolved in Mr. Grimm's favor.

Thus, the _**only**_ undisputed attempt at notice was the "TOW" placard posted a mere hour before the tow. Portland did not make eight attempts at notice of the tow. It made one.


**B.     Portland's arguments about publication of the statute misunderstand the notice claim here.**

Portland repeatedly asserts that "publishing statutes authorizing vehicles to be towed" provided sufficient notice. Gov't Br. at 1; see also id. at 7, 8, 9, 13, 14, 17, 25.

Portland confuses notice of the _**law**_ and notice of the _**tow**_.

Portland conflates notice of the enacted law with notice of a specific property deprivation authorized by that law. See Opening Br. at 29 n.12. The notice claim here is about notice of the property deprivation, _i.e._, of the _**tow**_. Opening Br. at 24-26.

The distinction between notice of a property deprivation and notice of the law is deeply rooted:

> Where property is affected by generally-applicable legislative action, property owners are ***not*** entitled to notice above and beyond the notice provided by the enactment and publication of the statute. […] At the other end are individual adjudications, which require ***more specific procedures***, see, e.g., Mathews v. Eldridge, 424 U.S. 319, 335 (1976), as well as ***more specific notice***, see Dusenbery v. United States, 534 U.S. 161, 167-68 (2002); Mullane[.]

García-Rubiera v. Fortuño, 665 F.3d 261, 272 (1st Cir. 2011) (emphasis added).

Therefore, to provide notice of a specific property deprivation, due process requires "more specific notice" than "the enactment and publication of the statute." Id.

For example, in Mullane, the Supreme Court considered notice of a proceeding that "does or may deprive beneficiaries of property." 339 U.S. at 313. The party with the responsibility to provide notice had mailed "a copy of those [statutory] provisions" relevant to the proceeding. Id. at 310.

The Supreme Court was clear that even this direct mailing of the relevant *statute* was insufficient to provide notice of the *specific property deprivation*: "Certainly sending them a copy of the statute months and perhaps years in advance does not answer this purpose." Id. at 318.

Likewise, Portland's publication of its laws does not provide notice of its specific tow proceedings against Mr. Grimm.

21

Moreover, knowledge of delinquency is not equivalent to notice of an impending property deprivation. <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 800 (1983).

For example, a county had "initiated proceedings to sell [real] property for nonpayment of taxes." <u>Id.</u> at 794. Regarding notice of the property deprivation, the Supreme Court held that "a mortgagee's *knowledge of delinquency* in the payment of taxes *is **not** equivalent to notice* that a tax sale is pending." <u>Id.</u> at 800 (emphasis added). The latter "was the information which the [government] was constitutionally obliged to give ***personally***[.]" <u>Id.</u> (ellipsis omitted, emphasis added).

Quite simply, knowledge of Portland's towing laws is not equivalent to notice that a tow is impending.

The authorities relied upon by Portland (and by the district court) for this publication argument do not indicate otherwise. Instead, they involve *different claims* than the claim here.

The district court's dismissal was largely predicated on <u>Sackman v. City of Los Angeles</u>, No. CV 15—0090, 2015 WL 13357951 (C.D. Cal. May 8, 2015), <u>aff'd</u> 677 F. App'x 365 (9th Cir. 2017). ER 15-17.

Reliance upon <u>Sackman</u> was error.

22

<u>Sackman</u> was about notice of *laws*.  Ms. Sackman had "assert[ed] that posted signs informing her of the ***ordinance*** are required to provide constitutionally adequate notice."  <u>Sackman</u>, 2015 WL 13357951, at \*4 (emphasis added).  Her requested remedy was "posting these signs everywhere that the ***ordinance*** is applicable" to provide notice of the *law*.  <u>Id.</u> at \*13 n.7 (emphasis added).

The claim ***here*** is about notice <u>of the *tow*</u>—a specific property deprivation.  Opening Br. at 24-26, 29 n.12.

Also, Portland relies upon <u>Lone Star Security & Video, Inc. v. City of Los Angeles</u> for its publication argument.  Gov't Br. at 14 (quoting 584 F.3d 1232, 1237 (9th Cir. 2009)).

Respectfully, Portland didn't read <u>Lone Star</u> carefully.  Portland quotes from the section of <u>Lone Star</u> addressing a *different claim*.

<u>Lone Star</u> involved two different claims.  <u>Compare</u> 584 F.3d at 1235-1237 ("I. Invalid-Ordinance Claim") <u>with</u> <u>id.</u> at 1237-1239 ("II. Notice Claim").

Under the "invalid-ordinance" claim, the plaintiff "contend[ed] that its due process rights were violated *solely* by virtue of the City's acting under an ordinance that is invalid under state law."  <u>Id.</u> at 1236 (emphasis in original).

The plaintiff was "argu[ing] that if an ordinance is invalid under state law, it necessarily fails to provide a level of notice sufficient to satisfy due process." Id. Portland quotes from Lone Star's analysis of this *invalid-ordinance* claim. Gov't Br. at 14.

Portland's reliance on this Court's resolution of a *distinct* claim leads its argument astray. There is no invalid-ordinance claim ***here***. There is no challenge to the validity of Portland's substantive towing laws ***here***. The claim ***here*** is about notice of the ***tow***.

In sum, this appeal raises a notice claim about notice of a specific property deprivation. Mere publication of a *statute* is *not* notice of the impending *property deprivation*.

Regardless of whether this Court applies Mathews or Mullane, Portland is mistaken to think that publishing the statute suffices. Mathews requires "more specific procedures" and Mullane requires "more specific notice" than the mere "publication of the statute." See García-Rubiera, 665 F.3d at 272.

Notice of a tow is information that the government is "constitutionally obliged to give personally." See Mennonite, 462 U.S. at 800.

### C. Portland's own Parking Kitty app—not general "advances in technology"—give rise to this appeal.

The Opening Brief's position is simple: Portland's voluntary adoption and use of its _own_ Parking Kitty app to routinely contact drivers affects its notice obligations when towing app users.

Portland, however, attributes to the Opening Brief a different position, namely that generalized "advances in technology" are the basis of the notice claim here. Gov't Br. at 7, 9-10, 24.

This is wrong.

The Opening Brief used the phrase "advances in technology" just _**once**_ when quoting Justice Alito's concern that governments were not using technology to provide adequate notice. Opening Br. at 2 (quoting <u>Taylor v. Yee</u>, 136 S. Ct. 929, 930 (2016) (Alito, J., concurring in denial of cert.)).

By contrast, the Opening Brief mentions Parking Kitty over _**eighty**_ times. <u>See generally</u> Opening Br.

Indeed, the Opening Brief's position is based on specific, undisputed facts about Portland's _own_ Parking Kitty app:

- Portland had _voluntarily adopted_ an app and used it to routinely contact app users about their individual cars. ER 32-34, 38-40.

● Portland was using its app to contact Mr. Grimm *about **his car***.  (Yet when Portland decided to tow his car, Portland ceased all digital communications with him.)  <u>See</u> ER 27-28 ¶¶ 5-8.

● Portland's app is so integrated into its operations that *parking officers **must** <u>use the app</u>* to determine if a car is illegally parked.  <u>See</u> ER 40, 45 ¶ 4.

Parking Kitty—the technology Portland already uses—is the basis of the notice claim here.  Generalized "advances in technology" are not.

Frankly, Portland mischaracterizes the Opening Brief's position to distract from Portland's own position.

Portland takes the position that <u>Scofield</u>, a 1988 case, "readily dispose[s]" of this appeal involving Portland's 2017 mobile parking app (even though <u>Mathews</u> is notoriously context-driven).  <u>See</u> Gov't Br. at 11.  To Portland, its app is "ultimately irrelevant" here.  <u>Id.</u> at 28.

That suggestion is baffling.  It's tantamount to the assertion that, irrespective of the communication technologies that Portland adopts, Portland's notice obligations were frozen in 1988.  To Portland, its app has no bearing on its notice obligations no matter how easy it would be to provide direct notice to app users.

That's not how notice works, under either legal standard.

26

## III.   RATHER THAN ADDRESS THE DISPOSITIVE <u>JONES</u> BRIGHT-LINE OBLIGATION, PORTLAND RESPONDS TO ARGUMENTS NOT MADE.

### A.   Portland fails to address the <u>Jones</u> bright-line obligation.

Portland never cites <u>Jones v. Flowers</u>, 547 U.S. 220 (2006).  <u>See generally</u> Gov't Br.

Nor does Portland cite Ninth Circuit cases applying <u>Jones</u>.  <u>See generally</u> <u>id.</u> (nowhere citing <u>Chin Yi Tu</u>, 470 F.3d 941, or <u>Taylor</u>, 780 F.3d 928).

These are glaring omissions.

Indeed, <u>Jones</u> is so important a development of the <u>Mullane</u> standard that this Court terms it the "<u>Mullane</u>-***<u>Jones</u>*** standard."  <u>Taylor</u>, 780 F.3d at 937 (emphasis added).  The <u>Jones</u> bright-line obligation (and Portland's failure to heed that obligation) formed the centerpiece of the Opening Brief's <u>Mullane</u> application. Opening Br. at 31-41.

Portland is entirely unresponsive in this respect.  Portland fails to address <u>Mullane</u> ***<u>and</u>*** "its progeny[.]"  <u>Williams</u>, 531 F.3d at 1042.

Instead, Portland misconstrues <u>Mullane</u> as a test of general "reasonableness" that's been static since inception in 1950.  <u>See</u> Gov't at 23.  From there, Portland suggests that Mr. Grimm's "parking on a street for a week without payment" dooms his claim because such behavior is unreasonable.  <u>Id.</u> at 25.

27

It's worth noting that apparently unreasonable behavior often has good explanations.  See Dan's City Used Cars, Inc. v. Pelkey, 569 U.S. 251, 258 (2013) (car towed while owner was "[c]onfined to his bed with a serious medical condition" and then "admitted to the hospital for a procedure to amputate his left foot, during which he suffered a heart attack").  Plus, a seemingly minor matter like a tow can have cascading consequences.  Amici Br. at 11-18.

That's partly why notice matters.

Even absent a good explanation, Portland confuses *substance* with *procedure*.  Opening Br. at 41 n.14.  Mullane-Jones isn't about reasonableness of the behaviors that triggered government action.  That's what *substantive* law is about.  Id.

Indeed, far more unreasonable citizens have prevailed in asserting *procedural* notice claims under Mullane-Jones.

"[F]lying below proscribed minimum safe altitudes" at Mount Rushmore isn't reasonable.  See Chin Yi Tu, 470 F.3d at 943.  Not paying property taxes for years isn't reasonable.  See Mennonite, 462 U.S. at 793-794; Jones, 547 U.S. at 223.  Not paying rent isn't reasonable.  See Greene v. Lindsey, 456 U.S. 444, 445 (1982).

Yet all these unreasonable behaviors did ***not*** doom notice claims under Mullane-Jones.

28

Rather, those citizens prevailed because <u>Mullane</u>-<u>Jones</u> considers whether the ***government's*** attempts at notice were "reasonable calculated" (or not). <u>Mullane</u>, 339 U.S. at 314.

Failing to feed the meter may not be reasonable. Yet the notice claim here does not turn on whether it's reasonable to not feed a parking meter for a week. Rather, a notice claim turns on "the adequacy of the ***method*** used to give notice." <u>Dusenbery</u>, 534 U.S. at 168 (emphasis added); <u>Mullane</u>, 339 U.S. at 315 ("The ***means employed*** must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (emphasis added)).

Emphatically, Mr. Grimm's lacking diligence in checking on his property does not weigh against him: "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." <u>Id.</u> at 799. Even where a party didn't abide a "statutory obligation to keep his address updated[,]" that party still prevailed on a notice claim. <u>Jones</u>, 547 U.S. at 232.

The "Supreme Court has now made it clear that a plaintiff's sub-par diligence does not dissolve the government's notice obligations." <u>M.A.K. Inv. Grp., LLC v. City of Glendale</u>, 897 F.3d 1303, 1316 (10th Cir. 2018).

29

Mullane-Jones is about the ***government's*** reasonableness, not the property owner's reasonableness.  And, what is "reasonably calculated" under Mullane-Jones has well-developed doctrinal parameters:

- What is reasonable depends upon what the government knows about the individual.  E.g., Chin Yi Tu, 470 F.3d at 945.  (That's why being a registered user of Parking Kitty with contact information on file matters.)

- What is reasonable depends upon the methods available.  E.g., Greene, 456 U.S. at 454.  (That's why it matters that Portland had the "efficient and inexpensive" option of using Parking Kitty to provide notice.  See id. at 455.)

For those reasons, it's probably ***not*** reasonable for Portland to post alone when a method like Parking Kitty is available.  Opening Br. at 35-36.

Furthermore, Mullane-Jones reasonableness now comes with a bite.  It's the Jones bright-line obligation: if the government learns its attempts at notice are "unclaimed, the government **must** take additional steps to insure notice, if it is practicable to do so."  Chin Yi Tu, 470 F.3d at 945 (emphasis added, discussing Jones).

30

For that reason, it's definitively unreasonable not to attempt further notice in a non-emergency situation where the parking officer saw postings unclaimed. Opening Br. at 31-41.

Parking Kitty was one follow-up option. There were many others. <u>See</u> Opening Br. at 40 n.13; <u>Steward v. Mann</u>, 351 F.3d 1338, 1347 n.4 (11th Cir. 2003) ("The flexible nature of the due [process] notice requirement could allow for personal notice by in-person or telephone conversation, by a letter delivered by mail or e-mail, or by delivery[.]").

Instead of addressing <u>Jones</u>, Portland argues that "tangible" property— including cars—is treated differently under <u>Mullane</u>. Gov't Br. at 23-34.

Portland overlooks <u>Mullane</u>'s rationale about proceedings *in rem*. The <u>Mullane</u> Court was cognizant of the impracticability, *in 1950*, of a rule that would require tracking down "persons missing or unknown" to initiate proceedings against tangible property. <u>See</u> <u>Mullane</u>, 339 U.S. at 317.

<u>Mullane</u>, however, carefully distinguished unknown persons from persons "of known place of residence" because, with some contact information, providing notice wouldn't be impracticable. <u>See</u> <u>id.</u> at 318. Because Portland had Mr. Grimm's contact information "on its books[,]" <u>Mullane</u>'s concerns about tangible property don't apply. <u>See</u> <u>id.</u>

Regardless, Portland vastly overreads <u>Mullane</u>'s concerns about tangible property: "**As in <u>Mullane</u>**, we decline to resolve the constitutional question based upon the determination whether the particular action is more properly characterized as one *in rem* or *in personam*." <u>Greene</u>, 456 U.S. at 450 (emphasis added) (rejecting argument that for "an action *in rem*, notice by posting is *ipso facto* constitutionally adequate").

"Even in an *in rem* action, the [government] must" provide reasonably calculated notice. <u>Ehorn v. Sunken Vessel</u>, 294 F.3d 856, 859 (7th Cir. 2002).

Furthermore, the Supreme Court has relaxed the requirement that contact information be in the notice-provider's possession. Now, contact information need merely be "readily ascertainable[.]" <u>Mennonite</u>, 462 U.S. at 797.

Without discovery, it's unknown how Mr. Grimm's contact information is stored by Parking Kitty. Regardless, such information was clearly "readily ascertainable" because Portland was using it to contact Mr. Grimm—just not about the tow.

## B. Instead of addressing <u>Jones</u>, Portland responds to arguments not made.

The remaining points that Portland makes about <u>Mullane</u>-<u>Jones</u> respond to strawman arguments, not the Opening Brief.

Portland says "actual notice" isn't required.  Gov't Br. at 25.

Agreed.

Mullane-Jones does not mean that Portland "*must provide* actual notice, but that it *must attempt to provide* actual notice."  Dusenbery, 534 U.S. at 170 (emphasis in original).

*Attempting* to provide actual notice requires the government to take additional steps to ensure notice if it has reason to suspect earlier attempts failed. Chin Yi Tu, 470 F.3 at 945.  Portland did ***not*** take "relatively easy additional steps to effect notice" when its officer knew that postings were unclaimed and that Mr. Grimm was a registered Parking Kitty user.  See Jones, 547 U.S. at 237.  Portland fails Mullane-Jones.

Next, Portland says it doesn't need to "substitute the procedures proposed" by Mr. Grimm for those in use.  Govt' Br. at 25.

Agreed.

Portland needn't deign to implement a proposal by any private citizen. (And, contrary to Portland's implication, Mr. Grimm has no position on how Portland should correct its constitutional deficiency).

How Portland fixes its pre-towing notice practices for Parking Kitty users is up to Portland.  Opening Br. at 40 n.13.

33

Ultimately, "it is not this Court's duty to prescribe the form of service that the government should adopt, but rather it is sufficient to conclude additional reasonable steps were available but were not taken." Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R., 661 F.3d 354, 362 (8th Cir 2011) (cleaned up).

Finally, Portland says the Supreme Court "has never held that improvements in the reliability of *new procedures* ***necessarily*** demonstrate the infirmity of those that were replaced." Gov't Br. at 24 (quoting Dusenbery, emphasis added).

Agreed.

Suppose that, the day after Mr. Grimm's car was towed, Portland had adopted new, constitutionally sufficient tow-notification procedures.

Portland's hypothetical new procedures would not ***necessarily*** mean that Mr. Grimm prevails. Instead, ***applying*** the Mullane-Jones standard would demonstrate why Mr. Grimm should prevail—as the Opening Brief shows.

Regardless, Portland's point is a moot point. Portland has given no indication of any tow-notification policy changes since the tow. There are no new procedures. Even if there were, the Opening Brief doesn't rely on any policy changes by Portland in its arguments.

What truly matters here is Portland's conduct leading up to the tow of _**Mr. Grimm's**_ car. Portland's "exclusive reliance on an ineffective means of service is not notice 'reasonably calculated to reach those who could easily be informed by other means at hand.'" <u>Greene</u>, 456 U.S. at 455-456.

* * * * * *

Put yourself in Portland's position.

If you've repeatedly contacted someone using an app and email, and you also have their cell-phone number, it's hard to see how it's reasonable to _**exclusively**_ rely on Post-It Notes when you don't know where they are and it really matters to quickly get in touch with them.

Furthermore, it's definitely unreasonable to persist in relying on Post-It Notes if you suspect that your previous Post-Its have _**not**_ been received and you can easily contact the person digitally.

That's the logic of the <u>Mullane</u>-<u>Jones</u> standard, in plain English. That's why Portland didn't provide "adequate notice of the impending taking" of Mr. Grimm's car. <u>See</u> <u>Jones</u>, 547 U.S. at 234.

35

**IV.    PORTLAND DOES NOT APPLY THE THREE <u>MATHEWS</u> FACTORS IN LIGHT OF PORTLAND'S PARKING KITTY APP OR OREGON'S DRIVER-FRIENDLY STATUTES AND DOES NOT MEANINGFULLY RESPOND ABOUT FRCP 56(d).**

It is "well-established" that how due process applies "in any given case is a function of context.'" <u>Franceschi v. Yee</u>, 887 F.3d 927, 935 (9th Cir. 2018).

Thus, Portland's view that this appeal is controlled by decade(s)-old <u>Mathews</u> precedents is a non-starter.  Portland's preferred precedents lack critical contextual factors relevant here:

(1)  a government-adopted mobile parking app that affects the value and cost of the procedural safeguard; and

(2)  driver-friendly state laws that redefine the private and governmental interests.

Opening Br. at 43-54.

Indeed, Oregon law so reshuffles the deck that ***<u>Portland's</u>*** "interests are not incompatible with affording [pre-towing] notice[.]"  <u>See</u> <u>Memphis</u>, 436 U.S. at 18. There is no <u>Mathews</u> *<u>balancing</u>* to be done because the private and governmental interests align.

Separately, there are two housekeeping matters to address.

36

<u>First</u>, Portland calls the fact that Mr. Grimm's car was registered "misleading" because its registration stickers weren't updated. Gov't Br. at 12 n.5.

<u>Scofield</u>, however, distinguishes "unregistered" and "***apparently*** abandoned" vehicles. 862 F.2d at 764 (emphasis added). Mr. Grimm's car ***was*** registered, even though it wasn't "apparently" registered because the tags weren't updated yet. ER 30.

That matters. <u>Scofield</u> predicates its rationale regarding unregistered cars on the government's interest in "getting the car registered"—not getting stickers placed. <u>Id.</u> Portland's towing of Mr. Grimm's vehicle was not going to somehow get him to register his *already registered* vehicle.

<u>Second</u>, Mr. Grimm asserted FRCP 56(d) objections shortly after Portland shifted rationales in a reply brief. Portland's initial rationale—no obligation to provide pre-towing notice whatsoever—is a legal question. Portland's later rationale—that it might be impracticable to use Parking Kitty—requires discovery.

37

## V. PORTLAND'S AD HOMINEMS MERELY DEMONSTRATE MR. GRIMM'S CONCERNS ABOUT PORTLAND'S FAILURE TO CONSIDER CONSTITUTIONAL RIGHTS WHEN DEPLOYING PARKING KITTY.

The Government's Brief casts aspersions against Mr. Grimm because of Mr. Grimm's association with KnowTow. Gov't Br. at 2, 15-17.

None of this is germane to the legal issues, but a reply is warranted.

### A. Mr. Grimm did not intend to miss Christmas.

After he parked his car, Mr. Grimm did not return to where he had parked it until after it was towed. ER 27-28 ¶ 7. Also, the documents Portland posted to Mr. Grimm's windshield remained there unclaimed until after the tow. ER 28 ¶ 12. Portland has not disputed these facts.

Yes, Mr. Grimm failed to feed his meter, but he didn't want his car towed and he certainly didn't want to be left without transportation on Christmas. ER 28 ¶¶ 10-11. Had Mr. Grimm received notice of an impending tow, he would have moved his car promptly. ER 23 ¶ 5.

(There's been no discovery. Discovery into Mr. Grimm's situation would show that he was in a vulnerable state given recent life events, including being without secure housing. Cf. Amici Br. at 1 (mentioning "vehicularly housed

38

individuals").  In late 2017, however, Mr. Grimm had found a few months of temporary housing in Portland.)

**B.     KnowTow is immaterial to Portland's notice obligations.**

Then there's KnowTow.

Neither the Opening Brief nor this Reply Brief asserts anywhere that KnowTow has _any_ effect on Portland's notice obligations.  KnowTow is _only_ mentioned here to reply to Portland.

KnowTow is a civic-tech app modeled after an app created by the City of Boston, Massachusetts in 2007. https://www.cityofboston.gov/oldnews/Default.aspx?id=3678 (pilot program launched Nov. 1, 2007).[4]

Boston's app, called "NoTow," offers email, text, and auto-dialer alerts for towed vehicles:

---

[4] Judicial notice.



https://www.cityofboston.gov/towing/alerts/.[5]

---

[5] Judicial notice.

Boston's NoTow provides alerts for "cars towed for street cleaning, unpaid tickets, snow emergencies, as abandoned, and by Boston Police Department directive." https://www.cityofboston.gov/towing/alerts/faq.asp.[6]

KnowTow mimics NoTow's functionality but offers its services for free to cities. KnowTow's purpose is to prevent easily avoidable tows by using cheap, effective digital communication technologies now that smartphones are quasi-ubiquitous.

KnowTow has a team of three:

| Corporation Position | Name | Address |
|---|---|---|
| Secretary | FREDRICK GRIMM | 15287 PEPPERWOOD DR OMAHA, NE 68154 |
| Director | FREDRICK GRIMM | 15287 PEPPERWOOD DR OMAHA, NE 68154 |
| Director | ROBERT GRIMM | 15287 PEPPERWOOD DR OMAHA, NE 68154 |
| Director | ANDREW GRIMM | 15287 PEPPERWOOD DR OMAHA, NE 68154 |

SER 24.

Mr. Grimm's father, Fredrick, is a septuagenarian whose community involvement stretches back decades. Mr. Grimm's brother, Robert, is a professional app developer who codes for KnowTow on his spare time. Mr. Grimm is the team's lawyer.

---

[6] Judicial notice.

While Mr. Grimm was temporarily in Portland, a few factors led him to believe him that Portland might be interested in KnowTow's turn-key solution for avoiding involuntary tows. First, Portland—*i.e.*, Silicon Forest—is a technology hub. The government itself was expressly seeking private partners as part of its SmartCity initiative:



https://www.smartcitypdx.com/private-sector-partners.[7]

Second, Portland City Attorney Tracy Reeve is a respected advocate on social justice issues:

---

[7] Judicial notice.



[https://www.portlandoregon.gov/attorney/article/481053](https://www.portlandoregon.gov/attorney/article/481053).[8]

---

[8] Judicial notice.

Towing is a significant social justice issue, <u>see generally</u> Amici Br., so Mr. Grimm thought her Office might be enthusiastic. KnowTow offered its services and a legal theory. SER 3-12.

When her Office ignored the initial outreach, Mr. Grimm surmised that Parking Kitty probably already provided pre-towing notifications. He wasn't sure, but he knew Parking Kitty already sent digital communications.

KnowTow's follow-up email clarified that "KnowTow is a free service" and again offered to provide legal analysis about pre-towing notice. SER 13.

Her Office responded:

**To:** KnowTow Team[notify@knowtow.net]
**From:** Sneath, Kim
**Sent:** Wed 12/20/2017 5:08:52 PM
**Subject:** RE: KnowTow Has Launched In Portland

Thank you for contacting the City of Portland regarding your services.

The City does not require towing notification services at this time. Moreover, the City respectfully disagrees with your assertion that its towing notification procedures are unconstitutional.

Please note that all businesses doing business in the City of Portland must register with the City of Portland's Revenue Division. For more information, please visit https://www.portlandoregon.gov/revenue/59484.

Thank you.

KIM SNEATH | Office Administrator (She/Her)
PORTLAND OFFICE OF THE CITY ATTORNEY
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Voice: 503-823-3085 | Fax: 503-823-3089
kim.sneath@portlandoregon.gov
*Legal Assistant for Tracy Reeve & Robert Taylor*

SER 22. Portland's email reinforced his belief that Parking Kitty provided pre-towing notice.

He learned otherwise, the hard way.  Portland does not provide any pre-towing notice via Parking Kitty.

Mr. Grimm, however, did not form the subjective intent to sue until he learned the following:

- Portland's email really meant that Portland believed (as it still asserts) that it had no constitutional responsibility to provide electronic pre-towing notice to its Parking Kitty users;

- There appeared to be no attempt to notify of the tow until an hour before the tow via a "TOW" placard that the tow-truck company withheld from Mr. Grimm as he retrieved his car.  (When he sued, Mr. Grimm was unaware of any purported "WARNING" placard because the tow-truck employees suggested it did not exist.  ER 28-29 ¶¶ 12-14.  The "WARNING" placard has never been produced.); and

- Portland's chosen tow-truck company had an "F" from the Better Business Bureau.

45



https://www.bbb.org/us/or/portland/profile/towing-company/retriever-towing-1296-61000273.[9]

Since then, he's learned that Portland's SmartMeter program was embroiled in a public-corruption investigation and bribery scandal. See generally United States v. McCoy, No. 03:11-cr-00464-HZ, 2016 U.S. Dist. LEXIS 119908 (D. Or. Sept. 6, 2016).

---

[9] Judicial notice.



https://www.oregonlive.com/news/2011/08/federal_agents_raid_portland_p.html.[10]

---

[10] Judicial notice.

Ultimately, much of what Portland says about KnowTow doesn't make sense.

There is nothing nefarious about a civic-tech app responding to a city's solicitation of private partnerships or directing a legal app to the City Attorney's Office.

This lawsuit is not a marketing ploy. Neither Mr. Grimm nor KnowTow has made any public comments about this case since he filed suit in January 2018.

This lawsuit is not an attempt to bolster KnowTow's market position. It's quite the opposite: the Opening Brief's legal position would eviscerate any market for KnowTow. Cities with apps would use their own. Cities without apps wouldn't have pre-towing notice obligation that required an app.

If deep disagreements about constitutional rights end up in litigation, that's by Congressional design. Cf. Farrar v. Hobby, 506 U.S. 103, 122 (1992) (O'Connor, J., concurring) (discussing how "private attorney general theory" ensures "vindication of important rights, even when large sums of money are not at stake"). In this sense, Mr. Grimm is a private attorney general. Except, he didn't sue seeking fees below. He appeared *pro se*.

"While the City is entitled to maintain efficient, orderly parking, the manner in which it chooses to do so is not without constitutional limitation." Taylor v. City of Saginaw, 922 F.3d 328, 336 (6th Cir. 2019).

48

## CONCLUSION

This Court should reverse and remand for discovery.


Date: July 25, 2019                    Respectfully submitted,

                                       DIGITAL JUSTICE FOUNDATION

                                       */s/ Gregory Keenan*
                                       Gregory Keenan
                                       81 Stewart Street
                                       Floral Park, NY 11001
                                       (516) 633-2633
                                       gregory@digitaljusticefoundation.org

                                       *Attorney for Appellant Andrew Grimm*

49

## STATEMENT OF RELATED CASES

There are no pending related cases. A related appeal, No. 18-35388, was consolidated with this appeal but that appeal was dismissed with prejudice on February 15, 2019, pursuant to a FRAP 42(b) stipulation between Mr. Grimm and the private tow-truck defendant. Clerk's Order, No. 18-35388 Dkt. 19 / No. 18-35673 Dtk. 8. Mr. Grimm and the tow-truck defendant have settled.

Date: July 25, 2019                 Respectfully submitted,

                                    DIGITAL JUSTICE FOUNDATION

                                    */s/ Gregory Keenan*
                                    Gregory Keenan
                                    81 Stewart Street
                                    Floral Park, NY 11001
                                    (516) 633-2633
                                    gregory@digitaljusticefoundation.org

                                    *Attorney for Appellant Andrew Grimm*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that:

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6966** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: July 25, 2019               Respectfully submitted,

DIGITAL JUSTICE FOUNDATION

*/s/ Gregory Keenan*
Gregory Keenan
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2019, I electronically filed the foregoing APPELLANT'S REPLY BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: July 25, 2019

Respectfully submitted,

DIGITAL JUSTICE FOUNDATION

*/s/ Gregory Keenan*
Gregory Keenan
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*