No. 18-35673

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ANDREW B. GRIMM,

Plaintiff-Appellant,

v.

CITY OF PORTLAND et al.,

Defendants-Appellees.

On Appeal from the United States District Court
For the Portland District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman

## APPELLEE CITY OF PORTLAND'S
## PETITION FOR REHEARING *EN BANC*

On Appeal from the U.S. District Court for the District of Oregon
The Honorable Michael W. Mosman, District Judge

Denis M. Vannier, OSB No. 044406
denis.vannier@portlandoregon.gov
Senior Deputy City Attorney
YoungWoo Joh, OSB No. 164105
youngwoo.joh@portlandoregon.gov
Assistant Deputy City Attorney
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, OR 97204
Attorneys for Appellees

# TABLE OF CONTENTS

**INTRODUCTION** ......................................................................1

**ARGUMENT** ............................................................................2

I.    The panel decision is at odds with circuit precedent, and rehearing *en banc* is necessary to secure and maintain uniformity in this court's decisions..............................................3

       1. *Appellant parked unlawfully in a three-hour parking zone and knowingly did not return for at least 10 days*..............................................................................3

       2. *The panel decision conflicts with prior cases because eschewed the* Mathews v. Eldridge *analysis to conclude that individualized pre-towing was required*...............6

       3. *If the panel silently applied* Mathews*, its decision is inconsistent with this court's prior application*.............................................................8

           a. Scofield, Clement, *and* Lone Star *illustrate this court's application of the Mathews balancing test in towing cases*...............................9

           b. *In this case, the private interest was minimal, the risk of error insignificant, and the governmental interest substantial*..................13

           c. *If the panel silently applied* Mathews*, its application conflicts with circuit precedent*.......................................19

**II.    This proceeding involves a question exceptional importance regarding due process in towing cases**…………………………………………..……**20**

**CONCLUSION** ......................................................... **22**

**CERTIFICATE OF COMPLIANCE**……………………...……..**24**

**CERTIFICATE OF SERVICE**……………………………………**25**

iii

**Page(s)**

**Cases**

*Allen v. City of Kinloch,*
   763 F.2d 335 (8th Cir. 1985)................................................................20

*Breath v. Cronvich,*
   729 F.2d 1006 (5th Cir. 1984)..........................................................20

*Buckingham v. Sec'y of U.S. Dept. of Agriculture,*
   603 F.3d 1073 (9th Cir. 2010)..........................................................21

*Clement v. City of Glendale,*
   518 F.3d 1090 (9th Cir. 2008).................................................... passim

*De Franks v. Mayor and City Council of Ocean City,*
   777 F.2d 185 (4th Cir. 1985)............................................................20

*Kohler v. Presidio Int'l, Inc.,*
   782 F.3d 1064 (9th Cir. 2015)......................................................8, 19

*Lone Star Sec. & Video, Inc. v. City of Los Angeles,*
   584 F.3d 1232 (9th Cir. 2009).................................................... passim

*Mathews v. Eldridge,*
   424 U.S. 319 (1976).................................................................. passim

*Pimentel v. City of Los Angeles,* 974 F.3d 917 (9th Cir. 2020)..........17, 18

*Scofield v. City of Hillsborough,*
   862 F.2d 759 (9th Cir. 1988).................................................... passim

*Sutton v. City of Milwaukee,*
   672 F.2d 644 (7th Cir. 1982)............................................................10

*Texaco, Inc. v. Short,*
   454 U.S. 516 (1982)..........................................................................4

iv

# INTRODUCTION

Defendant-Appellee City of Portland ("the City") petitions for rehearing *en banc* of the panel opinion on this case. *Grimm v. City of Portland*, 971 F.3d 1060, 2020 WL 4914057 (9th Cir. 2020) (slip opinion attached). This petition is specific to the question of whether the Due Process Clause of the Fourteenth Amendment requires individualized notice before a city may tow a vehicle that has been parked unlawfully for seven days in a three-hour downtown parking spot.[1] 971 F.3d 1060 (slip op at 4-5). Here, without balancing the parties' interests and the risk of error under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the panel held that the Due Process Clause required individualized pre-towing notice. *Id.* (slip op at 7-10). The panel's conclusion was incorrect, and the city requests rehearing *en banc* for two independent reasons.

//

---

[1]     This petition is directed at only subpart II.A of the panel's opinion. The City does not request rehearing for the part of the opinion that concludes that, *if* individualized pre-towing notice is required, the *Mullane-Jones* standard governs the adequacy of the notice that must be provided.

1

First, the panel's eschewing of *Mathews* for the due-process analysis contradicts this court's precedent in such cases—indeed, even if the panel silently applied *Mathews* without expressly saying so, its conclusion that individualized pre-towing notice was required would still be at odds with this court's prior decisions. Second, this proceeding presents a question of exceptional importance to cities, which deal with issues of unlawful parking and abandoned vehicles daily. For those reasons, as explained further below, this court should grant rehearing *en banc*.

## ARGUMENT

**I.  The panel decision is at odds with circuit precedent, and rehearing *en banc* is necessary to secure and maintain uniformity in this court's decisions.**

Although the panel correctly noted that a government needs "strong justification" to permissibly tow an illegally parked car without individualized pre-towing notice, the panel concluded that the City lacked such justification without addressing the directly contrary reasoning in this court's prior cases. *See* 971 F.3d. 1060 (slip op at 7). This court should grant rehearing *en banc* to correct that conflict.

2

**1.      *Appellant parked unlawfully in a three-hour parking zone and knowingly did not return for at least 10 days.***

First, it is undisputed that plaintiff-appellant Andrew Grimm ("Grimm") parked his vehicle unlawfully in a three-hour downtown parking spot for seven days, at which point his vehicle was towed. (*See* Appellant's Excerpt of Record "ER" at 67, 83). On December 14, 2017, Grimm parked his vehicle in downtown Portland. (ER 45-61, 83). The vehicle had out-of-state plates and an expired registration sticker. (ER 44, 81). Grimm's parking permit expired at 7:00 p.m. that day. (ER 83). Shortly before 7:00 p.m. on December 14, 2017, the City sent a notification to Grimm on his iPhone notifying him that his parking payment was about to expire.[2] (ER 83).

The next day, Officer McHenry placed a parking citation on Grimm's vehicle, and Officer Earle placed similar parking citations on December 18, 19, and 21. (ER 45, 84-85). Officers also placed other citations on Grimm's vehicle, including for failure to display current

---

[2]      Grimm had paid for parking using the City's "mobile parking app" on his cell phone. (ER 13).

registration. (ER 45.) During that time, the vehicle did not move. (*See* ER 45, 60) (photograph showing multiple citations). By December 21, 2017, the vehicle had collected at least $550 in citations, (ER 47-59), and the City had the vehicle towed. 971 F.3d 1060 (slip op at 5). Grimm did not return to retrieve his car until ten days after his parking permit had expired. (ER 27.)

In short, as of 8 a.m. on December 15, 2020,[3] Grimm was aware that his vehicle was parked unlawfully both in fact, (ER 83), and as a matter of law. *See Texaco, Inc. v. Short*, 454 U.S. 516, 533 n.25 (1982) (holding that persons are charged with knowledge of the law). Under City code, it is "unlawful for any person to . . . permit any vehicle in their control or custody to remain in any parking meter space longer than the . . . designated time limit." Portland, Or. Code[4] § 16.20.430(A). Grimm's vehicle was parked in violation of Portland, Or. Code §

---

[3]    971 F.3d. 1060 (slip op at 5).

[4]    Relevant excerpts of City code are available in the addendum to the City's answering brief.

4

16.20.430(A) for seven days. Additionally, his failure to display current registration violated Portland, Or. Code §16.20.120(L). Portland, Or. Code §§ 16.30.210(A)(1), (2), and (9) authorize tows in those circumstances.

Lastly, Grimm's vehicle was properly considered abandoned or illegally stored in a three-hour downtown parking spot. The City code prohibits parking abandoned vehicles or storing vehicles in public ways. *See* Portland, Or. Code § 16.20.120(P) (abandoned vehicles), 16.20.170(A) (storing vehicles). Vehicles are considered abandoned if they "remain in violation for more than 24 hours" and "fail to display current registration." Portland, Or. Code § 16.90.005(A).[5] And "[f]ailure to operate and move a vehicle . . . off of the block face within a 24-hour period constitutes prima facie evidence of storage and may be abated." Portland, Or. Code § 16.20.170 (B). City code paragraphs 16.30.210(A)(10) and (11) authorize towing abandoned or stored

---

[5]     This section of City code is not in the City's addendum but is available at https://www.portlandoregon.gov/citycode/article/16333.

vehicles.

**2.** ***The panel decision conflicts with prior cases because it eschewed the* Mathews v. Eldridge *analysis to conclude that individualized pre-towing notice was required.***

Here, contrary to this court's prior decisions, the panel did not apply the *Mathews* balancing test, effectively creating a new categorical requirement of individualized pre-towing notice for all unlawfully parked vehicles. 971 F.3d 1060 (slip op at 9-10); *see Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988), *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), and *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232 (9th Cir. 2009). The panel simply presumed that due process required individualized pre-towing notice, and it distinguished this court's prior cases—which did *not* recognize that presumption—on their facts. The panel erred in doing so, and rehearing *en banc* is necessary to secure and maintain uniformity in this court's decisions.

First, without applying *Mathews*, the panel concluded that the city lacked a strong justification for towing before notice. 971 F.3d 1060 (slip op at 7-10). The panel stated that "notice is presumptively required"

6

and that the city had not "suggest[ed] that Grimm's car was blocking anyone's path," "that Grimm was a repeat offender," or that the vehicle was in fact unregistered. *Id*. The panel made no mention of *Mathews* for its conclusion that "*some* individualized form of pre-towing notice was required." 971 F.3d 1060 (slip op at 8-9) (emphasis in original).

The panel's approach to the due-process analysis contradicts circuit precedent. For example, in *Lone Star*, this court explained, "In evaluating whether pre-towing notice is constitutionally required in Lone Star's situation, we are guided by the context-specific balancing test set forth in *Mathews v. Eldridge*." 584 F.3d at 1238. Applying *Mathews* to the facts of the case, this court concluded that pre-towing notice was not required. *Lone Star*, 584 F.3d at 1238-39. In doing so, this court followed the same analytical approach as its prior decisions in *Scofield*, 862 F.2d at 763-64, and *Clement*, 518 F.3d at 1095-96.

Although this court in those cases noted that, under the Due Process Clause, the general rule is pre-deprivation notice, it nevertheless applied the "context-specific balancing test" from *Mathews*

7

to determine if an exception was warranted. *Lone Star*, 584 F.3d at 1238; *see Scofield*, 862 F.2d at 762 (accord); *Clement*, 518 F.3d at 1093-94 (same). Here, the panel decision effectively overrules that aspect of those prior cases, in contravention of this court's *stare decisis* jurisprudence. *See Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1070 (9th Cir. 2015) (stating that this court "will not overrule the decision of a prior panel of our court absent an *en banc* proceeding, or a demonstrable change in the underlying law"). Accordingly, *en banc* rehearing is necessary to ensure uniformity.

**3.    *If the panel silently applied* Mathews*, its decision is inconsistent with this court's prior application.***

Even if the panel silently applied the *Mathews* balancing test, its application of that test would still contradict circuit precedent. As explained in *Lone Star*, the *Mathews* test balances three factors: (1) the private interest affected, (2) the risk of erroneous deprivation under existing procedures, and (3) the government's interest, including its interest in minimizing fiscal and administrative burdens. *Lone Star*, 584 F.3d at 1238 (citing *Mathews*, 424 U.S. at 335).

8

Here, proper consideration of those factors compels the conclusion that—contrary to the panel decision—due process did not require "individualized pre-towing notice" under the facts of this case this case. The panel decision therefore poses a substantial risk of creating confusion in this area of law, and *en banc* rehearing is therefore necessary.

a.  Scofield, Clement, *and* Lone Star *illustrate this court's application of the* Mathews *balancing test in towing cases.*

Three cases illustrate this court's application of *Mathews* in due-process towing cases.

First, in *Scofield*, this court applied *Mathews* when it addressed the issue of due process and pre-towing notice for unregistered and illegally parked vehicles. *Scofield*, 862 F.2d at 762-64. In that case, the defendant-city had towed a vehicle under a state law that authorized tows of vehicles that were unregistered for over a year. *Id.* at 761.

To decide whether post-towing notice would violate the Due Process Clause, this court recognized that the question required "balanc[ing] the competing government and private interests." *Id.* at

9

762. In its *Mathews* analysis, this court adopted the Seventh Circuit's reasoning from *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982), and held that "the government interest in towing unregistered vehicles is analogous to the government's interest in towing illegally parked vehicles." *Id.* at 763-64. Specifically, towing unregistered vehicles without notice deters violation of laws and regulations, and pre-towing notice may result in the vehicles "simply being driven away."[6] *Id.* This court held further that, although there was a risk that a government might erroneously tow a vehicle based on incorrect registration information, the risk was "slight" and post-towing therefore satisfied due-process concerns. *Id.* at 764.

Next, in *Clement*, this court again applied *Mathews* to determine whether post-towing notice was sufficient when the defendant-city

---

[6] In *dicta*, this court also observed that the governmental interest might be furthered by pre-towing notice for abandoned vehicles because it would "encourage[] removal of the car from its place of repose." *Id.* at 764; *but see Clement*, 518 F.3d at 1096 (describing, in *dicta*, *Scofield* as holding that "there was a due process requirement that notice be given . . . before police could tow apparently abandoned vehicles that are otherwise legally parked").

towed a vehicle that was parked in a private parking lot and was registered as not-for-operation.[7] 518 F.3d at 1092, 1094. The defendant-city had towed the vehicle on the basis that it was in a "publicly accessible parking lot," and the city did so without first leaving any tickets on the vehicle. *Id.* at 1092.

This court observed that the "default rule is advance notice," but recognized that, under *Mathews*, "[t]he government need not give notice . . . if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose." *Id.* at 1093-94. This court then held that vehicle owners' private interest includes the interest in avoiding the "anxiety when [they] discover[] that [their] vehicle has mysteriously disappeared from its parking spot," as well as avoiding having to travel to the towing garage and pay for the related fees. *Id.* at 1094. For the government's

---

[7]     The vehicle was registered under California's "planned non-operation" program, which allowed owners to avoid paying for registration and insurance under a certification that they would not "drive on public roads or park in publicly accessible parking lots." *Clement*, 518 F.3d at 1092.

11

interest, this court held that there was no impact on traffic or a meaningful chance that the vehicle owner would abscond without paying a ticket, because the vehicle was parked in a private lot with consent and was properly registered within the state as not-for-operation at that address. *Id.* at 1095. On that basis, this court concluded that the circumstances required notice before the tow. *Id.* at 1096.

Finally, in *Lone Star*, this court again applied *Mathews* when a vehicle owner challenged the defendant-city's tow of the owner's advertising trailers. *Lone Star*, 584 F.3d at 1234. The city did so under authorization to tow vehicles left parked for 72 or more hours.

This court first held that the owner had little interest in uninterrupted use, because the owner was not using the trailers for transportation. *Id.* at 1238. This court also held that the interest in avoiding the costs and burdens discussed in *Clement* were constitutionally insignificant for this owner: the owner was a repeat offender who would experience no anxiety as he "knows that [the

12

trailer] has been towed" and appeared to view the risk of a tow as a business expense. *Id.* at 1238-39. Additionally, the risk of erroneous deprivation was "not substantial," and towing served the city's "interests in preventing vandalism, abating a nuisance and deterring [the owner's] practices." *Id.* at 1239. Accordingly, pre-towing notice was not required, and post-towing notice was sufficient.

b.  *In this case, the private interest was minimal, the risk of error insignificant, and the governmental interest substantial.*

Here, even if the panel silently applied *Mathews* to reach its conclusion that individualized pre-towing notice was required—and there is no indication than it did—its decision departs from above-described cases.

First, Grimm's private interest here was minimal. Grimm asserted the private interest of "uninterrupted use of one's vehicle." (Appellant's Opening Brief "Op. Br." at 50-51) (quotation marks omitted). But Grimm's supposed reliance on vehicle availability is undermined by him storing or abandoning vehicle in a time-limited parking spot and intending to do so for at least 10 days. *Cf. Lone Star*,

13

584 F.3d at 1238 (minimal interest in uninterrupted use for vehicles used as advertising). Indeed, the City did not tow Grimm's vehicle until it had sat for seven days in a three-hour downtown parking spot, and Grimm did not return to retrieve his vehicle until three days after it had been towed. 971 F.3d 1060 (slip op at 4, 5).

Additionally, Grimm does not and cannot claim anxiety, because his vehicle did not "mysteriously disappear[]." *Clement*, 518 F.3d at 1094. He was aware that he had parked in a three-hour downtown parking spot—indeed, he admitted receiving advance notice from the City, through a message sent to his cell phone, that his parking permit was about to expire. (*See* ER 83). Upon finding one's vehicle gone after ten days of unlawful parking in a three-hour downtown spot, it is common sense that it has likely been towed.

Furthermore, Grimm did not assert an interest in avoiding travel and fees related to the tow. In any event, those interests are minimal, considering that Grimm assumed the risk of collecting multiple parking fines by knowingly storing his vehicle in a three-hour parking spot and

14

not returning for ten days. *Cf. Lone Star*, 584 F.3d at 1238-39 (minimal private interest because owner treated risk of tow as business expense).

Second, the risk of erroneous deprivation in this case was constitutionally insignificant. "The determination that a car is illegally parked is pretty cut and dried." *Sutton*, 672 F.2d at 646; *see Lone Star*, 584 F.3d at 1239 (parenthetically quoting and relying on *Sutton*). The City code plainly prohibits exceeding time limitations on parking, parking without displaying current registration, and storing or abandoning vehicles in the street. *See* Portland, Or. Code §§ 16.20.120(L), 16.20.120(P), 16.20.170(A), and 16.20.431(A). And the code plainly authorizes the City to tow vehicles in those circumstances. *See* Portland, Or. Code §§ 16.30.210(A)(1), (2), (9)-(11).

There was therefore little to no risk of error here. Again, there is no dispute that Grimm intended to leave his vehicle parked in the three-hour downtown parking spot for at least ten days. And the City towed the vehicle only after it had collected numerous citations over seven days. Moreover, by at least the second citation on the fourth day,

15

the risk of erroneously concluding that the vehicle was illegally stored or abandoned was also constitutionally insignificant. *See* Portland, Or. Code §§ 16.20.170(B) (failure to move for 24-hours is *prima facie* evidence of storage), 16.90.005(A) (vehicles remaining in violation for more than 24 hours and failing to display current registration considered abandoned).

In a footnote, the panel rejected the City's argument, which relied on *Scofield*, that post-towing notice was sufficient here because Grimm's displayed vehicle registration was six months out of date. 971 F.3d 1060 (slip op at 10 n.5). The panel rejected that argument because "Grimm's car had been registered within the prior six months." *Id.* But the panel's focus on registration status misapplied the City code. The relevant violation was the failure to *display* current registration, Portland, Or. Code § 16.20.120(L), and it is undisputed that Grimm's vehicle failed to do so. Moreover, to the extent that the distinction between actual and displayed registration is relevant, the panel did not explain why parking-enforcement officers could not reasonably rely on a six-month

16

out-of-date registration sticker on an out-of-state vehicle.

Finally, the City's interests here are substantial. Indeed, "there is no real dispute that the City is harmed because overstaying parking meters leads to increased congestion and impedes traffic flow." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 924, (9th Cir. 2020). The governmental interest in towing cases is in removing of unlawfully parked or abandoned vehicles from public streets and deterring owners from violating parking regulations. *See Scofield*, 862 F.2d at 763-64 (adopting Seventh Circuit's reasoning in *Sutton*); *Lone Star*, 584 F.3d at 1239 (governmental interest includes "abating a nuisance"). Further, when fines are involved, tows can provide "security for the payment of the fine." *Clement*, 518 F.3d at 1095.

Those interests must be viewed in the context of the pertinent facts. *See Lone Star*, 584 F.3d at 1238 (test is "context-specific"). In the context of this case, the City had interests in ensuring the availability of a time-limited downtown parking spot, deterring the long-term storage of vehicles in those time-limited spots, deterring the failure to

display current registration, and ensuring payment of the $550 in fines by a vehicle-owner who appeared to be from another state and had effectively abandoned his vehicle for a week. Additionally, although Grimm's vehicle was not physically blocking a traffic lane, its overstay in the three-hour downtown parking spot indirectly impeded traffic flow. *Pimentel*, 974 F.3d at 924.

Notably, the panel mistakenly stated, without explanation, that "the tow was not needed to provide security for the payment of the fine." 971 F.3d 1060 (slip op at 9). But in reaching that conclusion, the panel misapplied *Clement*. In *Clement*, this court stated that, when a jurisdiction "can't be sure that the owner wont' move or hide the vehicle," a "tow provides security for the payment of the fine." 518 F.3d at 1094-95. That was the case here. Because Grimm's vehicle had out-of-state plates, parking enforcement officers could not be sure that, after notice, the owner would not simply drive the vehicle back out of the state without paying the $550 in fines. The panel erroneously concluded otherwise.

18

c.   *If the panel silently applied* Mathews, *its application conflicts with circuit precedent.*

The above analysis demonstrates that, even if the panel silently applied *Mathews*—which its opinion does not show—its application conflicts with circuit precedent. The panel's decision poses a substantial risk of creating confusion for litigants in similar due-process challenges, and rehearing *en banc* is necessary to correct that error.

Here, given Grimm's minimal private interest, the insignificant risk of error, and the justifying circumstances, the balance of the factors strongly resembles the circumstances in *Scofield*. The governmental interests should have therefore prevailed. The panel did not—indeed, could not—give a reasoned explanation for departing from the reasoning in this court's prior decisions. Accordingly, the panel decision effectively overrules this court's prior cases, in contravention of this court's *stare decisis* jurisprudence. *See Kohler*, 782 F.3d at 1070. *En banc* review is therefore necessary to ensure uniformity.

19

## II.  This proceeding involves a question of exceptional importance regarding due process in towing cases.

*En banc* review is also warranted on the independent basis that this proceeding involves a question of exceptional importance. At least three reasons support that basis for rehearing.

First, by forgoing the *Mathews* analysis and effectively establishing a categorical rule requiring individualized pre-towing notice in unlawful-parking cases, the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals.  Those other circuits have applied *Mathews* and determined that due process is satisfied if notice is provided after towing an illegally parked vehicle. *E.g.*, *Sutton*, 672 F.2d at 645, 648; *Breath v. Cronvich*, 729 F.2d 1006, 1010-11 (5th Cir. 1984) (adopting *Sutton*); *Allen v. City of Kinloch*, 763 F.2d 335, 336 (8th Cir. 1985) (same); *De Franks v. Mayor and City Council of Ocean City*, 777 F.2d 185, 187-88 (4th Cir. 1985) (same). Those determinations remain good law, and the panel decision in this case creates an unnecessary and unjustified circuit split.

Second, beyond that circuit split, the panel decision creates a

20

question of exceptional importance because it upends decades of consistent reliance on this court's application of *Mathews* to due-process challenges in towing cases. In doing so, the panel created a new, heightened constitutional requirement that will likely necessitate costly review and overhaul of parking-enforcement procedures throughout jurisdictions within the Ninth Circuit.

Finally, because the panel's opinion contains little explanation to support its conclusions, it can potentially apply far beyond the context of towing cases. Indeed, the panel's approach appears to substantially shift the burden onto the government in due-process cases. *Compare* 971 F.3d 1060 (slip op. at 7) ("notice is presumptively required"), *with Buckingham v. Sec'y of U.S. Dept. of Agriculture*, 603 F.3d 1073, 1082 (9th Cir. 2010) ("procedural due process does not require that the notice and opportunity to be heard occur before the deprivation") Such a potential sweeping effect is a question of exceptional importance to governmental entities and therefore warrants rehearing *en banc*.

21

**CONCLUSION**

As explained above, the panel decision conflicts with several decisions of this court—notably, *Scofield*, *Clement*, and *Lone Star*—by failing to apply the *Mathews* balancing test to reach its conclusion that individualized pre-towing notice was required in this case. Furthermore, even if the panel silently applied the *Mathews* test, its conclusion that individualized pre-towing notice was required here cannot be reconciled with this court's precedent. Finally, this proceeding involves questions of exceptional importance, because it creates an unjustified circuit split, upends longstanding reliance on this court's application of *Mathews* to due-process challenges in towing cases, and could potentially fundamentally alter this court's approach to due-process questions in other situations beyond towing. This court should therefore grant this petition for rehearing *en banc*.

Date: October 19, 2020

//

//

Respectfully submitted,

*/s/ YoungWoo Joh*

Denis M. Vannier, OSB No. 044406
Senior Deputy City Attorney
denis.vannier@portlandoregon.gov
YoungWoo Joh, OSB No. 164105
Assistant Deputy City Attorney
youngwoo.joh@portlandoregon.gov
Attorneys for Appellees

23

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(c)(2), Federal Rules of Appellate Procedure, I certify that the City Appellees' Petition for Rehearing *EnBanc* is proportionately spaced, has typeface of 14 points or more, and contains 3,866 words.

*/s/ YoungWoo Joh*
YoungWoo Joh, OSB No. 164105
Assistant Deputy City Attorney
youngwoo.joh@portlandoregon.gov
Attorney for Appellees

24

## CERTIFICATE OF FILING AND SERVICE

I, YoungWoo Joh, certify that on October 19, 2020 I filed electronically APPELLEE CITY OF PORTLAND'S PETITION FOR REHEARING *EN BANC* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using appellate CM/ECF system, that all parties to whom I am required to provide service are registered CM/ECF users, and that service of the APPELLEE CITY OF PORTLAND'S PETITION FOR REHEARING *EN BANC* shall be accomplished by the appellate CM/ECF system.

DATED: October 19, 2020

*s/ YoungWoo Joh*
YoungWoo Joh, OSB No. 164105
Assistant Deputy City Attorney
youngwoo.joh@portlandoregon.gov
Attorney for Appellees

25

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREW GRIMM, *Plaintiff-Appellant*, | No. 18-35673 |
| | D.C. No. 3:18-cv-00183-MO |
| v. | |
| CITY OF PORTLAND; L. MCHENRY; F. EARLE; RETRIEVER TOWING, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted December 13, 2019
Seattle, Washington

Filed August 21, 2020

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Roger T. Benitez, United States District Judge for
the Southern District of California, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel reversed the district court's summary judgment in favor of the City of Portland in an action alleging that the City's pre-towing notice was inadequate under the Fourteenth Amendment's Due Process Clause.

The panel first reiterated a settled principle: Due process requires that individualized notice be given before an illegally parked car is towed unless the state has a "strong justification" for not doing so. *Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008).

The panel held that the district court erred by relying on a 2017 unpublished disposition, *Sackman v. City of Los Angeles*, 677 F. App'x 365, 366 (9th Cir. 2017), which affirmed the application of the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to a towing notice case. The panel held that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), rather than *Mathews*, sets forth the appropriate standard for analyzing the adequacy of a pre-towing notice claim. Under *Mullane*, the government is required to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Because the district court applied an incorrect legal standard in determining whether the pre-towing notice was sufficient, and the record was not fully developed, the panel remanded this case to the district court. On remand, the panel instructed the district court to consider, among other questions: (1) Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?; (2) Did the red tow slip placed on plaintiff's car shortly before the tow provide adequate notice?; and (3) Was Portland required under *Jones v. Flowers*, 547 U.S. 220 (2006) to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

---

## COUNSEL

Gregory Keenan (argued), Digital Justice Foundation, Floral Park, New York, for Plaintiff-Appellant.

Denis M. Vannier (argued), Senior Deputy City Attorney, Office of the City Attorney, Portland, Oregon, for Defendants-Appellees.

Barry W. Lee, Stephanie A. Roeser, Noro Mejlumyan, and Benjamin G. Shatz, Manatt Phelps & Phillips LLP, San Francisco, California; Rebekah Evenson and Claire Johnson Raba, Bay Area Legal Aid, Oakland, California; Elisa Della-Piana and Jude Pond, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, San Francisco, California; for Amici Curiae San Francisco Coalition on Homelessness, Lawyers' Committee for Civil Rights of the SF Bay Area, and Bay Area Legal Aid.

---

## OPINION

BERZON, Circuit Judge:

The City of Portland ("Portland") left six citations on Andrew Grimm's illegally parked car over the course of seven days. On the seventh day, Portland left a red tow slip on Grimm's windshield. Retriever Towing then towed the car.

Grimm filed suit, alleging that the pre-towing notice provided was inadequate under the Fourteenth Amendment's Due Process Clause. The district court relied exclusively on an unpublished opinion of this Court to grant Portland's motion for summary judgment, concluding that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the citations left on Grimm's windshield were constitutionally sufficient notice that the car would be towed if not moved. We hold that the district court erred in applying *Mathews* rather than *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), to analyze Grimm's adequacy of notice claim.[1]

## I.

Grimm parked his car on a public street in Portland on December 14, 2017 and paid for parking via Portland's

---

[1] Grimm also claims that summary judgment was inappropriate because the district court ignored Grimm's request under Fed. R. Civ. P. 56(d) for discovery into the practicability of providing notice through Portland's mobile phone parking app. Because we reverse the district court's grant of summary judgment and remand for further proceedings based on the district court's application of an incorrect legal standard, we do not reach Grimm's argument regarding his Fed. R. Civ. P. 56(d) objections. We also deny as moot Grimm's motion for judicial notice of facts. *See Hoffmann v. Pulido*, 928 F.3d 1147, 1152 n.4 (9th Cir. 2019).

mobile phone parking app. Grimm was required to pay for parking again as of 8:00 am on December 15. Grimm neither paid for parking nor moved his car.

Over the next seven days, Portland officers left on Grimm's car windshield four citations for parking illegally and two citations for displaying expired registration stickers. On December 21, the day Grimm's car was towed, the officer issuing Grimm's sixth and final citation also placed a "separate red tow slip" on Grimm's windshield. The slip had the word "TOW" on one side and an order to tow the vehicle on the other.[2] The officer then contacted Retriever Towing, which "promptly"—how promptly the record does not disclose—towed Grimm's car. Grimm learned that his car had been towed when he looked for it on December 24.

Grimm, an attorney, filed a pro se lawsuit against Retriever Towing, Portland, and the Portland officers who issued his citations. When Retriever Towing filed a motion to dismiss, Grimm sought to stay discovery, explaining in his motion to stay discovery that the "resolution of legal issues raised by Retriever Towing's [motion to dismiss] will

---

[2] Portland maintains that an officer also left a red warning slip with the December 19th citation. The slip "had the word 'WARNING' in large print on one side and on the back side . . . provided a warning and notice stating, 'Your vehicle will be subject to tow/citation if it is not moved.'" Grimm submitted contrary evidence in support of his contention that no warning slip was placed on the windshield. The photographs taken by the officers issuing Grimm's citations do not reflect a warning placard, and Retriever Towing did not provide Grimm with a warning placard, even though it gave him the citations and showed him the red TOW placard left on his car. "[D]raw[ing] all inferences in the light most favorable to the nonmoving party," *Gravelet-Blondin*, 728 F.3d 1086, 1090 (9th Cir. 2013) (citation and quotation marks omitted), we assume for present purposes that there was no such warning.

be helpful in determining the necessary scope of discovery for all parties."

The district court dismissed Grimm's case against Retriever Towing ("the dismissal"). The dismissal relied principally on a 2017 unpublished disposition from this Court, *Sackman v. City of Los Angeles*, 677 F. App'x 365, 366 (9th Cir. 2017), affirming the application of the *Mathews* balancing test in a towing notice case. Grimm appealed the dismissal but has since withdrawn that appeal after settling his suit against Retriever Towing.

Portland then filed a motion for summary judgment, incorporating arguments from Retriever Towing's motion to dismiss. At the end of a twelve-minute hearing, the district court granted Portland's motion, relying on the dismissal's reasoning to reject Grimm's argument that *Mullane* was the applicable legal standard for his adequacy of notice claim. Now before us is Grimm's appeal of the district court's grant of summary judgment.

## II.

Grimm argues that (1) pre-towing notice was required; (2) the district court applied the incorrect legal standard when considering Grimm's adequacy of notice claim; and (3) the pre-towing notice given was inadequate, principally because Portland was obligated to attempt other forms of notice when the car was not moved and the citations remained on the windshield. Reviewing de novo the district court's denial of summary judgment, *Gravelet-Blondin*, 728 F.3d at 1090, we reverse the grant of summary judgment and remand for further proceedings.

**A.**

We first reiterate a settled principle: Due process requires that individualized notice be given before an illegally parked car is towed unless the state has a "strong justification" for not doing so. *Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008). *Clement* explained that due process "require[s] that notice generally be given *before* the government may seize property," and held that failing to give notice before towing an unregistered car that had a planned non-operation (PNO) certificate[3] for noncompliance with the PNO certificate was a due process violation. *Id.* at 1093, 1095–96.

The general requirement that the government provide individualized pre-tow notice reflects the important private interest at stake when the government orders that a private car be towed. *Clement* explained that "having one's car towed, even one that's not operational, imposes significant costs and burdens on the car's owner." *Id.* at 1094. And as this Court has repeatedly recognized, "[t]he uninterrupted use of one's vehicle is a significant and substantial private interest." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1238 (9th Cir. 2009) (quoting *Scofield v. City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988)). Towing practices "disproportionately prejudice[e] low-income" populations as towing can "permanently depriv[e] low-income individuals of their vehicles (which often serve as their sole source of income or even their home)." Brief of the San Francisco Coalition On Homelessness, The Lawyers'

---

[3] PNO certificates allow car owners who neither drive on public roads nor park in publicly accessible parking lots to avoid paying to register their cars. *Clement*, 518 F.3d at 1092 (citing Cal. Veh. Code § 4000(a)(1)).

8          GRIMM V. CITY OF PORTLAND

Committee For Civil Rights Of The SF Bay Area, and Bay
Area Legal Aid as Amici Curiae, Dkt. No. 16 at 11–12. For
such individuals, "municipal tow practices often create a
'debt trap for the poor,'" *id.* at 16, because, without access
to one's car, obtaining and maintaining economic security
becomes problematic, *id.* at 11–18. *Clement* held that
imposing the burdens associated with a towed car without
providing notice "cannot be justified as a means of deterring
illegal parking." 518 F.3d at 1094.

We have recognized a few exceptions to the pre-towing
notice requirement. *Clement* explained that it would not
violate due process to tow a car without providing
individualized pre-towing notice if "the car is parked in the
path of traffic, blocking a driveway, obstructing a fire lane[,]
. . . appears abandoned," or has "no current registration
stickers and police can't be sure that the owner won't move
or hide the vehicle, rather than pay the fine for illegal
parking." *Id.* at 1094–95. *Clement* cited to *Scofield* for the
abandonment exception, and characterized *Scofield* as
"authorizing towing in cases where the state has no current
information on the whereabouts of the owner because notice
in such a case could allow the owner to abscond with the
vehicle." *Id.* at 1095. But *Clement* emphasized that "the
default rule is advance notice and the state must present a
strong justification for departing from the norm." *Id.* at 1094.

In short, pre-towing notice is presumptively required.

Portland asserts that under *Lone Star Sec. & Video, Inc.
v. City of Los Angeles*, the city provided Grimm with
adequate pre-towing notice by publishing laws that
authorized the tow, and that the six citations and red tow slip
left on Grimm's windshield were therefore more than
sufficient. This argument fails.

Portland relies for its argument on a section of *Lone Star* that addresses the validity of a city ordinance, not any notice requirement. 584 F.3d at 1237.[4] In a different section of the opinion, *Lone Star* does discuss a notice claim, holding that, as an exception to *Clement*'s "general rule," pre-towing notice is not required for certain repeat offenders. *Id.* at 1238. The notice aspect of *Lone Star* makes no reference to whether providing pre-towing notice solely through a published law authorizing a tow is constitutionally permissible. *Id.* at 1237–39. And our holding in *Lone Star* that pre-towing notice is not required for a repeat offender who has already received constitutionally adequate pre-towing notice on prior occasions does not affect *Clement*'s teaching that pre-towing notice is presumptively required; it just elucidates another circumstance in which the presumption gives way.

As the district court recognized, then, *some* individualized form of pre-towing notice was required before Portland could tow Grimm's car. The government does not suggest that Grimm's car was blocking anyone's path, *see Clement*, 518 F.3d at 1094, or that Grimm was a repeat offender, *see Lone Star*, 584 F.3d at 1237–39. And, although Grimm forgot to replace the registration stickers on his car, *see Clement*, 518 F.3d at 1094–95; *Scofield*, 862 F.2d

---

[4] Lone Star challenged an ordinance that "prohibited parking in an otherwise legal public spot for more than 72 hours in the aggregate during any period of 73 consecutive hours" as pre-empted by, and thus invalid under, state law. *Lone Star*, 584 F.3d at 1234 (internal quotation marks and emphasis omitted). Lone Star contended that because its parked trailer was towed according to an ordinance that was "itself unauthorized," the company's federal right to due process was violated. *Id.* at 1235–36. This Court rejected Lone Star's argument, holding that "Lone Star's invalid-ordinance claim allege[d] no facts that could plausibly constitute a due process violation." *Id.* at 1237.

at 764, the vehicle *was* properly registered at the time of the tow.[5] Portland therefore could obtain current information on the whereabouts of the owner, and the tow was not needed to provide "security for the payment of the fine." *Clement*, 518 F.3d at 1095. As due process required advance individual notice of a tow under *Clement*, the pivotal question on appeal is what legal standard governs whether the specific notice given was sufficient.

## B.

Grimm's central argument on appeal is that the district court applied the wrong legal standard when granting Portland's motion for summary judgment, and by doing so failed properly to determine whether the pre-towing notice Portland gave Grimm was adequate. Grimm maintains that *Mullane*'s "reasonably calculated" standard, rather than the *Mathews* balancing test, is the legal standard applicable to his adequacy of notice claim. We agree.

### i.

To ground our analysis, we begin by explaining how the *Mullane* and *Mathews* standards differ and why applying

---

[5] Portland argues that it could have towed Grimm's car without individualized pre-towing notice under *Scofield* because Grimm's car *appeared* to be unregistered. This argument is unavailing. *Scofield* held that "due process does not require that a pre-towing notice be given to the owner of a vehicle which *has been unregistered for more than one year* from the date on which it is found parked on a public street before the car can be towed." 862 F.2d at 764 (emphasis added). Grimm's car *was* registered at the time of the tow, and it was apparent even from the expired stickers displaying "June 2017" that Grimm's car had been registered within the prior six months.

*Mullane* rather than *Mathews* could affect the outcome of this case.

Seventy years ago, *Mullane v. Central Hanover Bank & Trust Co.* held that notice of a judicial settlement through an announcement in a local newspaper violated due process. 339 U.S. at 319. *Mullane* held that

> [a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . with due regard for the practicalities and peculiarities of the case.

*Id.* at 314–15. Applying that standard, the Court explained that the notice provided through a local newspaper announcement was "inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319. *Mullane* has since its issuance been consistently understood as establishing a "reasonably calculated" standard that governs the adequacy of notice inquiry. *See, e.g.*, *Robinson v. Hanrahan*, 409 U.S. 38, 39–40 (1972) (collecting cases).

Twenty-six years after *Mullane*, *Mathews v. Eldridge* created the oft-cited three-part balancing test applicable when analyzing "the specific dictates of due process." 424 U.S. at 335. *Mathews* recognized that "due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances," *id.* at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)), and held:

> [T]he specific dictates of due process generally requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

It was not immediately obvious whether the *Mathews* balancing test subsumed *Mullane*'s "reasonably calculated" standard as applied to notice requirements. *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002), clarified that point, holding that *Mathews* and *Mullane* coexist, and that *Mullane*'s "reasonably calculated" standard continues to apply, without any balancing test, when courts are determining whether a *method* of notice satisfied due process. Applying the *Mullane* standard, not *Mathews*, *Dusenbery* held that the government provided adequate notice to a federal prisoner when it mailed notice regarding the prisoner's property forfeiture to the penitentiary where he was held. *Id.* at 172–73. We have since recognized and applied *Dusenbery*'s holding that *Mullane* and *Mathews* address distinct due process concerns. *See, e.g.*, *Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1193 n.17 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016).

Whether to use the *Mullane* standard rather than the *Mathews* balancing test is a potentially dispositive decision in this case, as we now explain. Central to Grimm's position in this case is his argument that *Jones v. Flowers*, 547 U.S. 220 (2006), extended *Mullane* in a manner that affects Portland's notice obligations. *Jones* held that the government did not provide adequate notice of a tax sale of a property when the notice it provided through certified mail later was returned as unclaimed. 547 U.S. at 221. As *Jones* explained, "[k]nowledge that notice was ineffective was one of the 'practicalities and peculiarities of the case' taken into account" under *Mullane*'s reasonably calculated standard. *Id.* (quoting *Mullane*, 339 U.S. at 314–15). Thus, *Jones* held that, because "additional reasonable steps were available to the State," the certified mail notice was inadequate. 547 U.S. at 225.

Relying on *Jones*, Grimm argues that even if the tickets on his car could have provided notice of the tow, Portland should have known that notice of the tow through posting on his car had been ineffective when the car was not moved and the parking tickets remained on the car's windshield. With that awareness, Grimm maintains, Portland was required to take additional reasonable steps to notify him of the tow. One such "reasonable step," Grimm suggests, would have been to provide electronic notice through Portland's parking app. As explained *infra*, the district court should address this argument in the first instance. *See* Section II.C.

### ii.

The district court did not consider the differences between *Mullane* and *Mathews*. Instead, the district court relied on *Sackman*, a non-precedential memorandum disposition of this Court, which the district court misunderstood as holding that the pre-towing, such as that

provided to Grimm, was adequate under *Mathews*.[6] This reliance was misguided for two reasons.

First, non-binding memorandum dispositions like *Sackman* are "not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." U.S. Ct. of App. 9th Cir. R. 36-3(a). *Sackman*'s holding therefore was not a binding ruling of this Court, and it should not have been relied upon by the district court as the dispositive basis for its ruling.

Unpublished dispositions provide shorthand explanations meant to apprise the parties of the basis for a decision. This practice "frees us to spend the requisite time drafting precedential opinions in the remaining cases," and limits the "confusion and unnecessary conflict" that would result from publishing redundant opinions. *Hart v. Massanari*, 266 F.3d 1155, 1178–79 (9th Cir. 2001). The facts of cases resolved through memorandum dispositions, if described—they often are not—are typically opaque, as the parties already know the facts. Ninth Circuit General Order 4.3(a). And the reasoning in the dispositions is rarely developed enough to acknowledge and account for competing considerations, reconcile precedents that could be seen as in tension with each other, or describe limitations to the legal holdings—because, in theory, there are no new legal holdings, just applications of established law to facts. *Id.*; *see also* U.S. Ct. of App. 9th Cir. R. 36-2(a). Designedly lacking, because of their limited function, the nuance and

---

[6] We note that even if *Sackman* had been a precedential opinion, its due process holding would not have governed here. *Sackman* addressed a claim that pre-towing *and pre-citation* notice was required and involved a citation that "provided further pre-towing notice" two days before the vehicle was towed. 677 F. App'x. at 365–66.

breadth of precedential opinions, this Court's memorandum dispositions are not only officially nonprecedential but also of little use to district courts or litigants in predicting how this Court—which, again, is in no way bound by such dispositions—will view any novel legal issues in the case on appeal. *Hart*, 266 F.3d at 1177–78.

So, although memorandum dispositions can be cited, and may prove useful, as examples of the applications of settled legal principles when a district court or litigant is interested in demonstrating how a given principle operates in practice, a nonprecedential disposition is not appropriately used—as it was here—as the pivotal basis for a legal ruling by a district court. Among other problems with such usage, heavy reliance by a district court on a nonprecedential disposition leaves this Court on appeal without a legal analysis to review, as the disposition relied upon by the district court has at most marginal relevance to our analysis on appeal.

Second—and relatedly—under the governing Supreme Court case law and our precedents, the district court applied the incorrect legal standard here. *Mathews* governs the question of whether and when due process requirements, including notice, is required, but *Mullane* governs Grimm's adequacy of notice claim.

Ninth Circuit caselaw supports the understanding that *Mathews* applies when determining whether individualized pre-towing notice is required *at all*, *not* what form of notice is required. *Scofield*, for example, applied *Mathews* to determine whether *any* notice was required before a car was towed. 862 F.2d at 762. Similarly, *Lone Star* applied *Mathews* to determine whether individualized notice was required before towing a repeat offender. 584 F.3d at 1238–39. But this Court has not had occasion to address what legal

standard applies when determining whether the pre-towing notice provided was adequate.

In other contexts, this Court has recognized that *Mullane*, rather than *Mathews*, generally governs adequacy of notice claims. *Nozzi v. Housing Authority of City of Los Angeles*, for example, citing *Mullane*, explained that "the Supreme Court applies a streamlined test when the only question to be decided is whether the government has provided sufficient notice and there is no request for further procedural safeguards." 806 F.3d at 1193 n.17. *California* ex rel. *Lockyer v. F.E.R.C.*, 329 F.3d 700 (9th Cir. 2003), similarly stated that the Supreme Court "has used due process analyses different from the *Mathews v. Eldridge* analysis in only a few specific contexts," including "to evaluate the adequacy of notice." *Id.* at 709 n.8 (citing *Dusenbery*, 534 U.S. at 168).

No reason appears why *Mullane* should not govern the adequacy of pre-towing notice, as it governs the adequacy of notice in other contexts. *Mullane*, as elucidated by *Dusenbery* and *Jones*, "requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314); *see also Taylor v. Yee*, 780 F.3d 928, 934 (9th Cir. 2015). Grimm's central claim is that the type of pre-towing notice Portland provided was inadequate. He does not claim that there was *no* notice, that he should have been afforded an opportunity to be heard, or that any other procedural safeguard was required before Portland could tow his car. The *Mullane* "reasonably calculated" standard—rather than the *Mathews* balancing test—therefore applies.

## C.

We do not address Grimm's further arguments—that the pre-towing notice provided was insufficient under the *Mullane-Jones* standard and that Portland was required to provide notice through other means, such as the city's mobile phone parking app. The district court erred in applying the *Mathews* balancing test, and "where application of incorrect legal standards may have influenced the district court's conclusion, remand is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 442 (9th Cir. 2017). Although we have discretion in reviewing a grant of summary judgment to apply the correct standard ourselves, *see, e.g.*, *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 641–42 (9th Cir. 2017), that course would be inappropriate here. Because discovery was stayed while the district court decided the applicable standard, the present record is not fully developed, especially regarding the application of *Jones*. The analysis under *Mullane* and *Jones* will require the district court to decide whether the citations and tow placard provided "reasonably calculated" notice of the tow, and whether, if Portland had knowledge that notice was ineffective, it was practicable to notify Grimm through other means.

We therefore remand this case to the district court to consider, among other questions: (1) Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?; (2) Did the red tow slip placed on Grimm's car shortly before the tow provide adequate notice?; and (3) Was Portland required under *Jones* to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

### III.

For the foregoing reasons, we conclude that individualized pre-towing notice was required, and that the *Mullane* "reasonably calculated" standard governs the adequacy of notice claim here. The district court's grant of summary judgment to Portland is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

**United States Court of Appeals for the Ninth Circuit**

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)  A.  Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.  Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

> ► The proceeding involves a question of exceptional importance; or

> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                         **Date**

*(use* "s/[typed name]" *to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| **TOTAL:** | | | | $ |

***Example:*** *Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 10**                                                                 *Rev. 12/01/2018*