No. 18-35673

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

ANDREW GRIMM,

*Plaintiff-Appellant*,

v.

CITY OF PORTLAND,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman, United States District Judge

_____

MOTION-REQUEST FOR
AWARD OF INTERIM ATTORNEY FEES

_____

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iv

MOTION-REQUEST ............................................................................... 1

MEMORANDUM .................................................................................... 2

    I.     As a Prevailing Civil-Rights Plaintiff, Mr. Grimm is Eligible for and Presumptively Entitled to Attorney Fees...................... 2

          A.    This Court materially altered the Parties' legal relationships by establishing Portland's obligations to provide individualized, pre-towing notice. .............................................. 4

          B.    The material alteration in the Parties' legal relationships is judicially sanctioned because the alteration was caused by this Court's Opinion.................................................................. 13

          C.    Mr. Grimm should be awarded interim attorney fees by this Court because he is eligible for them and is a prevailing civil-rights plaintiff. ................................................................ 16

    II.    Although an Interim Fee Award Under the Lodestar Method Would Be about $200,000, Several of the Kerr Factors Weigh in Favor of a Significant Upward Adjustment Here. ............................................................................. 20

          A.    Under the lodestar method, about $200,000 in attorney fees for the appellate work done here is presumptively reasonable................................................................................... 21

          B.    Several of the Kerr factors weigh sharply in favor of a significant upward adjustment in the attorney fees awarded here........................................................................................ 24

CONCLUSION...................................................................................... 27

CERTIFICATE OF COMPLIANCE...................................................... 28

DECLARATION OF GREGORY KEENAN ........................................................29

EXHIBITS TO KEENAN DECLARATION

EXHIBIT A:  Form 9 Equivalent
EXHIBIT B:  Itemization of Hours
EXHIBIT C:  Justification of Hourly Rate
EXHIBIT D:  Hamilton Declaration

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

<u>All American Distributing Co. v. Miller Brewing Co.</u>,
    736 F.2d 530 (9th Cir. 1984). ....................................................................6, 12

<u>Anderson v. Dir., Office of Workers Comp. Programs</u>,
    91 F.3d 1322 (9th Cir. 1996). ....................................................................1, 22

<u>Animal Lovers Volunteer Assoc. v. Carlucci</u>,
    867 F.2d 1224 (9th Cir. 1989). ......................................................................10

<u>Astrue v. Ratliff</u>,
    560 U.S. 586 (2010).........................................................................................2

<u>Ballen v. City of Redmond</u>,
    466 F.3d 736 (9th Cir. 2006). ........................................................................20

<u>Benton v. Or. Student Assistance Comm'n</u>,
    421 F.3d 901 (9th Cir. 2005). .........................................................................13

<u>Bravo v. City of Santa Maria</u>,
    810 F.3d 659 (9th Cir. 2016). ................................................................. 20, 24

<u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>,
    532 U.S. 598 (2001).................................................... 2, 4, 13, 14, 17

<u>Carbonell v. INS</u>,
    429 F.3d 894 (9th Cir. 2005). .......................................................... 2, 3, 7, 13

<u>Chafin v. Chafin</u>,
    568 U.S. 165 (2013).........................................................................................9

<u>Citizens for Better Forestry v. U.S. Dep't of Agric.</u>,
    567 F.3d 1128 (9th Cir. 2009). .........................................................................6

<u>Clement v. City of Glendale</u>,
    518 F.3d 1090 (2008). ....................................................................................19

<u>Close v. Sotheby's, Inc.</u>,
    909 F.3d 1204 (9th Cir. 2018). ..........................................................................6

iv

CRST Van Expedited, Inc. v. EEOC,
    136 S. Ct. 1642 (2016)................................................................2, 4

Cunningham v. County of Los Angeles,
    879 F.2d 481 (9th Cir. 1988). ......................................................20

Flom v. Holly Corp.,
    276 F. App'x. 615 (9th Cir. 2008). ................................................5

Fogerty v. Fantasy, Inc.,
    510 U.S. 517 (1994)........................................................... 2, 16, 17

Fox v. Vice,
    563 U.S. 826 (2011)...................................................... 6, 16, 18, 24

García-Rubiera v. Fortuño,
    727 F.3d 102 (1st Cir. 2013)....................................................4, 18

Gonzalez v. City of Maywood,
    729 F.3d 1196 (9th Cir. 2013). ...................................... 20, 24, 26

Guam Soc'y of Obstetricians & Gynecologists v. Ada,
    100 F.3d 691 (9th Cir. 1996). .......................................................23

Hanrahan v. Hampton,
    446 U.S. 754 (1980)...................................................... 4, 6, 17, 26

Hashimoto v. Dalton,
    118 F.3d 671 (9th Cir. 1997). ........................................................5

Herrington v. County of Sonoma,
    883 F.2d 739 (9th Cir. 1989) ......................................................17

Higher Taste v. City of Tacoma,
    717 F.3d 712 (9th Cir. 2013). ......................................................14

Independent Fed'n of Flight Attendants v. Zipes,
    491 U.S. 754 (1989)......................................................................16

Irvine Unified Sch. Dist. v. K. G.,
    853 F.3d 1087 (9th Cir. 2017). ......................................................5

Jensen v. City of San Jose,
    806 F.2d 899 (9th Cir. 1986). ........................................................6

Kayes v. Pacific Lumber Co.,
    51 F.3d 1449 (9th Cir. 1995). ...............................................2, 18

Klein v. City of Laguna Beach,
    810 F.3d 693 (9th Cir. 2015). ......................................... 12, 20, 24

Lefemine v. Wideman,
    568 U.S. 1 (2012)............................................................................7

Lummi Indian Tribe v. Oltman,
    720 F.2d 1124 (9th Cir. 1983). .................................................5, 7

Marks v. Clarke,
    102 F.3d 1012 (9th Cir. 1996). ......................................................4

Moreno v. City of Sacramento,
    534 F.3d 1106 (9th Cir. 2008). ....................................................22

Mt. McKinley Ins. Co. v. Corning Inc.,
    399 F.3d 436 (2nd Cir. 2005). .......................................................9

Newman v. Piggie Park Enterprises, Inc.,
    390 U.S. 400 (1968)......................................................................17

Perez-Arellano v. Smith,
    279 F.3d 791 (9th Cir. 2002). ......................................................14

Poland v. Chertoff,
    494 F.3d 1174 (9th Cir. 2007). ......................................................6

S.F. Baykeeper v. W. Bay Sanitary Dist.,
    2011 U.S. Dist. LEXIS 138093 (N.D. Cal. Dec. 1, 2011). ...........18

Sackman v. City of Los Angeles,
    677 F. App'x 365 (2017). ...............................................................8

Sole v. Wyner,
    551 U.S. 74 (2007)..........................................................................7

St. John's Organic Farm v. Gem County Mosquito Abatement Dist.,
    2009 U.S. App. LEXIS 15687 (9th Cir. 2009)..............................................6

Taylor v. Westly,
    525 F.3d 1288 (9th Cir. 2008). ............................................. 7, 18, 26

Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,
    489 U.S. 782 (1989)........................................................ 5, 6, 12, 17

UFO Chuting of Hawaii Inc. v. Smith,
    508 F.3d 1189 (9th Cir. 2007). ...........................................................7

Vasquez v. Rackauckas,
    734 F.3d 1025 (9th Cir. 2013). .........................................................17

Wood v. Burwell,
    837 F.3d 969 (9th Cir. 2016). .......................................................3, 7

Yamada v. Snipes,
    786 F.3d 1182 (9th Cir. 2015). ..........................................................7

**Statutes**

42 U.S.C. § 1988. ....................................................... 1, 2, 13, 16

**Other Authorities**

Smart City PDX Guiding Principles (accessed Mar. 18, 2019),
    https://www.smartcitypdx.com/guiding-principles. .....................................19

**Rules**

9th Cir. R. 39-1.6. .....................................................................1

9th Cir. R. 39-1.7. .....................................................................1

**Treatises**

Moore's Federal Practice - Civil (2020). ....................................... 2, 5, 17

vii

## MOTION-REQUEST

Pursuant to 42 U.S.C. § 1988(b) and Ninth Circuit Rule 39-1.6, Plaintiff-Appellant Andrew Grimm hereby moves and requests that this Court issue an award of interim civil-rights attorney fees.

With this Motion and in support thereof, Mr. Grimm submits the following documents:

- A legal memorandum justifying Mr. Grimm's entitlement to fees, cf. 9th Cir. R. 39-1.6(b);

- A declaration of the undersigned attorney, Mr. Gregory Keenan, detailing the fees requested and the timeliness of this Motion-Request, 9th Cir. R. 39-1.6(b)(3);

- Exhibits to Mr. Keenan's declaration providing a Form 9 equivalent, a detailed itemization of time spent,[1] and justifications of hourly rates, cf. 9th Cir. R. 39-1.6(b), (b)(1), (b)(2).

---

[1] A supplemental itemization is anticipated. The City's attorneys have indicated they will file an opposition. Cf. 9th Cir. R 39-1.7. If they do, the itemization will be updated to account for time spent reviewing the City's opposition and preparing a reply. See, e.g., Anderson v. Dir., Office of Workers Comp. Programs, 91 F.3d 1322, 1325 (9th Cir. 1996) ("well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable").

1

## MEMORANDUM

## I. AS A PREVAILING CIVIL-RIGHTS PLAINTIFF, MR. GRIMM IS ELIGIBLE FOR AND PRESUMPTIVELY ENTITLED TO ATTORNEY FEES.

Congress has authorized courts to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in certain civil-rights cases. 42 U.S.C. § 1988(b).

The key phrase for determining fee eligibility is "prevailing party." And, the phrase prevailing party is a "legal term of art." Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001); Astrue v. Ratliff, 560 U.S. 586, 591 (2010) ("term of art").

There are "two criteria" for a party to be a *prevailing* party. Carbonell v. INS, 429 F.3d 894, 898 (9th Cir. 2005).[2]

---

[2] Although Carbonell addresses fee-shifting under the Equal Access to Justice Act ("EAJA"), it is still on point. This Court and the Supreme Court interpret prevailing party across similarly worded civil-rights fee-shifting statutes in a "consistent manner." E.g., CRST Van Expedited, Inc. v. EEOC, 136 S. Ct. 1642, 1646 (2016); Buckhannon, 532 U.S. at 603 n.4 ("interpreted these fee-shifting provisions consistently"); Wood v. Burwell, 837 F.3d 969, 973 (9th Cir. 2016) ("consistent manner"); Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1468 (9th Cir. 1995) ("nearly identical statutory language"); see also 10 Moore's Federal Practice - Civil § 54.171[3][c][ii] (2020) ("'[P]revailing party' should be given a uniform interpretation irrespective of the particular fee-shifting statute in which the term appeared."). But cf. Fogerty v. Fantasy, Inc., 510 U.S. 517, 524 (1994) (different fee-shifting standards in copyright cases due to different "goals and objectives" of the Copyright Act).

2

The two criteria to be a prevailing party are that a party must achieve:

    1. a "**material alteration** of the legal relationship of the parties"

    2. that is "**judicially sanctioned**."

Carbonell, 429 F.3d at 898 (emphasis added); Wood v. Burwell, 837 F.3d 969, 973 (9th Cir. 2016) (same).

That's what happened here on appeal. This Court has materially altered the legal relationship of the Parties by establishing that vehicle owners like Mr. Grimm are owed individualized pre-towing notice. Even if Mr. Grimm were to lose on every remaining issue below, he has prevailed on a significant civil-rights issue here on appeal. See Section I.A, *infra*.

Furthermore, this legal alteration is judicially sanctioned. It is *this Court* that caused the material alteration here by developing the law in its Opinion. See Section I.B, *infra*.

Therefore, Mr. Grimm is a prevailing party *eligible* for fees. And, as a civil-rights plaintiff who has prevailed on a civil-rights issue, he is presumptively *entitled* to fees. Indeed, granting interim appellate fees here strongly furthers Congress' purpose that civil-rights plaintiffs should be incentivized to act as private attorneys general and to vindicate the civil rights of others. See Section I.C, *infra*.

This Court should grant interim attorney fees here.

### A. This Court materially altered the Parties' legal relationships by establishing Portland's obligations to provide individualized, pre-towing notice.

Fee-shifting often occurs after final judgment but it's not always necessary to wait that long.

Indeed, it's "black-letter law" that interim fee-shifting is permitted when a party establishes entitlement to "some relief on the merits of his claims." García-Rubiera v. Fortuño, 727 F.3d 102, 114 (1st Cir. 2013). In fact, "Congress *intended* to permit the interim award of counsel fees" for interlocutory merits victories. Buckhannon, 532 U.S. at 603 (emphasis added). That's why civil-rights fees may be awarded "at an interlocutory stage of the proceeding if [a] party 'prevails on the merits as to one or more of his or her claims.'" Marks v. Clarke, 102 F.3d 1012, 1034 (9th Cir. 1996).

The prevailing-party standard makes this possible. Its first criterion—*i.e.*, the "touchstone of the prevailing party inquiry"—is that there "must be the material alteration of the legal relationship of the parties." CRST, 136 S. Ct. at 1646. In turn, material legal alterations can and do occur "*pendente lite*"—while cases are pending. See Hanrahan v. Hampton, 446 U.S. 754, 757 (1980) (per curiam).

4

That's what happened here on appeal. This Court established Portland's obligations to provide individualized, pre-towing notice and, thereby, materially altered the Parties' legal relationships.

The Opinion constituted a material legal alteration. The Supreme Court has given a "*generous formulation*"' for what constitutes a material alteration. <u>Irvine Unified Sch. Dist. v. K. G.</u>, 853 F.3d 1087, 1092 (9th Cir. 2017) (emphasis added); <u>see also</u> <u>Lummi Indian Tribe v. Oltman</u>, 720 F.2d 1124, 1125 (9th Cir. 1983) ("generous standard").

What's required is that a civil-rights plaintiff "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Irvine Unified</u>, 853 F.3d at 1092; <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 789 (1989) (same). The civil-rights plaintiff "need not prevail on every issue, or even on the 'central issue' in the case[.]" <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 677 (9th Cir. 1997); <u>Garland</u>, 489 U.S. at 791 (rejecting "'central issue' test").

A material legal alteration comes about when a civil-rights plaintiff achieves "some of the benefit" sought. 10 <u>Moore's Federal Practice - Civil</u> § 54.171[3][c][iii][A] (2020). It does *not* require that the plaintiff achieve "the ultimate benefit sought." <u>Flom v. Holly Corp.</u>, 276 F. App'x. 615, 616 (9th Cir. 2008).

5

Thus, the material-alteration bar is "not high." <u>St. John's Organic Farm v. Gem County Mosquito Abatement Dist.</u>, 2009 U.S. App. LEXIS 15687, *10 (9th Cir. 2009). Any civil-rights plaintiff "who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." <u>Fox v. Vice</u>, 563 U.S. 826, 834 (2011).

Of course, there must be a "determination on the *merits*" of a civil-rights claim. <u>Close v. Sotheby's, Inc.</u>, 909 F.3d 1204, 1213 (9th Cir. 2018) (emphasis added). Therefore, relief based on "legal theories" other than civil-rights claims doesn't count. <u>Garland</u>, 489 U.S. at 789. Nor does relief based on "procedural or evidentiary rulings," <u>Hanrahan</u>, 446 U.S. at 759, or mere "discovery orders[,]" <u>All American Distributing Co. v. Miller Brewing Co.</u>, 736 F.2d 530, 533 (9th Cir. 1984).

"[C]ollateral" victories won't suffice. <u>Jensen v. City of San Jose</u>, 806 F.2d 899, 900 (9th Cir. 1986).

And, a civil-rights plaintiff must, of course, obtain "*some* relief[.]" <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1186-1187 (9th Cir. 2007) (emphasis in original); <u>Garland</u>, 489 U.S. at 791 ("at least some relief"). A mere "favorable judicial statement of law" is not enough. <u>Citizens for Better Forestry v. U.S. Dep't of Agric.</u>, 567 F.3d 1128, 1132 (9th Cir. 2009).

Yet, as long as the relief pertains to the *merits* of the civil-rights claims, the material-alteration test is not picky regarding the *form* of relief granted. <u>See Yamada v. Snipes</u>, 786 F.3d 1182, 1208 (9th Cir. 2015). The relief need not be "formal relief on the merits." <u>Lummi</u>, 720 F.2d at 1125. The issuance of a "final judgment on the merits is not a condition precedent to obtaining the status of a 'prevailing party.'" <u>UFO Chuting of Hawaii Inc. v. Smith</u>, 508 F.3d 1189, 1197 (9th Cir. 2007).

Instead, the relief must merely "force the defendant to do something he otherwise would not have to do" in a manner benefitting the plaintiff. <u>See Carbonell</u>, 429 F.3d at 901. The relief should require government officials to "change their behavior" with respect to the relevant civil-rights plaintiffs. <u>Lefemine v. Wideman</u>, 568 U.S. 1, 2 (2012).

And, the relief should *not* be a "transient victory[.]" <u>Sole v. Wyner</u>, 551 U.S. 74, 78 (2007). There should be "a lasting alteration in the *legal* relationship between the parties." <u>Wood v. Burwell</u>, 837 F.3d 969, 975 (9th Cir. 2016) (emphasis in original). There should be some "permanent change in the law[.]" <u>Taylor v. Westly</u>, 525 F.3d 1288, 1290 (9th Cir. 2008).

Here, on appeal, Mr. Grimm obtained the necessary kind of merits relief to effect a lasting legal alteration vis-à-vis Portland. This appeal, <u>Grimm v. City of Portland</u>, has made individualized pre-towing notice the law of this land.

7

In his Complaint, Mr. Grimm asked the courts to establish that he was "entitled to receive notice before his car was towed." ER 101 ¶ 1(f). A significant purpose of this lawsuit was to ask the courts to establish a right to individualized pre-towing notice, *i.e.*, to apply to tows the same notice rights that apply for all other manner of property. See id.; Keenan Decl. ¶¶ 33-38..

Mr. Grimm didn't get that below. Extensively relying on Sackman v. City of Los Angeles, 677 F. App'x 365, 366 (2017), the district court concluded that generalized notice by mere publication was enough. ER 15. To the district court, no individualized notice was required because Portland's towing laws "were enacted, published, and provided each plaintiff a reasonable opportunity" to review them. ER 16.

This Court viewed the *merits* differently, establishing three important points of law that Mr. Grimm had sought in bringing suit:

- That "individualized notice" of tows must be given, Slip Op. 7;

- That notice must "generally be given *before*" a tow, id., meaning "pre-towing notice is presumptively required," id. at 8; and

- That Portland's mere publication of its laws wasn't sufficient notice, as Portland had argued, id. at 8-9.

Thus, Mr. Grimm prevailed on significant merits issues. He obtained some of the benefit of what he sought in bringing suit. And, these benefits were on the merits of his civil-rights claims.

This Court did not merely make favorable statements of law. Instead, this Court also granted Mr. Grimm *relief*: it reversed and remanded. Slip Op. 6, 18. Such relief is the "***typical appellate relief***: that the Court of Appeals reverse the District Court and that the District Court undo what it has done." Chafin v. Chafin, 568 U.S. 165, 173 (2013) (emphasis added); see also Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 445 (2nd Cir. 2005) ("where remand is the relief requested").

And, this Court ruled on the merits of Mr. Grimm's civil-rights claims. This Court ruled on the government's obligations to provide individualized pre-towing notice. Slip Op. 7-9. This Court's reversal wasn't based on some procedural, evidentiary, discovery, or other collateral issue. For example, this Court did not need to decide Mr. Grimm's FRCP 56(d) arguments because it ruled on the merits instead. Id. at 4 n.1. Mr. Grimm did not merely win the right to proceed with his case.

True, there remain further issues in the case, such as the application of the Mullane-Jones standard. See id. at 17 ("We do not address Grimm's further arguments […]").

9

Yet a party doesn't need to resolve all issues to be a *prevailing* party. Mr. Grimm has prevailed because he obtained some of the benefit he sought in bringing the suit, Keenan Decl. ¶¶ 33-38 , and obtained a lasting victory on a significant civil-rights issue.

Mr. Grimm's win here is no transient or ephemeral victory. <u>*Even if he lost on every remaining issue*</u>, this Court's Opinion has made lasting legal change. Nothing that occurs in the district court on remand can undo the fact that individualized, pre-towing notice is now the law of this land. Mr. Grimm is "'as a practical matter,' in a ***<u>markedly better position</u>*** than at the outset of [his] lawsuit." <u>Animal Lovers Volunteer Assoc. v. Carlucci</u>, 867 F.2d 1224, 1225 (9th Cir. 1989) (emphasis added).

And, this issue of pre-towing notice is significant. The Opinion recognizes as much, noting that tows "'disproportionately prejudice low-income' populations" because "towing can 'permanently deprive low-income individuals of their vehicle[.]'" Slip Op. 7 (brackets omitted). Public-interest *amici* spoke to the scale of the issue: "Nearly a million vehicles" are towed by California's government agencies every year. Public-interest Amici Br. 11.

But this Court need not take our word for it. The City's <u>own</u> Petition for Rehearing *en banc* admits the fundamental importance of individualized, pre-towing notice.

10

The City's own Petition characterizes this issue of "individualized pre-towing notice" as a "question of exceptional importance to cities" too.  Petition 2; see id. at 20 (same).

The municipal *amici* go further.  They, a cohort of some of the largest cities in the Ninth Circuit and a few of their trade associations, viewed this Court's Opinion as groundbreaking.  Municipal Amici Br. 10.  As they see it, the Opinion "go[es] well beyond" prior holdings by establishing "individualized pre-removal notice [as] the settled rule" of the Ninth Circuit.  Id.

Thus, Mr. Grimm's appellate victory here "calls into question municipal towing ordinances throughout the Circuit."  Id.  In their view, Mr. Grimm's appeal gave this Court occasion to clarify and establish law in what they see as a "fraught area" of civil-rights jurisprudence.  Id. at 14.

What is more, the municipal *amici* give a "small sampling" of the ordinances that fail to respect citizens' rights of individualized, pre-towing notice.  Id. at 19.  While it's disconcerting to the undersigned that this laundry list is a "***small***" sampling, the fact that so many municipal codes had so wantonly ignored notice rights for so long speaks to the fundamental significance of the material legal alteration achieved here.

Suffice it to say that the significance of the issue isn't meaningfully in dispute.  It's acknowledged.

11

And, since the issue of individualized, pre-towing notice was a "major goal in the litigation[,]" it's now appropriate to characterize Mr. Grimm as a prevailing party because he's achieved that goal—whatever happens on remand. <u>See</u> <u>All American</u>, 736 F.2d at 533.

If "one compares the relief [Mr. Grimm] sought with the results he achieved [so far], it is clear that he succeeded." <u>Klein v. City of Laguna Beach</u>, 810 F.3d 693, 700 (9th Cir. 2015). Via this Court's Opinion, Mr. Grimm is a prevailing civil-rights plaintiff. He "has crossed the 'statutory threshold' of prevailing party status" by obtaining lasting legal relief on the merits of his civil-rights claims in this appeal. <u>See</u> <u>Garland</u>, 489 U.S. at 789.

**B.   The material alteration in the Parties' legal relationships is judicially sanctioned because the alteration was caused by this Court's Opinion.**

There are "two criteria" for a party to be a prevailing party.  Carbonell, 429 F.3d at 898.  There must be, _first_, a material alteration in the parties' relationship that, _second_, is "judicially sanctioned."  Id.

For this second criterion, the crucial distinction is between a "_judicially sanctioned_ change" and a "_voluntary_ change in the defendant's conduct."  See Benton v. Or. Student Assistance Comm'n, 421 F.3d 901, 906-907 (9th Cir. 2005) (emphasis added).

In fashioning this criterion, the Supreme Court held that a "_voluntary_ change in the defendant's conduct" doesn't mean the plaintiff has prevailed.  Buckhannon, 532 U.S. at 600 (emphasis added).  Voluntary change doesn't amount to a "judicially sanctioned change" in the _legal_ relationships of litigation adversaries. Id. at 605.

After all, the statute seems to require an _in-court_ victory when it speaks of shifting an "_attorney's fee_" in civil-rights "action[s] or proceeding[s.]"  See 42 U.S.C. § 1988(b) (emphasis added).  Without that judicial sanction, however, a plaintiff could hardly claim to have prevailed in court or materially altered the parties' _legal_ relationship.  See Buckhannon 532 U.S. at 605.

13

Two prototypical "examples" of judicially sanctioned alterations include "an enforceable judgment on the merits or a court-ordered consent decree[.]" Higher Taste v. City of Tacoma, 717 F.3d 712, 715 (9th Cir. 2013). Yet these two examples are illustrative: they "are *not* the exclusive means of satisfying the requirement." Id. (emphasis added).

"Other court-approved actions will suffice, provided they entail a *judicial determination* that the claims on which the plaintiff obtains relief are potentially meritorious." Id. (emphasis added); see also Perez-Arellano v. Smith, 279 F.3d 791, 793-794 (9th Cir. 2002) ("court-ordered"). Thus, this second criterion merely requires that a plaintiff have prevailed in court and thereby obtained "necessary judicial *imprimatur* on the change." Buckhannon 532 U.S. at 605 (emphasis in original).

Here, the material alteration in the Parties' relationships is judicially sanctioned. The alteration is this Court's holding that vehicle owners are presumptively entitled to individualized, pre-towing notice, even though Portland's municipal code is published. Slip Op. 7-9.

That's court-ordered legal change. It's change backed by this Court's judicial imprimatur. Thus, the material alteration here readily meets the second criterion. There is no serious argument otherwise.

14

Indeed, the change in the Parties' legal relationship was far from voluntary. Portland resisted change at every stage of litigation so far. It resisted change *after* Mr. Grimm filed suit and *after* Mr. Grimm appealed. Portland even resisted change *after* this Court reversed, by petitioning for rehearing *en banc*.[3] Thus, there is no serious argument that this change was voluntary. The change here is court-ordered legal change.

* * * * *

Because the change here was mandated by this Court when it issued its Opinion reversing the district court, the second criterion is readily met. An appellate opinion going to the merits of a novel civil-rights claim is precisely the kind of judicial imprimatur that Congress meant to incentivize through fee-shifting in civil-rights cases.

---

[3] Of course, Portland has every right to persistently litigate. Yet Portland's decision to litigate makes clear that this is not the situation where a civil-rights defendant simply threw in the towel and acquiesced to change. It was precisely Portland's decisions to litigate that occasioned this Court's judicially sanctioned resolution of the merits questions before it.

**C.    Mr. Grimm should be awarded interim attorney fees by this Court because he is eligible for them and is a prevailing civil-rights plaintiff.**

This Court's Opinion resulted in a material legal alteration favorable to Mr. Grimm. <u>See</u> Section I.A, *supra*. And, that material alteration is judicially sanctioned. <u>See</u> Section I.B, *supra*. Thus, Mr. Grimm is a prevailing party here on appeal.

As such, the fee-shifting statute instructs that this Court "may allow" Mr. Grimm reasonable attorney fees. <u>See</u> 42 U.S.C. § 1988(b). This statutory text indicates that Mr. Grimm is *eligible* for fees. Controlling case law goes further, however, by indicating that Mr. Grimm is nearly *entitled* to fees as a prevailing civil-rights *plaintiff*.

For policy reasons applicable "in the civil rights context," Congress intended courts to be "treating successful plaintiffs more favorably than" the statutory text readily indicates. <u>See</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 524 (1994) (contrasting civil-rights and copyright fee-shifting). In most civil-rights cases, a court "not merely 'may' but ***must*** award fees to the prevailing plaintiff[.]" <u>Independent Fed'n of Flight Attendants v. Zipes</u>, 491 U.S. 754, 761 (1989) (bolding added, italics in original).

For prevailing civil-right plaintiffs like Mr. Grimm, fee-shifting is all-but required. <u>Fox</u>, 563 U.S. at 833 ("should ordinarily recover").

16

Judicial "discretion to deny fees under § 1988 is very narrow[.]" <u>Vasquez v. Rackauckas</u>, 734 F.3d 1025, 1055 (9th Cir. 2013).  Fee-shifting for prevailing civil-rights plaintiffs is the "rule rather than the exception."  <u>Id.</u>  A prevailing civil-rights plaintiff "will recover fees almost as a matter of course."  10 <u>Moore's Federal Practice - Civil</u> § 54.171[3][d][ii] (2020).

Thus, fees should be awarded here.

It is no matter that Mr. Grimm prevailed in an appeal.  Fees-shifting may occur "either in the *trial court or on appeal*[.]"  <u>Buckhannon</u>, 532 U.S. at 604 (emphasis in original).  "It is ***well-settled*** that attorney's fees may be awarded prior to the ultimate conclusion of a lawsuit."  <u>Herrington v. County of Sonoma</u>, 883 F.2d 739, 741-742 (9th Cir. 1989) (emphasis added).  Fee-shifting may occur "either *pendente lite* or at the conclusion of the litigation."  <u>Garland</u>, 489 U.S. at 791.

In fact, fee-shifting here on appeal is "especially appropriate[.]"  <u>See Hanrahan</u>, 446 U.S. at 757.  All the usual interests militate in favor of fee-shifting—and then some.  For example, the fee-shifting statutes envisioned civil-rights plaintiffs acting as "private attorneys general."  <u>Fogerty</u>, 510 U.S. at 523.  Congress knew that "the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law."  <u>Newman v. Piggie Park Enterprises, Inc.</u>, 390 U.S. 400, 401 (1968) (per curiam).

17

And, the plaintiff's role as private attorney general is at its apex on appeal. It is the Courts of Appeals that issue binding appellate precedents and that secure broad compliance with the law.

Here, Mr. Grimm's appeal "has sought to vindicate the constitutional rights of hundreds of thousands of vehicle owners across" the Ninth Circuit. See García-Rubiera v. Fortuño, 727 F.3d 102, 106 (1st Cir. 2013). And, he's successfully done so via this Court's issuance of a precedential Opinion that binds more than a single class-action could, *i.e.*, that binds all the governments within the Ninth Circuit.

Both Mr. Grimm's public-interest *amici* and Portland's municipal *amici* acknowledge the sheer "magnitude" of those reached on this issue. Cf. Taylor, 525 F.3d at 1290. Here, at the Ninth Circuit, Mr. Grimm was "vindicating a policy that Congress considered the highest priority" in the broadest of ways. See Fox, 563 U.S. at 833.

Fee-shifting is also uniquely important after an appeal because of the risk that a recalcitrant defendant could prevail through a "war of attrition." S.F. Baykeeper v. W. Bay Sanitary Dist., 2011 U.S. Dist. LEXIS 138093, *5 (N.D. Cal. Dec. 1, 2011); Taylor, 525 F.3d at 1290 ("risk of starving out plaintiffs"); Kayes, 51 F.3d at 1469 ("may not be able to continue pursuing the litigation unless attorney's fees are awarded").

18

In sum, this Court *should* award fees here both because Mr. Grimm is a prevailing civil-rights plaintiff and, all the more so, because of considerations unique to appellate litigation.

* * * * *

One point from the Opening Brief is worth reiterating:

> [Portland's] "Smart City" initiative is commendable. As are its promises to use "data and technology to improve people's lives" and its acknowledgment that "ongoing evaluation, refinement and collaboration will be needed to make projects successful."[4]

> Yet those noble ambitions become hollow words if [Portland] is unwilling to embrace commonsense fixes to correct [its] defective notice practices.

Opening Br. 63.

One would hope that progressive cities like Portland and Los Angeles would be "erring on the side of caution and good public service" by doing the best they could to provide pre-towing notice. See Clement v. City of Glendale, 518 F.3d 1090, 1096 (2008).

But they aren't. And that's why the role of private attorneys general is so essential.

---

[4] Smart City PDX Guiding Principles (accessed Mar. 18, 2019), https://www.smartcitypdx.com/guiding-principles.

19

## II.	ALTHOUGH AN INTERIM FEE AWARD UNDER THE LODESTAR METHOD WOULD BE ABOUT $200,000, SEVERAL OF THE KERR FACTORS WEIGH IN FAVOR OF A SIGNIFICANT UPWARD ADJUSTMENT HERE.

If this Court decides that fees should be awarded, it then determines the appropriate amount in "two steps."  Bravo v. City of Santa Maria, 810 F.3d 659, 665 (9th Cir. 2016).

*First*, it applies the "lodestar method"—multiplying the number of hours "reasonably expended" by a "reasonable hourly rate"—to come to a baseline figure for the fee award.  Klein, 810 F.3d at 698.  This baseline "lodestar figure" is a "'presumptively reasonable' fee under 42 U.S.C. § 1988."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013).

*Second*, the court decides if this is one of the "exceptional cases" where an adjustment in the lodestar figure is warranted.  Cunningham v. County of Los Angeles, 879 F.2d 481, 488 (9th Cir. 1988).  An adjustment, however, is warranted "only in rare circumstances" because the lodestar is a "presumptively accurate measure of reasonable fees."  Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006).

Here, the lodestar figure approaches $200,000.  The undersigned spent slightly over 420 hours on the appeal so far.  And, $450/hour is a reasonable rate for Ninth Circuit appellate practice.  See Section II.A, *infra*.

What is more, this appeal is a good candidate for a significant upward adjustment in the lodestar figure. Mr. Grimm achieved immense success on appeal, acting as a private attorney general. His appellate victory played a key role in establishing individualized, pre-towing notice as the law of this land. And, this significant win did not come easy.

Instead, prosecuting this appeal tested the undersigned's ability to scour the case law; his capacity to elegantly unpack complex issues; and his willingness to work without pay for an extended timeframe while pursuing a public-interest mission.

Therefore, the undersigned respectfully requests an upward adjustment in the lodestar figure's baseline. <u>See</u> Section II.B, *infra*.

**A.    Under the lodestar method, about $200,000 in attorney fees for the appellate work done here is presumptively reasonable.**

Calculating the lodestar entails multiplying the hours worked by a reasonable hourly rate. The numbers for this baseline fees figure are as follows here:

- **<u>420 hours and 33 minutes</u>** reasonably spent on the case;

- A reasonable Ninth Circuit appellate rate of **<u>$450/hour</u>**; and

- A lodestar value of **<u>$189,247.50</u>**, currently.

21

First, there are the hours. "By and large, the [C]ourt should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case[.]" <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008).

A total of 420 hours and 33 minutes were spent by the undersigned on this appeal so far. <u>See</u> Keenan Declaration Exhibit A (Form 9 Equivalent); Exhibit B (Detailed Itemization of Hours).

A few aspects of these hours are noteworthy:

- The hours here are expected to go up. The City has indicated it intends to oppose this Motion-Request for fees. Thus, if the undersigned is correct that Mr. Grimm is eligible for fees, additional time spent reviewing Portland's opposition and preparing a reply will be compensable as well. <u>E.g.</u>, <u>Anderson</u>, 91 F.3d at 1325 (9th Cir. 1996) ("well established that time spent in preparing fee applications [...] compensable").

- The hours do *not* pertain to any district-court work, with two exceptions. First, some hours do involve strategic discussion and collaboration with Ms. Megan Verrips, Esq., who currently serves as Mr. Grimm's district-court counsel, and discussions with Portland's district-court counsel. Second, the undersigned prepared the FRAP 39(e) Bill of Costs and may help prepare a reply.

- The hours begin upon the undersigned's notice of appearance at the Ninth Circuit in this case. None of the hours account for Mr. Grimm's many hours litigating *pro se* below. Because Mr. Grimm is himself a lawyer and did assisted the undersigned with research on appeal, the research time listed significantly understates the amount of research necessary to fully brief this appeal. <u>Cf.</u> Keenan Declaration ¶ 37.

- About 61 hours and 25 minutes of the time on this appeal pertain to the motion for judicial notice.

In addition, there's the hourly rate. The reasonable hourly rate depends upon the market rate "for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Guam Soc'y of Obstetricians & Gynecologists v. Ada</u>, 100 F.3d 691, 696 (9th Cir. 1996).

The undersigned submits that a reasonable hourly for Ninth Circuit appellate practice here is $450/hour. <u>See</u> Keenan Decl. Exhibit C (Justification of Hourly Rates).

Thus, the lodestar figure—the product of these two numbers (420.55 hours x $450/hour)—is $189,247.50.

**B.      Several of the <u>Kerr</u> factors weigh sharply in favor of a significant upward adjustment in the attorney fees awarded here.**

The factors used to decide if a fee award should receive an adjustment are "called the '<u>Kerr</u> factors' in the Ninth Circuit" after the case where this Court adopted them.  <u>Klein</u>, 810 F.3d at 698 n.5; <u>Gonzalez</u>, 729 F.3d at 1209 n.11 (discussing <u>Kerr</u> factors).

Of the <u>Kerr</u> factors, the degree of success or results obtained is "the most critical factor[.]"  <u>See</u> <u>Bravo</u>, 810 F.3d at 666.  Courts should consider "extent of success" on the civil-rights claim when deciding upon the amount of fees to award. <u>See</u> <u>id.</u>

Here on appeal, Mr. Grimm had immense success.  As discussed above, establishing a presumptive right to individualized pre-towing notice is a big deal— as acknowledged by Portland, by the public-interest *amici*, and by Portland's own municipal *amici*.

Mr. Grimm has truly vindicated "a policy that Congress considered of the highest priority" by acting as Congress intended when it envisioned the role of "private attorney general."  <u>See</u> <u>Fox</u>, 563 U.S. at 833.  Insofar as success is measured by vindicating the rights of others, this is a very impactful appeal.  Its resolution moves the needle away from unchecked towing practices that can be highly predatory.

To the undersigned, the role of a private attorney general is *most* important when it's clear that public officials won't develop the law themselves. That seems true here.

This Court noted that "municipal tow practices often create a 'debt trap for the poor[.]'" Slip Op. 8. Regrettably, however, there is little indication that the cities before this Court had any willingness to *address* that issue. See generally Portland Petition, Municipal Amici Br. (not addressing social-justice implications).

And, it is precisely when the public attorneys abdicate their roles that the private-attorney-general role is most vital. That's why the undersigned thinks that this most important Kerr factor weighs *sharply* in favor of an upward adjustment here.

When the public authorities don't take widespread rights violations seriously and correct the abuses, the judiciary is powerless to rectify the situation without private attorneys general to bring important cases before the judiciary, especially to the Courts of Appeals.

Moreover, the appellate victory here didn't come easy. To the municipal *amici*, this is a "fraught area" of jurisprudence. Municipal Amici Br. 14. Maybe, maybe not. But it surely is complex.

Briefing this Court required scouring the case law; lots of reflection to truly digest the issues; and lots of writing (and rewriting) to make them clear. There were novel and difficult questions of law involved.

And, the digital civil-rights issues on the horizon are dizzyingly complex—ethically, sociologically, political, and legally. They require the kind of dedication and focus that often significantly curtails or entirely precludes any "other employment by the attorney[.]" <u>Gonzalez</u>, 729 F.3d at 1209. And, giving those attorneys interlocutory fees is "especially appropriate" here because crucial issues of technology relating to Portland's own Parking Kitty app remain unresolved. <u>Cf. Hanrahan</u>, 446 U.S. at 757.

Generous fee-shifting can ensure that the undersigned can bring both the legal *and technological* expertise to bear on remand. It can ensure the case on remand is not foreordained by a "disparity in litigation resources[.]" <u>See Taylor</u>, 525 F.3d at 1290.

26

## CONCLUSION

This Court should award attorney fees, ideally with an upward adjustment if this Court thinks it merited.

Date: January 20, 2021                    Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

## CERTIFICATE OF COMPLIANCE

This Motion-Request contains **5196** words, excluding the portions of the Motion-Request exempted from word counts and excluding the words in the below Declarations and Exhibits.

This Motion-Request has been prepared in a proportionately spaced typeface using Times New Roman 14-point font in Microsoft Word.


Date: January 20, 2021                    Respectfully submitted,

                                          */s/ Gregory Keenan*
                                          Gregory Keenan

## DECLARATION OF GREGORY KEENAN

I, Gregory Keenan, counsel for Plaintiff-Appellant Andrew Grimm before the Ninth Circuit and an attorney at the DIGITAL JUSTICE FOUNDATION, hereby declare under oath the following:

1. I make this Declaration in support of Mr. Grimm's motion-request for interim attorney fees pursuant to 42 U.S.C. §1988(b) and Ninth Circuit Rule 39-1.6. The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called:

**Educational Background:**

2. I studied law at and received my Juris Doctor (J.D.) from Stanford Law School in 2016. I received my Bachelor of Arts (B.A.) in philosophy from Claremont McKenna College in 2011. I attended Claremont McKenna College on a QuestBridge Scholarship—a scholarship designed to make higher education affordable for those from lower-income backgrounds.

3. This scholarship enabled me to go to college and, from there, to join the legal profession. This background played a formative role in my decision to dedicate my career to performing public-interest legal work.

4. During my studies at Stanford Law School, I spent two summers as a summer associate at JONES DAY in its Silicon Valley Office. Ultimately, I decided to pursue a practice as a public-interest lawyer rather than a career in private practice, for some of the aforementioned reasons.

## Bar Admissions

5. I have been a member, in good standing, of the New York Bar since 2018.

6. I am also admitted to the bars of several federal Courts of Appeals: the United States Courts of Appeals for the First, Second, Seventh, and Ninth Circuits.

## THE DIGITAL JUSTICE FOUNDATION

7. I am an attorney with the DIGITAL JUSTICE FOUNDATION. In addition to my role as an attorney, I also serve as the FOUNDATION's Executive Director, *i.e.*, its chief executive.

8. The DIGITAL JUSTICE FOUNDATION is a non-profit law firm dedicated to ensuring that traditional notions of justice and civil liberties continue to thrive in the digital age. The FOUNDATION aims to develop the law by representing individuals across the nation on open questions of law that implicate issues at the intersection of law and technology.

30

9.  The FOUNDATION places a particular emphasis on representing litigants who struggle with access to law. Many of the FOUNDATION's clients have previously appeared *pro se* before district courts or have otherwise struggled with affording effective representation. The FOUNDATION tracks cases nationwide to identify potentially meritorious appeals and to provide *pro bono* or *low bono* appellate representation so that individuals struggling with access to law issues can receive effective appellate representation.

10. The FOUNDATION believes that this work helps to ensure the proper development of the law and to ensure that otherwise meritorious claims do not suffer from lack of sufficient legal representation. Often people with good claims can't find good representation and when that happens the development of the law suffers. That's particularly so on complex and novel legal issues involving the intersection of law and technology.

11. As a public interest attorney working on such issues, I take my obligation to be well-informed and well-researched on the law very seriously so that I can properly apprise courts of complex and novel issues, to the very best of my abilities.

12. I take this obligation to my clients, to the courts, to the DIGITAL JUSTICE FOUNDATION, and to the development of the law itself very seriously. I view the opportunity to work on these legal issues as both a privilege and a vocation.

13. I take my responsibility to produce excellent legal work, regardless of a client's monetary means, solemnly because clients entrust their lives with their counsel. Moreover, the law doesn't advance unless clients decide to take a stand: "before lawyers can win cases there have to be clients willing to stand up for their rights." Jack Greenberg, <u>Crusaders in the Court: How A Dedicated Band of Lawyers Fought For the Civil Rights Revolution</u> 14 (1994).

**<u>Extensive Appellate Practice</u>**

14. In my capacity as attorney-director of the DIGITAL JUSTICE FOUNDATION, I have represented clients in federal appeals throughout the nation on issues involving the intersection of law and technology. I have represented clients on appeals before the First, Second, Fifth, Seventh, Eighth and Ninth Circuits.

15. I have also represented the DIGITAL JUSTICE FOUNDATION itself, before the United States Court of Appeals for the District of Columbia Circuit, as an intervenor in major net-neutrality case. See Mozilla Corp. v. FCC, 940 F.3d 1 (D.C. Cir. 2019). There the Court adopted the FOUNDATION's position regarding broad rights of intervenors to challenge the internal logic and consistency of Federal Communication Commission's Orders as arbitrary and capricious.

16. In addition to merits-based representation, I have also authored multiple *amicus* briefs to the various Courts of Appeals on issues involving the intersection of law and technology. In particular, I have submitted *amicus* briefs in appeals before the Second, Fourth, Fifth, Sixth, and Ninth Circuits.

17. I have also authored several *amicus* briefs submitted to the Supreme Court of the United States. In one such *amicus* brief, the FOUNDATION presented a novel view of the Computer Fraud and Abuse Act that I believe to address major policy concerns with the Act without vitiating the Act. Based on my observation of oral argument, I believe that at least one of the Justices was persuaded by the views I submitted.

**Reputation Amongst Attorneys Practicing Before This Court Due to My Appellate Briefing and Oral Argument Performances.**

18. Both co-counsel and opposing counsel have praised my brief writing skills:

    a. Mr. Ryan Hamilton, one of my co-counsel in an appeal before this Court, provides the following assessment: "Mr. Keenan's legal writing is among the best I have seen in my fourteen years of legal practice across three states." See Exhibit D (Hamilton Declaration).

    b. I have also received similar complimentary assessments for my legal abilities from an opposing counsel who has practice law for 49 years. On July 2, 2020, this opposing counsel emailed me saying he "wish[ed] [he] had the talent to write even 10% as clear" as I did. This tremendously humbling compliment regarding the quality of my briefing was especially humbling given that opposing counsel's extensive experience.

    c. That opposing counsel indicated in his July 2, 2020 email that he had attended a Federal Bar Association presentation he encountered an *amicus* brief which I had submitted to the U.S. Supreme Court on a complex question of copyright law.

19. Based on my performance at an oral argument in an appeal before this Court, a different California attorney who had watched my colloquy with a different Panel emailed me to explore the possibility of working together. When he and I spoke, that attorney indicated that he was impressed with my presentation of issues to that Panel of this Court.

**Niche Expertise in Digital Ethics at the JAIN FAMILY INSTITUTE**

20. In addition to my work with the DIGITAL JUSTICE FOUNDATION, I have worked for the past three years as a research fellow at the JAIN FAMILY INSTITUTE specializing in digital ethics and governance issues.

21. The INSTITUTE is a New York based think-tank focusing on applied digital ethics. My work there is dedicated to exploring cutting-edge legal, ethical, and social problems arising from emergent uses of new technologies—especially by governments.

22. One of my early roles at the JAIN FAMILY INSTITUTE was to work as a digital-ethics liaison with New York City's Automated Decision System Task Force.

23. This Task Force, spearheaded by the nation's largest city, was a first-in-the-nation program designed to ensure "transparency regarding government use of algorithms, to look at how error and bias enter into their design and to recommend measures that ensure accuracy and fairness."[5]

24. The Task Force also focused on establishing "procedures for reviewing and assessing [New York City's] algorithmic tools to ensure equity and opportunity."[6]

25. These experiences informed my understanding of the immense complexity of the legal and social issues arising from local governments' uses of new technologies to carry out traditional government functions, as well as the pressing moral and ethical significance of these issues.

26. In my work as a Digital Ethics and Governance research fellow at the JAIN FAMILY INSTITUTE, I also conduct substantial research regarding issues at the intersection of law and technology.

---

[5] "City Council Passes First Bill in Nation to Address Transparency, Bias in Government Use of Algorithms," ACLU of New York, https://www.nyclu.org/en/press-releases/city-council-passes-first-bill-nation-address-transparency-bias-government-use (published Dec. 11, 2017).

[6] "Mayor de Blasio Announces First-In-Nation Task Force To Examine Automated Decision Systems Used By The City," New York City, https://www1.nyc.gov/office-of-the-mayor/news/251-18/mayor-de-blasio-first-in-nation-task-force-examine-automated-decision-systems-used-by (published May 16, 2018).

27. One particular niche focus of my digital-ethics fellowship involved exploring how discrimination laws can address the emerging problem of algorithmic discrimination; how the adoption of new technologies by governments affects individuals' procedural rights; and how technologies affects the substantive development of the law.

28. My work as a Digital Ethics and Governance Fellow has led me to believe that if governments are not mindful of legal rights when designing and adopting new technologies, then governments run a serious risk of simply designing around people's rights.

29. This work at the JAIN FAMILY INSTITUTE informed my belief that the present appeal raised vitally important and timely issues of how constitutional rights are affected by Portland's new uses of technology.

**Significance for the Fees Application**

30. I share the above information because I believe this information regarding my recognized talents at brief writing and in oral advocacy; my expansive appellate litigation experience; and my reputation for quality appellate work is pertinent to this fees application and a determination of a reasonable fee award here.

31. Moreover, I believe my particular expertise on digital ethics issues at the intersection of law and technology speak to my unique abilities to render effective legal services on novel and complex questions of how Portland's use of a smartphone parking app affects its Constitutional notice obligations when towing.

32. Finally, my background in digital ethics, my dedication to public-interest legal advocacy, and my commitment to representing those who cannot afford other counsel with high-quality appellate representation to underrepresented individuals is pertinent here. *Amici* to this appeal have spoken the sizeable scope of the societal impact and social justice issues raised by this appeal. And this Court mentioned some of the social ills of aggressive towing practices in its Opinion.

## The Client's Dedication to Social Impact

33. Through conversations with Mr. Grimm, it is my understanding that Mr. Grimm's primary goal in pursuing this appeal was to develop the law and to clarify and advance the pre-towing notice rights of individuals in the Ninth Circuit.

34. Mr. Grimm informed me that he had proceeded *pro se* below, knowing that civil-rights fees would not be available to a *pro se* litigant.

38

35. Despite that limitation, Mr. Grimm had a deep concern about the social impact of tows and the social-justice implications that municipal tows have on the poorest and least well off among us.

36. Mr. Grimm's own concerns comport with my own understanding of the profound social-justice implications and digital-ethics implications arising from this appeal, as informed by experiences working as a Digital Ethics and Governance Research Fellow at the JAIN FAMILY INSTITUTE.

37. Mr. Grimm and I have had many discussions about the social-justice and digital-ethics implications of municipal tows during the pendency of this appeal and while collaborating as attorneys at the DIGITAL JUSTICE FOUNDATION.

38. My belief is that his concerns about the social impact of tows are deeply held and sincere.

## Time Commitment of This Appeal

39. Prosecuting this appeal has been an incredibly financially straining endeavor. I have received no payment for the hundreds of hours of work done on this appeal to date.

40. And, the substantial time dedicated towards working on this appeal—presenting complex legal questions with outsized social impact—has precluded the ability to take on other cases for the period of time during which this work was being performed.

41. Indeed, when it was active, addressing this case consumed my calendar. Familiarizing myself with the voluminous case law and complex legal cases proved to be a substantial undertaking. And preparing a briefing sufficiently informed, clear, and persuasive to be able to convey the important legal principles and the importance of what could seem like a trivial claim required a substantial amount of time and energy.

42. The DIGITAL JUSTICE FOUNDATION operates on a shoestring budget because its clients are represented in a *pro bono* or *low bono* capacity. Moreover appeals are highly labor-intensive to prosecute.

43. Without prevailing-party fee-shifting in civil rights claims like this, I believe that the DIGITAL JUSTICE FOUNDATION would need to significantly scale back its goals for public-interest litigation. The availability of civil rights fees here is an important component of funding future appellate representation of plaintiffs struggling with access to law but who have viable claims with an outsized social impact.

**<u>FRAP 39-1.6 (b) Statement of Applications' Timeliness.</u>**

44. The motion-request here is timely:

    a.  On August 21, 2020, this Court issued its Opinion.

    b.  On September 2, 2020, Portland filed a motion to extend time for all post-Opinion deadlines until October 19, 2020.

    c.  On September 9, 2020, this Court granted Portland's motion.

    d.  On October 16, 2020, Mr. Grimm moved Unopposed to extend time to file bill of costs and petition for interim fees until fourteen days after disposition of Portland's petition for rehearing.

    e.  On November 13, 2020, this Court denied Portland's petition for rehearing *en banc*.

    f.  On November 27, 2020, Mr. Grimm moved unopposed to extend time to file bill of costs and petition for interim fees until December 28, 2020.

    g.  On December 1, 2020, this Court granted his motion.

    h.  On December 28, 2020, Mr. Grimm moved unopposed to extend time to file bill of costs and petition for interim fees until January 11, 2021.

41

i.  On December 30, 2020, this Court granted his motion.

j.  On January 11, 2021, Mr. Grimm moved unopposed to extend time to file petition for interim fees until January 18, 2021.

k.  On January 13, 2021, this Court granted Appellant's motion to extend the time to file petition for interim fees.

l.  On January 18, 2021, Appellant moved to extend time to request interim fees until January 20, 2021.

m.  On January 19, 2021, this Court granted motion to extend the time to file petition for interim fees.

## **Exhibits to this Declaration**

45.  I hereby declare that I have attached true and copies of the following Exhibits to this Declaration:

a.  An equivalent of Ninth Circuit Form 9 as **Exhibit A**;

b.  An itemization of hours worked on this appeal as **Exhibit B**;

c.  A justification of my hourly rate for this appeal as **Exhibit C**; and

d. A declaration of a co-counsel in another appeal, Mr. Ryan Hamilton, attesting to my talents as a lawyer as **Exhibit D**.

**I hereby declare that the above statements in this Declaration are true to the best of my knowledge and belief, and that I understand that these statements are made for use as evidence in court and are subject to penalty for perjury.**

Date: January 20, 2021                    Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan

# Exhibit A

Ninth Circuit Form 9 Equivalent

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
## Form 9 <u>Equivalent</u>. Application for Attorneys' Fees under Circuit Rule 39-1.6

*Instructions for Form 9: https://cdn.ca9.uscourts.gov/datastore/uploads/forms/form09instructions.pdf.*

| | |
|---|---|
| **9th Cir. Case Number(s)** | **18-35673** |

| | |
|---|---|
| **Case Name** | **Andrew Grimm v. City of Portland, *et al.*** |

For each amount claimed, please attached itemized information indicating service provided, date, hours, and rate.

| *DESCRIPTION OF SERVICES* | *Hours* | *Amount Claimed*<br>(at a $450/hour rate) |
|---|---|---|
| Interviews and Conferences | 50:43 | $22,822.50 |
| Obtaining and Reviewing Records | 13:15 | $5,962.50 |
| Legal Research | 74:10 | $33,375.00 |
| Preparing Briefs | 175:55 | $79,162.50 |
| Preparing for and Attending Oral Argument | 24:40 | $11,100.00 |
| Other (*specify below*)<br>Notice of Appearance; Extension Requests; Stipulation of Dismissal; Motion for Judicial Notice (drafting); Bill of Costs; this Fees Motion | 81:50 | $36,825.00 |
| ***Total Hours/Compensation Requested*** | 420:33 | $189,247.50 |

| **Signature** | */s/ Gregory Keenan* | **Date** | January 20, 2021 |
|---|---|---|---|

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about the <u>actual</u> Form 9?  Email forms@ca9.uscourts.gov.*

b

# Exhibit B

Detailed Itemization of Attorney Hours

c

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
**Detailed Itemization of Tasks Performed. 9th Cir. R. 39-1.6(b)(1).**

| 9th Cir. Case Number(s) | 18-35673 |
| --- | --- |

| Case Name | **Andrew Grimm v. City of Portland,** *et al.* |
| --- | --- |

| Hours for: | **Gregory W. Keenan,** *Esq.* |
| --- | --- |
| Position: | **Executive Director, DIGITAL JUSTICE FOUNDATION** |

| # | Date | Time | Category | Detailed Description of Task |
| --- | --- | --- | --- | --- |
| 1 | 7/21/2018 | 0:05 | OT | Miscellaneous: Draft and submit notice of appearance 18-35388 |
| 2 | 9/12/2018 | 0:10 | I&C | Miscellaneous: Review Email From Attorney for Retriever Towing exploring possibility of amicable resolution of appeal. |
| 3 | 9/13/2018 | 0:20 | I&C | Miscellaneous: Email to Client re: Retriever Towing settlement and review Client's email response<br><br>Phone call with Client discuss possibility of amicable resolution with Retriever Towing |
| 4 | 11/16/2018 | 0:05 | OT | Miscellaneous: Submit streamlined request for extension to file opening brief |
| 5 | 12/10/2018 | 0:45 | I&C | Miscellaneous: Phone call with professor Richard Thomson Ford to discuss possibility of amicus brief<br>Draft email to professor Ford synthesizing legal theories and sharing docket |
| 6 | 12/17/2018 | 0:15 | OT | Miscellaneous: Draft and file Unopposed Motion for extension of time to file opening brief |
| 7 | 12/19/2018 | 1:00 | I&C | Miscellaneous: Phone call with potential amicus at coalition of homelessness |
| 8 | 12/19/2018 | 0:05 | I&C | Miscellaneous: Review email sent from potential amicus at coalition of homelessness |
| 9 | 1/1/2019 | 0:05 | I&C | Miscellaneous: Review email sent from coalition of homelessness confirming that they want to participate as an amicus in the appeal |
| 10 | 1/7/2019 | 0:05 | I&C | Miscellaneous: Draft email to coalition of homelessness responding to their decision to participate as an amicus in the appeal |
| 11 | 1/20/2019 | 3:00 | LR | Opening Brief: Outline Introduction; Review/re-read Stutton opinion and Scofield opinion;<br>Begin Drafting Introduction |
| 12 | 1/21/2019 | 1:30 | I&C | Opening Brief: Phone call with client discussing and reviewing introduction section together; prepare client notes |
| 13 | 1/21/2019 | 3:30 | LR | Opening Brief: Rewrite and Revise Introduction<br>Discrete Research Quotes about notice and technology (inserted Taylor v. Yee Supreme Court quote; read Taylor v. Yee 9th Cir. To understand case history/technology + notice issues in case)<br>Research Standard of Review;<br>Draft Standard of Review Section |
| 14 | 1/21/2019 | 2:00 | PB | Opening Brief: Draft oral argument statement; Finish draft of introduction section |

d

| | | | | |
|---|---|---|---|---|
| | | | | Include pincites to case citations (sutton; scofield; yee) |
| 15 | 1/21/2019 | 2:00 | PB | Opening Brief: Revise and finalize introduction section<br>Incorporating changes discussed on 1/21 phone call<br>Edit and cite check introduction section. |
| 16 | 1/21/2019 | 2:00 | PB | Opening Brief: Outline statement of the case section |
| 17 | 1/23/2019 | 3:15 | RR | Opening Brief: Statement of the Case Research into Parking Kitty Parking App; SmartCity PDX initiative, Portland Government websites discussing SmartCity PDX; Parking KItty; Screenshot Parking Kitty Iphone App user interface;<br>Review Record below; add details about "Smart City" initiative and Parking Kitty app into Introduction |
| 18 | 1/24/2019 | 2:30 | PB | Opening Brief: Draft Statement of the Case Sections A and B |
| 19 | 1/26/2019 | 2:30 | PB | Opening Brief: Draft Statement of the Case Sections C, D and E |
| 20 | 1/28/2019 | 1:45 | PB | Opening Brief: Draft Statement of the Case Section F and Section G |
| 21 | 1/29/2019 | 2:15 | I&C | Opening Brief: Call with client discussing and reviewing the statement of the case; incorporate clients' concerns/suggestions re: Statement of the Case |
| 22 | 1/31/2019 | 3:00 | PB | Opening Brief: Draft Section 1, portions regarding Supreme Court Dusenberry holding re: proper standard; 9th Cir. Cases speaking about Mullane test/Dusenberry holding |
| 23 | 2/1/2019 | 2:00 | PB | Opening Brief: Draft Section 1, portions regarding the history of the Mullane test, history of Mathews test, possible misunderstanding that Mathews had displaced Mullane as the all encompassing due process test |
| 24 | 2/2/2019 | 6:00 | PB | Opening Brief: Draft Section 1, sections discussing the district court's application of Mathews ; discussion of the procedural posture below and the private tow-defendant's  receipt of 12(b)(6); draft section Ici (this a notice case involving a tow not to be treated as a tow case (type of legal claim not property type determinative of the legal test); flag where to insert the extensive footnotes to be included in Section I of the brief |
| 25 | 2/4/2019 | 3:00 | PB | Opening Brief: Draft Section 1, include extensive footnotes; footnote 11 (discussing the property types involved in each case Jones; Taylorl; Chin  Yi Tu. Footnote discussion that it is the legal claim/property type; read Jones; Taylor; Chin Yi Tu; J.B. v. U.S.; Fuentes; and Stypmann Begin drafting Section ICii |
| 26 | 2/5/2019 | 3:15 | PB | Opening Brief: Draft Section 1; insert extensive footnote number 12 re: every tow notice case both published and unpublished in the Ninth Circuit. Read and insert citations to Easley, Ric, Tounget, Rowell, Deligiannis, Lee. Confirm 9th Cir. Rule regarding unpublished  case citations 9th Cir. Rule 36-3(c), and indicate that additional unpublished cases cannot be cited. Read and include footnote citations and discussion of Sackman and Lonestar. Finish drafting Section Icii |
| 27 | 2/6/2019 | 2:10 | I&C | Opening Brief: Phone call with client discussing and reviewing section I, implementing changes that came up in phone call with client |
| 28 | 2/7/2019 | 1:50 | PB | Opening Brief: Draft Section IIBi discussing timing of notice obligations (before disrupting property); Greene discussion of notice by posting; why posting here violated Jones bright line obligation. |
| 29 | 2/7/2019 | 1:45 | PB | Opening Brief: Draft Section II introductory prelude section discussing Chin Yi Tu and Jones bright line obligation; draft section IIA the district court's refusal to apply Mullane here |

e

| 30 | 2/8/2019 | 3:15 | PB | Opening Brief: Draft Section II(iii) discussing the practicability of using the government's own Parking Kitty app to use contact information or to use the app; include discussion about Chin Yi Tu multiple attempts at notice |
| 31 | 2/8/2019 | 1:30 | PB | Opening Brief: Draft Section 2: Revise, rewrite, edit Sections II(i) and II(ii); include case pincites, insert record pincites |
| 32 | 2/9/2019 | 6:00 | PB | Opening Brief: Rework Section 2 in light of new rhetorical framing of the operative legal theory: "the Jones bright line obligation." Restruction each subsection of Section IIB around Jones bright line obligation framing; re-read Jones; re-read Chin Yi Tu; re-read Taylor; Re-read Greene; find persuasive authority from other Circuit's re: reasonableness measured in terms of the alternative (8th Cir. Kornblum case) |
| 33 | 2/9/2019 | 2:30 | PB | Opening Brief: Draft Section 2; edit rewrites to Section II(iii), include pincites , include record cites, include footnote 13 regarding "not court's responsibility to prescribe particular method, simply enough to say other methods were available and the government failed to make use of them." |
| 34 | 2/10/2019 | 2:00 | I&C | Opening Brief: Call wirth client discussing and reviewing Section 2; discussion of the new framing insight/strategy of Jones bright line obligation. |
| 35 | 2/10/2019 | 3:20 | PB | Opening Brief: Revise Section 2 to include client's feedback/concerns including further developments/refinements of the Jones Bright obligation theory of the notice failure here |
| 36 | 2/11/2019 | 3:40 | I&C | Opening Brief: Call with client to review changes made to Section II and live time on phone edits/alterations together. After call, included citations, legal pin cites, record cites, and updates to the footnotes in Section 2. |
| 37 | 2/11/2019 | 0:20 | OT | Miscellaneous: Draft stipulated motion to dismiss case voluntarily pursuant ot FRAP42(b) of only 18-35388<br><br>Settling appeal with private defendant Retriever Towing. |
| 38 | 2/12/2019 | 2:30 | PB | Opening Brief: Draft Section III: Mathews Section subsection III(A) regarding context specific test, the government's mobile parking app as a situational factor that was crucial, review of district court's cursory Mathews analysis, ignoring entirely the app, and reliance on unpublished opinion; distinction from Scofield where there was no mobile app in the 1980s |
| 39 | 2/12/2019 | 1:45 | PB | Opening Brief: Draft Section III Mathews Section, prelude, introductory portion of the Section discussing the way the private interest and the government interest dovetail in providing pre-towin notice under Mathews test, the distinct factual aspect of ParKing Kitty app |
| 40 | 2/13/2019 | 3:00 | PB | Opening Brief: Draft Section III Mathews Section subsections Biii and IIIC discussing how effective digital notice via the app would be here and that the Mathews factors when applied weigh in favor of digital pre-towing notice. |
| 41 | 2/14/2019 | 5:35 | I&C | Opening Brief: Phone call with client discussing and reviewing Section III Mathews Section; discuss Oregon Statute strategy for robustly developing factors and how they dovetail; live time edits/alterations to the document made with client on phone for clients approval/buy in. After call, further additional research into Oregon towing statutes and the government, private, and public interests regardings tows as codified in the ORS |
| 42 | 2/14/2019 | 4:30 | PB | Opening Brief: Draft Mathews Section subsection IIIBi and IIIBii, |

f

| | | | | discussing Oregon statutes and their affect on the various interests (government and private interest comprising the Mathews factors); research into ORS §98 |
|---|---|---|---|---|
| 43 | 2/17/2019 | 2:30 | PB | Opening Brief: Mathews Section edits,rewrites, revisions, citations, pin cites, record cites |
| 44 | 2/18/2019 | 2:00 | LR | Opening Brief: Research for Section IV re: FRCP 56(d) |
| 45 | 3/1/2019 | 3:00 | PB | Opening Brief: Draft Section IV on FRCP 56d |
| 46 | 3/2/2019 | 1:30 | PB | Opening Brief: Draft questions presented |
| 47 | 3/3/2019 | 1:45 | I&C | Opening Brief: Call with client to review FCRP 56d section and questions presented, make changes in live time while on phone to get client buy in/sign off |
| 48 | 3/5/2019 | 4:50 | PB | Opening Brief: Research for policy section: research into City's smart city initiative, city's parking kitty app, city publications about its purchase of smart meters and its instillation/implementation of smart meter technology into its city functions; preliminary research into the viability and availability of judicial notice under FRE 201. |
| 49 | 3/5/2019 | 3:45 | PB | Opening Brief: Draft Section V policy, V(C) digital technologies are more easily fixable and fixable at scale; citation to City of Portland's own Green Purchasing Case study touting the benefits of digital technologies such as smart meters as "easily upgradeable"; update the questions presented in light of additions/updates made to the brief |
| 50 | 3/6/2019 | 3:10 | PB | Opening Brief: Draft Section V Policy Section, prelude introductory section; part V(A) re important of legal clarity and Clement quote re: err on the side of caution and good public service; V(B) appeal has narrowing, limiting principles |
| 51 | 3/6/2019 | 0:30 | PB | Opening Brief: Follow up on preliminary FRE 201 research regarding judicial notice availability of policy section government publications and read through publicly available government publications about smart city operations |
| 52 | 3/7/2019 | 3:10 | I&C | Opening Brief: Phone call with client. Walk through entire first draft of whole brief. Compile comprehensive list of client concerns, client suggestions, areas that need improvement/additional research/further citations. |
| 53 | 3/9/2019 | 4:00 | PB | Opening Brief: Fix table of content headers to reflect changes in rhetorical approach/simplify the headers to be more digestible to the reader; restructure IIB subheaders around the Jones language; include phrase Jones extension of Mullane in IIB prime header; restructure headers of IIIB to reflect Oregon State Law focus on the Mathews Balancing Factors; Rework the Introduction in light of client feedback and other attorneys' feedback; restructure the end of Introduction to include capstone Taylor quote to capstone the Introduction; include citations to PBOT smartcity publications throughout the brief in the statement of the case or Section V; include link to City's PBOT parking kitty promotional video; include Parking Kitty mobile phone display screen asking "how should we contact you"; include footnote 10 regarding Monell admission in Portland's Answer; include capstone to ICii SCOTUS quote re Mullane's "more straightforward test"; add practicability bullet points on page 38; include capstone on page 40 district court's use of an invented"ridiculously easy" standard. |
| 54 | 3/15/2019 | 3:15 | LR | Opening Brief: Further Research into ORS and egislative assembly notes for application of mathews factors in Section III, in light of concerns re: ORS legislature's restructuring of and amendments to |

g

| | | | | the statute--discovery of prior statutory provisions in earlier version of the statute.<br><br>Research oregon state law statutes regarding towing and history of statutory provisions/amendments to the statutory scheme Restructuring of Oregon Statues in 2017 See Or. Rev. Stat. § 98.856 (2017). Oregon Senate Bill 117, enacted June 27, 2017, Research Portland City code regarding towing and history of code provisions/amendments to the code |
|---|---|---|---|---|
| 55 | 3/15/2019 | 2:00 | PB | Opening Brief: Draft additional paragraphs Section III and rework Section III re: Research ORS tow statues, public policy in light of further research into the history of amendments and restructuring |
| 56 | 3/17/2019 | 1:55 | I&C | Opening Brief: Phone call with client discussing and reviewing final draft of the opening brief. Get client buy in/sign off on all sections of the brief. |
| 57 | 3/17/2019 | 4:00 | PB | Opening Brief: Final Proofread and edit; final<br>Cite check; finalize the jurisdictional statement;<br>Add statement of related cases<br>Conduct a final word count<br>Add word count number<br>Add Certificate of Compliance<br>Add Certificate of Service; Add finalized table of authorities final review of the pdf version of brief for appearance/spacing/headers/r |
| 58 | 3/17/2019 | 3:40 | PB | Opening Brief: Re-read through City of Portland Green Purchasing Case Study, at *1 (Mar. 18, 2019), incorporate best quotes in policy section and statement of the case; drafting summary of arguments |
| 59 | 3/17/2019 | 2:45 | PB | Opening Brief: Finalize issues presented; finalize summary of the argument |
| 60 | 3/19/2019 | 0:20 | I&C | Miscellaneous: Preparation of notes and Phone call with City attorney re: motion for judicial notice |
| 61 | 6/3/2019 | 3:30 | RR | Reply Brief: Read through the Government's Brief; Read through the Amicus Brief from the Coalition of Homelessness; and Initial discussion with client walking through Government's arguments |
| 62 | 6/3/2019 | 2:00 | PB | Reply Brief: High level outlining of the arguments in the Government's Brief |
| 63 | 6/4/2019 | 2:00 | PB | Reply Brief: High Level Outline Reply Brief Arguments and strategies |
| 64 | 6/4/2019 | 1:00 | PB | Reply Brief: Re-read Government's Brief and Finalize outline of their argumetns |
| 65 | 6/6/2019 | 1:30 | I&C | Reply Brief: Discussions with Client<br>Discuss and review the high level outline of our reply brief's arguments<br>Discuss how to effectively respond, in more concrete detail, rhetorical and framing strategies for the arguments and ensuring all points made in the Government's Brief are responded to and accounted for |
| 66 | 6/10/2019 | 2:50 | PB | Reply Brief: Begin assembling Reply Brief<br>-Draft the table of contents structure of the argument<br>-Draft the argument subheaders<br>-Place pertinent case law from research bank into the appropriate subheaders of the<br>Reply Brief structure |
| 67 | 6/11/2019 | 1:30 | I&C | Reply Brief: Call with client to discuss and review the Dusenberry Section of the Reply Brief |
| 68 | 6/11/2019 | 2:30 | LR | Reply Brief: Read David and Yagman; distinguish City of Los |

h

| | | | | Angeles v. David reliance on Mathews test; distinguish Yagman; Rewrite/refine the Dusenberry Section of the Reply Brief |
|---|---|---|---|---|
| 69 | 6/11/2019 | 5:00 | PB | Reply Brief: Draft Section I (Dusenberry Section) of the Reply Brief; research into persuasive authority re: distinction between Mullane and Mathews (4th Cir. Snider re: distinct due process issues governed by different standards); cite Jones to respond to Government's erroneous points about automobiles; Research into Ninth Circuit cases citing Dusenberry outside of civil forefeiture context cite cases demonstrating Ninth Circuit's repeated reliance on Mullane by citing Dusenberry in cases other than civil forefeiture context as Government erroneously argues Dusenberry is limited to (i.e. J.B. v. United States; Nozzi; Williams) |
| 70 | 6/12/2019 | 1:30 | PB | Reply Brief: Restructuring the argument structure of the Reply Brief overall; Revise the table of contents of the Reply Brief to Reflect changes in argument structure of Section I; Rework the verbiage and phrasing of the table of contents in light of changes to Section I and to respond to client's feedback from Wednesday June 11th call |
| 71 | 6/13/2019 | 3:25 | PB | Reply Brief: Outlining the sub arguments of Section II of the Reply Brief Review and revise the draft version of the Dusenberry section of the brief incorporating changes brought up/strategic insights from Wendesday June 11th client call. |
| 72 | 6/15/2019 | 2:00 | LR | Reply Brief: Discrete research task: find cases explaining that notice requirement includes a content requirement, include paragraph to that effect in Section IIA of the brief, citing and discusing both binding and persuasive authority: Brody (2nd Cir); Mullane; Oneida (2nd Cir) |
| 73 | 6/15/2019 | 3:00 | PB | Reply Brief: Continue drafting Section 2 of the Reply Brief: Section IIA disputing Portland's factually incorrect misrepresentation that it made eight (8) attempts at notice, via various postings on the car. Include visual of the portland ticket citation making no mention of the tow; inclu |
| 74 | 6/15/2019 | 2:00 | PB | Reply Brief: Put together the Table of Authorities for the Reply Brief Section 1; Revise the Phrasing of the Headers of the Argument Section of the Brief to simplify and for improvements in readability/clarity; Begin Drafting Section 2 of the Reply Brief, i.e Section 2 prelude outlining IIA, IIB, IIC argument sections. |
| 75 | 6/16/2019 | 1:15 | I&C | Reply Brief: Client phone call reviewing Section IIA of the Brief with client |
| 76 | 6/16/2019 | 3:20 | PB | Reply Brief: Revise/rewrites on Section IIA of the Brief in light of June 16, 2019 call with client; begin Drafting Section IIB of the Reply Brief--responding to Portland's misunderstanding that its own statutes somehow determine its constitutional notice obligations. |
| 77 | 6/17/2019 | 3:15 | RR | Reply Brief: Research the dockets of all 9th Circuit Tow Cases Read the briefs submitted by the parties in the Sackman Case (unpublished opinion cited by the Government and the opinion below) and other post-2002 tow-notice Ninth Circuit cases on bloomberg and PACER appellate briefing. Confirm that none of these cases or the briefing in any of these cases argued that Mullane rather than Mathews was the appropriate standard Research dockets of 9th Circuit Tow Cases |

| | | | | |
|---|---|---|---|---|
| | | | | Read Briefs in Sackman Case for Duesenbery Citations |
| 78 | 6/17/2019 | 2:30 | PB | Reply Brief: Continue Drafting Section 2B of the Brief clarifying Portland's conflation of notice of the law with notice of the property deprivation--discrete research into persuasive authority (Garcia v. Foruno 1st cir.); cite to binding authority from Supreme Court (e.g. Mennonite); clarify that Portland is misreading and misciting Lone Star--re-read Lone Star confirmed that the Government is citing from an entirely different claim discussed by the Lone Star case under a completely different header |
| 79 | 6/17/2019 | 2:15 | PB | Reply Brief: Restructure ordering of arguments in Section IIB; Draft Sectiio IIC re: this claim stems from the Government's parking kitty app specifically not merely general advances in technology as Portland alleges; review Government's Brief fro any mention of Parking Kitty; count opening briefs number of citations to Parking Kitty (confirmed over 80 mentions of Parking Kitty); include record cites for bulleted points on pages 25-26 of the Reply brief; Finalize edits/proofreading of Section I Dusenberry and close that section out: i.e. Editing, typos, grammar and citations, of Sections 1 and Section 2 of the Brief |
| 80 | 6/19/2019 | 1:30 | I&C | Reply Brief: Call with client reviewing the brief as a whole through introduction, Section 1 and Section 2 |
| 81 | 6/19/2019 | 3:20 | PB | Reply Brief: Draft Introduction Portion; Outline Section III Arguments of Reply Brief (Jones Application Section) under rhetorical framing of Jones bright line obligation; highlighting that Portland never cites to Jones bewilderingly |
| 82 | 6/19/2019 | 0:30 | PB | Reply Brief: Synthesize notes summarizing changes needed to be made to current draft of Reply Brief, including clients feedback regarding preferred framing of introduction |
| 83 | 6/20/2019 | 2:15 | PB | Reply Brief: Implement changes discussed on client call on Wednesday June 19, 2019 |
| 84 | 6/21/2019 | 0:05 | OT | Miscellaneous: Submit streamlined request amend briefing schedule until 7/25 |
| 85 | 6/25/2019 | 2:35 | PB | Reply Brief: Flesh out the remainder of the outline of arguments in section three by Situate case law citations and quotes from the research/quote bank into the outline of section 3 |
| 86 | 6/25/2019 | 2:30 | PB | Reply Brief: Reread the Government's Brief for the purposes of drafting section III in reply brief--confirm Government never cites Jones; additional discrete research finding all instances of 9th Circuit calling the test the Mullane-Jones test, cite to those cases specifically Taylor, Williams (reference to Mullane's progeny); discrete research to dispel error of Goverments position regarding sub-par dilligence; cite to prsuasive authority interpreting Jones as putting to rest such argumetn MAK Inv. Grp case out of the 10th circuit. |
| 87 | 6/26/2019 | 3:40 | PB | Reply Brief: Continue Drafting the remaining sub sections of section III regarding Ninth Circuit's jurisprudence surrounding Supreme Court's Jones case and tightening up verbiage around portions discussing the Government's failure to account for Jones |
| 88 | 6/28/2019 | 3:45 | LR | Reply Brief: Additional Research into 9th Circuit application of Supreme Court's Jones case More granular research into 9th Circuit's "Mullane-Jones" caselaw -reread Chin Yi Tu and Taylor cases Additionearch to other Circuits' jurisprudence on Jones and how |

| | | | | |
|---|---|---|---|---|
| | | | | Jones precludes Government's arguments about property owners failure to keep. Rework section discussing M.A.K. Inv. Grp., LLC to trim this portion down in wordcount; drive home that property owners' conduct does not dissolve government's notice obligations). |
| 89 | 7/1/2019 | 4:30 | PB | Reply Brief: Incorporate discrete research findings from Friday June 28, 2019<br>Finish draft of Section 3; rework the summary of the arguments sections; revise the Section headers and the table of content in light of additions to Reply Brief/restructuring of the arguments throughout; draft Section V prelude and Section V(a) re: Mr. Grimm's missing Christmas due to the tow, include citations to the record for Section V(a) |
| 90 | 7/3/2019 | 1:40 | I&C | Reply Brief: Call with client<br>Review/Discuss Section 3 as with Client;<br>Discuss how to better frame the government's obligation under 9th Circuit Jones caselaw<br>Type up notes from client call and document changes to be made to section 3 |
| 91 | 7/5/2019 | 5:45 | PB | Reply Brief: Revise Section V and V(a), edit, trim excess verbiage and words, correct for grammar; Incorporate changes to Section 3 discussed on Wednesday July 3 client call;<br>Restructure the argument structure<br>Revise Headers and Table of Content to reflect changes in framing of the argument/case law.<br>Reread Chin Yi Tu and Jones to ensure that reframing of Jone's bright line obligation arguments are well-rooted. |
| 92 | 7/6/2019 | 2:20 | LR | Reply Brief: Re-read Mullane<br>Re-read Government's Brief argument on tangible/moveable property<br>Include persuasive authority rejecting in rem distinction (e.g. 7th Cir. Ehorn citation)<br>Add final paragraphs to Section 3A regarding Government's misreading of Mullane and refuting tangible property points made in Government's brief<br>Update Table of Contents and Table of Authorities to reflect changes made to Section 3 |
| 93 | 7/8/2019 | 3:40 | PB | Reply Brief: Draft Section IV of the Reply Brief (Mathews factors and FRCP 56(d))<br>Review record for record citations in Section IIA<br>Incorporate visual references to record in Section IIA (including visual of the parking violation ticket from the record; the Government's photographs of the vehicle and the posting on the vehicle; the visual copy of the Retriever Towing Tow invoice; and the City's visual copy of the blank template of a warning placard that was never produced here)<br>Updates to the table of contents and the table of authorities to include and reflect the addition of Section IV of the Reply Brief |
| 94 | 7/9/2019 | 1:15 | PB | Reply Brief: Review/re-read statutes (oregon state and Portland city regarding tows) and review opening brief's points regarding Mathews balancing test<br>Revise Section IV |
| 95 | 7/12/2019 | 2:15 | I&C | Reply Brief: Call with client reviewing current draft of Reply Brief Discuss strategy for how to respond in reply brief to Governmnet Brief's Ad Hominem criticisms of client inn preperation of Section V(B). |

| | | | | |
|---|---|---|---|---|
| 96 | 7/15/2019 | 2:30 | PB | Reply Brief: Research for Section V, including: city of Boston government websites NoTow tow alert system; City of Portland's Smart City PDX government webpages soliciting "private sector partners"; City of Portland City Attorney's government webpage describing dedication to social justice; City of Portland's Smart City PDX webpages describing City of Portland's commitment to using technology; Local Newspaper publications describing federal public corruption investigation into Portlnad's parking manager; Better business bureau F rating for Retriever Towing; and legal research into District of Oregon case discussing City of Portland's parking officer public corruption and bribery scandal |
| 97 | 7/16/2019 | 3:00 | PB | Reply Brief: Draft Section V(B): discussing Boston's NoTow Tow Alert system; describing KnowTow App and why it's irrelevant to notice claims here; explaining Portland Smart City initiative; incorporate visual of City of Portland's email correspondence with KnowTow service; review and cite to relevant portion of amicus brief from coalition of homeless regarding social justice implications of tow; describe Portland's parking management public corruprtion investigation by federal agents; conduct discrete research task into "private attorney general" theory |
| 98 | 7/17/2019 | 1:15 | I&C | Reply Brief: Call with client to review/read through Section V(b) get client feedback, buy in and sign off. |
| 99 | 7/17/2019 | 2:15 | PB | Reply Brief: Incorporate changes to brief from section V arising from Wednesday July 17, 2019 phone call with client. Proofread, edit, and revise entire Reply brief Update table of authorities and table of contents to reflect additions to Section V Word count reply brief rework brief to eliminate surplus words, tighten up section to comply with word count without sacrificing content of brief |
| 100 | 7/18/2019 | 1:40 | I&C | Reply Brief: Call with client, Review final draft of all argument sections of the brief. |
| 101 | 7/19/2019 | 1:30 | PB | Reply Brief: Draft Summary of arguments section of Reply brief |
| 102 | 7/20/2019 | 1:45 | PB | Reply Brief: Revise the Introduction Section Edit/revise the summary of the arguments section |
| 103 | 7/21/2019 | 1:15 | PB | Reply Brief: Incorporate remaining changes to be made from Client call on Friday July 18 |
| 104 | 7/22/2019 | 2:00 | PB | Reply Brief: Cite check the Reply Brief--legal cites |
| 105 | 7/22/2019 | 0:45 | PB | Reply Brief: Cite check reply brief--record cites |
| 106 | 7/23/2019 | 2:00 | I&C | Reply Brief: Call with client. Review final draft of the brief in its entirety; and get sign off on summary of argument additions and make notes on client's final suggestions/requested changes for later review. |
| 107 | 7/24/2019 | 2:30 | PB | Reply Brief: Incorporate final changes to the brief from July 23 client call Edit final draft of the reply brief in its entirety Updates to table of authorities to reflect final changes to the Reply brief Add final word count Add statement of related cases page Add certificate of service page; incorporate into single file pdf; review pdf for formatting, spacing, header alignments, end of page spacing. |

1

| 108 | 8/5/2019 | 2:00 | LR (MJN) | Judicial Notice Motion: Read FRE 201; advisory committee notes; Research secondary sources on FRE 201 |
|---|---|---|---|---|
| 109 | 8/5/2019 | 2:00 | LR (MJN) | Judicial Notice Motion: Comprehensive Legal Research 9th Circuit Caselaw on Judicial Notice and citations to FRE 201 (comprehensive review starting with newest case law and going to oldest) |
| 110 | 8/6/2019 | 4:00 | LR (MJN) | Judicial Notice Motion: Continue comprehensive Legal Research 9th Circuit Caselaw on Judicial Notice and citations to FRE 201 (comprehensive review starting with newest case law and going to oldest) |
| 111 | 8/9/2019 | 3:15 | LR (MJN) | Judicial Notice Motion: Research other Circuits' jurisprudence on Judicial Notice and citations to FRE 201 |
| 112 | 8/12/2019 | 1:15 | LR (MJN) | Judicial Notice Motion: Secondary sources and practice guides research into distinction between adjudicative facts as opposed to background facts or legislative facts |
| 113 | 8/20/2019 | 3:30 | LR (MJN) | Judicial Notice Motion: Finalize discrete research into judicial notice of court filings<br>Finalize discrete research into judicial notice of local newspaper publications<br>Finalize discrete research into judicial notice of government websites or publicly available government publication |
| 114 | 8/23/2019 | 1:30 | LR (MJN) | Judicial Notice Motion: Discrete Legal Research into judicial notice of facts which the opposing party itself makes publicly available |
| 115 | 9/2/2019 | 2:15 | OT (MJN) | Judicial Notice Motion: Outline arguments to make in Motion for judicial notice; Structure quotes/caselaw citations found during comprehensive legal research into outline--putting quotes and cases in proper sections of the argument outline. |
| 116 | 9/9/2019 | 3:15 | OT (MJN) | Judicial Notice Motion: Draft Section I and IA of Motion for Judicial Notice |
| 117 | 9/11/2019 | 1:45 | OT (MJN) | Judicial Notice Motion:<br>Revise Section I and IA of Motion for Judicial Notice |
| 118 | 9/13/2019 | 2:00 | OT (MJN) | Judicial Notice Motion: Draft Section IC of the Motion for judicial Notice |
| 119 | 9/17/2019 | 3:15 | LR (MJN) | Judicial Notice Motion: Discrete research re: FRE 201's inapplicability to non-adjudicative facts<br>Discrete research re: the distinction between adjudicative and non-adjudicative facts<br>Revise Section 1C of Motion for judicial Notice |
| 120 | 9/18/2019 | 3:10 | OT (MJN) | Judicial Notice Motion: Begin Drafting Section IB of Motion for Judicial Notice<br>Incorporate facts sought for judicial notice, citations to those facts, and structure the facts in groups based on type (e.g. Parking Kitty app; Portland SmartMeters; Portland's Smart City Initiative) |
| 121 | 9/20/2019 | 3:00 | LR (MJN) | Judicial Notice Motion: Discrete research into judicial notice when authenticity of document not challenged by either party (Valdivia v. Schwarzenegger)<br>Discrete research into<br>Finish Draft of Section 1B of Motion for Judicial Notice |
| 122 | 9/24/2019 | 2:30 | OT (MJN) | Judicial Notice Motion: Edit motion for judicial notice |
| 123 | 10/1/2019 | 2:00 | OT (MJN) | Judicial Notice Motion: Compile and add exhibits to the Motion for judicial notice<br>Table of Contents for Motion for Judicial notice |
| 124 | 10/2/2019 | 2:30 | OT (MJN) | Judicial Notice Motion: Cite check motion for judicial notice<br>Add Table of authorities |

| 125 | 10/3/2019 | 0:45 | OT (MJN) | Judicial Notice Motion: Conduct final word count<br>Add certificate of compliance<br>Add certificate of service Final review of document |
| 126 | 10/15/2019 | 1:15 | RR (MJN) | REPLY in support of judicial notice: Read the City's Opposition motion for judicial notice<br>Outline their arguments |
| 127 | 10/16/2019 | 1:15 | OT (MJN) | REPLY in support of judicial notice: Outline our response to their arguments<br>Create table of content and argument headers for the reply in support of motion for judicial notice |
| 128 | 10/17/2019 | 1:30 | OT (MJN) | REPLY in support of judicial notice: Incorporate and situate the case law citations and quotes from research/quote bank into the appropriate sections of the reply brief outline |
| 129 | 10/18/2019 | 3:00 | LR (MJN) | REPLY in support of judicial notice: Read Lowry case cited by Government's Opposition<br>Draft section IA, IB and IC of Reply |
| 130 | 10/19/2019 | 1:15 | OT (MJN) | REPLY in support of judicial notice: Edit and revise Sections 1A, 1B, and 1C of Reply<br>Re-read Low<br>Discrete Research into caselaw language indicating that judicial notice is mandatory under certain circumstances (caselaw pithily summing up FRE 201's distinction between permissive and mandatory judicial notice). |
| 131 | 10/20/2019 | 3:00 | OT (MJN) | REPLY in support of judicial notice: Draft Section 1D and Section 1E of Reply |
| 132 | 10/20/2019 | 2:00 | OT (MJN) | REPLY in support of judicial notice: Edit/Revise Section 1D and Section 1 E of Reply |
| 133 | 10/21/2019 | 2:15 | OT (MJN) | REPLY in support of judicial notice: Review and edit entire draft of reply in support of motion for judicial notice |
| 134 | 10/21/2019 | 2:00 | OT (MJN) | REPLY in support of judicial notice: Cite check Reply<br>Create Table of Authorities<br>Add certificate of compliance<br>Add certificate of Service |
| 135 | 12/9/2019 | 3:15 | OA | Miscellaneous: Time preparing for oral arguments before Ninth Circuit: reviewing case notes, reviewing briefing by both sides, reviewing opinion and docket below, reviewing |
| 136 | 12/10/2019 | 4:00 | OA | Miscellaneous: Time preparing for oral arguments: outlining arguments to be made, outlining anticipated arguments, reviewing case notes, reviewing briefing by both sides, reviewing opinion and docket below, reviewing |
| 137 | 12/12/2019 | 6:15 | OA | Miscellaneous: Flight from New York,, New York to Seattle, Washington for Oral Argument |
| 138 | 12/12/2019 | 5:00 | OA | Miscellaneous: Time preparing for oral arguments before Ninth Circuit, reviewing case notes, reviewing briefing by both sides, reviewing opinion and docket below, reviewing |
| 139 | 12/13/2019 | 0:30 | I&C | Miscellaneous: Client call discussing oral argument |
| 140 | 12/13/2019 | 1:00 | OA | Miscellaneous: Oral argument in Seattle, Washington time spent at the Courthouse and participating in oral argument. Oral argument in this case was 33 minutes long and additional time spent waiting at the courthouse for the prior oral argument to be conducted. |
| 141 | 12/21/2019 | 5:10 | OA | Miscellaneous: Flight from Seattle, Washington to New York, New York returning from Oral Argument |
| 142 | 1/3/2020 | 3:00 | LR | Fees Motion: Judicial Imprimatur in Ninth Cir and other Circuits jurisprudence Research<br>Reviewing caselaw research findings with client and discussion of |

| | | | | |
|---|---|---|---|---|
| | | | | structure/content outline of the brief |
| 143 | 1/3/2020 | 2:00 | OT | Fees Motion: Finish outline and situating quotes/caselaw from quote bank/research bank in the appropriate sections |
| 144 | 8/26/2020 | 0:15 | I&C | Miscellaneous: Draft email to City Attorneys Mr. Vannier to set up discussions following 9th Circuit's issuing its opinion in Grimm v. City of Portland and to offer the city an extension on post opinion deadlines if the City needs it in light of current situation in portland |
| 145 | 8/27/2020 | 0:10 | I&C | Miscellaneous: Review email from City Attorney Mr. Vannier regarding City's request for extension for time to file petitions for reconsideration and postponing all post-argument deadlines by an additional 30 days |
| 146 | 8/30/2020 | 0:15 | I&C | Miscellaneous: Draft email to city Attorney Mr. Vannier consenting to Portland's 30 day extension request and offering an additional 15 days for total of 45 day extension in light of Portland protests and Covid disruptions to City Attorneys' office |
| 147 | 8/31/2020 | 0:05 | I&C | Miscellaneous: Review City attorney Mr. Vannier's email regarding the City's acceptance of the offer of 45 day extension |
| 148 | 9/1/2020 | 0:10 | I&C | Miscellaneous: Review City's proposed joint motion for 45 day extension of all post-opinion deadlines |
| 149 | 9/1/2020 | 0:05 | I&C | Miscellaneous: Review City attorney Mr. cannier's email regarding City's acceptance of 45 day extension and City's drafting of joint motion for extension of all post opinion deadlines so that the City can decide whether it wishes to seek en banc rehearing |
| 150 | 9/1/2020 | 0:05 | I&C | Miscellaneous: Draft email confirming 45 day extension of all post opinion deadlines and preliminarily setting up phone call at the end of September when City's counsel returns from time out of the office |
| 151 | 9/1/2020 | 0:03 | I&C | Miscellaneous: Draft email response to City Attorney confirming that the proposed joint motion is acceptable |
| 152 | 9/2/2020 | 0:10 | I&C | Miscellaneous: Review City's email sending over the final version of City's proposed joint motion; review of final version of City's proposed joint motion; and email back to City Attorney confirming that it is acceptable to file |
| 153 | 10/6/2020 | 0:40 | I&C | Miscellaneous: preparation for call and Phone conversation with City attorney Mr. Vannier, discussing the case and City confirms that they will be seeking rehearing en banc. notes on phone conversation |
| 154 | 10/6/2020 | 0:10 | I&C | Miscellaneous: Draft email to the City attorney following up with the City's attorney to set up phone call to discuss how the city intends to proceed following 9th Circuit's opinion |
| 155 | 10/16/2020 | 0:05 | I&C | Miscellaneous: Email correspondences with City attorney confirming that the City does not oppose an extension of time to file bill of costs and motion for fees until after the Court rules on City's motion for rehearing en band |
| 156 | 10/16/2020 | 0:15 | OT | Miscellaneous: Draft, review, and submit the motion to extend time for bill of costs |
| 157 | 10/26/2020 | 0:15 | I&C | Miscellaneous: Email correspondence of multiple emails with City Attorney of City of Los Angeles<br><br>Review initial email from City Attorney for City of Los Angeles, inquiry about<br><br>Draft Email response to City Attorney inquiring about which parties in particular seek to participate as amici in the brief; Review email response from City of Los Angeles Attorney, clarifying that other |

| | | | | amici signing on to the amicus will be: City of Honolulu, International Municipal Lawyers Association, the League of California Cities, and the Washington State Association of Municipal Attorneys. |
|---|---|---|---|---|
| 158 | 10/27/2020 | 0:05 | I&C | Miscellaneous: Draft response to City of Los Angeles attorney consenting to filing of amicus brief |
| 159 | 10/28/2020 | 0:45 | RR | Miscellaneous: Review Amicus Brief en banc rehearing submitted by Igor Lukashin |
| 160 | 10/30/2020 | 1:15 | RR | Miscellaneous: Review Amicus Brief en banc rehearing from City of LA, City of Honolulu, International Municipal Lawyers Association, League of California Cities, and WA State Association of Municipal Attorneys |
| 161 | 10/31/2020 | 0:45 | I&C | Miscellaneous: Call with client discussing the amicus briefs filed regarding City's motion for en banc rehearing |
| 162 | 11/17/2020 | 0:15 | I&C | Miscellaneous: Draft email to the City Attorney Mr. Vannier following up on the Ninth Circuit's denial of rehearing en banc. Arrange for phone call to discuss possibility of amicable resolution. Outline the strength of the claims and the social justice implications of the case and the City's tow practices |
| 163 | 11/17/2020 | 0:10 | I&C | Miscellaneous: Review of City Attorneys response setting up time to speak and email correspondence in return arranging time to meet with City attorneys. |
| 164 | 11/18/2020 | 0:25 | I&C | Miscellaneous: preparation and review of notes for phone call, Phone call with City attorney Mr. Vannier regarding possibility of amicable resolution, re: change in policy for municipal tow practices and monetary compensation for attorney work and value of the claims. Notes memorializing discussions from phone call. |
| 165 | 11/19/2020 | 0:10 | I&C | Miscellaneous: Email to city attorney Mr. Vannier arranging for another phone call to provide broad parameters of a proposed settlement agreement along lines of concrete policy changes and request for monetary compensation for the fees, costs, and value of the claims. |
| 166 | 11/19/2020 | 0:05 | I&C | Miscellaneous: Review of City Attorney Mr. Vannier's response and email back confirming time for phone conversation tomorrow Friday, November 20 |
| 167 | 11/20/2020 | 0:45 | I&C | Miscellaneous: Preparation and review of notes in advance of conversation with city attorney Mr. Vannier; phone conversation with Mr. Vannier detailing 1. broad parameters of a proposed agreement; 2. explanation of the rationale for the proposed agreement; 3. expectations for City's response time to the broad parameters of amicable resolution. Conveying need for timely response from City because mandate will issue soon and because we need to find local counsel if this case continues at the district court. Explaining that needing to find additional attorneys and getting them involved will complicate possibility of settlement. Ideally we can reach agreement before mandate issues and local counsel will need to be found |
| 168 | 11/20/2020 | 0:15 | I&C | Miscellaneous: Email follow up to City Attorney Vannier, reiterating need for timely response to parameters of a settlement and sharing case law language explaining the defects in the City's position regarding notice by posting. |
| 169 | 11/27/2020 | 0:15 | I&C | Miscellaneous: Draft, review, and file unopposed Motion to extend time to file bill of costs |
| 170 | 11/27/2020 | 0:05 | I&C | Miscellaneous: Email to City attorney Mr. Vannier, indicating that we will move for an agreed upon 30 day extension for time to seek |

p

| | | | | |
|---|---|---|---|---|
| | | | | fees and costs while the parties continue exploring possibility of amicable resolution. |
| 171 | 12/4/2020 | 0:05 | I&C | Miscellaneous: Email to City Attorney Mr. Vannier. Conveying that now that the mandate has issued and the case has re-opened at the district court that we should arrange a meet and confer next week to discuss with between the parties' appellate counsel and district court counsel, including Ms. Verrips, Mr. Grimm's local counsel in the District of Oregon |
| 172 | 12/4/2020 | 0:05 | I&C | Miscellaneous: Email correspondence setting up a discussion between the 5 attorneys for both sides for December 9 after the City Attorney have had the chance to meet and discuss with their client. |
| 173 | 12/7/2020 | 0:25 | I&C | Miscellaneous: Review of Ms. Verrips' email regarding settlement parameters going forward in light of her involvement in the case to represent Mr. Grimm in the District of Oregon and her request that the attorneys come prepared to the December 9th phone call having read 9th Circuit case on damages and the publicly available Municipal Tow summary outlining the number of tows for the month of July 2017. Review of those documents. |
| 174 | 12/9/2020 | 1:30 | I&C | Miscellaneous: Prepare for call with 3 attorneys at City Attorneys Office and Ms. Verrips, Mr. Grimm's local counsel in the District of Oregon. Review notes on case and settlement discussions. Phone call between parties' local and appellate counsel (5 attorneys total). Memorialize notes on meeting and post-call discussion with client and client's local counsel. Take aways: no commitment to any concrete changes to tow policy but city is open to possibility of making some changes to tow practices, parties not in agreement on monetary settlement figures, parties not in agreement on availability of interim appellate fees. City has still not put any dollar figure on the table. |
| 175 | 12/14/2020 | 0:15 | I&C | Miscellaneous: Draft email to 3 city attorneys (appellate and district court counsel). Following up on December 9th phone call. Indicating that policy change does not seem to be a sticking point to amicable resolution, and request for counteroffer to take back to client. Conveying thoughts on possible schedule regarding briefing and discovery moving forward at the district court. Proposing we stay briefing and discovery while settlement negotiations continue. Ask the city for another phone call between counsel to hear a counter offer from the city. |
| 176 | 12/15/2020 | 0:20 | I&C | Miscellaneous: Review City Attorney Mr. Joh's email. City is open to exploring ways to improve likelihood of achieving notice, disagrees that such notice is constitutionally required. City is not putting any counteroffer on table. Phone call at this time is "not a productive use of our time". Ask for written offer before planning further discussions. Request for proposed scheduling on briefing and discovery moving forward at district court. |
| 177 | 12/15/2020 | 2:00 | LR | Fees Motion: Research Supreme Court cases prevailing party Research Fees cases Supreme Court Circuit |
| 178 | 12/17/2020 | 0:10 | I&C | Miscellaneous: Review of Ms. Verrips email to Mr. Joh re: formal settlement offer, motion to amend complaint below at district court, and scheduling the district court proceeding. Offer of settlement of Interim Appellate Fees for $25,000 for all attorney work from notice of appeal through the denial of rehearing by Ninth Circuit. |
| 179 | 12/17/2020 | 4:00 | LR | Fees Motion: Researching prevailing party status 9th Cir (new—old) Read all 9th Circuit prevailing party cases from present-- back to 2009 |

q

| 180 | 12/17/2020 | 1:00 | LR | Fees Motion: research specific issue of remand and prevailing party throughout the circuits |
| 181 | 12/18/2020 | 0:15 | I&C | Miscellaneous: Review of City Attorney Mr. Joh's email re: City's belief that notice claims are not subject to class certification because "due process claims are circumstance specific"; re: Rule 15 relate back provisions; and the City's rejection of discrete settlement offer of interim appellate attorney fees. City believes interim appellate attorney fees are not available because we are not yet a prevailing party under Section 1988 fees jurisprudence. |
| 182 | 12/18/2020 | 0:30 | LR | Fees Motion: Read opposing counsels email re: fees Research in response to opposing councils email--case law cited |
| 183 | 12/20/2020 | 5:00 | LR | Fees Motion: Research prevailing party standard Supreme Court new--old (in light of opposing counsel email AND after finding 1993 SCOTUS case) Research Moore's Practice Guide tracing Supreme Court Development and Circuit Splits surrounding prevailing party status |
| 184 | 12/20/2020 | 4:00 | LR | Fees Motion: Continue research prevailing party standard Supreme Court new--old (picking up with case number 91, Kay v. Ehrler) Finished w number 130 |
| 185 | 12/21/2020 | 2:00 | LR | Fees Motion: Focused research on Buckhannon interpretation by the 9th Cir Focused research on final judgment by various Courts of Appeals |
| 186 | 12/23/2020 | 2:00 | OT | Fees Motion: Draft Section 1 (availability at this stage of the litigation) of Opening Fees motion: Outline and arrange caselaw citations and quotations in the appropriate portions of this Section of the Brief. |
| 187 | 12/28/2020 | 5:45 | OT | Fees Motion: Outline the brief, arranging caselaw citations in the appropriate sections of the brief Structure the brief further research to clarify specific, discrete question of "right to trial" and "prevailing party" Outlining the sections I and II a. On interim fees and prevailing party term of art definition and doctrinal parameters |
| 188 | 12/28/2020 | 0:10 | OT | Miscellaneous: Draft, review, and file Motion to extend time to file bill of costs |
| 189 | 12/29/2020 | 2:00 | OT | Fees Motion: Research most recent prevailing party cases in 9th Circuit and Sister Circuits |
| 190 | 12/29/2020 | 0:45 | OT | Fees Motion: drafting bill of costs, confirming costs incurred |
| 191 | 12/29/2020 | 0:35 | OT | Fees Motion: draft of motion for extension of time for costs and fees |
| 192 | 1/4/2021 | 1:35 | OT | Bill of costs: File bill of costs with 9th Circuit: pull receipts and expense documentation for appellate briefing printing costs; Review ninth circuit local rules; review 9th Circuit form and instructions; conduct calculation of total costs eligible; check calculations; assemble pdf format and submit |
| 193 | 1/15/2021 | 4:30 | OT | Bill of Costs: FRAP(39)(e) Bill of Costs in District Court: research availability of district court bill of cost; research timeline for submit; review District of OR local rules; pull records of transcript costs and filing of appeal costs, draft FRAP 39(e) bill of cost to be submitted by Ms. Verrips in Dist. Of Oregon; draft Declaration in support of Bill of Costs |
| 194 | 1/17/2021 | 2:25 | LR | Fees Motion: research law regarding lodestar rates and Kerr factors |
| 195 | 1/17/2021 | 1:10 | LR | Fees Motion: research the forum rule regarding lodestar reasonable |

r

| | | | | |
|---|---|---|---|---|
| | | | | fee calculation |
| 196 | 1/18/2021 | 5:00 | OT | Fees Motion: Draft Section 1 fees motion: outline argument, pull quotes from quote/research bank and order it, draft section, assemble all fees logs/hours |
| 197 | 1/19/2021 | 4:00 | OT | Fees Motion: Draft remainder of the fees petition |
| 198 | 1/19/2021 | 3:00 | OT | Fees Motion: Draft declaration in support of fees and conduct research regarding the appropriate hourly market rate for lodestar method |
| 199 | 1/20/2021 | 16:00 | OT | Fees Motion: Finish motion for fees, draft section II of the motion for fees; draft declaration in support; conduct research confirming market rate determinations in previous cases within circuit; draft the exhibit justifying hourly rate; cite check entire motion for fees and exhibits; compose the form 9 equivalent and assemble the hours logs; format tables; conduct math calculations for form 9 equivalent hours; double check those figures. |

**Signature**  /s/ Gregory Keenan     **Date**  January 20, 2021

*(use* "s/[typed name]" *to sign electronically-filed documents)*

# Exhibit C

Justification of Hourly Rate

t

**Justification of Hourly Rate**

1.   The undersigned believes that $450 represents a reasonable hourly rate for the appellate work performed in this civil rights appeal.  Based on my research, as detailed below, there is satisfactory proof that this figure represents the market rate for legal services by an attorney of comparable skill, experience, and reputation.

2.   From my research into the law, it is my understanding that a reasonable hourly rate is the market rate "for similar services by lawyers of reasonably comparable skill, experience, and reputation." Guam, 100 F.3d at 696 (9th Cir. 1996).

3.   This Court has observed that "rate determinations in other cases" provide "*satisfactory evidence* of the prevailing market rate." United Steelworkers v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (emphasis added); see also Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008).

4.   I believe $450 represents a reasonable hourly rate because similar rates have been awarded for work in courts within this Circuit and by this Court itself. Tourgeman v. Collins, No. 08-cv-1392, 2012 U.S. Dist. LEXIS 1219 (S.D. Cal. Jan. 5, 2012) (awarding fees at $450 hourly rate for time spent on

u

motion); <u>Quatro v. Tehachapi Unified Sch. Dist.</u>, 742 F. App'x 340, 341 (9th Cir. 2018) ("$450 was a reasonable hourly rate"). Such cases constitute satisfactory evidence of the prevailing market rate.

5. Moreover, one court within this Circuit has decided that "$450 [was] a reasonable hourly rate for plaintiffs' lead attorney to have charged[.]" <u>Ambat v. City & County of San Francisco</u>, 2011 U.S. Dist. LEXIS 99176, *16 (N.D. Cal Sept. 2, 2011). Here, the undersigned served as lead attorney on this appeal; indeed, the undersigned was the only attorney staffed on this appeal representing Mr. Grimm.

6. From my research, I also understand that courts within this Circuit have awarded similar rates specifically for appellate work in civil rights appeals. See <u>Guy v. City of San Diego</u>, No. 06-cv-0766, 2011 U.S. Dist. LEXIS 42060, *10 (S.D. Cal. April 19, 2011) (awarding fees at $450 hourly rate for *appellate* work in § 1983 action).

7. It is also my understanding that some courts have recognized that "appellate work is a specialized skill" and that "counsel's work on appeal should be compensated at a higher rate." <u>Richards v. New York City Bd. of Education</u>, 1988 U.S. Dist. LEXIS 6121, *29 (S.D.N.Y. June 27, 1988). Here, the hourly rate of $425 is being sought for appellate fees.

8.   Further, I believe that my skill, experience, and reputation amongst those familiar with my work bear on the reasonable hourly rate that would be appropriate for procuring similar services by lawyers of reasonably comparable skill, experience, and reputation. <u>See generally</u> Keenan Decl.

9.   The undersigned has an extensive appellate practice and has practiced before various Courts of Appeals. <u>See</u> <u>id.</u> ¶¶ 14-17.

10.   The undersigned has repeatedly briefed complex questions of law before appellate courts and has done so both on the merits and as an *amicus*. <u>See</u> <u>id.</u>

11.   The undersigned believes that his very high skills have earned a reputation for excellent work within the legal community. <u>See</u> <u>id.</u> ¶¶ 18-19; <u>see generally</u> Hamilton Decl.

12.   Additionally, the undersigned has cultivated a particularly niche expertise on issues of digital ethics. <u>See</u> Keenan Decl. ¶¶ 20-29.

13.   The undersigned possesses unique experience dealing with the legal and ethics issues arising from a municipal governments' use of digital technologies. <u>See</u> <u>id.</u> ¶¶ 22-24.

14.   The undersigned's unique "skill, experience, and reputation" proved necessary and helpful in rendering effective legal representation in this

w

appeal. After all, this appeal presented particularly complex legal issues that raised novel questions of constitutional law arising from Portland's use of smartphone app technology to conduct its parking enforcement. This case presented many questions of first impression at the intersection of law and technology.

15. It is the undersigned's understanding that courts sometimes consider the "rates from outside the local market." <u>Barjon v. Dalton</u>, 132 F.3d 496, 500 (9th Cir. 1997). The undersigned is a New York based attorney. <u>See</u> Keenan Decl. ¶ 5. Thus, the undersigned believes that market rates both from within this Circuit and those from the New York area might be instructive in determining a reasonable rate here.

16. For the foregoing reasons, the undersigned respectfully submits that a $450 hourly rate represents the market rate for appellate work done by an attorney of comparable skill, experience, and reputation; is in keeping with other cases awarding such an amount for appellate work in §1988 cases before this Court; and reflects the undersigned's niche expertise on issues involving legal issues at the intersection of law and technology and matters implicating digital ethics and governance.

| **Signature** | */s/ Gregory Keenan* | **Date** | January 20, 2021 |
|---|---|---|---|

x

# Exhibit D

Declaration of Ryan Hamilton

I, Ryan A. Hamilton, Esq., state the following:

1.  I have personal knowledge of the facts and matters stated herein except those matters stated upon information and belief and as to those matters I believe them to be true.

2.  I am a licensed attorney in the States of Nevada, California, and Indiana. I am in good standing in each of these jurisdictions.

3.  I submit this declaration to attest to the quality of legal work I have observed Gregory Keenan produce. I serve as co-counsel with Mr. Keenan, on an appeal to the Ninth Circuit Court of Appeals, *Bell v. Wilmott Storage Services, LLC*, Appeal No. 19-55882. The case is a copyright-infringement action relating to a federally registered photo showing the Indianapolis canal walk with the skyline in the background. The issue on appeal is whether a defendant's unauthorized use of the photo was so *de minimis* as to preclude liability despite the defendant's copying of the entire photo.

4.  Mr. Keenan's legal writing is among the best I have seen in my fourteen years of legal practice across three states. He presents the legal issues to the Court in a way that is both compelling and persuasive. In addition, he assists the Court in thinking through the downstream consequences of the issues before it. Simply put, his written product is a joy to read.

z

5.     Mr. Keenan handled the oral argument before the Ninth Circuit as well. He addressed each of the Justices' questions candidly and deftly handled their concerns about our legal position. In fact, one of the Justices made it clear that he was hostile to our position and even disparaged our client. I was impressed at how Mr. Keenan handled this situation by placing our case in a larger context for the Justice and used a creative analogy as a way for the Justice to see the case differently.

6.     All in all, my experience as co-counsel with Mr. Keenan has shown me that he researches the law thoroughly. He then gives considerable thought as to the most effective way to present the law and facts, often doing so via analogy.

7.     A client who has Mr. Keenan as his advocate is truly lucky.

8.     I make these statements in accordance with my duties as an officer of the Court.

In accordance with NRS 53.045, I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Executed this 20th day of January 2021.

                                        */s/Ryan A. Hamilton*_____
                                        Ryan A. Hamilton, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing MOTION-REQUEST FOR AWARD OF INTERIM ATTORNEY FEES with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: January 20, 2021        Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan