**No. 18-35673**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

ANDREW GRIMM,

*Plaintiff-Appellant*,

v.

CITY OF PORTLAND,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Oregon
No. 3:18-cv-00183-MO
Hon. Michael W. Mosman, United States District Judge

_____

**REPLY IN SUPPORT OF MOTION-REQUEST FOR
AWARD OF INTERIM ATTORNEY FEES**

_____


Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

MEMORANDUM ...................................................................................1

    I.    By Begging the Question, Portland Ignores that Fees Should Be Awarded When Civil-Rights Plaintiffs Win Interim Merits Victories...................................................3

    II.   Portland Proposes a Lodestar Calculation That Is Fundamentally Flawed. ..................................................12

          A.    Portland urges an issue-by-issue approach to hours that has been rejected. ..........................................12

          B.    Portland argues for a problematic rate by ignoring relevant evidence and experience. .........................16

CONCLUSION ....................................................................................17

CERTIFICATE OF COMPLIANCE....................................................18

SUPPLEMENTAL DECLARATION OF GREGORY KEENAN.........................19

EXHIBITS TO KEENAN DECLARATION

    Exhibit A:  Updated Form 9 Equivalent
    Exhibit B:  Itemization of Hours Spent on this Reply
    Exhibit C:  Reply-Justification of Hourly Rate
    Exhibit D:  Amended Hamilton Declaration
    Exhibit E:  Grimm Declaration

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

<u>Allstate Ins. Co. v. Plambeck</u>,
    802 F.3d 665 (5th Cir. 2015). .........................................................................13

<u>Benton v. Or. Student Assistance Comm'n</u>,
    421 F.3d 901 (9th Cir. 2005). ..........................................................................8

<u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>,
    532 U.S. 598 (2001).........................................................................................5

<u>Chafin v. Chafin</u>,
    568 U.S. 165 (2013).........................................................................................9

<u>Citizens for Better Forestry v. USDA</u> (<u>Citizens I</u>),
    341 F.3d 961 (9th Cir. 2003). ..........................................................................7

<u>Citizens for Better Forestry v. USDA</u> (<u>Citizens II</u>),
    567 F.3d 1128 (9th Cir. 2009). .....................................................................7, 8

<u>Commissioner v. Jean</u>,
    496 U.S. 154 (1990).......................................................................................14

<u>Cortez v. Skol</u>,
    776 F.3d 1046 (9th Cir. 2015). .....................................................................3, 6

<u>Craik v. Minn. State Univ. Bd.</u>,
    738 F.2d 348 (8th Cir. 1984). ........................................................................15

<u>Davis v. City of San Francisco</u>,
    976 F.2d 1536 (9th Cir. 1992). ......................................................................15

<u>Fox v. Vice</u>,
    563 U.S. 826 (2011).......................................................................................14

<u>Goodyear Tire & Rubber Co. v. Haeger</u>,
    137 S. Ct. 1178 (2017)...................................................................................14

<u>Greater L.A. Council on Deafness v. Cmty. Television of S. Cal.</u>,
    813 F.2d 217 (9th Cir. 1987). ........................................................................13

Hackett v. Barnhart,
    475 F.3d 1166 (10th Cir. 2007). ......................................................................13

Hashimoto v. Dalton,
    118 F.3d 671 (9th Cir. 1997). ...........................................................................5

Hensley v. Eckerhart,
    461 U.S. 424 (1983)....................................................................... 2, 12, 13, 15

Ibrahim v. DHS,
    912 F.3d 1147 (9th Cir. 2019) (en banc). ......................................................15

Klein v. City of Laguna Beach,
    810 F.3d 693 (9th Cir. 2016). ..........................................................................8

Montcalm Publ. Corp. v. Virginia,
    199 F.3d 168 (4th Cir. 1999). ........................................................................13

Nat'l Warranty Ins. Co. v. Greenfield,
    2001 U.S. Dist. LEXIS 7763 (D. Or. Feb. 8, 2001). .....................................15

Ne. Ohio Coal. for the Homeless v. Husted,
    831 F.3d 686 (6th Cir. 2016). ........................................................................16

Phelps-Roper v. Koster,
    815 F.3d 393 (8th Cir. 2016). ........................................................................14

Rickley v. Cty. of L.A.,
    654 F.3d 950 (9th Cir. 2011). ........................................................................14

UFO Chuting of Hawaii, Inc. v. Smith,
    508 F.3d 1189 (9th Cir. 2007). ........................................................................5

## Other Authorities

Towing and Impoundment, Portland Police Bureau (accessed Feb. 21, 2021)
    https://www.portlandoregon.gov/police/article/143824................................10

## Rules

FRAP 28....................................................................................................................13

iv

# MEMORANDUM

Throughout this case, Portland has consistently expanded the litigation with unsupported arguments.

Examples abound. Portland faced a narrow dispute about the method of pre-towing notice. Yet Portland chose to expand this dispute, challenging the right to receive any individualized notice whatsoever. On appeal, Portland disputed what its own government websites publicly say—necessitating a lengthy judicial-notice motion. In its Brief, Portland relied on the wrong part of a case. Answering Br. 14. Pointing out that error took time. Reply Br. 23-24; Opinion 9.

In fact, responding to these positions, among many others, took a lot of time. And, while it's certainly Portland's prerogative to make any argument it wants, civil-rights fee-shifting means that time spent responding to Portland is compensable. Indeed, Portland has given no reason why fees should not be shifted here.

**<u>First</u>**, Portland makes unavailing arguments on fee *eligibility*, relying primarily on a footnote in <u>Cortez v. Skol</u> that merely begs the question. Then, Portland cites clearly distinguishable authority as though it were dispositive. Finally, realizing that its arguments for *en banc* rehearing undermine its opposition to fees, Portland disingenuously tries to backtrack from its earlier positions. <u>See</u> Section I, *infra*.

1

**Second**, when disputing the *amount* of fees, Portland really stumbles. Its entire approach of issue-by-issue dissection is directly refuted by the very case it cites, Hensley v. Eckerhart, 461 U.S. 424, 435 n.11 (1983). Misapplying Hensley, Portland makes the radical proposal that this Court slash 84% of the hours spent preparing winning briefs. Ironically, much of those hours are a workload of Portland's own making—time spent responding to Portland's unsupported arguments. See Section II, *infra*.

* * * * *

This case implicates novel Constitutional questions and untested government technology. In such disputes, civil-rights plaintiffs and city attorneys offices don't have comparable resources.

Thus, Portland's approach to civil-rights fees would endanger the development of the law. After all, what's the incentive to take on an unexplored issue where, even if the lawyer prevails on the merits, civil-rights fees will get slashed dramatically?

That's not what Congress envisioned for civil-rights fee-shifting. To the contrary, Portland's approach is antithetical to what Congress ordained. And, given the panoply of emerging digital civil-rights issues, such fee-shifting has newfound importance.

I.   **BY BEGGING THE QUESTION, PORTLAND IGNORES THAT FEES SHOULD BE AWARDED WHEN CIVIL-RIGHTS PLAINTIFFS WIN INTERIM MERITS VICTORIES.**

Portland's Opposition makes an extraordinary logical leap. Portland starts with an accurate premise: fee-shifting is *not always* available for interim appellate reversals. From that premise, Portland inaccurately concludes that fee-shifting is *never* available for interim appellate reversals. That's simply not true—logically or legally.

Besides Portland's logical leap, the remainder of Portland's briefing on prevailing-party status begs the question. Worse, Portland's Opposition obfuscates what the Motion-Request argued, what the Opinion decided, and even what Portland said in its own *en banc* petition. None of its briefing articulates any serious reason that fee-shifting is unwarranted here.

* * * * *

Portland's primary emphasis is on a footnote from Cortez v. Skol, Opp. 6-7, which reads:

> Plaintiff has asked for attorney's fees under 42 U.S.C. § 1988(b). We deny this request […] because [1] Plaintiff is not, at this point, a prevailing party. [2] "Section 1988 does not provide for attorney fees when a party merely establishes a right to trial."

Cortez, 776 F.3d 1046, 1055 n.10 (9th Cir. 2015) (cite omitted).

<u>Cortez</u>'s footnote merely makes two unobjectionable statements that aren't lost on the undersigned.

In fact, the Motion-Request itself made these very points: it detailed that prevailing party is a "legal term of art[,]" Motion-Request 2, with a "*generous formulation*[,]" <u>id.</u> at 5, that is met when "some of the benefit" sought is obtained, <u>id.</u>, via relief on the merits—rather than relief on procedural, evidentiary, discovery, or collateral issues, <u>id.</u> at 6.

Portland's use of <u>Cortez</u> merely begs the pertinent questions:

    (1) *is* Mr. Grimm a prevailing party?

    (2) *has* he merely won the right to continue?

Opp. 6-9. The Motion-Request addressed these questions at length. Motion-Request 2-12.

Yet Portland thinks that because some issues remain unresolved that the "merits remain unresolved." <u>See</u> Opp. 9. Portland overlooks that there are *multiple* merits issues, some of which *have been* resolved. The Motion-Request identified *three*. Motion-Request 8 (bullet-point list).

Yes, this Court did "reiterate a settled principle[.]" Opinion 7; <u>see</u> Opp. 14. <u>*Then*</u>, the Opinion developed that principle in the tow context. Opinion 7-10. It clarified that the "few exceptions" to pre-towing notice are truly *exceptions*—not exceptions that swallow the general rule of pre-deprivation notice. Opinion 8.

4

The Opinion also rejected that publication of towing laws constitutes sufficient pre-towing notice. Opinion 8-9. All of these merits victories on civil-rights issues developed the law and move Mr. Grimm across the prevailing-party threshold.

It doesn't matter that the Opinion "d[id] not address Grimm's further arguments[,]" Opinion 17, because no final resolution of all issues is required to be a prevailing party. Resolving just one meaningful merits issue in Mr. Grimm's favor is enough. See Motion-Request 6-7.

Indeed, Portland's contrary suggestion that *all* merits issues must be ultimately resolved *prior* to fee-shifting flies in the face of well-established law:

- "Congress *intended* to permit the interim award of counsel fees[.]" Motion-Request 4 (quoting Buckhannon, 532 U.S. at 603 (emphasis in Motion-Request)).

- The plaintiff "need not prevail on every issue, or even on the 'central issue' in the case" to be the prevailing party. Motion-Request 5 (quoting Hashimoto, 118 F.3d 671, 677 (9th Cir. 1997)).

- "[F]inal judgment on the merits is not a condition precedent to obtaining the status of a 'prevailing party.'" Motion-Request 7 (quoting UFO Chuting, 508 F.3d 1189, 1197 (9th Cir. 2007)).

5

The Motion-Request made all these points. Portland nowhere responds to any of them.

Perhaps that's because it's impossible to square Portland's view (that fee-shifting requires *final* resolution) with the above-listed law (that fees should be awarded for *interim* merits victories). Indeed, interim fee-shifting *should* occur after a merits win, even without a final judgment and even where the "central issue" remains unresolved.

Portland *is* correct that many appellate reversals result in a mere right to proceed with the case. But, that's precisely what distinguishes those cases from this appeal.

Take Cortez. This Court reversed because of "*evidence* that creates genuine factual disputes for trial[.]" 776 F.3d at 1048 (emphasis added). Cortez spoke of what "a reasonable jury could conclude[.]" Id. at 1052. Cortez was a reversal based on sufficiency of the evidence that allowed a plaintiff to continue. See id.; Opposition 6 ("sufficient evidence").

That's not the same as the Opinion's decisive rejection of Portland's notice-by-publication arguments. Opinion 7-10. The reversal here is not a matter of evidentiary sufficiency, but of Constitutional law. See id. Mr. Grimm won much more than the mere right to continue.

*No jury* can conclude that Portland provided him sufficient notice by publication because this Court has already conclusively determined *that* legal issue. Id.

Notably, the instant appeal *could* have turned on non-merits issues, such as FRCP 56(d). See Motion-Request 9. It didn't. Opinion 4 n.1. Instead, this Court decided merits issues. Opinion 7-10. Thus, it gave Mr. Grimm more than a mere right to continue. It developed the law and entirely foreclosed certain legal arguments.

Portland's view of Citizens for Better Forestry v. USDA (Citizens II), 567 F.3d 1128 (9th Cir. 2009), fares no better. See Opp. 8, 10.

There, this Court had reversed a dismissal for lack of standing. Citizens for Better Forestry v. USDA (Citizens I), 341 F.3d 961, 978 (9th Cir. 2003). Citizens I held that the plaintiffs had "standing to bring this suit and the case is ripe for decision." Id.

But, Citizens I also clarified that "[w]e do ***not reach the merits*** of Citizens' appeal on their motion for injunctive relief[.]" Id. (emphasis added). So, of course, Citizens II refused fees because the prevailing-party standard requires a resolution *on the merits*. 567 F.3d at 1132.

That's not what happened here.

Here, the district court dismissed the case on the merits. Then, this Court reversed on the merits. Its Opinion didn't just "put the handwriting on the wall" for Portland's notice-by-publication arguments. See Citizens II, 567 F.3d at 1133. Rather, the Opinion foreclosed Portland's notice-by-publication arguments entirely.

Moreover, this Court clarified that notice rights are presumptive, even where a car's registration stickers are out of date for months, limiting Scofield. Opinion 10 n.5. That's another merits decision.

Portland's reliance on Benton v. Oregon Student Assistance Commission, 421 F.3d 901 (9th Cir. 2005), is also misplaced. Opposition 10-11. In Benton, the plaintiff was the prevailing party due to a nominal-damages award. 421 F.3d at 904. But, that plaintiff faced a Farrar problem due to her limited success on the merits: this Court doubted whether the result would "in any way guide […] future conduct." Id. at 908.

Here, Mr. Grimm's win on appeal wasn't monetary. That's no matter. Mr. Grimm's "suit was forward-looking, and he gained the relief that he primarily sought" when he sued: a clear holding giving guidance to cities that notice by publication is Constitutionally insufficient. See Klein v. City of Laguna Beach, 810 F.3d 693, 700 (9th Cir. 2016); see Grimm Decl. ¶¶ 2-3, *infra*.

8

Beyond the doctrine, there's a commonsensical way to see that this Court did something big on the merits: refer back to what Portland said when seeking rehearing *en banc*.

It wasn't Mr. Grimm's mere right to continue—to begin discovery in a singular tow case—that Portland called a "question of exceptional importance to cities[.]" Petition 2. Portland went seeking rehearing *en banc* because Mr. Grimm's appellate victory developed the law in a significant way.

The same goes for the municipal *amici*. Los Angeles, Honolulu, and the International Municipal Lawyers Association didn't show up here because they care about Mr. Grimm's '99 Honda Accord. See generally Municipal *Amici* Br. They showed up because they believed (accurately) that the Opinion so advanced civil rights that it endangered a host of Constitutionally-suspect ordinances. See id. at 19-21 (listing ordinances).

These sophisticated entities understood that this Court's Opinion means that vehicles owners among the approximately 65 million people in the Ninth Circuit should be given individualized pre-towing notice.

*That's* a merits victory that arose from this reversal, from this Court's grant of appellate relief. See Chafin v. Chafin, 568 U.S. 165, 173 (2013) (reversal as "typical appellate relief").

And, contrary to Portland's assertions, Opposition 17 ("cannot point to any change"), the Opinion may have inspired recent changes in Portland's tow-notification polices. <u>See</u> <u>Towing and Impoundment</u>, Portland Police Bureau (accessed Feb. 21, 2021) https://www.portlandoregon.gov/police/article/143824 ("Portland Police Bureau will notify vehicle owners via phone (when possible) […] if their vehicle has been towed[.]"):



.

## II.   PORTLAND PROPOSES A LODESTAR CALCULATION THAT IS FUNDAMENTALLY FLAWED.

Dissecting hours issue-by-issue and using an unrepresentative hourly rate, as Portland proposes, would lead to an erroneous lodestar.

*First*, Portland's issue-by-issue dissection of hours contradicts authority that Portland itself cites:  Hensley v. Eckerhart, 461 U.S. 424, 435 n.11 (1983).  See Section II.A, *infra*.

*Second*, Portland's proposed hourly rate is a generic rate from a methodologically suspect survey that ignores relevant evidence and the undersigned's experience.  See Section II.B, *infra*.

### A.   Portland urges an issue-by-issue approach to hours that has been rejected.

Portland wants to "exclude 84 percent of the brief-related time."  Opposition 27.

Portland concocts this 84% reduction by counting just those pages discussing which test was the correct legal test—and excluding the rest. Opposition 26-27.

For example, to Portland, the undersigned shouldn't be compensated for time spent preparing brief sections that are *required* by rule.  Opposition 27; <u>see</u> FRAP 28(a) ("must contain"); FRAP 28(a)(1)-(a)(7) (mandatory brief sections preceding argument section).

Portland asks this Court to conduct an issue-by-issue, mathematical dissection of the undersigned's hours.

That's a non-starter.  <u>Hensley</u>, 461 U.S. 424 (1983), long ago rejected issue-by-issue dissection.  <u>Hensley</u> "agree[d] with the […] rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon."  <u>See</u> <u>id.</u> at 435 n.11.

So has this Court.  In the Ninth Circuit, courts "do ***not*** use a mathematical ratio of winning claims […] *an approach criticized in <u>Hensley</u>.*"  <u>Greater L.A. Council on Deafness v. Cmty. Television of S. Cal.</u>, 813 F.2d 217, 222 (9th Cir. 1987) (emphasis added).

Dissecting hours issue-by-issue is "not appropriate."  <u>Hackett v. Barnhart</u>, 475 F.3d 1166, 1173 n.1 (10th Cir. 2007); <u>Montcalm Publ. Corp. v. Virginia</u>, 199 F.3d 168, 174 (4th Cir. 1999) ("inappropriate").  Courts "may not use 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'"  <u>Allstate Ins. Co. v. Plambeck</u>, 802 F.3d 665, 679 (5th Cir. 2015).

Courts have repeatedly rejected Portland's proposed mechanical issue-by-issue approach—and for good reason.

Under issue-by-issue dissection, "no consideration is given for the relative importance of various issues [and] the difficulty in identifying issues." See Phelps-Roper v. Koster, 815 F.3d 393, 399 (8th Cir. 2016). And, dissection would ultimately be "unwieldly and time-consuming." Greenpeace, Inc. v. Stewart, 2020 U.S. App. LEXIS 15577, *15 (9th Cir. 2020) (Shaw, Appellate Commissioner). Portland's request for "supplemental briefing" proves the point. See Opposition 29.

Fee determinations "should not result in a second major litigation[.]" Fox v. Vice, 563 U.S. 826, 838 (2011). Rather, their "essential goal" is to do "rough justice[.]" Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1187 (2017). Their purpose is to "ensure effective access to the judicial process for persons with civil rights grievances." Rickley v. Cty. of L.A., 654 F.3d 950, 956 (9th Cir. 2011) (internal quotes omitted).

Fundamentally, Portland's issue-by-issue dissection fails to treat "a case as an inclusive whole, rather than as atomized line-items." Commissioner v. Jean, 496 U.S. 154, 162 (1990). Portland overlooks that a "fee award presumptively encompasses all aspects of the civil action." Id. at 161.

14

Even if this Court considered Portland's issue-by-issue dissection, Portland still errs:

- That this Court didn't reach certain points doesn't make them "unsuccessful arguments[.]" <u>See</u> Opposition 25, 26, 27. A "'failure to reach' certain grounds does not make those grounds 'unsuccessful[.]'" <u>Ibrahim v. DHS</u>, 912 F.3d 1147, 1173 (9th Cir. 2019) (en banc). Thus, the whole briefs and judicial-notice motion are compensable. <u>See Hensley</u>, 461 U.S. at 435 ("[F]ailure to reach certain grounds is not a sufficient reason for reducing a fee.").

- Despite Portland's arguments, Opposition 28, travel time for oral argument <u>is</u> compensable. <u>See Davis v. City of San Francisco</u>, 976 F.2d 1536, 1543 (9th Cir. 1992). Private lawyers "customarily charge for travel time, and civil-rights counsel should be no worse off." <u>Craik v. Minn. State Univ. Bd.</u>, 738 F.2d 348, 350 (8th Cir. 1984). Portland should know: "billing clients for travel time is customary in the Portland area[.]" <u>See Nat'l Warranty Ins. Co. v. Greenfield</u>, 2001 U.S. Dist. LEXIS 7763, *18 (D. Or. Feb. 8, 2001).

15

- Finally, Portland objects to 10.58 other hours. Opposition 26. These objections aren't meritorious, but in the interest of being reasonable, the undersigned waives those 10.58 hours.

### B.    Portland argues for a problematic rate by ignoring relevant evidence and experience.

Portland discounts the evidence of a reasonable rate provided in the Motion-Request. See generally Supplemental Keenan Decl. Ex. C. And, Portland never bothers to assess the actual appellate experience of the undersigned. See id. ¶¶ 29-43. Instead, Portland proposes that this Court determine the reasonable hourly rate with sole reference to a methodologically and normatively suspect rate survey. See id. ¶¶ 14-28.

Portland's proposal should be rejected. See Ne. Ohio Coal. for the Homeless v. Husted, 831 F.3d 686, 719 (6th Cir. 2016). A reasonable rate for lead appellate counsel is $450 per hour or, given the importance of this issue, possibly more.

## CONCLUSION

This Court should grant interim civil-rights fees. Respectfully, it should also consider an upward adjustment.

Date: February 22, 2021                    Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

*Attorney for Appellant Andrew Grimm*

17

## CERTIFICATE OF COMPLIANCE

This Reply contains **2600** words, excluding the portions of the Reply exempted from word counts and excluding the words in the below Declarations and Exhibits.

This Reply has been prepared in a proportionately spaced typeface using Times New Roman 14-point font in Microsoft Word.

Date: February 22, 2021                    Respectfully submitted,

                                           */s/ Gregory Keenan*          
                                           Gregory Keenan

## SUPPLEMENTAL DECLARATION OF GREGORY KEENAN
## IN SUPPORT OF THE MOTION-REQUEST

I, Gregory Keenan, attorney for the Plaintiff-Appellant in this appeal, declare as follows:

1.      I make this Declaration in support of the instant Motion-Request for Award of Interim Attorney Fees.  The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called to do so:

2.      I hereby declare that I have attached true and correct copies of the following Exhibits to this Declaration:

   a.  An updated version of a Ninth Circuit Form 9 equivalent to include my hours spent preparing this Reply, as **<u>Exhibit A</u>**;

   b.  An itemization of hours I spent on this Reply, as **<u>Exhibit B</u>**;

   c.  A reply-justification of my hourly rate for this appeal, as **<u>Exhibit C</u>**;

   d.  A declaration of a co-counsel in another appeal, Mr. Ryan Hamilton, attesting to my talents and reputation as a lawyer (amended according to Portland's preferred form) as **<u>Exhibit D</u>**; and

e.  A declaration of Plaintiff-Appellant Andrew Grimm detailing why he brought this lawsuit and why he had some difficulty finding counsel other than me, as **<u>Exhibit E.</u>**

**I hereby declare that the above statements in this Declaration are true to the best of my knowledge and belief, and that I understand that these statements are made for use as evidence in court and are subject to penalty for perjury.**

Date: February 22, 2021                    Respectfully submitted,

<u>*/s/ Gregory Keenan*</u>
Gregory Keenan

# Exhibit A

*Updated* Ninth Circuit Form 9 Equivalent
in support of the Motion-Request
(to include hours spent preparing this Reply)

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
## Form 9 <u>Equivalent</u>. Application for Attorneys' Fees under Circuit Rule 39-1.6

*Instructions for Form 9: https://cdn.ca9.uscourts.gov/datastore/uploads/forms/form09instructions.pdf.*

| 9th Cir. Case Number(s) | 18-35673 |
|---|---|

| Case Name | **Andrew Grimm v. City of Portland, *et al.*** |
|---|---|

For each amount claimed, please attached itemized information indicating service provided, date, hours, and rate.

| *DESCRIPTION OF SERVICES* | *Hours* | *Amount Claimed*<br>(at a $450/hour rate) |
|---|---|---|
| Interviews and Conferences | 50:43 | $22,822.50 |
| Obtaining and Reviewing Records | 13:15 | $5,962.50 |
| Legal Research | 74:10 | $33,375.00 |
| Preparing Briefs | 175:55 | $79,162.50 |
| Preparing for and Attending Oral Argument | 24:40 | $11,100.00 |
| Other (*specify below*)<br>Notice of Appearance; Extension Requests; Stipulation of Dismissal; Motion for Judicial Notice (drafting); Bill of Costs; this Fees Motion | 129:35 | $58,312.50 |
| ***Total Hours/Compensation Requested*** | 468:18 | $210,735.00 |

| Signature | */s/ Gregory Keenan* | Date | February 22, 2021 |
|---|---|---|---|

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about the <u>actual</u> Form 9?  Email forms@ca9.uscourts.gov.*

b

# Exhibit B

## Detailed Itemization of Attorney Hours
## in support of the Motion-Request
### (for time spent preparing this Reply)

c

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Detailed Itemization of Tasks Performed.  9th Cir. R. 39-1.6(b)(1).

| 9th Cir. Case Number(s) | 18-35673 |
| --- | --- |

| Case Name | Andrew Grimm v. City of Portland, *et al.* |
| --- | --- |

| Hours for: Position: | Gregory W. Keenan, *Esq.* Executive Director, DIGITAL JUSTICE FOUNDATION |
| --- | --- |

| # | Date | Time | Category | Detailed Description of Task |
| --- | --- | --- | --- | --- |
| 1 | 2/7/2021 | 3:00 | OT | Other:  Preparation of Reply on Fees:  Read Portland's opposition; outline arguments; group their arguments and relied-upon cases; structure our order of response. |
| 2 | 2/7/2021 | 2:30 | OT | Other:  Preparation of Reply on Fees:  Read through their relied-upon cases; conduct preliminary research into cases interpreting their cases and other related cases; distinguish the three cases that they relied most upon in their prevailing party sections; begin reading the Oregon bar's 100-page survey on lawyer information in Oregon, including the information on rates. |
| 3 | 2/9/2021 | 5:15 | OT | Other:  Preparation of Reply on Fees:  Finish reading through Portland's cited to Oregon Bar 100 page survey on average rates and lawyer information in Oregon; Highlight methodological flaws in survey evidence and normative problems with gender disparities in pay in OSB survey; Research into other Circuit's use of such survey evidence to set civil rights rates; Found 6th Circuit's affirming a district court's rejection of similar bar survey for fees in Ohio; Research lodestar calculation and presumed entitlement to all fees rather than issue by issue proportional amounts (have to do further research into implications of Hensley here--need to figure out why Portland thinks it helps them) |
| 4 | 2/11/2021 | 2:00 | OT | Other:  Preparation of Reply on Fees:  Continue outlining arguments for the reply; Structure the table of contents for the ordering of the outline of responses; drafter and redraft section headers; draft introduction to the reply with an emphasis on the expansion of the cases and responding to what are largely unsupported arguments |
| 5 | 2/12/2021 | 4:00 | OT | Other:  Preparation of Reply on Fees:  Research Portland's issue-by-issue dissection argument which is its basis for the 84% reduction; seems to be pretty clearly rejected by the case law; research and read Hensley with a specific focus on Hensley progeny; confirm that it's a circuit-by-circuit rejection; doesn't appear to be any different reading of Hensley by any of the other cases; read Moore's practice guide and it appears to also agree about Hensley |
| 6 | 2/13/2021 | 3:30 | OT | Other:  Preparation of Reply on Fees:  Begin drafting Section I of the argument in the reply with a focus on the prevailing party; section where begging the question. |

d

| | | | | |
|---|---|---|---|---|
| 7 | 2/13/2021 | 2:30 | OT | Other: Preparation of Reply on Fees: later in the day, continued drafting regarding prevailing party; brainstorming to include commonsensical argument; taking out certain ideas that had occurred beforehand; a basic rough draft completed. |
| 8 | 2/14/2021 | 5:30 | OT | Other: Preparation of Reply on Fees: Drafted Section 2 of the Reply Brief regarding the lodestar calculation through extensively outlining the precise points needed to include; began editing Section 1 in its entirely with the client; included more language to clarify error in opposing counsel's reasoning and to make it clearer |
| 9 | 2/15/2021 | 5:15 | OT | Other: Preparation of Reply on Fees: Finished drafting full version of Section I. Got a very rough draft of Section II but will need to address some of the argument |
| 10 | 2/16/2021 | 4:30 | OT | Other: Preparation of Reply on Fees: Edit Section II to apply to word-count restrictions; conduct further research on this issue to see if there is other helpful case law supporting Hensley views; located and read Ibrahim v DHS en banc case; revise and incorporate Ibrahim |
| 11 | 2/19/2021 | 1:30 | OT | Other: Preparation of Reply on Fees: Review the work product with client and incorporate some of the client's suggestions on focus, emphasis, rhetoric, structure, etc. |
| 12 | 2/20/2021 | 3:00 | OT | Other: Preparation of Reply on Fees: Format the Reply; assemble the exhibits with the client; draft some of my own declaration with a focus on my prior appellate experience; research across various circuits to include better language; found specific District of Oregon case regarding billing rates and on the common practice of billing for that time to add the line-item section on the travel time |
| 13 | 2/21/2021 | 3:00 | OT | Other: Preparation of Reply on Fees: Finalize the reply in all substantive ways. |
| 14 | 2/22/2021 | 2:15 | OT | Other: Preparation of Reply on Fees: Finalize the reply for submission including cite check; proofread the draft; eliminate some words for compliance with word limits, etc. |

**Signature**   /s/ Gregory Keenan    **Date**    February 22, 2021

*(use "*s/[typed name]*" to sign electronically-filed documents)*

e

# Exhibit C

Reply-Justification of Hourly Rate
in support of the Motion-Request

f

## REPLY-JUSTIFICATION OF HOURLY RATE

I, Gregory Keenan, attorney for the Plaintiff-Appellant in this appeal, state as follows:

1.      I make this Reply-Justification of my hourly rate in response to Portland's Opposition.  <u>Cf.</u> Opposition 17-24 (portion disputing reasonable hourly rate).

### *Satisfactory Evidence*

2.      Portland objects that I do "not meet [my] 'burden of producing satisfactory evidence'" of a reasonable hourly rate.  Opposition 18.

3.      Portland's objection overlooks that "rate determinations in other cases . . . **are** satisfactory evidence of the prevailing market rate." <u>Camacho v. Bridgeport Fin., Inc.</u>, 523 F.3d 973, 980 (9th Cir. 2008) (emphasis added, ellipsis in original). The Motion-Request made this point. Motion-Request at u ¶ 3.   And, Portland itself cited <u>Camacho</u>. Opposition 18.

4.      Thus, the cases showing hourly rates which were cited in the attachments to the Motion-Request **are** satisfactory evidence of a proper rate here. <u>See</u> Motion-Request at u-v. Satisfactory evidence **was** submitted as to a $450 hourly rate.

### *Relevant Forum*

5.      Portland argues that "the relevant forum is Portland, Oregon." Opposition 18.  But the relevant forum here is the Ninth Circuit.  See Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000) ("[T]he court should deem the 'relevant community' for fee purposes to constitute the legal community within that *court's territorial jurisdiction*[.]"  (emphasis added)).

6.      The previously submitted evidence from district courts within the Ninth Circuit is relevant to the fees determination here and should be taken into account by this Court as evidence. Additional examples of that reasonable rate abound. E.g., Sierra Club v. EPA, 625 F. Supp. 2d 863, 867-68 (N.D. Cal. 2007) ("The court concludes that $ 450 an hour is a reasonable rate for work done by all three attorneys in this case regardless of whether the work was performed inside or outside the district.")

### *Availability of Local Counsel*

7.      Portland argues that there is no evidence "local counsel was unavailable"—noting a lack of "declarations or other evidence on the point." Opposition 19; see id. at 19 n.3.

h

8.      Mr. Grimm declares below that he did have some trouble finding a counsel who would be willing to take his case and actually fulfill the role of advocate.  <u>See</u> Grimm Declaration ¶¶ 8-26, *infra*.  Thus, Mr. Grimm did in fact have some difficulty finding counsel to represent him in the District of Oregon.  And, the nature of the relief he primarily sought—policy and social change—were not financially enticing.

9.      But, for purposes of this appeal before the Ninth Circuit, I was in effect local counsel: I am admitted to the Bar of this Court.  Portland is overlooking that this Motion-Request is strictly about appellate fees for appellate work.

### *Problematic Oregon State Bar Survey*

10.      Portland counters my proposed rate of $450 per hour with a proposed rate of $235 per hour.  Opposition 19.  Portland derives its $235 rate from an Oregon State Bar Economic Survey[1]—which Portland considers the "best evidence" of the prevailing market rate in Portland, Oregon.  <u>Id.</u>

---

[1] Available at <u>https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf</u>.

11.   Again, the relevant forum is the entire Ninth Circuit—not just Portland, Oregon. Yet, even if the rates were confined to Portland, this Survey is problematic for fee shifting purposes.

12.   <u>First</u>, the Survey's $235 rate is not consistent with recent District of Oregon authority.  One District of Oregon case stated that Portland has substantially higher rates:  "the *average* hourly rate billed by attorneys in private practice in Portland, Oregon, *was $324*, with the *75th percentile billing at $400 per hour*."  <u>Standard Ins. Co. v. Estate of Keeler</u>, No. 03:18-CV-00494-AC, 2018 U.S. Dist. LEXIS 140728, *8 (D. Or. Aug. 20, 2018) (emphasis added).

13.   <u>Second</u>, this discrepancy sheds light on methodological problems with the Survey.  The Sixth Circuit noted that a similar survey in Ohio "'significantly understates' rates because many attorneys failed to respond."  <u>Ne. Ohio Coal. for the Homeless v. Husted</u>, 831 F.3d 686, 719 (6th Cir. 2016).

14.   So too here.  Portland's Survey has "an overall response rate of 34.66%[.]" Survey at 9.  Indeed, the majority of lawyers asked to fill out the survey simply didn't bother.  And only "73%" of those who answered the survey were even 'full time lawyers.'"  Survey at 12.  In fact, "11.4%" were not even working as a lawyer.  Survey at 15. This explains why Portland's Survey yields such a low rate—one that's contradicted by recent District of Oregon authority.

j

15. <u>Third</u>, Portland's Survey doesn't measure the rates for civil-rights litigation, for complex litigation, or even for federal litigation at all. Its lack of specificity renders it less than useful for setting civil-rights fees here.

16. Importantly, "Congress recognized the *complexity of civil rights cases* when the civil rights attorneys' fee statute (42 U.S.C. §1988) was passed in 1976." <u>Craft v. Cty. of San Bernardino</u>, 624 F. Supp. 2d 1113, 1117 (C.D. Cal. 2008) (emphasis added). Congress wanted civil-rights fee-shifting to "be governed by the same standards which prevail in other types of equally complex federal litigation, *such as antitrust cases*[.]" <u>Id.</u> (emphasis added).

17. Tellingly, in Ohio's equivalent survey, "the data available for civil rights attorneys" found that the market rate was "$400-500/hour for primary civil rights lawyers, and $300-$550 [per] hour for partial civil rights practitioners." <u>Ne. Ohio Coal. for the Homeless v. Husted</u>, 831 F.3d 686, 719-20 (6th Cir. 2016). Portland offers no evidence that would suggest that civil rights attorneys in Portland earn substantially less than their Ohio counterparts.

18. Nonetheless, Portland argues for a $235 / hour rate that would systematically shortchange civil-rights practitioners due to the methodological flaws in the Portland's Survey rendering it ill-suited for these purposes.

19.     Also, Portland's Survey indicates a shocking gender-discrepancy in attorney compensation in Oregon.  Full-time male attorneys made a mean annual compensation of $171,110 compared to only $127,004 for similarly situated female attorneys (i.e., a $44,106 difference).   Survey at 22.

20.     Whatever the empirical accuracy of these numbers, such stark gender-discrepancies raise normative concerns that call into question the propriety of using potentially discriminatory data as a basis for civil-rights fees. Particularly given that there is case law more directly on point about what a proper civil-rights attorney rate would be, resort to Portland's methodologically and normatively suspect Survey is unnecessary and unhelpful for setting civil rights fees.

### *Ignoring Attorney's Actual Appellate Experience*

21.     In its Opposition to the Motion-Request, Portland notes that it is "aware of" only two appeals where I represented a "named party":  <u>Mozilla Corp. v. FCC</u>, 940 F.3d 1 (D.C. Cir. 2019) and <u>Fischer v. Forrest</u>, 968 F.3d 216 (2d Cir. 2020).  Opposition at 21-22. As my earlier declaration explained, however:  "I have represented clients on appeals before the First, Second, Fifth, Seventh, Eighth and Ninth Circuits."  Motion-Request's Keenan Declaration at 32 ¶ 14.

22.     A simple PACER search would have confirmed that I have been involved in many federal appeals and submitted merits briefs representing a named

party in a number of them. Given that Portland's Opposition simply didn't bother to find them on PACER, Portland's Opposition essentially admits that it is not addressing my actual experience.

23. Regardless, below, I give a recounting of my major appellate experience representing named parties:

| **Case Name and Appeal Number** | **Merits Participation and Results** | **Experience of Opposing Counsel** |
|---|---|---|
| Designworks Homes, Inc. v. Horak, No. 20-3107 (8th Cir. Oct. 8, 2020). | Appellants' counsel.<br><br>Briefed fees, arguing that the award of fees for a case that hinged entirely on an interpretation of a statutory provision with no appellate authority anywhere in the nation was error.<br><br>Awaiting Appellees' briefing. | 20 years of practice.[2]<br><br>Currently, a partner at a mid-sized firm.[3] |
| Designworks Homes, Inc. v. Columbia House of Brokers Realty, No. 20-3104 (8th Cir. Oct. 8, 2020). | | |
| InfoDeli v. Western Robidoux, Inc., No. 20-2256 (8th Cir. Jun 23, 2020). | Appellant-cross-appellees' counsel.<br><br>Currently working on submission of opening appellate brief. | Main opposing counsel has 27 years of practice.<br><br>Currently, a partner in a large law firm.[4] |
| InfoDeli, LLC v. Western Robidoux, Inc., No. 20-2146 (8th Cir. June 8, 2020). | | |

---

[2] Mr. Patrick D. Kuehl, Jr., Missouri Bar Directory Detail (Feb. 21, 2021), https://mobar.org/site/content/For-the-Public/Lawyer_Directory_Detail.aspx?ID=59944420-44ca-4ea4-b415-b17c94d17b7b.

[3] Mr. Patrick D. Kuehl, Jr., RIMON PC (Feb. 21, 2021), https://rimonlaw.com/team/patrick-kuehl.

[4] Mr. Nicholas B. Clifford, Tucker Ellis, LLP (Feb. 21, 2021), https://www.tuckerellis.com/people/nicholas-clifford#education.

| | | |
|---|---|---|
| <u>Virtual Chart Solutions I v. Brian Meredith,</u> No. 20-40155 (5th Cir. Feb. 28, 2020). | Appellant's counsel.<br><br>Briefed copyright fees, for client put into bankruptcy by legal error in application of copyright fee-shifting.<br><br>Appeal stayed due to bankruptcy filing. | |
| <u>Foss v. Marvic,</u> No. 20-1008 (1st Cir. Jan. 3, 2020). | Appellant's counsel.<br><br>Briefed a complex question on copyright's registration requirement with big implications for access to court.<br><br>Oral argument scheduled for March 3, 2021. | 11 years of practice.<br><br>Currently, an Associate at a mid-sized regional firm.[5] |
| <u>Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C,</u> No. 19-3458 (8th Cir. Nov. 15, 2019). | Appellants' counsel.<br><br>Briefed a copyright case for a client with very limited access to appellate counsel and facing $400,000+ in adverse fees. Argued<br><br>Fully briefed. Awaiting argument or decision. | Main opposing counsel has 27 years of practice.<br><br>Currently, a partner in a large law firm.[6] |
| <u>Superama Corp., Inc. v. Tokyo Broadcasting System TV,</u> No. 19-55981 (9th Cir. Aug. 22, 2019). | Affirmed. 830 F. App'x 822 (9th Cir. Oct. 21, 2020).<br><br>Petitioner-Appellant's counsel retained to petition for *cert*. on jurisdictional question. | Unknown. |

---

[5] Mr. James M. McLaughlin, Hassett & Donnelly (Feb. 21, 2021), https://www.hassettanddonnelly.com/attorneys/james-m-mclaughlin/.
[6] Mr. Nicholas B. Clifford, Tucker Ellis, LLP (Feb. 21, 2021), https://www.tuckerellis.com/people/nicholas-clifford#education.

| | | |
|---|---|---|
| <u>Richard Bell v. Wilmott Storage Services, LLC</u>, No. 19-56181 (9th Cir. Oct. 8, 2019). | Cross-appellee's counsel.<br><br>Briefed copyright fees, arguing the district court did not abuse its discretion when denying fees for a case resolved a novel question of *de minimis* doctrine.<br><br>Oral argument heard Aug. 14, 2020. | 48 years of practice.[7]<br><br>Currently, runs solo practice.[8] |
| <u>Bell v. Wilmott Storage Services, LLC</u>, No. 19-55882 (9th Cir. July 31, 2019). | Appellant's counsel.<br><br>Brief concerning existence and scope of *de minimis* doctrine in copyright.<br><br>Oral argument heard Aug. 14, 2020. | 48 years of practice.<br><br>Currently, runs solo practice. |
| <u>Fischer v. Forrest</u>, No's 18-2955, 18-2959 (2d Cir. Oct. 4, 2018) | Appellant's counsel.<br><br>Brief regarding the definition of CMI, 17 U.S.C. § 1202(c).<br><br>Affirmed.<br>968 F.3d 216<br>(2d Cir. 2020). | 18 and 17 years of practice.<br><br>Currently, partner in a small family firm[9] and a Member in regional southwest firm of 180 attorneys.[10] |
| <u>Grimm v. City of Portland</u>, No. 18-35673 (9th Cir. Aug. 15, 2018). | Appellant's counsel.<br><br>The instant appeal.<br><br>Reversed.<br>971 F.3d 1060<br>(9th Cir. 2020). | 16.5 years and 4.5 years of practice.<br><br>Currently Senior Deputy City Attorney[11] and Assistant Deputy City Attorney.[12] |

[7] Mr. Paul D. Supnik, The State Bar of California (Feb. 21, 2021), http://members.calbar.ca.gov/fal/Licensee/Detail/52842.

[8] Mr. Paul D. Supnik, supnik.com (Feb. 21, 2021), https://www.supnik.com/.

[9] Mr. Daniel K. Kahn, Attorney Detail Report (Feb. 21, 2021), https://iapps.courts.state.ny.us/attorneyservices/wicket/page?2.

[10] Mr. Seth L. Hudson, NEXSEN PRUET, (Feb. 21, 2021), https://www.nexsenpruet.com/professionals/seth-l-hudson.

[11] Mr. Denis M. Vannier, OSB Membership Directory (Feb. 21, 2021), https://www.osbar.org/members/membersearch_display.asp?b=044406&s=1.

[12] Mr. YoungWoo Joh, OSB Membership Directory (Feb. 21, 2021), https://www.osbar.org/members/membersearch_display.asp?b=164105&s=1.

| | | |
|---|---|---|
| Grimm v. City of Portland, No. 18-35388, (9th Cir. May 8, 2018). | Appellant's counsel.<br><br>Favorably settled with the tow-truck company prior to briefing.<br><br>Voluntarily dismissed. 2019 U.S. App. LEXIS 4696 (9th Cir. Feb. 15, 2019). | 20 years of practice.<br><br>Currently Executive Committee Member & Shareholder at mid-sized regional firm.[13] |

24.     Portland simply ignored the vast majority of the undersigned's actual experience when resorting to its generic survey evidence to suggest $235 per hour. Given the actual experience of the undersigned (and the complexity, novelty, and importance of this appeal's issues), an upward adjustment may be appropriate here.

25.     "Although this is not a class action" Mr. Grimm's appellate victory substantially advanced the notice rights of vehicle owners throughout this Circuit on novel legal theories—the "pathbreaking nature of [his] lawsuit underscores [his] achievement." Ibrahim v. DHS, 912 F.3d 1147, 1178 (9th Cir. 2019) (en banc).

26.     And, this Court has described a case as "complex" when presenting unique "constitutional questions that required a 58-page brief, warranted an amicus curiae brief, and resulted in a 15-page opinion." Nadarajah v. Holder, 569 F.3d 906, 924 (9th Cir. 2009).  The appeal here is similarly complex: implicating unique

---

[13] Mr. Matthew D. Lowe: Education & Admissions, JORDAN RAMIS (Feb. 21, 2021), https://jordanramis.com/professionals/matthew-d-lowe/.

Constitutional questions, requiring substantial briefing, and attracting *amicus* participation on both sides of the dispute.

### *Additional Skill, Experience, and Reputation*

27.     Portland questions the relevance of my expertise on "digital ethics issues[.]"  Opposition 20. I'm not sure why Portland thinks this expertise is irrelevant.  This case *is* a case that directly implicates digital ethics and my experience and expertise in that field helped me understand and identify the legal issues and associated social harms resulting from Portland's refusal to use its own Parking Kitty smartphone app to provide digital pre-towing notice.

28.     Portland says I have "no expertise or experience in constitutional law or Section 1983 civil-rights litigation."  Opposition 21.

29.     That's wrong.  I do have expertise on notice rights and I believe I demonstrated that expertise in my briefs.  This Court is best-situated to assess if my brief quality demonstrated expertise or not.

30.     Portland also believes I offered "no admissible evidence" for my reputation.  Opposition 21.  That's because Portland thinks that the co-counsel declaration I submitted with the Motion-Request included "inadmissible hearsay"

and that my own declaration's reference to a statement of opposing counsel was also "hearsay[.]" Opposition 21 n.5.

31.     I disagree.  The glowing statements of opposing counsel about me are not hearsay.  They were not offered "to prove the truth of the matter asserted" (*i.e.*, my actual level of legal skill).  <u>See</u> FRE 801(c)(2).  Rather, the fact that it was said (regardless of its truth) speaks to my reputation.

32.     Even if it were hearsay, such reputational statements would be eligible for an exception to the hearsay rule.  <u>See</u> FRE 803(20) ("A reputation among a person's associates or in the community concerning the person's character" isn't excluded by the rule against hearsay).

33.     Portland also thinks that the form of declaration submitted by my co-counsel in another case, Mr. Ryan Hamilton, is insufficient.  Opposition 21 n.5.

34.     I genuinely don't know why.  <u>See</u> 28 U.S.C. § 1746.  But, as a matter of courtesy, whatever objections Portland has to the form of the declaration have been cured.  <u>See generally</u> Amended Hamilton Declaration, *infra*.

| Signature | */s/ Gregory Keenan* | Date | February 22, 2021 |
| --- | --- | --- | --- |

r

# Exhibit D

Updated Declaration of Attorney Ryan Hamilton
in support of the Motion-Request

I, Ryan Hamilton, an attorney who has worked with Gregory Keenan in a separate matter, declare as follows:

1.      I make this Declaration in support of the instant Motion-Request for Award of Interim Attorney Fees.  The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called to do so:

2.      I am a licensed attorney in the States of Nevada, California, and Indiana.  I am in good standing in each of these jurisdictions.  I submit this declaration to attest to the quality of legal work I have observed Mr. Keenan produce.

3.      I first became acquainted with Mr. Keenan when his nonprofit, the DIGITAL JUSTICE FOUNDATION, reached out asking to assist me in an appeal before this Court.  I agreed and he served as co-counsel in *Bell v. Wilmott Storage Services, LLC*, No. 19-55882 (merits) and No. 19-56181 (fees cross-appeal).

4.      That case is a copyright-infringement action relating to a photograph showing the Indianapolis canal walk with the skyline in the background.  The issue on appeal is whether a defendant's unauthorized use of the photo was so *de minimis* as to preclude liability despite the defendant's copying of the entire photo and publicly displaying it online.

t

5.      Mr. Keenan's legal writing is among the best I have seen in my fourteen years of legal practice across three states.  He presents the legal issues in a way that is both compelling and persuasive.  In addition, he assists the Court in thinking through the downstream consequences of the issues before it.  His written product is a joy to read.

6.      Mr. Keenan handled the oral argument before the Ninth Circuit as well.  He addressed the Panel's questions candidly and deftly handled their concerns about our legal position.  In fact, one of the Judges made it clear that he was hostile to our client's litigiousness.  I was impressed at how Mr. Keenan handled this situation by placing our case in a larger context based on his nonprofit experience and used a creative analogy as a way for the Judge to see the case differently.

7.      My experience as co-counsel with Mr. Keenan has shown me that he researches the law thoroughly.  He then gives considerable thought as to the most effective way to present the law and facts.

8.      In my view, Mr. Keenan's legal acumen, maturity, client advocacy, commitment to the development of the law, and other legal skills are well beyond a typical lawyer—and even more so for a lawyer who is just a few years out of law school.

u

9.    A client who has Mr. Keenan as his advocate is truly lucky.

**I hereby declare that the above statements in my Declaration are true to the best of my knowledge, information, and belief, and that these statements are made in support of the instant Motion-Request for Award of Interim Attorney Fees as evidence in court and are subject to penalty for perjury.**

Date: February 22, 2021              Respectfully submitted,

                                     */s/ Ryan Hamilton*
                                     Hamilton Law LLC
                                     5125 S. Durango, Suite C
                                     Las Vegas, Nevada 89113
                                     (702) 818-1818
                                     ryan@hamlegal.com

# Exhibit E

Declaration of Plaintiff-Appellant Andrew Grimm
in support of the Motion-Request

I, Andrew Grimm, Plaintiff-Appellant in this appeal, declare as follows:

1.      I make this Declaration in support of the instant Motion-Request for Award of Interim Attorney Fees.  The following is true to the best of my knowledge, information, and belief, and I could testify to the following if called to do so:

2.      A central purpose of mine in bringing this lawsuit was to seek social change and the clarification of legal rights.  I felt that local governments routinely violate citizens' Constitutional rights in their property—their cars—in a way that is unlawful, morally wrong, and easily avoidable.  I still feel this way.  And, this appeal has achieved a significant portion of what I had hoped to achieve when I brought suit against the City.

3.      Specifically, this Court has clearly articulated how a settled legal principle of pre-deprivation notice applies in the towing context.  It held that individualized pre-towing notice is presumptively required.

4.      I don't think the social ills of municipal towing stem from malicious intent of city attorneys or city officials.  Rather, I think they mostly stem from an all-too-frequent inability to take the issue of involuntary towing seriously.  Many cannot see the issue as a meaningful social issue—rather than a mere inconvenience to a parking violator.

5. Yet, for about 40% of Americans, withholding a vehicle for even just a few hundred dollars in towing-and-impoundment costs would be a major disruption. Reports by the Federal Reserve Board demonstrate as much. See Soo Youn, 40% of Americans don't have $400 in the bank for emergency expenses, ABC News (May 24, 2019), https://abcnews.go.com/US/10-americans-struggle-cover-400-emergency-expense-federal/story?id=63253846; Report on the Economic Well-Being of U.S. Households in 2018-May 2019: Dealing with Unexpected Expenses, Federal Reserve Board (May 23, 2019), https://www.federalreserve.gov/publications/2019-economic-well-being-of-us-households-in-2018-dealing-with-unexpected-expenses.htm.

6. I surmise that some of the resistance to pre-towing notice stems from municipal revenue-generating interests. Yet, for most, I think the failure to see the problem is a result of a limited perspective, *i.e.*, of seeing towing exclusively from an upper middle-class perspective where job flexibility and socioeconomic stability make a tow a mere inconvenience rather than a major disruption.

7. Someone making hundreds of dollars an hour might not see the problem with a tow that costs a few hundred dollars. And, that oversight is so prevalent among the members of the bar that it formed a major obstacle for me in finding counsel willing and able to represent me.

8.      After I filed suit, I would sometimes bring up the issue of pre-towing notice to hear what others thought.  When I would mention the issue to lawyers, I was listening to see if they might be interested in representing me, along with Mr. Keenan.

9.      In response to my general discussion of the issue, I faced near-universal dismissal of the issue's importance; mockery at the idea that law would address such issues; and even personal attacks on my intelligence for holding a different view.  Such responses even came from lawyers practicing at respected firms and educated at prestigious law schools.

10.      Other than my lawyer Gregory Keenan, none of the lawyers took the issue seriously.

11.      Because the role of attorney requires a counselor who is, one, willing to hear the client out, two, care enough about the client's issues to meaningfully advocate for them, dismissive attitudes and perspectives about tow practices and towing's social-justice implications formed a meaningful barrier to my retention of counsel.

12.      (I imagine that I am not the first civil-rights plaintiff and won't be the last to face this type of obstacle.)

13.     While proceeding *pro se*, I spoke directly with opposing counsel.  The City's trial counsel, Mr. Robert Yamachika, was a consummate professional.  In our very first conversation, he quickly intuited exactly what I wanted:  he framed the lawsuit as a request that the City "get with the times" in terms of its notice practices.

14.     Mr. Yamachika's pragmatic understanding of the suit gave me hope that the City would simply update its tow-notification practices once we reviewed the case law on pre-deprivation notice together.  I thought proceeding *pro se* would be sufficient given that I could communicate to Mr. Yamchika without needing to employ additional counsel.

15.     Our joint review of the case law never occurred, however, because the district court quickly granted a motion to dismiss.  ER 13-17.  Once the district court dismissed the tow-truck company, the City viewed the case as a *fait accompli*.  Further discussion of the legal merits or of policy change was no longer realistic in my view.

16.     Also, because the district court characterized mine as a "pro se claim[,]" ER 13, I began to think that having counsel enter an appearance would be necessary to meaningfully get my day in court.  I began to search for local counsel who, along with Mr. Keenan, could appear in my case.

17.     Prior to oral argument on the motion for summary judgment, I contacted a lawyer at the firm Larkins Vacura Kayser regarding retention of local counsel in Portland, Oregon.

18.     I don't recall precisely what I offered that lawyer financially.  At the time, I was living off my savings from a little over a year of law-firm practice but had no salary or other meaningful source of income.  I believe I offered to pay his hourly rate for a least a number of hours to prepare and attend oral argument and represent me there, along with Mr. Keenan.

19.     That attorney took my case under consideration.  He later followed up and politely refused to represent me, without explanation.

20.     In my view, his rejection was consistent with two barriers I faced in finding counsel to pursue this lawsuit but-for Mr. Keenan's willingness to take on the case:

(1)     general skepticism of my claims on the view that disputes over tow notice is too trivial to be a legal issue; and

(2)     financial barriers because I wouldn't have been able to afford ongoing hourly rates of hundreds of dollars an hour.

21.     Notably, the public-interest *amici* discussed the social justice issues implicated by this case.  So did this Court in its Opinion.  Yet, the City and the municipal *amici* still have not acknowledged or addressed the social issues involved.  Instead, at oral argument, the City repeatedly attempted to minimize the importance of the issue because it's a Constitutional right being applied in the context of *tows*.

22.     In my view, city officials are stuck in a middle-class perspective that sees pre-towing notice rights as a hassle to them and involuntary tows as a mere inconvenience to the car owners.  Of course, that's wrong when one considers that so many Americans don't have the money to cover those expenses without facing a significant disruption.

23.     Notably, the bar itself is composed mostly of middle-class to upper middle-class white-collar professionals.  So, the City's attitude toward the issue is itself indicative of the real barriers to finding counsel for civil-rights plaintiffs. Not only do such plaintiffs often have limited means, they also have to struggle to find a lawyer who will take their case seriously.

24.     In turn, that makes fee-shifting in civil-rights cases all the more important.

25.     Just as 42 U.S.C. § 1988(b) is intended to make governments take rights seriously, it's also intended to incentivize the bar to take them seriously too—but in a different way.  The incentive for cities is to respect civil rights.  The incentive for the bar is to take on cases, even those that might not resonate due to attorneys' relative socioeconomic status.

26.     Simply put, for lawyers who are not passionate about social causes, a "tow case" and a "tow case with attorney fees" has a different ring to it.  That added incentive of attorney fees is what Congress envisioned.

**I hereby declare that the above statements in my Declaration are true to the best of my knowledge, information, and belief, and that these statements are made in support of the instant Motion-Request for Award of Interim Attorney Fees as evidence in court and are subject to penalty for perjury.**

Date:  February 22, 2021                    Respectfully submitted,

*/s/ Andrew Grimm*
                                                        Andrew Grimm
                                                   Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing REPLY IN

SUPPORT OF THE MOTION-REQUEST FOR AWARD OF INTERIM

ATTORNEY FEES, WITH EXHIBITS, with the Clerk of the Court for the United

States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF

system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.


Date: February 22, 2021                Respectfully submitted,

                                       */s/ Gregory Keenan*
                                       Gregory Keenan