**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANDREW GRIMM, *Plaintiff-Appellant*, | No. 18-35673 |
| v. | D.C. No. 3:18-cv-00183-MO |
| CITY OF PORTLAND; L. McHENRY; F. EARLE; RETRIEVER TOWING, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted December 13, 2019
Seattle, Washington

Filed August 21, 2020

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and Roger T. Benitez,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Roger T. Benitez, United States District Judge for
the Southern District of California, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's summary judgment in favor of the City of Portland in an action alleging that the City's pre-towing notice was inadequate under the Fourteenth Amendment's Due Process Clause.

The panel first reiterated a settled principle: Due process requires that individualized notice be given before an illegally parked car is towed unless the state has a "strong justification" for not doing so. *Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008).

The panel held that the district court erred by relying on a 2017 unpublished disposition, *Sackman v. City of Los Angeles*, 677 F. App'x 365, 366 (9th Cir. 2017), which affirmed the application of the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to a towing notice case. The panel held that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), rather than *Mathews*, sets forth the appropriate standard for analyzing the adequacy of a pre-towing notice claim. Under *Mullane*, the government is required to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Because the district court applied an incorrect legal standard in determining whether the pre-towing notice was sufficient, and the record was not fully developed, the panel remanded this case to the district court. On remand, the panel instructed the district court to consider, among other questions: (1) Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?; (2) Did the red tow slip placed on plaintiff's car shortly before the tow provide adequate notice?; and (3) Was Portland required under *Jones v. Flowers*, 547 U.S. 220 (2006) to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

## COUNSEL

Gregory Keenan (argued), Digital Justice Foundation, Floral Park, New York, for Plaintiff-Appellant.

Denis M. Vannier (argued), Senior Deputy City Attorney, Office of the City Attorney, Portland, Oregon, for Defendants-Appellees.

Barry W. Lee, Stephanie A. Roeser, Noro Mejlumyan, and Benjamin G. Shatz, Manatt Phelps & Phillips LLP, San Francisco, California; Rebekah Evenson and Claire Johnson Raba, Bay Area Legal Aid, Oakland, California; Elisa Della-Piana and Jude Pond, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, San Francisco, California; for Amici Curiae San Francisco Coalition on Homelessness, Lawyers' Committee for Civil Rights of the SF Bay Area, and Bay Area Legal Aid.

## OPINION

BERZON, Circuit Judge:

The City of Portland ("Portland") left six citations on Andrew Grimm's illegally parked car over the course of seven days. On the seventh day, Portland left a red tow slip on Grimm's windshield. Retriever Towing then towed the car.

Grimm filed suit, alleging that the pre-towing notice provided was inadequate under the Fourteenth Amendment's Due Process Clause. The district court relied exclusively on an unpublished opinion of this Court to grant Portland's motion for summary judgment, concluding that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the citations left on Grimm's windshield were constitutionally sufficient notice that the car would be towed if not moved. We hold that the district court erred in applying *Mathews* rather than *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), to analyze Grimm's adequacy of notice claim.[1]

## I.

Grimm parked his car on a public street in Portland on December 14, 2017 and paid for parking via Portland's

---

[1] Grimm also claims that summary judgment was inappropriate because the district court ignored Grimm's request under Fed. R. Civ. P. 56(d) for discovery into the practicability of providing notice through Portland's mobile phone parking app. Because we reverse the district court's grant of summary judgment and remand for further proceedings based on the district court's application of an incorrect legal standard, we do not reach Grimm's argument regarding his Fed. R. Civ. P. 56(d) objections. We also deny as moot Grimm's motion for judicial notice of facts. *See Hoffmann v. Pulido*, 928 F.3d 1147, 1152 n.4 (9th Cir. 2019).

mobile phone parking app. Grimm was required to pay for parking again as of 8:00 am on December 15. Grimm neither paid for parking nor moved his car.

Over the next seven days, Portland officers left on Grimm's car windshield four citations for parking illegally and two citations for displaying expired registration stickers. On December 21, the day Grimm's car was towed, the officer issuing Grimm's sixth and final citation also placed a "separate red tow slip" on Grimm's windshield. The slip had the word "TOW" on one side and an order to tow the vehicle on the other.[2] The officer then contacted Retriever Towing, which "promptly"—how promptly the record does not disclose—towed Grimm's car. Grimm learned that his car had been towed when he looked for it on December 24.

Grimm, an attorney, filed a pro se lawsuit against Retriever Towing, Portland, and the Portland officers who issued his citations. When Retriever Towing filed a motion to dismiss, Grimm sought to stay discovery, explaining in his motion to stay discovery that the "resolution of legal issues raised by Retriever Towing's [motion to dismiss] will

---

[2] Portland maintains that an officer also left a red warning slip with the December 19th citation. The slip "had the word 'WARNING' in large print on one side and on the back side . . . provided a warning and notice stating, 'Your vehicle will be subject to tow/citation if it is not moved.'" Grimm submitted contrary evidence in support of his contention that no warning slip was placed on the windshield. The photographs taken by the officers issuing Grimm's citations do not reflect a warning placard, and Retriever Towing did not provide Grimm with a warning placard, even though it gave him the citations and showed him the red TOW placard left on his car. "[D]raw[ing] all inferences in the light most favorable to the nonmoving party," *Gravelet-Blondin*, 728 F.3d 1086, 1090 (9th Cir. 2013) (citation and quotation marks omitted), we assume for present purposes that there was no such warning.

be helpful in determining the necessary scope of discovery for all parties."

The district court dismissed Grimm's case against Retriever Towing ("the dismissal"). The dismissal relied principally on a 2017 unpublished disposition from this Court, *Sackman v. City of Los Angeles*, 677 F. App'x 365, 366 (9th Cir. 2017), affirming the application of the *Mathews* balancing test in a towing notice case. Grimm appealed the dismissal but has since withdrawn that appeal after settling his suit against Retriever Towing.

Portland then filed a motion for summary judgment, incorporating arguments from Retriever Towing's motion to dismiss. At the end of a twelve-minute hearing, the district court granted Portland's motion, relying on the dismissal's reasoning to reject Grimm's argument that *Mullane* was the applicable legal standard for his adequacy of notice claim. Now before us is Grimm's appeal of the district court's grant of summary judgment.

## II.

Grimm argues that (1) pre-towing notice was required; (2) the district court applied the incorrect legal standard when considering Grimm's adequacy of notice claim; and (3) the pre-towing notice given was inadequate, principally because Portland was obligated to attempt other forms of notice when the car was not moved and the citations remained on the windshield. Reviewing de novo the district court's denial of summary judgment, *Gravelet-Blondin*, 728 F.3d at 1090, we reverse the grant of summary judgment and remand for further proceedings.

## A.

We first reiterate a settled principle: Due process requires that individualized notice be given before an illegally parked car is towed unless the state has a "strong justification" for not doing so. *Clement v. City of Glendale*, 518 F.3d 1090, 1094 (9th Cir. 2008). *Clement* explained that due process "require[s] that notice generally be given *before* the government may seize property," and held that failing to give notice before towing an unregistered car that had a planned non-operation (PNO) certificate[3] for noncompliance with the PNO certificate was a due process violation. *Id.* at 1093, 1095–96.

The general requirement that the government provide individualized pre-tow notice reflects the important private interest at stake when the government orders that a private car be towed. *Clement* explained that "having one's car towed, even one that's not operational, imposes significant costs and burdens on the car's owner." *Id.* at 1094. And as this Court has repeatedly recognized, "[t]he uninterrupted use of one's vehicle is a significant and substantial private interest." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1238 (9th Cir. 2009) (quoting *Scofield v. City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988)). Towing practices "disproportionately prejudice[e] low-income" populations as towing can "permanently depriv[e] low-income individuals of their vehicles (which often serve as their sole source of income or even their home)." Brief of the San Francisco Coalition On Homelessness, The Lawyers'

---

[3] PNO certificates allow car owners who neither drive on public roads nor park in publicly accessible parking lots to avoid paying to register their cars. *Clement*, 518 F.3d at 1092 (citing Cal. Veh. Code § 4000(a)(1)).

Committee For Civil Rights Of The SF Bay Area, and Bay Area Legal Aid as Amici Curiae, Dkt. No. 16 at 11–12. For such individuals, "municipal tow practices often create a 'debt trap for the poor,'" *id.* at 16, because, without access to one's car, obtaining and maintaining economic security becomes problematic, *id.* at 11–18. *Clement* held that imposing the burdens associated with a towed car without providing notice "cannot be justified as a means of deterring illegal parking." 518 F.3d at 1094.

We have recognized a few exceptions to the pre-towing notice requirement. *Clement* explained that it would not violate due process to tow a car without providing individualized pre-towing notice if "the car is parked in the path of traffic, blocking a driveway, obstructing a fire lane[,] . . . appears abandoned," or has "no current registration stickers and police can't be sure that the owner won't move or hide the vehicle, rather than pay the fine for illegal parking." *Id.* at 1094–95. *Clement* cited to *Scofield* for the abandonment exception, and characterized *Scofield* as "authorizing towing in cases where the state has no current information on the whereabouts of the owner because notice in such a case could allow the owner to abscond with the vehicle." *Id.* at 1095. But *Clement* emphasized that "the default rule is advance notice and the state must present a strong justification for departing from the norm." *Id.* at 1094.

In short, pre-towing notice is presumptively required.

Portland asserts that under *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, the city provided Grimm with adequate pre-towing notice by publishing laws that authorized the tow, and that the six citations and red tow slip left on Grimm's windshield were therefore more than sufficient. This argument fails.

Portland relies for its argument on a section of *Lone Star* that addresses the validity of a city ordinance, not any notice requirement. 584 F.3d at 1237.[4] In a different section of the opinion, *Lone Star* does discuss a notice claim, holding that, as an exception to *Clement*'s "general rule," pre-towing notice is not required for certain repeat offenders. *Id.* at 1238. The notice aspect of *Lone Star* makes no reference to whether providing pre-towing notice solely through a published law authorizing a tow is constitutionally permissible. *Id.* at 1237–39. And our holding in *Lone Star* that pre-towing notice is not required for a repeat offender who has already received constitutionally adequate pre-towing notice on prior occasions does not affect *Clement*'s teaching that pre-towing notice is presumptively required; it just elucidates another circumstance in which the presumption gives way.

As the district court recognized, then, *some* individualized form of pre-towing notice was required before Portland could tow Grimm's car. The government does not suggest that Grimm's car was blocking anyone's path, *see Clement*, 518 F.3d at 1094, or that Grimm was a repeat offender, *see Lone Star*, 584 F.3d at 1237–39. And, although Grimm forgot to replace the registration stickers on his car, *see Clement*, 518 F.3d at 1094–95; *Scofield*, 862 F.2d

---

[4] Lone Star challenged an ordinance that "prohibited parking in an otherwise legal public spot for more than 72 hours in the aggregate during any period of 73 consecutive hours" as pre-empted by, and thus invalid under, state law. *Lone Star*, 584 F.3d at 1234 (internal quotation marks and emphasis omitted). Lone Star contended that because its parked trailer was towed according to an ordinance that was "itself unauthorized," the company's federal right to due process was violated. *Id.* at 1235–36. This Court rejected Lone Star's argument, holding that "Lone Star's invalid-ordinance claim allege[d] no facts that could plausibly constitute a due process violation." *Id.* at 1237.

at 764, the vehicle *was* properly registered at the time of the tow.[5] Portland therefore could obtain current information on the whereabouts of the owner, and the tow was not needed to provide "security for the payment of the fine." *Clement*, 518 F.3d at 1095. As due process required advance individual notice of a tow under *Clement*, the pivotal question on appeal is what legal standard governs whether the specific notice given was sufficient.

**B.**

Grimm's central argument on appeal is that the district court applied the wrong legal standard when granting Portland's motion for summary judgment, and by doing so failed properly to determine whether the pre-towing notice Portland gave Grimm was adequate. Grimm maintains that *Mullane*'s "reasonably calculated" standard, rather than the *Mathews* balancing test, is the legal standard applicable to his adequacy of notice claim. We agree.

**i.**

To ground our analysis, we begin by explaining how the *Mullane* and *Mathews* standards differ and why applying

---

[5] Portland argues that it could have towed Grimm's car without individualized pre-towing notice under *Scofield* because Grimm's car *appeared* to be unregistered. This argument is unavailing. *Scofield* held that "due process does not require that a pre-towing notice be given to the owner of a vehicle which *has been unregistered for more than one year* from the date on which it is found parked on a public street before the car can be towed." 862 F.2d at 764 (emphasis added). Grimm's car *was* registered at the time of the tow, and it was apparent even from the expired stickers displaying "June 2017" that Grimm's car had been registered within the prior six months.

*Mullane* rather than *Mathews* could affect the outcome of this case.

Seventy years ago, *Mullane v. Central Hanover Bank & Trust Co.* held that notice of a judicial settlement through an announcement in a local newspaper violated due process. 339 U.S. at 319. *Mullane* held that

> [a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . with due regard for the practicalities and peculiarities of the case.

*Id.* at 314–15. Applying that standard, the Court explained that the notice provided through a local newspaper announcement was "inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319. *Mullane* has since its issuance been consistently understood as establishing a "reasonably calculated" standard that governs the adequacy of notice inquiry. *See, e.g.*, *Robinson v. Hanrahan*, 409 U.S. 38, 39–40 (1972) (collecting cases).

Twenty-six years after *Mullane*, *Mathews v. Eldridge* created the oft-cited three-part balancing test applicable when analyzing "the specific dictates of due process." 424 U.S. at 335. *Mathews* recognized that "due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances," *id.* at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)), and held:

> [T]he specific dictates of due process generally requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

It was not immediately obvious whether the *Mathews* balancing test subsumed *Mullane*'s "reasonably calculated" standard as applied to notice requirements. *Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002), clarified that point, holding that *Mathews* and *Mullane* coexist, and that *Mullane*'s "reasonably calculated" standard continues to apply, without any balancing test, when courts are determining whether a *method* of notice satisfied due process. Applying the *Mullane* standard, not *Mathews*, *Dusenbery* held that the government provided adequate notice to a federal prisoner when it mailed notice regarding the prisoner's property forfeiture to the penitentiary where he was held. *Id.* at 172–73. We have since recognized and applied *Dusenbery*'s holding that *Mullane* and *Mathews* address distinct due process concerns. *See, e.g.*, *Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1193 n.17 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016).

Whether to use the *Mullane* standard rather than the *Mathews* balancing test is a potentially dispositive decision in this case, as we now explain. Central to Grimm's position in this case is his argument that *Jones v. Flowers*, 547 U.S. 220 (2006), extended *Mullane* in a manner that affects Portland's notice obligations. *Jones* held that the government did not provide adequate notice of a tax sale of a property when the notice it provided through certified mail later was returned as unclaimed. 547 U.S. at 221. As *Jones* explained, "[k]nowledge that notice was ineffective was one of the 'practicalities and peculiarities of the case' taken into account" under *Mullane*'s reasonably calculated standard. *Id.* (quoting *Mullane*, 339 U.S. at 314–15). Thus, *Jones* held that, because "additional reasonable steps were available to the State," the certified mail notice was inadequate. 547 U.S. at 225.

Relying on *Jones*, Grimm argues that even if the tickets on his car could have provided notice of the tow, Portland should have known that notice of the tow through posting on his car had been ineffective when the car was not moved and the parking tickets remained on the car's windshield. With that awareness, Grimm maintains, Portland was required to take additional reasonable steps to notify him of the tow. One such "reasonable step," Grimm suggests, would have been to provide electronic notice through Portland's parking app. As explained *infra*, the district court should address this argument in the first instance. *See* Section II.C.

### ii.

The district court did not consider the differences between *Mullane* and *Mathews*. Instead, the district court relied on *Sackman*, a non-precedential memorandum disposition of this Court, which the district court misunderstood as holding that the pre-towing, such as that

provided to Grimm, was adequate under *Mathews*.**6** This reliance was misguided for two reasons.

First, non-binding memorandum dispositions like *Sackman* are "not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." U.S. Ct. of App. 9th Cir. R. 36-3(a). *Sackman*'s holding therefore was not a binding ruling of this Court, and it should not have been relied upon by the district court as the dispositive basis for its ruling.

Unpublished dispositions provide shorthand explanations meant to apprise the parties of the basis for a decision. This practice "frees us to spend the requisite time drafting precedential opinions in the remaining cases," and limits the "confusion and unnecessary conflict" that would result from publishing redundant opinions. *Hart v. Massanari*, 266 F.3d 1155, 1178–79 (9th Cir. 2001). The facts of cases resolved through memorandum dispositions, if described—they often are not—are typically opaque, as the parties already know the facts. Ninth Circuit General Order 4.3(a). And the reasoning in the dispositions is rarely developed enough to acknowledge and account for competing considerations, reconcile precedents that could be seen as in tension with each other, or describe limitations to the legal holdings—because, in theory, there are no new legal holdings, just applications of established law to facts. *Id.*; *see also* U.S. Ct. of App. 9th Cir. R. 36-2(a). Designedly lacking, because of their limited function, the nuance and

---

**6** We note that even if *Sackman* had been a precedential opinion, its due process holding would not have governed here. *Sackman* addressed a claim that pre-towing *and pre-citation* notice was required and involved a citation that "provided further pre-towing notice" two days before the vehicle was towed. 677 F. App'x. at 365–66.

breadth of precedential opinions, this Court's memorandum dispositions are not only officially nonprecedential but also of little use to district courts or litigants in predicting how this Court—which, again, is in no way bound by such dispositions—will view any novel legal issues in the case on appeal. *Hart*, 266 F.3d at 1177–78.

So, although memorandum dispositions can be cited, and may prove useful, as examples of the applications of settled legal principles when a district court or litigant is interested in demonstrating how a given principle operates in practice, a nonprecedential disposition is not appropriately used—as it was here—as the pivotal basis for a legal ruling by a district court. Among other problems with such usage, heavy reliance by a district court on a nonprecedential disposition leaves this Court on appeal without a legal analysis to review, as the disposition relied upon by the district court has at most marginal relevance to our analysis on appeal.

Second—and relatedly—under the governing Supreme Court case law and our precedents, the district court applied the incorrect legal standard here. *Mathews* governs the question of whether and when due process requirements, including notice, is required, but *Mullane* governs Grimm's adequacy of notice claim.

Ninth Circuit caselaw supports the understanding that *Mathews* applies when determining whether individualized pre-towing notice is required *at all*, *not* what form of notice is required. *Scofield*, for example, applied *Mathews* to determine whether *any* notice was required before a car was towed. 862 F.2d at 762. Similarly, *Lone Star* applied *Mathews* to determine whether individualized notice was required before towing a repeat offender. 584 F.3d at 1238–39. But this Court has not had occasion to address what legal

standard applies when determining whether the pre-towing notice provided was adequate.

In other contexts, this Court has recognized that *Mullane*, rather than *Mathews*, generally governs adequacy of notice claims. *Nozzi v. Housing Authority of City of Los Angeles*, for example, citing *Mullane*, explained that "the Supreme Court applies a streamlined test when the only question to be decided is whether the government has provided sufficient notice and there is no request for further procedural safeguards." 806 F.3d at 1193 n.17. *California* ex rel. *Lockyer v. F.E.R.C.*, 329 F.3d 700 (9th Cir. 2003), similarly stated that the Supreme Court "has used due process analyses different from the *Mathews v. Eldridge* analysis in only a few specific contexts," including "to evaluate the adequacy of notice." *Id.* at 709 n.8 (citing *Dusenbery*, 534 U.S. at 168).

No reason appears why *Mullane* should not govern the adequacy of pre-towing notice, as it governs the adequacy of notice in other contexts. *Mullane*, as elucidated by *Dusenbery* and *Jones*, "requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones*, 547 U.S. at 226 (quoting *Mullane*, 339 U.S. at 314); *see also Taylor v. Yee*, 780 F.3d 928, 934 (9th Cir. 2015). Grimm's central claim is that the type of pre-towing notice Portland provided was inadequate. He does not claim that there was *no* notice, that he should have been afforded an opportunity to be heard, or that any other procedural safeguard was required before Portland could tow his car. The *Mullane* "reasonably calculated" standard—rather than the *Mathews* balancing test—therefore applies.

## C.

We do not address Grimm's further arguments—that the pre-towing notice provided was insufficient under the *Mullane-Jones* standard and that Portland was required to provide notice through other means, such as the city's mobile phone parking app. The district court erred in applying the *Mathews* balancing test, and "where application of incorrect legal standards may have influenced the district court's conclusion, remand is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 442 (9th Cir. 2017). Although we have discretion in reviewing a grant of summary judgment to apply the correct standard ourselves, *see, e.g.*, *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 641–42 (9th Cir. 2017), that course would be inappropriate here. Because discovery was stayed while the district court decided the applicable standard, the present record is not fully developed, especially regarding the application of *Jones*. The analysis under *Mullane* and *Jones* will require the district court to decide whether the citations and tow placard provided "reasonably calculated" notice of the tow, and whether, if Portland had knowledge that notice was ineffective, it was practicable to notify Grimm through other means.

We therefore remand this case to the district court to consider, among other questions: (1) Is putting citations on a car that do not explicitly warn that the car will be towed reasonably calculated to give notice of a tow to the owner?; (2) Did the red tow slip placed on Grimm's car shortly before the tow provide adequate notice?; and (3) Was Portland required under *Jones* to provide supplemental notice if it had reason to suspect that the notice provided by leaving citations and the tow slip on Grimm's windshield was ineffective?

### III.

For the foregoing reasons, we conclude that individualized pre-towing notice was required, and that the *Mullane* "reasonably calculated" standard governs the adequacy of notice claim here. The district court's grant of summary judgment to Portland is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion.